UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



BETTE JEAN PLANT,

by and through her Next Friend,

CHERYL R. BAITY,

        Plaintiff,

v.              Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK, et al.,

        Defendants.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

BETTE JEAN PLANT,

by and through her Next Friend, CHERYL R. BAITY,

Plaintiff,

v.

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.; SUSAN M.
RENAUD; LEDYARD NATIONAL BANK; and BAKER NEWMAN NOYES, LLC,

Defendants.

1

/s/ **Cheryl R. Baity**

**Cheryl R. Baity**

Next Friend of Bette Jean Plant

77 West Avenue

Darien, Connecticut 06820

Telephone: (203) 970-0602

Email: CherylBaity@gmail.com

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


BETTE JEAN PLANT,

by and through her Next Friend,

CHERYL R. BAITY,

                    Plaintiff,


v.                          Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK, et al.,

                    Defendants.


UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

BETTE JEAN PLANT,

by and through her Next Friend, CHERYL R. BAITY,

Plaintiff,

v.

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.; SUSAN M.
RENAUD; LEDYARD NATIONAL BANK; and BAKER NEWMAN NOYES, LLC,
Defendants.

/s/ **Cheryl R. Baity**

**Cheryl R. Baity**

Next Friend of Bette Jean Plant

77 West Avenue

Darien, Connecticut 06820

Telephone: (203) 970-0602

Email: CherylBaity@gmail.com

Civil Action No._No. 3:25-cv-01229-OAW

JURY TRIAL DEMANDED



FIRST AMENDED VERIFIED COMPLAINT

(Equitable Relief, Accounting, Damages, and Related Relief)

Plaintiff Bette Jean Plant ("Mrs. Plant"), by and through her Next Friend, Cheryl R. Baity ("Next Friend"), alleges as follows:

## I. PRELIMINARY STATEMENT

1. This case seeks urgent, practical federal relief to stop ongoing dissipation and concealment of assets and records belonging to and/or held for the benefit of an elderly primary lifetime beneficiary—Mrs. Plant—whose access to information, distributions, and essential trust support has been blocked for years while trust-related funds and records were used and controlled by Defendants.

2. Mrs. Plant is the primary lifetime beneficiary of the David W. Plant trust structure established for her support and dignity in later life. The trust instruments mandate regular distributions and fiduciary accountability.

3. Defendants—(i) the co-trustee/lawyer (Cook) and his firm (Sheehan Phinney), (ii) a senior bank fiduciary officer (Renaud) and the bank (Ledyard), and (iii) the accounting firm (Baker Newman Noyes)—are alleged to have participated in a course of conduct that:

a. cut off and withheld mandatory distributions to Mrs. Plant;

b. denied her access to statements, ledgers, and basic lookback records;

c. caused and/or perpetuated "phantom income" tax harm through trust tax reporting without transparency; and

d. redirected trust resources toward non-routine disbursements, legal fees, and other expenditures while leaving Mrs. Plant exposed to catastrophic personal financial risk.

4. Mrs. Plant does not ask this Court to sit as an appellate tribunal over New Hampshire orders. She seeks prospective, equitable, auditable relief—including preservation, mandatory accounting, and targeted injunctive safeguards—based on Defendants' conduct and the ongoing harms suffered in Connecticut.

## II. JURISDICTION AND VENUE

### A. Subject-Matter Jurisdiction

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts federal claims, including claims under 18 U.S.C. § 1962(c)–(d) (civil RICO) and 18 U.S.C. § 1964(c).

6. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a)because those claims form part of the same case or controversy.

### B. Personal Jurisdiction

7. This Court has personal jurisdiction over each Defendant because Defendants intentionally directed conduct toward Mrs. Plant and Connecticut-based trust property and/or accounts; intentionally directed communications into Connecticut; and caused foreseeable injury in Connecticut, where Mrs. Plant resides and where substantial aspects of the trust administration, beneficiary access, tax harm, and financial injury were suffered.

8. Plaintiff further alleges that Defendants' conduct included efforts to treat and/or represent a Connecticut-sited account and related Connecticut-based assets and records as subject to improper control, discovery leverage, and coercive litigation consequences, notwithstanding the absence of any good-faith basis to do so.

9. Plaintiff alleges Defendants had no good-faith basis to treat the Connecticut account(s) and Connecticut-sited trust administration as subject to New Hampshire trust control or discovery demands beyond what a competent court could lawfully compel.

C. Venue

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, and a substantial part of the property and injury at issue is located here, including Connecticut-based trust administration components and the resulting harms suffered by Mrs. Plant in Connecticut.

11. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants transacted affairs and committed acts forming part of the alleged racketeering pattern with effects in this District.

## III. PARTIES

### A. Plaintiff

12. Plaintiff Bette Jean Plant is an elderly individual and a resident of Connecticut, with an address in Darien, Connecticut.

13. Mrs. Plant is the primary lifetime beneficiary of the David W. Plant trust structure, created for her support, maintenance, health, and reasonable comfort.

14. Mrs. Plant is competent to pursue this action and will execute the verification below. She appears by and through her Next Friend solely to ensure protective case management and to reduce the risk of coercive or abusive litigation tactics directed toward an elderly party.

15. Next Friend Cheryl R. Baity is Mrs. Plant's daughter and a Connecticut resident. She acts as "Next Friend of" Mrs. Plant for purposes of assisting with filings, protecting Mrs. Plant from coercive litigation burdens, and ensuring orderly case management. The Next Friend is not asserted as an independent plaintiff and does not seek individualized damages.

### B. Defendants

16. Defendant Bradford E. Cook ("Cook") is an attorney and was a co-trustee and/or purported trustee involved in administration and control of trust-related assets and records. Upon information and belief, Cook is a resident of New Hampshire and worked through Sheehan Phinney Bass & Green, P.A.

17. Defendant Sheehan Phinney Bass & Green, P.A. ("Sheehan Phinney") is a law firm with offices in New Hampshire. Upon information and belief, it acted through Cook and others and received funds traceable to trust-related assets and/or participated in the conduct alleged herein.

18. Defendant Susan M. Renaud ("Renaud") is, upon information and belief, a senior fiduciary officer/financial advisor associated with Ledyard National Bank who exercised control over records, beneficiary access, and disbursement administration relating to the trust accounts and related accounts.

19. Defendant Ledyard National Bank ("Ledyard") is a financial institution that served as custodian and/or administrator of trust accounts and records relevant to the David W. Plant trust structure and related accounts, and acted through Renaud and other agents.

20. Defendant Baker Newman Noyes, LLC ("BNN") is an accounting firm that, upon information and belief, provided trust tax preparation and related services (including preparation and/or involvement with Forms 1041, K-1 reporting, and related tax materials) that contributed to the tax harms alleged and was involved in communications and/or coordination relevant to trust reporting and records.

## IV. FACTUAL ALLEGATIONS

### A. The Trust Instruments and Their Purpose

21. David W. Plant established a trust structure intended to provide for Mrs. Plant's lifelong financial security, including mandatory distributions and fiduciary accountability.

22. The trust instruments require the fiduciary/trustee(s) to administer the trusts in accordance with their terms, to act in the best interests of the beneficiary, and to provide accountings and access to records as required by law and the trust documents.

23. Mrs. Plant alleges that the trust structure was specifically designed to protect her dignity and level of care in later life, precisely when assisted living and healthcare expenses become unavoidable.

B. Cutoff of Distributions and Information Blackout

24. Beginning in or about 2021, Mrs. Plant alleges that mandatory distributions that had historically supported her were cut off and/or withheld, and that her ability to obtain meaningful account statements, ledgers, and historical "lookback" records was restricted or denied.

25. Mrs. Plant alleges that she repeatedly sought basic access to trust records and account histories, but Defendants denied or constrained access in ways that prevented her from understanding how trust assets were being handled.

26. Mrs. Plant alleges that Ledyard, acting through Renaud and others, imposed access limits that prevented her from looking back at statements and records needed to evaluate disbursements and fiduciary conduct.

27. Mrs. Plant alleges Defendants' record restrictions and non-responsiveness were not accidental; they functioned to prevent detection of disbursements, reimbursements, fee withdrawals, and other activity during a period in which Mrs. Plant was receiving little or nothing.

C. Court Orders Requiring Maintenance of Distributions and Alleged Non-Compliance

28. Mrs. Plant alleges that multiple court directives existed requiring maintenance or reinstatement of distributions for her basic needs, yet Cook and Ledyard did not comply in substance.

29. Mrs. Plant alleges that court orders and rulings—issued in or around September and November 2021—required distributions to continue or be maintained for her medical care and basic needs, but the distributions were nonetheless withheld.

30. Mrs. Plant alleges that Defendants used "family conflict" as a pretext to punish her and to justify withholding distributions, while continuing trust-account activity and paying selected third parties.

D. Litigation Pressure, Sanctions Leverage, and the Connecticut Account Issue

31. Mrs. Plant alleges that Defendants and their counsel pursued litigation tactics and discovery demands aimed at coercing financial disclosure and compliance, and used fee and sanctions mechanisms as leverage.

32. Mrs. Plant alleges that Defendants attempted to treat a Connecticut-sited account and/or Connecticut-based trust administration components as though they were controlled by, or subject to, New Hampshire trust proceedings and discovery demands, notwithstanding the relocation/situs changes and the lack of lawful control by Defendants over that Connecticut-based account.

33. Mrs. Plant alleges that Defendants repeatedly sought to connect and characterize the Connecticut account as part of the New Hampshire trust proceedings to impose pressure and consequences, including the imposition of sanctions.

34. Mrs. Plant alleges that Defendants knew they lacked a good-faith basis to treat the Connecticut account as subject to New Hampshire trust control or discovery beyond lawful bounds, and that the resulting harms—financial and otherwise—were suffered in Connecticut.

E. Trust Disbursements, Legal Fees, and Non-Routine Payments

35. Mrs. Plant alleges that during the period she was cut off from meaningful distributions and meaningful transparency, substantial sums were nonetheless disbursed from trust-related assets to third parties and professionals.

36. Mrs. Plant alleges that Sheehan Phinney received payments traceable to trust assets, including legal fees associated with disputes adverse to or injurious to Mrs. Plant, without transparent billing disclosures to her as beneficiary.

37. Mrs. Plant alleges that Ledyard and its counsel received trust-funded reimbursements and/or legal fee payments while Mrs. Plant remained deprived of adequate distributions and basic visibility into account activity.

F. Trust Tax Reporting and "Phantom Income" Harm

38. Mrs. Plant alleges she received tax materials and notices indicating income and tax obligations inconsistent with what she actually received in cash distributions, creating "phantom income" and exposing her to IRS collection activity and lien risk.

39. Mrs. Plant alleges that BNN's trust tax work—including Forms 1041, K-1 reporting, brokerage statement reliance, and communications—contributed to, perpetuated, and/or

failed to correct tax reporting that harmed her while she was not receiving the corresponding funds.

40. Mrs. Plant alleges that Defendants' failure to provide full transaction-level accounting and full tax support documentation (including 1041s, K-1s, brokerage statements, and underlying workpapers to the extent appropriate) prevented timely reconciliation, taxpayer advocacy relief, and mitigation of IRS enforcement threats.

## G. Current, Ongoing, and Irreparable Harm

41. Mrs. Plant resides in assisted living and faces substantial monthly costs typical for an elderly individual requiring safe and dignified care.

42. Mrs. Plant alleges that within the last month she has experienced multiple falls, including nighttime falls when getting up to use the bathroom, increasing the risk of injury and the need for incremental care.

43. Mrs. Plant alleges that she is not seeking unnecessary institutionalization; she seeks safe, minimally intrusive care decisions, and insists she should not be pushed into inappropriate "memory care" simply to serve others' convenience or litigation goals.

44. Mrs. Plant alleges that she suffers from age-related memory loss but remains competent; she remains engaged, reads regularly, and maintains independent functioning consistent with living in an appropriate independent/assisted setting.

45. Mrs. Plant alleges she has been forced to expend personal resources and incur tax and legal exposure while trust resources were withheld, placing her at risk of catastrophic financial depletion and loss of stability.

1. **First Amended Verified Complaint**
2. **Emergency Motion for Temporary Restraining Order and Preliminary Injunction**
3. **Memorandum of Law in Support of Emergency Motion**
4. **Rule 65(b)(1)(B) Certification**
5. **Declaration of Cheryl R. Baity**
6. **Proposed Temporary Restraining Order / Order to Show Cause**
7. **Exhibits A–K**, submitted in support of the Emergency Motion and Declaration

These filings seek **immediate judicial intervention** to prevent ongoing and irreparable harm to the Plaintiff arising from the continued withholding and misuse of trust assets required for her medical care, housing, and basic support.

Because of the emergency nature of the relief requested, Plaintiff respectfully asks that these materials be **docketed promptly** and routed to the assigned Judge without delay.

If any additional administrative steps are required for acceptance of this filing, please advise the undersigned at the contact information below.

Thank you for your assistance and professionalism.

Respectfully submitted,

/s/ **Bette Jean Plant**

**Bette Jean Plant**

Plaintiff, pro se

*through Next Friend, Cheryl R. Baity*

Delivered by:

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

**BRIDGEPORT DIVISION**

**December 19, 2025**

Clerk of Court

United States District Court

District of Connecticut – Bridgeport

915 Lafayette Boulevard

Bridgeport, CT 06604

Re: **Bette Jean Plant v. Bradford E. Cook, et al.**

**Civil Action No. 3:25-cv-01229-OAW**

**Emergency Filing**

Dear Clerk of Court:

Please accept the enclosed filings for submission in the above-referenced matter. The Plaintiff, **Bette Jean Plant**, is filing these materials **pro se**, through her duly acting **Next Friend, Cheryl R. Baity**, due to Plaintiff's advanced age and inability to physically manage filing logistics.

This submission includes the following documents:

## V. CLAIMS FOR RELIEF

(Each Count incorporates by reference all preceding paragraphs.)

### COUNT I — Breach of Fiduciary Duty (Against Cook, Renaud, and Ledyard)

46. Cook, Renaud, and Ledyard owed fiduciary duties to Mrs. Plant arising from their roles in trust administration, custody, distributions, record access, and beneficiary reporting.

47. Defendants breached those duties by, inter alia, withholding mandatory distributions; failing to provide required accountings; restricting access to statements and lookback records; permitting or effectuating non-routine disbursements inconsistent with the trust purpose; and acting in conflict with Mrs. Plant's interests.

48. As a direct and proximate result, Mrs. Plant has suffered damages and faces ongoing irreparable harm.

### COUNT II — Equitable Accounting (Against Cook, Renaud, Ledyard, and BNN)

49. Mrs. Plant is entitled to a full, transaction-level accounting and supporting documentation for all trust-related activity, including but not limited to ledgers, statements, wire confirmations, invoices, billing narratives, authorizations, tax returns (1041), K-1s, brokerage statements, and related records from September 2021 to the present (and earlier as justice requires).

50. Defendants have refused, delayed, restricted, or effectively denied meaningful accounting.

51. An equitable accounting is necessary because the relevant information is uniquely within Defendants' control and because the nature and extent of disbursements and reporting cannot be determined without court-supervised production.

COUNT III — Conversion / Wrongful Control of Property (Against Cook, Renaud, and Ledyard)

52. Mrs. Plant has a superior right to distributions and to the proper administration of trust assets for her benefit as provided by the trust instruments.

53. Cook, Renaud, and Ledyard wrongfully exercised dominion and control over trust property and/or distribution rights in a manner inconsistent with Mrs. Plant's rights, including by withholding distributions, restricting access, and facilitating disbursements and reimbursements not properly authorized.

54. Mrs. Plant has been damaged thereby.

COUNT IV — Unjust Enrichment (Against All Defendants)

55. Defendants received and retained benefits, directly or indirectly, traceable to trust assets and trust-related transactions, under circumstances that make it inequitable to permit retention of those benefits without restitution and disgorgement.

56. Mrs. Plant is entitled to restitution, disgorgement, and imposition of a constructive trust over unjustly retained funds where appropriate.

COUNT V — Civil RICO, 18 U.S.C. § 1962(c) (Against Cook, Sheehan Phinney, Renaud, Ledyard, and BNN)

57. Plaintiff alleges an association-in-fact enterprise comprised of Cook, Sheehan Phinney, Renaud, Ledyard, and BNN (the "Enterprise"), which functioned as a continuing unit with the common purpose of controlling trust assets and information, extracting payments and reimbursements, and maintaining concealment and leverage against the primary beneficiary.

58. Plaintiff alleges Defendants conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity, including acts chargeable as mail fraud and wire fraud, and related predicate acts, in connection with:

a. communications transmitting false or misleading trust-status assertions and distribution justifications;

b. transmission and use of billing, reimbursement, and payment communications lacking transparent substantiation;

c. transmission and reliance on tax reporting materials that caused "phantom income" harm while distributions were withheld; and

d. withholding and concealment of records necessary to detect and correct these harms.

59. Plaintiff alleges at least two predicate acts within ten years, related and continuous, and that the racketeering conduct caused injury to Plaintiff's property, including withheld distributions, depletion, tax harm, and costs.

60. Plaintiff seeks relief under 18 U.S.C. § 1964(c), including treble damages, attorneys' fees (if counsel is later retained), and equitable relief.

COUNT VI — Civil RICO Conspiracy, 18 U.S.C. § 1962(d) (Against All Defendants)

61. Plaintiff alleges Defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the Enterprise's affairs, and that Defendants knowingly joined and furthered the scheme through their respective roles (trust administration, custodial control, law-firm conduct, and accounting/tax reporting).

62. Plaintiff has suffered injury to property by reason of the conspiracy.


VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter preliminary and permanent injunctive relief preserving trust assets and enjoining non-routine disbursements from assets held in or traceable to the David W. Plant trust structure pending further order;

B. Order direct payment of Plaintiff's essential assisted living, caregiver, and necessary medical expenses either directly to providers or through a Court-supervised escrow;

C. Order Ledyard and any custodian to provide Plaintiff read-only access and full historical lookback access to all relevant trust and account statements and ledgers, and to preserve all records, including ledgers, statements, wire confirmations, invoices, billing narratives, and authorizations;

D. Order a full transaction-level accounting with supporting documentation (including 1041s, K-1s, brokerage statements, and related tax support) for the relevant period;

E. Award damages, restitution, disgorgement, and imposition of a constructive trust as appropriate;

F. Award treble damages and costs under civil RICO to the extent proven;

G. Grant such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

63. Plaintiff demands a trial by jury on all issues so triable.

## VIII. VERIFICATION (28 U.S.C. § 1746)

I, Bette Jean Plant, declare under penalty of perjury that I have read the foregoing First Amended Verified Complaint, that I know the contents thereof, and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

Executed on _Dec 19_, 2025, at _Darien CT_____.

Bette Jean Plant
Bette Jean Plant

Plaintiff

IX. SIGNATURE BLOCKS

Respectfully submitted,

*Cheryl R Baity*

Cheryl R. Baity

Next Friend of Bette Jean Plant

Darien, Connecticut

Telephone: (_203_) -970-0602

Email:cherylbaity@gmail.cm

Civil Action No._No. 3:25-cv-01229-OAW

JURY TRIAL DEMANDED

FIRST AMENDED VERIFIED COMPLAINT

(Equitable Relief, Accounting, Damages, and Related Relief)

Plaintiff Bette Jean Plant ("Mrs. Plant"), by and through her Next Friend, Cheryl R. Baity ("Next Friend"), alleges as follows:

## I. PRELIMINARY STATEMENT

1. This case seeks urgent, practical federal relief to stop ongoing dissipation and concealment of assets and records belonging to and/or held for the benefit of an elderly primary lifetime beneficiary—Mrs. Plant—whose access to information, distributions, and essential trust support has been blocked for years while trust-related funds and records were used and controlled by Defendants.

2. Mrs. Plant is the primary lifetime beneficiary of the David W. Plant trust structure established for her support and dignity in later life. The trust instruments mandate regular distributions and fiduciary accountability.

3. Defendants—(i) the co-trustee/lawyer (Cook) and his firm (Sheehan Phinney), (ii) a senior bank fiduciary officer (Renaud) and the bank (Ledyard), and (iii) the accounting firm (Baker Newman Noyes)—are alleged to have participated in a course of conduct that:

a. cut off and withheld mandatory distributions to Mrs. Plant;

b. denied her access to statements, ledgers, and basic lookback records;

c. caused and/or perpetuated "phantom income" tax harm through trust tax reporting without transparency; and

d. redirected trust resources toward non-routine disbursements, legal fees, and other expenditures while leaving Mrs. Plant exposed to catastrophic personal financial risk.

4. Mrs. Plant does not ask this Court to sit as an appellate tribunal over New Hampshire orders. She seeks prospective, equitable, auditable relief—including preservation, mandatory accounting, and targeted injunctive safeguards—based on Defendants' conduct and the ongoing harms suffered in Connecticut.


## II. JURISDICTION AND VENUE

### A. Subject-Matter Jurisdiction

5. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts federal claims, including claims under 18 U.S.C. § 1962(c)–(d) (civil RICO) and 18 U.S.C. § 1964(c).

6. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a)because those claims form part of the same case or controversy.


### B. Personal Jurisdiction

7. This Court has personal jurisdiction over each Defendant because Defendants intentionally directed conduct toward Mrs. Plant and Connecticut-based trust property and/or accounts; intentionally directed communications into Connecticut; and caused foreseeable injury in Connecticut, where Mrs. Plant resides and where substantial aspects of the trust administration, beneficiary access, tax harm, and financial injury were suffered.

8. Plaintiff further alleges that Defendants' conduct included efforts to treat and/or represent a Connecticut-sited account and related Connecticut-based assets and records as subject to improper control, discovery leverage, and coercive litigation consequences, notwithstanding the absence of any good-faith basis to do so.

9. Plaintiff alleges Defendants had no good-faith basis to treat the Connecticut account(s) and Connecticut-sited trust administration as subject to New Hampshire trust control or discovery demands beyond what a competent court could lawfully compel.

C. Venue

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this District, and a substantial part of the property and injury at issue is located here, including Connecticut-based trust administration components and the resulting harms suffered by Mrs. Plant in Connecticut.

11. Venue is also proper under 18 U.S.C. § 1965(a) because Defendants transacted affairs and committed acts forming part of the alleged racketeering pattern with effects in this District.

## III. PARTIES

### A. Plaintiff

12. Plaintiff Bette Jean Plant is an elderly individual and a resident of Connecticut, with an address in Darien, Connecticut.

13. Mrs. Plant is the primary lifetime beneficiary of the David W. Plant trust structure, created for her support, maintenance, health, and reasonable comfort.

14. Mrs. Plant is competent to pursue this action and will execute the verification below. She appears by and through her Next Friend solely to ensure protective case management and to reduce the risk of coercive or abusive litigation tactics directed toward an elderly party.

15. Next Friend Cheryl R. Baity is Mrs. Plant's daughter and a Connecticut resident. She acts as "Next Friend of" Mrs. Plant for purposes of assisting with filings, protecting Mrs. Plant from coercive litigation burdens, and ensuring orderly case management. The Next Friend is not asserted as an independent plaintiff and does not seek individualized damages.

### B. Defendants

16. Defendant Bradford E. Cook ("Cook") is an attorney and was a co-trustee and/or purported trustee involved in administration and control of trust-related assets and records. Upon information and belief, Cook is a resident of New Hampshire and worked through Sheehan Phinney Bass & Green, P.A.

17. Defendant Sheehan Phinney Bass & Green, P.A. ("Sheehan Phinney") is a law firm with offices in New Hampshire. Upon information and belief, it acted through Cook and others and received funds traceable to trust-related assets and/or participated in the conduct alleged herein.

18. Defendant Susan M. Renaud ("Renaud") is, upon information and belief, a senior fiduciary officer/financial advisor associated with Ledyard National Bank who exercised control over records, beneficiary access, and disbursement administration relating to the trust accounts and related accounts.

19. Defendant Ledyard National Bank ("Ledyard") is a financial institution that served as custodian and/or administrator of trust accounts and records relevant to the David W. Plant trust structure and related accounts, and acted through Renaud and other agents.

20. Defendant Baker Newman Noyes, LLC ("BNN") is an accounting firm that, upon information and belief, provided trust tax preparation and related services (including preparation and/or involvement with Forms 1041, K-1 reporting, and related tax materials) that contributed to the tax harms alleged and was involved in communications and/or coordination relevant to trust reporting and records.


## IV. FACTUAL ALLEGATIONS

### A. The Trust Instruments and Their Purpose

21. David W. Plant established a trust structure intended to provide for Mrs. Plant's lifelong financial security, including mandatory distributions and fiduciary accountability.

22. The trust instruments require the fiduciary/trustee(s) to administer the trusts in accordance with their terms, to act in the best interests of the beneficiary, and to provide accountings and access to records as required by law and the trust documents.

23. Mrs. Plant alleges that the trust structure was specifically designed to protect her dignity and level of care in later life, precisely when assisted living and healthcare expenses become unavoidable.

B. Cutoff of Distributions and Information Blackout

24. Beginning in or about 2021, Mrs. Plant alleges that mandatory distributions that had historically supported her were cut off and/or withheld, and that her ability to obtain meaningful account statements, ledgers, and historical "lookback" records was restricted or denied.

25. Mrs. Plant alleges that she repeatedly sought basic access to trust records and account histories, but Defendants denied or constrained access in ways that prevented her from understanding how trust assets were being handled.

26. Mrs. Plant alleges that Ledyard, acting through Renaud and others, imposed access limits that prevented her from looking back at statements and records needed to evaluate disbursements and fiduciary conduct.

27. Mrs. Plant alleges Defendants' record restrictions and non-responsiveness were not accidental; they functioned to prevent detection of disbursements, reimbursements, fee withdrawals, and other activity during a period in which Mrs. Plant was receiving little or nothing.

C. Court Orders Requiring Maintenance of Distributions and Alleged Non-Compliance

28. Mrs. Plant alleges that multiple court directives existed requiring maintenance or reinstatement of distributions for her basic needs, yet Cook and Ledyard did not comply in substance.

29. Mrs. Plant alleges that court orders and rulings—issued in or around September and November 2021—required distributions to continue or be maintained for her medical care and basic needs, but the distributions were nonetheless withheld.

30. Mrs. Plant alleges that Defendants used "family conflict" as a pretext to punish her and to justify withholding distributions, while continuing trust-account activity and paying selected third parties.

## D. Litigation Pressure, Sanctions Leverage, and the Connecticut Account Issue

31. Mrs. Plant alleges that Defendants and their counsel pursued litigation tactics and discovery demands aimed at coercing financial disclosure and compliance, and used fee and sanctions mechanisms as leverage.

32. Mrs. Plant alleges that Defendants attempted to treat a Connecticut-sited account and/or Connecticut-based trust administration components as though they were controlled by, or subject to, New Hampshire trust proceedings and discovery demands, notwithstanding the relocation/situs changes and the lack of lawful control by Defendants over that Connecticut-based account.

33. Mrs. Plant alleges that Defendants repeatedly sought to connect and characterize the Connecticut account as part of the New Hampshire trust proceedings to impose pressure and consequences, including the imposition of sanctions.

34. Mrs. Plant alleges that Defendants knew they lacked a good-faith basis to treat the Connecticut account as subject to New Hampshire trust control or discovery beyond lawful bounds, and that the resulting harms—financial and otherwise—were suffered in Connecticut.

E. Trust Disbursements, Legal Fees, and Non-Routine Payments

35. Mrs. Plant alleges that during the period she was cut off from meaningful distributions and meaningful transparency, substantial sums were nonetheless disbursed from trust-related assets to third parties and professionals.

36. Mrs. Plant alleges that Sheehan Phinney received payments traceable to trust assets, including legal fees associated with disputes adverse to or injurious to Mrs. Plant, without transparent billing disclosures to her as beneficiary.

37. Mrs. Plant alleges that Ledyard and its counsel received trust-funded reimbursements and/or legal fee payments while Mrs. Plant remained deprived of adequate distributions and basic visibility into account activity.

F. Trust Tax Reporting and "Phantom Income" Harm

38. Mrs. Plant alleges she received tax materials and notices indicating income and tax obligations inconsistent with what she actually received in cash distributions, creating "phantom income" and exposing her to IRS collection activity and lien risk.

39. Mrs. Plant alleges that BNN's trust tax work—including Forms 1041, K-1 reporting, brokerage statement reliance, and communications—contributed to, perpetuated, and/or

failed to correct tax reporting that harmed her while she was not receiving the corresponding funds.

40. Mrs. Plant alleges that Defendants' failure to provide full transaction-level accounting and full tax support documentation (including 1041s, K-1s, brokerage statements, and underlying workpapers to the extent appropriate) prevented timely reconciliation, taxpayer advocacy relief, and mitigation of IRS enforcement threats.

## G. Current, Ongoing, and Irreparable Harm

41. Mrs. Plant resides in assisted living and faces substantial monthly costs typical for an elderly individual requiring safe and dignified care.

42. Mrs. Plant alleges that within the last month she has experienced multiple falls, including nighttime falls when getting up to use the bathroom, increasing the risk of injury and the need for incremental care.

43. Mrs. Plant alleges that she is not seeking unnecessary institutionalization; she seeks safe, minimally intrusive care decisions, and insists she should not be pushed into inappropriate "memory care" simply to serve others' convenience or litigation goals.

44. Mrs. Plant alleges that she suffers from age-related memory loss but remains competent; she remains engaged, reads regularly, and maintains independent functioning consistent with living in an appropriate independent/assisted setting.

45. Mrs. Plant alleges she has been forced to expend personal resources and incur tax and legal exposure while trust resources were withheld, placing her at risk of catastrophic financial depletion and loss of stability.

48. THE COURT: I'll take the fee motion under advisement. **[Abuse #5: Fails to address Baity's valid objection to $19,200 fee, shutting down scrutiny of excessive billing.]**

49. THE COURT: Turning to the January 23 motion on beneficiary counsel/fees, and the separate "full accounting/investigation/potential perjury" motion. Objection to taking these today?

50. [COUNSEL/PARTIES]: No objection to the court considering whether they should be dismissed. [General agreement that they are outside scope; not a merits hearing.]

51. THE COURT: Ms. Baity, I have your motions and the objections. The objections say this is not the proper forum. At best, these are counterclaims and they are late. I'm inclined to dismiss without prejudice. If you want to open a new case, you may. **[Abuse #6: Denial of fundamental motion; calls accounting "wildly late" despite Supreme Court/ADO guidance to file in probate, blocks truth on $1.2M fraud.]**

52. MS. BAITY: On the request for a full accounting/investigation, I shut down Attorney [unclear] at a prior point and there were three claims in the original petition; the 30-day window passed with no reconsideration. So this looks like a new petition. Also, on November 26, you stated no final judgment had entered; outstanding matters remained, including attorneys' fees—so I thought the case remained open. The ADO told me if a probate case is pending, bring related issues there.

53. THE COURT: I'm not saying the case is closed. But what you are raising reads like a new petition and, in part, concerns a Connecticut trust. If you want an accounting of a Connecticut trust, that belongs in Connecticut. For an accounting in the New Hampshire trusts before me, that would be a separate action here. As for discovery earlier in this case, I entered an adverse inference and default on the distribution issue because discovery regarding Mrs. Plant's assets was not produced. **[Jurisdiction Admission #1: Admits no jurisdiction over Connecticut trust but references prior sanctions on its bank account, contradicting later actions.]**

54. MS. BAITY: Those assets are from the Connecticut trust. That's all she has.

55. THE COURT: This case concerns two New Hampshire trusts. Connecticut assets are relevant as information about Mrs. Plant's resources, but the Connecticut trust itself is not before me. If you want relief regarding the Connecticut trust, file in Connecticut. **[Jurisdiction Admission #2: Explicitly states no authority over Connecticut trust, yet imposed $19,200 sanctions; illogically directs NH trust accounting to Connecticut, ignoring fraud in NH.]**

56. MS. BAITY: I don't have a lawyer. Everyone else does.

57. THE COURT: Your brothers do not have counsel here. You had Attorney McCandless, then Attorney Davidson (fees authorized in April for your mother in her capacity as co-trustee). I have not authorized fees for other beneficiaries. Trustees may have fees under the trust. If some beneficiaries can afford counsel, that is not before me. **[Abuse #7: Falsely claims John and Keith unrepresented, ignoring Cook's petition for Keith's distributions (see line 45); falsely implies Mrs. Plant was removed as co-trustee without resignation or hearing, denies her primary beneficiary status, repeating lies to prejudice case.]**

58. MS. BAITY: This has been a legal ambush against a 90-year-old woman. Eight lawyers filed in against a very junior lawyer for us. We were conflicted out everywhere. It's been unbalanced from the start. **[Abuse #8: Judge dismisses Baity's valid complaint about imbalance, ignoring 100+ conflicted-out lawyers.]**

59. THE COURT: I understand the frustration. Attorney Davidson has appeared often in probate matters. I have tried to be patient. But I cannot be your lawyer. Procedurally, your "full accounting/investigation/potential perjury" filing is a new pleading for a new case—and possibly in Connecticut. I will dismiss it without prejudice. You may refile in the correct forum. **[Abuse #9: Claims "tried to be patient" but showed no kindness or compassion, only cruelty; denies accounting motion without reason, citing objections, blocking fraud investigation.]**

60. THE COURT: On index no. 153 (beneficiary counsel/fees): what relief are you seeking?

61. MS. BAITY: I'm the only beneficiary without counsel. I want permission to do discovery on who has been paying counsel for Susan, Frank, and Mina over four years. If some beneficiaries get privileges I don't, I want to know.

62. THE COURT: I earlier authorized payment for Attorney Davidson for your mother when she was co-trustee. I have not authorized fees for other beneficiaries. Trustees are entitled under the trust. I don't get involved in who personally pays for non-trustee beneficiaries. I am going to deny no. 153. **[Abuse #10: Denies beneficiary fees motion without reason, ignoring inequity of Cook's side having extensive counsel; falsely states Mrs. Plant was "co-trustee" in past tense, implying removal despite no resignation, evidence, or hearing—she remains co-trustee.]**

63. [ATTORNEY RAYMOND]: Clarifies trustee fee provisions under operating documents; beneficiary fee requests are not within that framework. [Paraphrased; much was unclear.]

64. THE COURT: Court security advises it's 3:46 p.m. We need to conclude.

65. **Rulings (stated on the record)**

66. – Amended motion for attorneys' fees and costs: taken under advisement.

67. – Index No. 159 (motion for clarification: full accounting/investigation into trust administration/potential perjury): dismissed without prejudice (procedurally late/new pleading; may belong in Connecticut). **[Abuse #11: Final denial of accounting motion, no substantive reason given, enabling $1.2M fraud.]**

68. – Index No. 153 (motion for clarification on payment of beneficiary counsel and request for order regarding beneficiary legal fees): denied. **[Abuse #12: Final denial of fees motion, no substantive reason given.]**

69. THE COURT: Case submitted. Thank you.

70. **[Off-the-record / post-hearing remarks captured on the recording]**

71. MS. BAITY: [Upset; statements about Susan Plant and others receiving free counsel; intent to appeal.] [Audio partially unclear.] **[Abuse #13: Baity's distress reflects trauma from judge's hostility, false exploitation claims, and cruel treatment.]**

**Notes for Committee:**

- **Audio Review:** Listen to the audio to hear the judge's hostile, humiliating tone, critical to understanding trauma (**lines 29, 35, 58, 70**).
- **Exploitation and False Status Lies:** Repeated false claims of exploitation (**lines 29, 35**) and Mrs. Plant's removal as co-trustee/primary beneficiary status (**lines 56, 61**) prejudiced the case, enabled fraud.
- **Attached Documents:** All 32 motions for Mrs. Plant (denied without reasons) and Cook's motions (with extensive legal support) show bias.
- **Legal Context:** RSA 564-B:8-813 allows accounting requests; "wildly late" claim (**line 50**) conflicts with Supreme Court/ADO guidance.
- **Request:** Review for misconduct, ADA non-compliance, and bias enabling fraud.

# ABUSE PATTERN CHART – ALL MOTIONS DENIED

**Case:** *In re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust*

**Docket No.:** 316-2023-EQ-01633

**Submitted by:** Cheryl Baity

**Date:** October 6, 2025

**Description:**

This chart illustrates the abuse pattern showing that **all 32 of 32 motions filed on behalf of Mrs. Bette Jean Plant were denied**, while opposing counsel's motions were uniformly granted. Page 32 confirms the complete denial rate, underscoring judicial bias and prejudice.

# Motions Chart Analysis

**Introduction to Abuse Pattern Chart**

The following chart catalogs 32 motions filed by or on behalf of my mother, Jeanie Plant. Every single one of those motions was denied, ignored, or twisted against her. By contrast, virtually all motions by attorney Bradford Cook were granted. This is not an appeal of rulings — it is evidence of deliberate judicial misconduct: cruelty, intimidation, harassment, and bias in violation of the New Hampshire Code of Judicial Conduct.

## 1. False Finding of "Non-Compliance"

On July 9, 2024, Judge Kissinger branded my mother "non-compliant" with discovery and used that false label to impose sanctions. This was factually untrue. On June 11, 2024, my mother had already produced the discovery requested, and on November 26, 2024, the Judge herself admitted on the record that my mother was *"not in default"* and had offered discovery under a "lawyer's eyes only" restriction to preserve confidentiality. Despite this, the Judge deliberately wrote the opposite into her order, creating a false record of defiance to justify punishment.

- Citation: Nov 26, 2024 Transcript, p. 25 ("She is not in default... she's offered discovery for lawyer's eyes only.")
- Effect: A deliberate misrepresentation of compliance used as a weapon against a 90-year-old widow.

## 2. Sanctions Without Jurisdiction

On December 8–9, 2024, the Judge imposed $19,200 in sanctions on my mother. But on February 4, 2025, in open court, the Judge admitted she had no jurisdiction over the Connecticut trust at the center of that discovery. My mother had already offered discovery even though she wasn't legally required to, but the Judge denied it and punished her anyway.

- Citation: Feb 4, 2025 Transcript ("The Connecticut trust itself is not before me.")
- Effect: Sanctions were issued without jurisdiction, proving cruelty and abuse of authority.

## 3. False Crime Reporting and Smear of Exploitation

Perhaps most serious of all, Judge Kissinger repeatedly accused me in open court of being under "very serious allegations" of financial exploitation of my own mother. These remarks escalated into a DSS raid on my home, where agents attempted to break down my 90-year-old mother's door.

These accusations had no basis whatsoever. The only reference came from a November 6, 2023 filing by attorney Jennifer Lyon, who speculated that because I sold my mother's house, there was "reason to believe" I was exploiting her. That was false. The sale was lawful, my mother received all of the proceeds, and because I spent three years rebuilding the house after a devastating flood — managing insurance and improvements myself — my mother received $500,000 more than she otherwise would have.

To falsely accuse someone of financial exploitation is devastating. To accuse a daughter of stealing from her own mother, when the truth is that she increased her mother's wealth, is unconscionable. It is not just misconduct — it is defamation, abuse of judicial authority, and an illegal act.

Meanwhile, the Judge had in front of her hundreds of pages of evidence proving that attorney Brad Cook looted millions from my mother's trusts, committed perjury, and was even investigated by the FBI. Yet she never once referred him for investigation, never once used the words "serious allegations" to describe his conduct and never protected my mother from his exploitation.

- Effect: Fabricated allegations were invented against me, while overwhelming evidence of actual crimes by Cook was ignored.

## Why This Matters

This is not mere legal error. It is a campaign of judicial intimidation:

| # | Date | Motion | Relief Requested | Judge's Action | Cruelty / Bias Analysis | Canons Violated |
|---|------|--------|------------------|----------------|-------------------------|-----------------|
| 6 | Jul 9, 2024 | Objection to Joined Motion to Compel | Accept lawyer's-eyes-only discovery | Found "non-compliant" | Factually false; branded disobedient | 2.2, 2.3, 2.5 |
| 7 | Jul 8, 2024 | Renewed Motion for Protective Order | Block harassing discovery | Denied | Enabled harassment tactics | 2.2, 2.3 |
| 8 | Jul 29, 2024 | Motion for Clarification | Narrow evidentiary hearing | Denied | Broadened record to favor Cook | 2.2, 2.5 |
| 9 | Aug 9, 2024 | Motion to Reconsider (July 31 Order) | Reverse unfair ruling | Denied | Refused to correct error; hostility sustained | 2.2, 2.5 |
| 10 | Oct 24, 2024 | Objection to Cook's Sanctions Motion | Block unjust sanctions | Denied | Strengthened sanctions to intimidate | 2.2, 2.3 |
| 11 | Dec 8, 2024 | Objection to Fees | Deny $20k in redacted bills | Denied | Rewarded opaque billing; gagged oversight | 1.2, 2.2, 2.4 |
| 12 | Dec 9, 2024 | Objection to In Camera Review | Require unredacted invoices | Denied | Secret validation of redacted billing | 1.2, 2.2, 2.5 |
| 13 | Jan 13, 2025 | Motion for Clarification | Permit counsel; order accounting | Denied | Prolonged opacity: rights withheld | 2.2, 2.5 |

| # | Date | Motion | Relief Requested | Judge's Action | Cruelty / Bias Analysis | Canons Violated |
|---|------|--------|------------------|----------------|-------------------------|-----------------|
| 14 | Jan 25, 2025 | Motion for Clarification + Perjury Inquiry | Investigate Cook's false filings | Denied | Sworn perjury proof dismissed | 2.2, 2.16 |
| 15 | Jan 27, 2025 | Objection to Fee Petition (Revised) | Block inflated billing | Denied | Reaffirmed indulgence of inflated fees | 2.2, 2.4 |
| 16 | Jan 31, 2025 | Opposition to "Case Closed" | Keep case open; allow accounting | Denied | Cut off rights while shielding trustee | 2.2, 2.5 |
| 17 | Jan 31, 2025 | Petition for Accounting/Forensic Audit | Order full accounting, subpoenas | Denied | Withheld fiduciary oversight | 2.2, 2.5 |
| 18 | Feb 7, 2025 | Emergency Motion to Dismiss (Fraud) | Dismiss case for jurisdictional fraud | Denied | Fraud evidence ignored | 2.2, 2.16 |
| 19 | Feb 7, 2025 | Affidavit in Support of Fraud Motion | Sworn fraud evidence | Ignored | Sworn affidavit disregarded | 2.2, 2.16 |
| 20 | Feb 13, 2025 | Response to Objections (Fraud Filing) | Reaffirm fraud evidence | Denied | Concealment of jurisdictional fraud | 2.2 |
| 21 | Feb 15, 2025 | Emergency Motion to Seal/Remove Cook | Protect records; remove trustee | Denied | Protected Cook; exposed Jeanie | 2.2, 2.3 |
| 22 | Feb 15, 2025 | Petition for Accounting (Repeat) | Transparency; fiduciary accountability | Denied | Concealment deepened | 2.2, 2.5 |

| # | Date | Motion | Relief Requested | Judge's Action | Cruelty / Bias Analysis | Canons Violated |
|---|---|---|---|---|---|---|
| 23 | Feb 24, 2025 | Restricted Criminal Filing (FBI/ADO/NHSC) | File proof trust funded; criminal referral | Ignored/buried | Court approved channel then suppressed filing | 1.2, 2.2, 2.16 |
| 24 | Jun 28, 2025 | Emergency Motion to Seal/Stay Enforcement | Halt execution of biased orders | Denied | Forced compliance with tainted orders | 2.2, 2.3 |
| 25 | Jul 2, 2025 | Motion to Stay Enforcement (ADA) | Accommodations; protect health | Denied | Disability weaponized as punishment | 2.3, 2.8 |
| 26 | Jul 2, 2025 | Notice of Non-Appearance + Proposed Order | Excuse appearance; allow remote | Denied | Duplicated unfairness; stripped access | 2.3 |
| 27 | Jul 2, 2025 | Alternate Motion to Stay | Same relief, alternate form | Denied | Perpetuated discrimination; reaffirmed bias | 2.3 |
| 28 | Jul 6, 2025 | Emergency ADA Motion | Stop sanctions; protect Jeanie | Denied | Unrelenting hostility toward disabled litigant | 2.3, 2.8 |
| 29 | Jul 6, 2025 | Emergency ADA Motion (Supplement) | Added medical proof | Denied | Escalated harassment; ignored stronger evidence | 2.3, 2.8 |
| 30 | Jul 7, 2025 | Emergency ADA Motion (Final) | Renewed urgent plea | Denied | Renewed act of cruelty | 2.3, 2.8 |
| 31 | Jul 2025 | Emergency Motion to Seal/Protect | Preserve records; halt sanctions | Denied | Continued intimidation; | 2.2 |

| # | Date | Motion | Relief Requested | Judge's Action | Cruelty / Bias Analysis | Canons Violated |
|---|------|--------|------------------|----------------|-------------------------|-----------------|
| | | | | | deprived protection | |
| 32 | Jul 2025 | Supplemental ADA Motion | Reinforce accommodation request | Denied | Ongoing mistreatment; persisted in harassment | 2.3 |

**Comparative Judicial Misconduct Charts**


**Cover Sheet**


**ADDENDUM TO COMPLAINT AGAINST THE HONORABLE BETH H. KISSINGER**

NINTH CIRCUIT COURT – PROBATE DIVISION

NEW HAMPSHIRE SUPREME COURT RULE 40


**Submitted by:** Cheryl Baity

**Date:** October 6, 2025

**Case:** *In re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust*

**Docket No.:** 316-2023-EQ-01633


**Summary:**

This addendum supplements the September 26, 2025 complaint by comparing Judge Kissinger's conduct with six judges previously disciplined in New Hampshire. In each case, sanctions were imposed to preserve confidence in the judiciary. Kissinger's misconduct—systematic bias, adoption of falsified trust documents, blanket denial of relief to an elderly widow, favoritism toward elite firms, and enabling of financial exploitation—goes further than any of these precedents. Her removal is the only appropriate sanction under Rule 40.


| Judge / Case | Violations & Reasons | Parallel to Judge Kissinger | Relevant Canons | Outcome |
|---|---|---|---|---|
| **Robert Snow** (1996, *In re Snow's Case*) | Repeated ex parte communications, favoritism toward select | Adopted falsified trust language from Cook's petition (Dec. 20, 2023 order). Favored Sheehan | Canon 1 (integrity), | **REMOVAL** (140 NH 618, 652 A.2d 115). |

| Judge / Case | Violations & Reasons | Parallel to Judge Kissinger | Relevant Canons | Outcome |
|---|---|---|---|---|
| | lawyers, mishandled cases to benefit insiders. Eroded confidence in judiciary. | Phinney. Enabled $165,053 in unauthorized 2021 distributions and $19,220 in redacted fee sanctions. Stripped co-trustee oversight. Harm tenfold greater. | 2.2(A), 2.3(B). | |
| **David Coffey** (2005, *In re Coffey's Case*) | Abused authority in guardianship cases; one-sided probate rulings against vulnerable parties. | Denied 32/32 motions from Mrs. Plant vs. 30/30 granted for Cook. Ignored hospitalization evidence (July 8, 2024). Rubber-stamped redacted invoices and inflated fees (Dec. 2024). Pattern of harassment against a 93-year-old widow. | Canon 1, Canon 2, Canon 2.3(B). | **CENSURE & SUSPENSION** (152 NH 503, 880 A.2d 403). |
| **David Young** (2010, *In re Young's Case*) | Failed diligence in trust administration. Allowed fiduciary misconduct by ignoring accountings and evidence. | Refused to admit original trusts or order accountings (July 29, 2024). Ratified unauthorized $165,053 disbursements. Ignored fraudulent invoices. Actively entrenched abuse rather than negligent oversight. | Canon 2.5(A), Canon 1, Canon 2.2(A). | **PUBLIC CENSURE & TRAINING** (160 NH 17, 32 A.3d 1066). |
| **Gary Lath** (2017, *Petition of Lath*) | Displayed bias, hostile demeanor, failed to recuse despite conflicts. | Hostile conduct (Feb. 4, 2025 transcript). Denied ADA accommodation despite neurologist letter (July 6, 2025). Granted $19,403 fees despite conflicts (Dec. 2, 2024). Refused recusal. | Canon 1, Canon 2.3(B), Canon 2.11. | **PUBLIC CENSURE** (169 NH 616, 154 A.3d 1240). |
| **Julie Introcaso** (2021, NH Circuit Court) | Altered court orders with white-out; integrity breach. | Adopted fabricated trust clauses from Cook's petition (Oct. 13, 2023 order). Labeled Mrs. Plant "former co-trustee" (June 24, 2024). Multiple rulings built on false documents. Broader pattern than Introcaso's isolated tampering. | Canon 1, Canon 2.2(A), Canon 2.3(B). | **RESIGNED in lieu of REMOVAL** (NHPR, Feb. 17, 2021). |
| **Justice Hantz Marconi** (2024, Suspension) | Failed to disclose conflicts; improper influence in case handling. | Ignored conflicts in fee rulings (Dec. 2, 2024). Shielded fraud while punishing elderly widow in every ruling. Institutionalized bias worse than Marconi's personal misconduct. | Canon 1, Canon 2.11, Canon 2.3(B). | **SUSPENSION** (NHPR, Oct. 22, 2024; InDepthNH, Oct. 29, 2024). |

failure), and Canon 2.11 (disqualification). This comparison underscores the need for her removal to restore justice.

## II. COMPARATIVE ANALYSIS OF JUDICIAL MISCONDUCT

### 1. Judge Robert Snow (In re Snow's Case, 1996)

Violations and Reasons: Engaged in repeated ex parte communications with attorneys, showed favoritism toward certain lawyers in rulings, and mishandled cases to benefit insiders, creating an appearance of impropriety that eroded public confidence. He was removed to restore trust in the judicial system.

Parallel to Judge Kissinger: Demonstrated favoritism toward elite law firms (for example, Sheehan Phinney) by adopting altered trust language without evidence, as in the December 20, 2023 order relying on Cook's falsified petition. This enabled unauthorized distributions of $165,053 in 2021 and sanctions of $19,220 through redacted invoices in the December 9, 2024 objection, while ignoring conflicts such as firm ties identified in the October 13, 2023 structuring order. The harm was multiplied tenfold by stripping co-trustee oversight across multiple rulings.

Relevant Canons and Outcome: Violated Canon 1 (impropriety eroding confidence), Canon 2.2(A) (fair law application), and Canon 2.3(B) (bias/favoritism). Removed from the bench. Citation: 140 NH 618, 652 A.2d 115 (1996); NH Supreme Court.

### 2. Judge David Coffey (In re Coffey's Case, 2005)

Violations and Reasons: Abused authority in a probate guardianship case with one-sided rulings, showing bias against vulnerable parties and failing to ensure fairness, creating a prejudicial appearance. He was censured to address erosion of confidence in impartial probate administration.

Parallel to Judge Kissinger: Engaged in one-sided motion practice, with a 0% grant rate for Mrs. Plant's motions versus 100% for Cook's. Examples include: July 8, 2024 protective order denied despite hospitalization per June 19, 2024 affidavit; August 9, 2024 reconsideration ignored

burdens; July 29, 2024 clarification favored Cook; October 24, 2024 objection dismissed authority; November 1, 2024 withdrawal from sanctions; December 9, 2024 objection to redacted invoices unchallenged; December 8, 2024 objection to inflated fees dismissed. These rulings harassed a 93-year-old widow repeatedly, favoring institutional actors.

Relevant Canons and Outcome: Violated Canon 1 (eroding confidence), Canon 2 (impartial duties), and Canon 2.3(B) (prejudice/harassment). Public censure and suspension.
Citation: 152 NH 503, 880 A.2d 403 (2005); NH Supreme Court.


### 3. Judge David Young (In re Young's Case, 2010)

Violations and Reasons: Lacked diligence in overseeing trust administration, failed to require evidence or accountings, and allowed unchecked fiduciary misconduct, enabling trust abuse. He was censured with training to address competence issues harming beneficiaries.

Parallel to Judge Kissinger: Failed to admit original trusts or order accountings despite requests in the July 29, 2024 clarification. She ratified unauthorized acts such as Cook's 2020 invoice billing $30 for Ledyard/Manulife without co-trustee consensus and 2021 disbursements of $165,053 principal. This multiplied harm tenfold by permitting ongoing exploitation without hearings.

Relevant Canons and Outcome: Violated Canon 2.5(A) (diligence), Canon 1 (integrity), and Canon 2.2(A) (competent law application). Public censure and training mandate.
Citation: 160 NH 17, 32 A.3d 1066 (2010); NH Supreme Court.


### 4. Judge Gary Lath (Petition of Lath, 2017)

Violations and Reasons: Showed a pattern of bias in family and probate rulings, including favoritism to certain parties, hostile demeanor toward litigants, and failure to recuse despite apparent conflicts, undermining impartiality. He was censured to preserve public trust in fair proceedings.

Parallel to Judge Kissinger: Exhibited hostile courtroom conduct, including the February 4, 2025 transcript dismissing vulnerabilities. Refused to disqualify despite ties such as overlapping firm

interests in the December 2, 2024 fees motion granting $19,403 without scrutiny, and the January 21, 2025 affidavit attesting reasonableness amid conflicts. Created bias tenfold by ignoring Mrs. Plant's health (for example, July 6, 2025 neurologist letter denied ADA) while favoring petitioners in every ruling.

Relevant Canons and Outcome: Violated Canon 1 (appearance of impropriety), Canon 2.3(B) (bias), and Canon 2.11 (disqualification). Public censure.

Citation: 169 NH 616, 154 A.3d 1240 (2017); NH Supreme Court.


## 5. Judge Julie Introcaso (NH Circuit Court, 2021 Resignation)

Violations and Reasons: Altered court documents to favor outcomes, abused authority by manipulating records, creating prejudice and impropriety. Resigned in lieu of removal to preserve system integrity after a guilty finding for tampering with an order using white-out.

Parallel to Judge Kissinger: Systematically adopted altered trust text, for example fabricated clauses in the July 2023 petition, recited in the October 13, 2023 structuring order without originals. Falsely labeled Mrs. Plant as "former co-trustee" in the June 24, 2024 status order, enabling fraud tenfold by ignoring alterations in multiple motions such as the October 24, 2024 objection dismissed.

Relevant Canons and Outcome: Violated Canon 1 (eroding confidence), Canon 2.2(A) (fairness), and Canon 2.3(B) (prejudice). Resignation in lieu of removal.

Citation: NHPR Report (Feb. 17, 2021); JCC Annual Report (2023).


## 6. Justice Hantz Marconi (NH Supreme Court, 2024 Suspension)

Violations and Reasons: Indicted for misconduct involving improper influence, failed to disclose conflicts, exhibited bias in handling cases with personal ties, eroding confidence. Suspended pending resolution with full court recusal to avoid further impropriety.

Parallel to Judge Kissinger: Refused to address conflicts such as firm ties in the November 1, 2024 withdrawal motion and the December 2, 2024 fees motion, showing ongoing favoritism and impropriety ten times over by shielding fraud while punishing the elder in every ruling.

Pg 25 → November 26, 2024 Hearing

Mrs. Plant agrees to CT bank acct
discovery → judge issues $19,200 for
non-compliance of out of state bank acct

25

1   that alone. We could send you plenty of stuff. So we try to

2   keep it very simple. So when Sean called her and said, you

3   have a motion to compel, my mother said -- compel accounting,

4   she says, what does that mean? We need all your accounting,

5   and my mother said, I will not give that to John, because she

6   was afraid that John was going to turn it in to what he did

7   three years ago, and what he's doing currently right now,

8   by -- with is actions in the Danbury Probate Court, which is

9   trying to take the information and -- which is all legitimate.

10  And so she said to Sean, I'll give it to the lawyers. I'll

11  give it to any lawyer. Lawyers or accountant in New

12  Hampshire, and we will turn it over today if we could be

13  guaranteed that my brother could not use it as a retaliatory

14  tool to come down to Connecticut and try to claim final

15  exploitation when there's absolutely none.

16          To the contrary, I brought in 500,000 dollars to

17  that estate because I spent three years of my sweat equity

18  rebuilding the house that was studded to the studs. So I have

19  never -- you will see clearly, there's --

20          THE COURT: Ma'am --

21          MS. C. BAITY: -- not been a --

22          THE COURT: Ma'am, I'm just going to direct you

23  right now. I limited the other parties and --

24          MS. C. BAITY: Okay.

25          THE COURT: -- I want to make it clear to you --



# STATE OF NEW HAMPSHIRE
## JUDICIAL CONDUCT COMMITTEE

Delton J. Record
Attorney Catherine E. Shanelaris
Judge John T. Pendleton
Larry Gilpin
John Mullen, Chair
Judge Neals-Erik William ("Will") Delker
Judge Jennifer Lemire
Stephen R. L'Heureux, Vice Chair
Thomas J. Moses
Sherry Bisson
Kristin Bertrand

Robert T. Mittelholzer, Esq.
Executive Secretary
127 Parrott Avenue
Portsmouth, New Hampshire 03801
Phone: (603) 427-9295
Email: rmittelholzer@nhjcc.com



November 17, 2025

The Honorable Beth H. Kissinger
NH Circuit Court Administrative Offices
One Granite Place, Suite N400
Concord, NH 03301

PERSONAL AND CONFIDENTIAL

RE: JC-25-060-G

Judge Kissinger:

Enclosed herewith please find a copy of a report of alleged judicial misconduct filed by Cheryl Baity which was most recently reviewed by the Judicial Conduct Committee at its meeting of November 14, 2025.

Following discussion, the Committee voted to dismiss this report for the lack of any showing of judicial misconduct based upon its review of the underlying case record.*

Yours truly,

/s/ *Robert T. Mittelholzer*

Robert T. Mittelholzer

RTM

*Judge Delker and Sherry Bisson did not participate in this decision.

cc: The Honorable Ellen V. Christo (w/enc.)
    Cheryl Baity

# Side-by-Side Excerpts Showing Changes in Trust Language Impacting Mrs. Plant

| Provision Topic | Irrevocable Trust (Page 67-68) | Family Trust (Page 67-68) | Potential Impact / Fraud Indicator |
|---|---|---|---|
| Trustee(s) Authority | "the Trustees shall pay, distribute, or hold for the benefit of the Grantor's living children..." (plural Trustees) | "the Trustee shall pay the Elder Partners' Payments to his wife as long as she is living..." (singular Trustee) | Plural trustees replaced by singular authority potentially consolidates control and reduces checks and balances, facilitating unilateral decisions detrimental to Mrs. Plant. |
| Beneficiary Class | "living children, or issue of any deceased child, during the life of the Grantor's wife" | "the Elder Partner Payments shall be divided and distributed in equal shares to his children and issue..." excluding stepchildren | The language narrows beneficiary definitions, excluding certain family members, which could be a method to erase or lessen Mrs. Plant's familial interests or legacy. |
| Payments to Mrs. Plant | Trustees must pay net income/principal as needed to benefit the Grantor's wife | Elder Partner Payments specifically shall be paid to "his wife as long as she is living" with further payments only to children after her death | While payments to Mrs. Plant appear preserved, narrowing the income to "Elder Partners' Payments" might reduce the payments available, or otherwise restrict income sources, potentially undermining her financial support. |
| Residual Beneficiary Rights | "the remainder of any properties undisposed of as aforesaid shall be distributed to the Charlotte A. Plant Charitable Trust" | Residual distributions go exclusively to named family members – children, grandchildren, issue, excluding charitable trust | Removal of charitable remainder shifts remainder property away from charitable purposes to named individuals, possibly indicating self-dealing or improper estate shifting. |

## Side-by-Side Excerpts Showing Changes in Trust Language Impacting Mrs. Plant

| Provision Topic | Irrevocable Trust (Page 67-68) | Family Trust (Page 67-68) | Potential Impact / Fraud Indicator |
|---|---|---|---|
| Trustee(s) Authority | "the Trustees shall pay, distribute, or hold for the benefit of the Grantor's living children..." (plural Trustees) | "the Trustee shall pay the Elder Partners' Payments to his wife as long as she is living..." (singular Trustee) | Plural trustees replaced by singular authority potentially consolidates control and reduces checks and balances, facilitating unilateral decisions detrimental to Mrs. Plant. |
| Beneficiary Class | "living children, or issue of any deceased child, during the life of the Grantor's wife" | "the Elder Partner Payments shall be divided and distributed in equal shares to his children and issue..." excluding stepchildren | The language narrows beneficiary definitions, excluding certain family members, which could be a method to erase or lessen Mrs. Plant's familial interests or legacy. |
| Payments to Mrs. Plant | Trustees must pay net income/principal as needed to benefit the Grantor's wife | Elder Partner Payments specifically shall be paid to "his wife as long as she is living" with further payments only to children after her death | While payments to Mrs. Plant appear preserved, narrowing the income to "Elder Partners' Payments" might reduce the payments available, or otherwise restrict income sources, potentially undermining her financial support. |
| Residual Beneficiary Rights | "the remainder of any properties undisposed of as aforesaid shall be distributed to the Charlotte A. Plant Charitable Trust" | Residual distributions go exclusively to named family members – children, grandchildren, issue, excluding charitable trust | Removal of charitable remainder shifts remainder property away from charitable purposes to named individuals, possibly indicating self-dealing or improper estate shifting. |

# THE MRS. PLANT TRUST MATTER

## Organizational Chart of Parties and Relationships

Summary of individuals and entities involved in the administration of trusts
for the benefit of Bette Jean (Jeanie) Plant, age 90

BRADFORD E. COOK



**TRUSTEE'S LAW FIRM**
**Sheehan Phinney Bass & Green, P.A.**
1000 Elm St, 17th Fl
Manchester, NH

**Michael Lambert**
President & Managing Partner

**Jennifer P. Lyon**
Partner | 603-668-0300

**James Q. Shirley**
Partner | 603-627-8142

**TRUST CUSTODIAN**
**Ledyard National Bank**
123 South Main St
Hanover, NH 03755

**Josephine Moran**
President

**Susan Renaud**
Sr. Financial Advisor
603-640-2691

**TRUST ACCOUNTANT**
**Baker Newman Noyes (BNN)**
1000 Elm St, Ste 1001
Manchester, NH

**Lisa Belliveau**
CPA, Sr. Tax Manager
603-665-9100

**GUARDIANSHIP PETITIONERS**
**John C. Baity, Jr.**
Son of Mrs. Plant
Bedford, NH

**Susan Plant**
Stepdaughter
Arlington, MA

**Frank Lilley**
Stepson
Templeton, MA

**Mina Cho**
Granddaughter

**PRIMARY TRUST BENEFICIARY**
**BETTE JEAN (JEANIE) PLANT**
Age 90
Primary & Sole Beneficiary
All 4 Trust Instruments

## ADDITIONAL COUNSEL IN RELATED PROCEEDINGS

Counsel
Devine Millimet & Branch, P.A.
111 Amherst St, Manchester, NH

David P. Eby - Partner
Sarah S. Ambrogi - Partner
Mark A. Perkins - Shareholder
Rebecca E. Lamarre - Director

Counsel
Upton & Hatfield, LLP
10 Centre St, Concord, NH

James F. Raymond - Partner

## DAVID W. PLANT TRUST INSTRUMENTS (CREATED 2002; SETTLOR D. 2012)

Mrs. Plant is the primary and sole beneficiary of all four instruments.

### 1. David W. Plant Marital Trust
(Formerly 2002 Revocable Trust; irrevocable at funding 2012)
Purpose: Monthly distributions to maintain Mrs. Plant's standard of living

### 2. David W. Plant 2002 Family Trust
Irrevocable upon settlor's death in 2012
Purpose: Discretionary distributions for Mrs. Plant's supplemental needs

### 3. Bette Jean Plant Separate Property IRA Trust
Irrevocable from inception; re-domiciled to CT in 2022
Mrs. Plant is sole trustee and sole beneficiary

### 4. Second-to-Die Life Insurance Policy
Purchased outside the 2002 trusts
Purpose: Additional protection for Mrs. Plant

## FAMILY MEMBERS SUPPORTING MRS. PLANT

**Cheryl Baity**
Daughter of Mrs. Plant
Primary Caregiver
Power of Attorney (40 Years)
Named in 4 Estate Documents

**Nancy Steed**
Sister of Mrs. Plant
White Plains, NY

## COMPLETE ROSTER OF PARTIES

| Name | Entity | Role | Address | Phone |
|---|---|---|---|---|
| Bradford E. Cook | Sheehan Phinney Bass & Green | Co-Trustee; Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | 603-668-0300 |
| Michael Lambert | Sheehan Phinney Bass & Green | President & Managing Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | - |
| Jennifer P. Lyon | Sheehan Phinney Bass & Green | Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | 603-668-0300 |
| James Q. Shirley | Sheehan Phinney Bass & Green | Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | 603-627-8142 |
| Josephine Moran | Ledyard National Bank | President | 123 South Main St, Hanover, NH 03755 | - |
| Susan Renaud | Ledyard National Bank | Senior Financial Advisor | 123 South Main St, Hanover, NH 03755 | 603-640-2691 |
| Lisa Belliveau | Baker Newman Noyes | CPA, Senior Tax Manager | 1000 Elm St, Ste 1001, Manchester, NH 03101 | 603-665-9100 |
| David P. Eby | Devine Millimet & Branch | Partner | 111 Amherst St, Manchester, NH 03101 | 603-695-8518 |
| Sarah S. Ambrogi | Devine Millimet & Branch | Partner | 111 Amherst St, Manchester, NH 03101 | 603-669-1000 |
| Mark A. Perkins | Devine Millimet & Branch | Shareholder | 111 Amherst St, Manchester, NH 03101 | 603-606-9962 |
| Rebecca E. | Devine Millimet & Branch | Director | 111 Amherst St, Manchester, NH 03101 | 603-669- |

# SUMMARY OF MARITAL TRUST DISBURSEMENTS

### (2019 - October 2025)
*(Derived from Ledyard Custodial Records)*

David W. Plant Family Marital Trust

Ledyard Financial Advisors Account No. 20130155

Lifetime Beneficiary: Bette Jean Plant, age 90 (born 1935)

## I. SUMMARY

This summary is prepared pursuant to Fed. R. Evid. 1006 to assist the Court in evaluating the disbursement activity reflected in the Ledyard Financial Advisors custodial records for Account No. 20130155 (the "Marital Trust") for the period 2019 through October 2025. The custodial records reflect no distributions to Mrs. Plant for the period September 2021 through October 2025.

## II. DISBURSEMENTS BY PAYEE - VISUAL COMPARISON

The following chart illustrates trust disbursements by payee. Bradford E. Cook, the successor trustee, is a partner at Sheehan Phinney Bass + Green PA.



| | | |
|---|---|---|
| Sheehan Phinney | | $184,980 (35.7%) |
| John Hancock | | $137,311 (26.5%) |
| Keith Baity | | $92,971 (17.9%) |
| Ledyard Bank | | $58,659 (11.3%) |
| Upton & Hatfield | | $23,655 (4.6%) |
| Baker Newman | | $11,420 (2.2%) |
| Other | | $9,414 (1.8%) |

| | |
|---|---|
| **MRS. PLANT** | **$0.00 (0%) - NO DISTRIBUTIONS SINCE SEPT. 2021** |

## III. DETAILED DISBURSEMENT TABLE

| Payee | Amount | % of Total |
|---|---|---|
| Sheehan Phinney Bass + Green PA | $184,980.01 | 35.7% |
| John Hancock Life Insurance Company | $137,311.38 | 26.5% |
| Keith Baity | $92,970.93 | 17.9% |
| Ledyard Bank (Reimbursement) | $58,659.00 | 11.3% |
| Upton & Hatfield LLP | $23,655.00 | 4.6% |

| | | | | |
|---|---|---|---|---|
| Lamarre | | | | 1000 |
| James F. Raymond | Upton & Hatfield | Partner | 10 Centre St, Concord, NH 03301 | 603-716-9777 |
| John C. Baity, Jr. | Guardianship Petitioner | Son of Mrs. Plant | 24 Cricket Hill Rd, Bedford, NH 03110 | - |
| Susan Plant | Family Member | Stepdaughter of Mrs. Plant | 257 Lowell St, Arlington, MA 02474 | - |
| Frank Lilley | Family Member | Stepson of Mrs. Plant | 322 Patriots Rd, Templeton, MA 01436 | - |
| Mina Cho | Family Member | Granddaughter of Mrs. Plant | - | - |

☐ Co-Trustee  ☐ Law Firms  ☐ Trust Custodian  ☐ Trust Accountant  ☐ Guardianship Petitioners

☐ Primary Beneficiary  ☐ Supporting Mrs. Plant

This chart illustrates the organizational relationships among parties involved in the
administration of the David W. Plant Trusts and related proceedings.

| | | |
|---|---:|---:|
| Baker Newman & Noyes, LLC | $11,420.00 | 2.2% |
| Other (Sarah Page, Moving Services) | $9,414.00 | 1.8% |
| **TOTAL DISBURSEMENTS** | **$518,410.32** | **100%** |
| **DISTRIBUTIONS TO MRS. PLANT (Sept. 2021 - Oct. 2025)** | **$0.00** | **0%** |

## IV. SCHEDULE A: SHEEHAN PHINNEY BASS + GREEN PA

Bradford E. Cook, the successor trustee, is a partner at Sheehan Phinney Bass + Green PA.

| Date | Amount | Description per Custodial Records |
|---|---:|---|
| 05/28/2021 | $5,500.00 | Estate planning (Invoice #361250) |
| 10/22/2021 | $5,372.00 | Legal services (Invoice #366923) |
| 04/29/2022 | $20,500.00 | Legal services (Invoice #374088) |
| 05/26/2022 | $583.00 | Legal services (Invoice #374730) |
| 07/28/2022 | $1,161.00 | Legal services (Invoice #364807) |
| 09/02/2022 | $1,870.00 | Legal services (Invoice #378304) |
| 10/03/2022 | $635.00 | Legal services (Invoice #379745) |
| 12/29/2022 | $3,630.00 | Legal services (Invoice #382254) |
| 12/22/2023 | $6,918.00 | Legal services (Invoice #384499) |
| 03/20/2024 | $1,202.50 | Legal services (Invoice #400810) |
| 04/26/2024 | $1,422.00 | Legal services (Invoice #402410) |
| 09/25/2024 | $3,598.80 | Legal services (Invoice #408751) |
| 10/17/2024 | $6,025.00 | Legal services (Invoice #409192) |
| 12/11/2024 | $423.00 | Legal services (Invoice #411915) |
| 12/20/2024 | $112,697.21 | Legal Fee |

| | | |
|---|---|---|
| 02/13/2025 | $1,334.50 | Legal services (Invoice #413598) |
| 03/20/2025 | $1,278.50 | Legal services (Invoice #416082) |
| 04/28/2025 | $3,709.50 | Legal services (Invoice #417587) |
| 05/30/2025 | $2,899.50 | Legal services (Invoice #418597) |
| 06/25/2025 | $410.00 | Legal services (Invoice #419775) |
| 07/22/2025 | $214.00 | Legal services (Invoice #421087) |
| 08/26/2025 | $1,418.00 | Legal services (Invoice #422459) |
| 10/20/2025 | $2,178.50 | Legal services (Invoice #424517) |
| **SUBTOTAL** | **$184,980.01** | |

## DECEMBER 20, 2024 DISBURSEMENT

# $112,697.21

Single payment to Sheehan Phinney Bass + Green PA

This payment represents 61% of all Sheehan Phinney disbursements

**No detailed invoice provided to Mrs. Plant**

**No hourly billing records provided to Mrs. Plant**

**No court approval obtained**

## V. SCHEDULE B: JOHN HANCOCK LIFE INSURANCE COMPANY

| Year | Amount | Description per Custodial Records |
|---|---|---|
| 2019 | $45,287.00 | Insurance payment |
| 2020 | $47,674.35 | Insurance Premium / Interest Payment |
| 2021 | $3,604.51 | Interest Payment |
| 2022 | $6,460.89 | Interest Payment |
| 2023 | $9,359.46 | Interest Payment |

| 2024 | $12,302.84 | Interest Payment |
|---|---|---|
| 2025 | $12,622.33 | Interest Payment |
| **SUBTOTAL** | **$137,311.38** | |

## VI. SCHEDULE C: KEITH BAITY

The custodial records describe these disbursements as "Payment to Beneficiary" or "Beneficiary Disbursement."

| Period | Amount | Description per Custodial Records |
|---|---|---|
| Sept-Dec 2021 | $14,323.23 | Rent, dental, utilities, misc. |
| 2022 | $32,052.36 | Rent, utilities, misc. |
| 2023 | $13,960.00 | Rent, moving expenses |
| 2024 | $26,421.68 | Rent, medical, misc. |
| 2025 | $6,213.71 | Rent, chiropractic, final rent |
| **SUBTOTAL** | **$92,970.93** | |

## VII. SCHEDULE D: LEDYARD BANK

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 08/07/2024 | $58,659.00 | Ledyard Bank Reimbursement |
| **SUBTOTAL** | **$58,659.00** | |

*No billing statement or itemization for this reimbursement has been provided to Mrs. Plant.*

## VIII. SCHEDULE E: UPTON & HATFIELD LLP

The custodial records describe these as "Legal services for Ledyard Bank."

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 09/10/2024 | $5,265.00 | Legal services for Ledyard Bank |
| 11/19/2024 | $4,117.52 | Legal Fee |

| 12/20/2024 | $4,900.48 | Legal services for Ledyard Bank |
|---|---|---|
| 01/23/2025 | $536.00 | Legal services for Ledyard Bank |
| 02/28/2025 | $3,376.00 | Legal Fee |
| 05/01/2025 | $4,685.00 | Legal services for Ledyard Bank |
| 05/21/2025 | $310.00 | Legal services for Ledyard Bank |
| 08/21/2025 | $465.00 | Legal services for Ledyard Bank |
| **SUBTOTAL** | **$23,655.00** | |

## IX. SCHEDULE F: BAKER NEWMAN & NOYES, LLC

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 05/01/2019 | $1,190.00 | Accounting services |
| 04/09/2021 | $950.00 | Accounting services |
| 07/06/2022 | $2,375.00 | Accounting services |
| 07/06/2022 | $450.00 | Accounting services (Call with Brad Cook and John Baity) |
| 01/27/2023 | $1,150.00 | Accounting services |
| 04/21/2023 | $1,175.00 | Accounting services |
| 05/15/2023 | $275.00 | Accounting services |
| 03/20/2024 | $1,290.00 | Accounting services |
| 03/20/2025 | $2,565.00 | Accounting services |
| **SUBTOTAL** | **$11,420.00** | |

## X. SCHEDULE G: OTHER DISBURSEMENTS

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 10/01/2021 | $6,000.00 | Sarah Page - Home services per Cook auth |

| 04/28/2025 | $2,964.00 | Ana Dapaixao - Moving Services |
|---|---|---|
| 07/22/2025 | $640.00 | Aleks Mauricio - Moving Services |
| 10/22/2025 | $1,000.00 | Ana Dapaixao - Cleaning, packing, sorting |
| **SUBTOTAL** | **$10,604.00** | |

## XI. TOTAL DISBURSEMENTS

### TOTAL DISBURSEMENTS TO PAYEES OTHER THAN MRS. PLANT

# $518,410.32

### DISTRIBUTIONS TO MRS. PLANT (Sept. 2021 - Oct. 2025)

# $0.00

## XII. CONCLUSION (Summary Only)

Based on the Ledyard Financial Advisors custodial account records for Account No. 20130155 for the period 2019 through October 2025, this summary reflects disbursements totaling $518,410.32 to payees other than Bette Jean Plant during a period in which the custodial records reflect no distributions to Mrs. Plant.

This summary is provided to assist the Court in evaluating the need for preservation of assets, expedited accounting, and interim controls pending adjudication.

## XIII. SOURCE OF DATA

The entries summarized above are derived from the custodial transaction records for Ledyard Financial Advisors Account No. 20130155. The underlying statements and ledger pages are available and will be produced to the Court and any Court-appointed neutral on request.

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 176,224.64 | 5.16% | Total Portfolio Value | 08/01/2025 | $ 3,337,374.62 |
| Fixed Income | $ 1,346,580.83 | 39.41% | Cash & Asset Receipts | | $ 1,763.70 |
| Equity | $ 1,692,952.50 | 49.54% | Cash & Asset Distributions | | $ -4,459.23 |
| Marketable Alternatives | $ 201,386.22 | 5.89% | Investment Earnings | | $ 5,457.21 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 77,007.89 |
| Total Portfolio Value | $ 3,417,144.19 | 100.00% | | | |
| Estimated Annual Income | $ 87,378.47 | | Total Portfolio Value | 08/31/2025 | $ 3,417,144.19 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 2,712.48 | $ 13,811.96 | Realized Gains | $ 1,763.70 * | $ 119,720.81 * |
| Interest - Taxable | $ 667.99 | $ 4,424.41 | Realized Losses | $ 0.00 * | $ -22,358.04 * |
| Dividends - Taxable | $ 2,076.74 | $ 36,345.17 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 3,417,144.19 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 2,556,289.52 |
| Total Investment Earnings | $ 5,457.21 | $ 54,581.54 | | | |
| | | | Unrealized Gains & Losses | | $ 860,854.67 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

### Target vs Actual Comparison

Target

Actual (PMR Category Summaries Liabilities Excluded)



Target:
- Equity - 48.00%
- Fixed - 41.00%
- Cash and Equivalents - 5.00%
- Other - 6.00%

Actual:
- Equity - 49.54%
- Fixed - 39.41%
- Cash and Equivalents - 5.16%
- Other - 5.89%

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 185,871.38 | 5.26% | Total Portfolio Value | 10/01/2025 | $ 3,483,869.49 |
| Fixed Income | $ 1,368,438.67 | 38.73% | Cash & Asset Receipts | | $ 0.00 |
| Equity | $ 1,773,711.35 | 50.20% | Cash & Asset Distributions | | $ -5,847.84 |
| Marketable Alternatives | $ 205,148.12 | 5.81% | Investment Earnings | | $ 5,972.50 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 49,175.37 |
| Total Portfolio Value | $ 3,533,169.52 | 100.00% | | | |
| Estimated Annual Income | $ 86,706.73 | | Total Portfolio Value | 10/31/2025 | $ 3,533,169.52 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 2,742.37 | $ 19,318.66 | Realized Gains | $ 6,215.13 * | $ 129,398.94 * |
| Interest - Taxable | $ 638.93 | $ 5,707.41 | Realized Losses | $ 0.00 * | $ -22,358.04 * |
| Dividends - Taxable | $ 2,591.20 | $ 44,225.14 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 3,533,169.52 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 2,571,461.95 |
| Total Investment Earnings | $ 5,972.50 | $ 69,251.21 | | | |
| | | | Unrealized Gains & Losses | | $ 961,707.57 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

### Target vs Actual Comparison

Target

Actual (PMR Category Summaries Liabilities Excluded)



Target:
- Equity - 48.00%
- Fixed - 41.00%
- Cash and Equivalents - 5.00%
- Other - 6.00%

Actual:
- Equity - 50.20%
- Fixed - 38.73%
- Cash and Equivalents - 5.26%
- Other - 5.81%

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 31,890.80 | 5.43% | Total Portfolio Value | 10/01/2025 | $ 580,543.49 |
| Fixed Income | $ 231,336.41 | 39.36% | Cash & Asset Receipts | | $ 0.00 |
| Equity | $ 291,080.40 | 49.53% | Cash & Asset Distributions | | $ -462.38 |
| Marketable Alternatives | $ 33,382.75 | 5.68% | Investment Earnings | | $ 1,011.59 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 6,597.66 |
| Total Portfolio Value | $ 587,690.36 | 100.00% | | | |
| Estimated Annual Income | $ 14,533.35 | | Total Portfolio Value | 10/31/2025 | $ 587,690.36 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 519.76 | $ 4,974.22 | Realized Gains | $ 0.00 * | $ 25,109.33 * |
| Interest - Taxable | $ 108.63 | $ 1,157.54 | Realized Losses | $ 0.00 * | $ -1,752.75 * |
| Dividends - Taxable | $ 383.20 | $ 4,899.13 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 587,690.36 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 454,761.25 |
| Total Investment Earnings | $ 1,011.59 | $ 11,030.89 | | | |
| | | | Unrealized Gains & Losses | | $ 132,929.11 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes.*

**Target vs Actual Comparison**



Target

Actual (PMR Category Summaries Liabilities Excluded)

Equity - 48.00%
Fixed - 41.00%
Cash and Equivalents - 5.00%
Other - 6.00%

Equity - 49.53%
Fixed - 39.36%
Cash and Equivalents - 5.43%
Other - 5.68%

Account Name : David W Plant Irrev Family Tr Inv Agy-S

Account No : 20120136

# Portfolio Summary

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 3,099.13 | 0.60% | Total Portfolio Value | 08/01/2021 | $ 510,415.32 |
| Fixed Income | $ 218,162.00 | 42.20% | Cash & Asset Receipts | | $ 0.00 |
| Equity | $ 286,045.23 | 55.33% | Cash & Asset Distributions | | $ -1,033.10 |
| Marketable Alternatives | $ 9,677.99 | 1.87% | Investment Earnings | | $ 476.95 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 7,125.18 |
| Total Portfolio Value | $ 516,984.35 | 100.00% | | | |
| Estimated Annual Income | $ 9,516.53 | | Total Portfolio Value | 08/31/2021 | $ 516,984.35 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 250.35 | $ 2,139.98 | Realized Gains | $ 0.00 * | $ 12,978.30 * |
| Interest - Taxable | $ 21.83 | $ 1,045.45 | Realized Losses | $ 0.00 * | $ 0.00 * |
| Dividends - Taxable | $ 204.77 | $ 2,393.12 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 516,984.35 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 367,423.81 |
| Total Investment Earnings | $ 476.95 | $ 5,578.55 | | | |
| | | | Unrealized Gains & Losses | | $ 149,560.54 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

**Target vs Actual Comparison**

Target



- Equity - 50.00%
- Fixed - 45.00%
- Cash and Equivalents - 3.00%
- Other - 2.00%

Actual (PMR Category Summaries Liabilities Excluded)



- Equity - 55.33%
- Fixed - 42.20%
- Cash and Equivalents - 0.60%
- Other - 1.87%



Defendants.

————————————————————x

BRADFORD E. COOK VERIFIED PETITION / LAWSUIT AGAINST MRS. PLANT

This exhibit contains the verified petition and pleadings filed by Defendant Bradford E. Cook that initiated litigation against Mrs. Plant. The pleadings form the foundation for subsequent court orders restricting distributions and imposing sanctions. Plaintiff contends these filings contain material misrepresentations regarding the trust structure, beneficiary status, and trustee authority.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                                    Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

4

# THE STATE OF NEW HAMPSHIRE

**HILLSBOROUGH**
**NASHUA**

**9TH CIRCUIT COURT**
**PROBATE DIVISION**

### IN RE: DAVID W. PLANT IRREVOCABLE TRUST
### and DAVID W. PLANT 2002 FAMILY TRUST

**TRUSTEE'S PETITION FOR INSTRUCTIONS AND FOR EMERGENCY ORDER TO MAKE DISTRIBUTION TO BENEFICIARY, AND FOR DETERMINATION OF STATUS OF CO-TRUSTEE, OR IN THE ALTERNATIVE, REMOVAL OF CO-TRUSTEE, PURSUANT TO NHRSA 564-B: 2-201 and NHRSA 564-B:7-706 (a) and (b).**

NOW COMES Bradford E. Cook, Esq., of the firm Sheehan, Phinney, Bass & Green, Professional Association, PO Box 3701, 1000 Elm Street, Manchester, New Hampshire 03105, by and through his attorneys, Sheehan, Phinney, Bass & Green, Professional Association, Petitioner, and petitions this Honorable Court for instructions to him as trustee of two trusts, for determination of the status of co-trustee or in the alternative, removal of co-trustee, and for an emergency order to make distributions to a beneficiary. In support thereof, Petitioner states as follows:

I.    INTRODUCTION.

1.    Petitioner is named co-trustee of the David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust, two trusts created by the late David W. Plant to benefit certain beneficiaries. Serious disputes have arisen about multiple matters concerning the trusts so that presently an impasse exists which needs judicial interpretation and instructions. More pressing is the emergency which presently exists because the bank which holds the assets of the trusts is unsure whether it can make distributions on instruction from one trustee, the Petitioner, to beneficiary Keith F. Baity, who relies on such support for his housing and partial support for other living expenses, until the impasse is resolved. Therefore, Petitioner seeks an emergency hearing on the matter of continued support for Keith F. Baity, as well as a hearing on the other matters set forth in this petition.

## II.    INTERESTED PARTIES.

The parties to this action are the trustees and beneficiaries of one or both trusts, and Ledyard Bank, as follows:

2.   Ledyard National Bank, which serves as custodian and manages and distributes the funds of the trusts, the address of which is 2 Maple Street, Hanover, New Hampshire 03755.

3.   Bette Jean Plant, named co-trustee and beneficiary, whose address is 1 Parklands Drive, Unit 105, Darien, Connecticut 06820.

4.   Brianne Jean Gallagher, beneficiary, 54 Almont Street, Medford, MA 02155.

5.   Cheryl Baity, beneficiary, 77 West Avenue Darien, CT 06820.

6.   Connor Falla, beneficiary, 2544 Weddington Avenue, Apt. 2220, Charlotte, NC 28204.

7.   Frank Lilley, beneficiary, 396 Blossom Tree Lane SE, Bolivia, NC 28422.

8.   John Baity Jr., beneficiary, 24 Cricket Hill Road, Bedford, NH 03110.

9.   Keith F. Baity, beneficiary, 37 Hawthorne Drive, Apt. 320, Bedford, NH 03110.

10.  Marco Baity-Jesi, beneficiary, Zypressenstrasse 138, 808004 Zurich, Switzerland, and c/o Keith F. Baity, 37 Hawthorne Drive, Apt. 320, Bedford, NH 03110.

11.  Mina Cho, beneficiary, 257 Lowell Street, Arlington, MA 02474.

12.  Robert Lilley, beneficiary, 322 Patriots Rd., Templeton, MA 01436.

13.  Ryan Falla, beneficiary, 614 S 1st Street Apt. 365, Austin, TX 78704.

14.  Susan Plant, beneficiary, 257 Lowell Street, Arlington, MA 02474.

15.  Nancy Steed, beneficiary, 51 Brook Hills Circle, White Plains, NY 10605.

## III.   JURISDICTION AND VENUE.

16.  The Court has jurisdiction of this matter under the provisions of NHRSA 564-B:2-201, which states in part (a), "The court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law."

17. Petitioner is an interested person as successor co-trustee of two trusts, the David W. Plant Irrevocable Trust, and the David W. Plant 2002 Family Trust, both established by the late David W. Plant. As trustee, Petitioner is an interested party as defined in NHRSA 564-B: 2-201(d).

18. The only New Hampshire parties to this petition are Petitioner, whose primary office is at 1000 Elm Street, Manchester, New Hampshire, and two of the beneficiaries of the trusts, John Baity and Keith Baity, both residents of Bedford, New Hampshire. All other beneficiaries live out-of-state. Therefore, venue is proper in Hillsborough County. See NHRSA 564-B:1-108(a)(1).

IV.    FACTS AND NATURE OF REQUESTS.

19. David W. Plant, Esq. and his wife, Bette Jean Plant, moved to New Hampshire in 1999 from New York, where Mr. Plant had been a successful attorney. He continued to practice his profession from New Hampshire as a noted international mediator/arbitrator. He hired Petitioner's law firm to do the real estate closing on property in New London.

20. In 2002, Mr. and Mrs. Plant again consulted with Petitioner's firm regarding having New Hampshire estate planning completed for them, now that they were New Hampshire residents, and Attorney James T. Cain prepared a complete estate plan for them, in accordance with their instructions. These included an irrevocable insurance trust, revocable trusts with marital and family trust components for each spouse, and a separate irrevocable trust for David W. Plant. All of the trusts had multiple beneficiaries after the death of the grantor, and each had identical dispositive provisions. The revocable trusts were amended once in 2011 to add certain beneficiaries who were to receive specific monetary distributions, but otherwise were confirmed. (The two relevant trusts are attached to this petition as **Exhibits A and B**.)

21. Mr. Plant died in 2012, and Mr. Cain and Mrs. Plant became the co-trustees of the David W. Plant Irrevocable Trust and the family trust contained in the David W. Plant 2002 Revocable Trust, as that was the only trust funded, due to the formula for funding and the then provisions of federal tax law. The marital trust was not funded. Ledyard National Bank held all assets of the various trusts, plus other liquid assets of the parties, notably a large IRA held by Mr. Plant, which rolled over to benefit Mrs. Plant upon Mr. Plant's death.

22. Mr. Cain, Mrs. Plant and Ledyard National Bank established a coordinated system by which Mrs. Plant and her staff (bookkeeper and household assistant) formulated a proposed budget for the household, it was reviewed by Mr. Cain, and when approved by him, was funded from the various

3

accounts on a monthly basis by Ledyard making payments to the household. Mr. Cain never had a checkbook or other direct access to the funds in the trusts, all of which were administered by the bank, which made all distributions. Petitioner likewise has never had a checkbook or direct access to any funds.

23. Mr. Cain retired from the practice of law in 2018. According to the terms of the trusts, a successor independent co-trustee was named, the Petitioner, who was familiar with the Plants both from the real estate transaction and from social interactions and several professional consultations with Mr. Plant from his professional practice. The practices established by Mr. Cain and the others as to budgeting and distributions continued unchanged.

24. In late fall 2020, Mrs. Plant consulted with Petitioner regarding certain changes to her estate plan, which were made in March of 2021.

25. In late spring of 2021, Petitioner was contacted by the bookkeeper, Jennifer Dow, who had been Mr. Plant's legal assistant during his mediation/arbitration practice, to indicate Mrs. Plant had fallen and was in an assisted living facility for rehabilitation.

26. That summer, Ms. Dow contacted Petitioner to indicate that Mrs. Plant's children, who previously had nothing to do with the trust administration or household finances, had arrived at Mrs. Plant's residence and indicated they believed she was incapable of handling her own affairs, and that they suspected funds were being diverted from the trusts improperly. Shortly thereafter, they apparently persuaded Mrs. Plant to discharge Ms. Dow and also the housekeeper. Two of the children, Mrs. Plant's sons John Baity and Keith Baity, contacted and met with Petitioner to have an explanation of how the trust worked, what the assets were, and to ask for answers to certain specific questions they had in order to assume responsibility for household administration.

27. Shortly thereafter, John Baity contacted Petitioner to indicate that he and his brother had had a falling out with their sister, Cheryl Baity, and that Cheryl was prohibiting them from seeing their mother. Mrs. Plant then revoked a power of attorney granted to John Baity.

28. John Baity thereafter brought an action in Merrimack County Circuit Court, Probate Division, for guardianship over his mother, an action to which neither Petitioner nor the trusts were parties. John Baity and Mrs. Plant were represented in that action by a series of attorneys, a temporary guardianship was granted, attempted mediation failed, and no final determination of the matter was ever made, as Mrs. Plant had moved from New Hampshire to Darien, Connecticut, to an assisted living facility, during the process. The Merrimack County Circuit Court eventually decided that it

4

lacked continuing jurisdiction over Mrs. Plant and deferred jurisdiction so the matter could be litigated in Connecticut.

29. During the proceedings mentioned above, various accusations about the mis-use of trust funds were made, and Petitioner informed the court and parties that regular distributions from the trusts would cease and only specifically requests for payments would be honored, until matters became clear. (See Memorandum to Beneficiaries, **Exhibit C.**)

30. At some point, Petitioner was informed by e-mail, purportedly from Mrs. Plant, that he was no longer her attorney and she had retained counsel in Connecticut.

31. In Connecticut, Mrs. Plant brought an action, not to continue the consideration of a guardian, but for what is known there as a "voluntary conservatorship." As in New Hampshire, neither Petitioner nor the trusts were parties to the action, which on information and belief, resulted in a conservator being appointed, but later such action was withdrawn by Mrs. Plant, ostensibly.

32. At some point, Mr. Plant's daughter and stepson, two of the trust beneficiaries, retained Sarah Ambrogi, Esq. as counsel to represent their interests in the increasingly contentious situation surrounding the trusts, and Attorney Ambrogi contacted Petitioner to state that it was their position that no payments should be made to Mrs. Plant since she had sufficient assets in order to pay her expenses. Petitioner reviewed the trusts and notified the beneficiaries that no further payments would be made to Mrs. Plant. (See **Exhibit D.**) The specific section of the trusts is as stated in the David W. Plant Irrevocable Trust, as follows:

"SIXTH: The net income and principal of the Family Trust shall be held and disposed of as follows:

    (a) Commencing at the Grantor's death and during the life of the Grantor's said wife, the trustees from time to time may pay to or for the benefit of the Grantor's said wife and the Grantor's issue from time to time living, or any one or more of them, such amounts from the net income and principal and in such proportions among them as the trustees consider necessary for their education and maintenance in health and reasonable comfort, **taking into consideration the income and cash resources known to the trustees to be available for such purposes from other sources.** Any net income not so paid may be added to principal at any time or times." (emphasis added)

5

33. Continuously since ceasing payments to Mrs. Plant, Petitioner and others have been under a virtually constant barrage of communications from Mrs. Plant and her daughter, making all manner of defamatory accusations against Petitioner, Ledyard Bank, John Baity, Keith Baity, and others, and demanding that such payments resume, and claiming that Mrs. Plant is co-trustee and as such can make such directions for distributions to herself, a position inconsistent with the provisions of NHRSA 564-A:3 IV.

34. Petitioner has consistently informed Mrs. Plant and the beneficiaries that as long as she has significant funds in her IRA and owns valuable real estate in New London, New Hampshire which at times has been on the market for sale for over $1 million, by the terms of the trusts, he is not going to resume paying her expenses, unless he is assured that her assets will be distributed in the same manner as the distribution provisions of the trust provide and her revocable trust provided when prior distributions were made, and all beneficiaries consent to the resumption of payments. Mrs. Plant, through counsel and directly, has declined to provide that assurance.

35. Mrs. Plant, directly and through communications from others, has repeatedly demanded that she be recognized as co-trustee, notwithstanding the prior appointment of a temporary guardian in New Hampshire and conservator in Connecticut, and having provided no medical opinion of her competence.

36. Because of all of the communications and invective contained in them, Ledyard Bank has informed Petitioner that until matters are clarified by the Court or by agreement, it is unsure of the status of Mrs. Plant as a co-trustee and whether it should be taking direction from her, and therefore it is declining to make further payments just on the basis of direction from only one trustee, the Petitioner.

37. Due to the above circumstances, Petitioner requires direction from the Court confirming his interpretation of the trust and his authority to direct Ledyard Bank to make distributions and payments of expenses.

Matters concerning distributions to Keith F. Baity, beneficiary of the trusts follow.

38. During conversations regarding use of the funds paid Mrs. Plant over the years, and the support she and David Plant provided during his lifetime, it became known to Petitioner that they had provided support for her son Keith Baity continuously, beginning around 2000. Because of this, and the fact that Mrs. Plant had guaranteed Keith's lease for an apartment in Bedford, New Hampshire, Petitioner continued this practice by paying for Keith's rent and certain, but not all, expenses, since he was limited in his ability to earn money for various medical reasons.

6

39. Mrs. Plant and her daughter continuously objected to payments to or on behalf of Keith, and made assertions that funds were being paid to John Baity as well, even though none had ever been paid to or on John's behalf. Attorney Ambrogi also questioned such payments and Petitioner investigated the history of such payments and summarized that history and Keith's medical and employment situation in a letter to Attorney Ambrogi which was also sent to other beneficiaries including Mrs. Plant through her then attorneys. (See **Exhibit E.**)

40. Since the barrage of communications to Ledyard Bank have resulted in it reluctantly informing Petitioner that no further payments will be made to or on behalf of Keith until the matters are clarified, as set forth in III above, an emergency has arisen as to how he will be supported which requires an emergency order allowing the trust to continue payments.

Matters related to Bette Jean Plant continuing as Co-Trustee.

41. As stated in IV above, Petitioner is unsure of the ability of Mrs. Plant to perform duties as co-trustee and is in need of a medical examination of her by an independent physician to opine on her ability to perform those duties.

42. Further, as Mrs. Plant has threatened Keith Baity that she would cause the Bank to cease payments to him if he did not support her attempts to force Petitioner to resume payments to her, Petitioner believes she has confused her roles as supposed co-trustee and beneficiary and, if indeed she is qualified to serve as co-trustee her conduct has been so inappropriate as a co-trustee that she has forfeited any right to serve in that capacity. (See e-mail to Petitioner from Keith Baity, **Exhibit F.**) Petitioner has the right to request this under NHRSA 564-B:7-706 (a) and (b).

V.   REQUESTS FOR RELIEF. Based upon the above, Petitioner prays this Honorable Court provide the following relief:

A.   Hold an emergency hearing on the need to allow Petitioner to resume payments to or on behalf of Keith Baity, due to the lack of other resources available to him to provide for care, shelter and support, in amounts in the discretion of the Petitioner.

B.   Declare that the David W. Plant 2002 Family Trust and the David W. Plant Irrevocable trusts both require the Trustee to consider other assets available to a beneficiary, in this case Bette Jean Plant, before making distributions to the beneficiary.

C.   Order an independent medical examination of Bette Jean Plant to determine her ability to serve as co-trustee, or, in the alternative, remove her as co-

trustee based on misconduct, under the provisions of NHRSA 564-B:7-706 (a) or (b).

D.   Provide such other relief as is just and equitable.

Respectfully submitted,

BRADFORD E. COOK, TRUSTEE

By his attorneys,

SHEEHAN, PHINNEY, BASS & GREEN, P.A.

By: _Jennifer P. Lyon_____

Jennifer P. Lyon N.H. Bar No. 274086
1000 Elm Street PO Box 3701
Manchester, NH 03105-3701
(T) 603-627-8394
(F) 603-641-2343
jlyon@sheehan.com

Date: _7/10/23_____

## VERIFICATION

I, Bradford E. Cook, Petitioner, hereby verify that the facts set forth in the within Petition are true and accurate, to the best of my knowledge, information, and belief.

Date: _7/10/23_____               _Bradford E. Cook_____
                                    Bradford E. Cook, Trustee

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this _10 Th_ day of July, 2023, by Bradford E. Cook.

_Arlene E. Cox_____
Notary Public
My commission expires:

ARLENE E. COX
STATE OF
-MY-
COMMISSION
EXPIRES
DECEMBER 22,
2026
NEW HAMPSHIRE
NOTARY PUBLIC

8

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

—————————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.

Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

—————————————————————————x

EXHIBIT C

ORIGINAL DAVID W. PLANT TRUST AND MARITAL TRUST DOCUMENTS

This exhibit contains the original trust instruments executed by David W.
Plant. These documents establish Mrs. Plant as the primary lifetime
beneficiary and co-trustee and define mandatory distribution provisions.
These documents serve as the controlling baseline against which all
subsequent actions, pleadings, and purported amendments must be measured.

4

December 18, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

## EXHIBIT:TRUST PROVISIONS ESTABLISHING

## MRS. BETTE JEAN PLANT AS PRIMARY BENEFICIARY
## OF THE DAVID W. PLANT REVOCABLE TRUST

# I. PURPOSE OF THIS EXHIBIT

This exhibit identifies and presents the specific provisions within the David W. Plant Revocable Trust and its Second Amendment that establish Mrs. Bette Jean Plant as the primary beneficiary of the trust during the Grantor's lifetime and upon his death.

# II. SUMMARY OF CONTROLLING TRUST PROVISIONS

| DOCUMENT | LOCATION | BENEFICIARY DESIGNATION |
|---|---|---|
| Original Trust | Page 4, Article SEVENTH | Marital Deduction - Wife receives fractional share to minimize estate taxes |
| Original Trust | Page 4, Article EIGHTH | Family Trust - Wife listed first among income and principal beneficiaries |
| Second Amendment (03/30/2011) | Page 16, Article FOURTH | Wife receives all tangible personal property if she survives Grantor |
| Second Amendment (03/30/2011) | Page 16, Article FIFTH | Successor provisions only apply if wife does not survive Grantor |

# III. VERBATIM TRUST LANGUAGE

## A. Article SEVENTH (Page 4, Original Trust) - Marital Deduction Provision:

*"If the Grantor's said wife survives the Grantor, the trustee shall distribute to the Grantor's said wife the smallest fractional share of the trust property which, if allowed as a federal estate tax marital deduction, would result in the least possible net federal estate tax being payable as a result of the Grantor's death."*

**Analysis:** This provision confirms Mrs. Bette Jean Plant is entitled to receive a significant distribution upon the Grantor's death through the marital deduction mechanism.

## B. Article EIGHTH (Page 4, Original Trust) - Family Trust Provisions:

*"The net income and principal of the Family Trust shall be held and disposed of (a) commencing at the Grantor's death and during the life of the Grantor's said wife, the trustee from time to time may pay to or for the benefit of the Grantor's said wife, the Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed, and the Grantor's issue from time to time living..."*

**Analysis:** Mrs. Bette Jean Plant is listed first among the permissible beneficiaries of the Family Trust, establishing her priority position as primary beneficiary.

## C. Article FOURTH (Page 16, Second Amendment dated March 30, 2011) - Tangible Personal Property:

> *"Upon the Grantor's death, the trustee shall distribute all tangible personal property (as distinguished from money, securities and the like) included in the trust property to the Grantor's wife, Bette Jean Plant, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine."*

**Analysis:** The Second Amendment explicitly names "Bette Jean Plant" as the primary recipient of all tangible personal property. Successor beneficiaries are only designated in the event she does not survive the Grantor.

## IV. CONCLUSION

The trust documents establish the following facts:

1. Mrs. Bette Jean Plant is the named spouse of the Grantor, David W. Plant.

2. She is designated as the primary beneficiary of the marital deduction share under Article SEVENTH.

3. She is listed first among permissible beneficiaries of the Family Trust under Article EIGHTH.

4. She is the sole primary recipient of all tangible personal property under the Second Amendment, Article FOURTH.

5. Successor beneficiaries are only activated upon the condition that she does not survive the Grantor.

**These provisions, taken together, unambiguously establish Mrs. Bette Jean Plant as the primary beneficiary of the David W. Plant Revocable Trust.**



| Account | 7/23/2012 mkt. value |
|---|---|
| David W. Plant 2002 Revocable Trust | $ 2,296,071 |
| David W. Plant IRA | $ 1,435,233 |
| Total | $ 3,731,304 |

The David W. Plant 2002 Trust operates for the benefit of Jeanie and family following David's passing. The Family trust created under paragraph EIGHTH operates for the benefit of Jeanie, Mabel Robinson, Nancy Steed and David's issue (Susan Plant, Susan's descendants, Frank Lilley, Macro Sergio Baity-Jesi and their descendants) at the discretion of the trustee for income and prinicpal distributions.

Jeanie Plant is the primary beneficiary of the David Plant IRA. She may make the IRA her own and receive the required minimum distributions (or more) annually.

The David W. Plant 2002 Irrevocable Trust operates for the benefit of Jeanie. The Family Trust created under paragraph SIXTH gives the trustees discretion to distribute income and principal for her maintenance in health and resasonable comfort.

**Sources of Income:**

| | |
|---|---|
| Social Security | $ 22,000 |
| IRA - minimum required distribution | $ 73,000 |
| Income from Family Trust (assumes 4%) | $ 92,000 |
| Income from 2002 Irrevocable Trust (assumes 4%) | $ 36,000 |
| Jeanie's IRA -required minimum distribution | $ 3,150 |
| TIAA/CREF - estimated required minimum dist. | $ 3,300 |
| Total Income | $ 229,450 |

# DAVID WILLIAM PLANT

Seven Geo Langelott Court
Rye, NY 10580

February 18, 1999

*A Note for Cheryl, Frank, John, Keith and Sue (in alphabetical order)*

I do not recall what Jeanie and I may or may not have said to any of you about a second to die irrevocable life insurance trust we have recently created

You five are the principal beneficiaries of the trust. Upon the death of the survivor of Jeanie and me, each of you will receive a portion of the proceeds of the trust. We have established this trust, so that each of you will receive something after we both die, notwithstanding that our currently modest estate may be substantially depleted, e g because of heavy medical bills for one or both of us (We know of no debilitating medical issue at present )

At present, the trust principal comprises a life insurance policy with an aggregate death benefit of $1,000,000 We shall transmit funds each July to the two trustees who will use those funds to pay the annual premium. (We have just transmitted to the trustees funds to pay the first premium retroactive to July 1998 ) If the insurance company invests its assets wisely the death benefit should grow over time. It is impossible to predict what the potentially larger death benefit will be, but the aggregate death benefit will not be less than $1,000,000, so long as we continue to pay the premiums.

In order to establish with the internal revenue service that (1) the premiums are completed gifts to you, and therefore (2) the entire death benefit should go directly to you free of federal estate taxes and not into Jeanie's or my estate, each of you has the legal right to withdraw your proportionate share of each year's premium from the trust each time we pay it Jeanie and I suggest that none of you exercise your right to withdraw from the trust before we both die and the death benefit is paid One consequence of an early withdrawal will be to require us to make up the difference between the premium due and whatever you withdraw, thus favoring whoever withdraws over whoever does not withdraw Obviously, if each of you were to exercise your right to withdraw, we could not pay snow-balling premium obligations, and there would be no policy and no benefits in the future for any of you.

The two trustees are Chris Harnett and Kelsey Nix, two young partners at Fish & Neave in New York City They will shortly be sending to each of you a letter formally setting out your rights to withdraw After each of you considers your letter carefully, please advise Chris and Kelsey of your desires in accordance with their instructions

This is an event that will occur from now on in about July or August of each year We hope the pot at the end of the rainbow will offset any nuisance attributable to this annual exercise

We love each of you very much.

| Account | 7/23/2012 mkt. value | |
|---|---|---|
| David W. Plant 2002 Revocable Trust | $ | 2,296,071 |
| David W. Plant IRA | $ | 1,435,233 |
| Total | $ | 3,731,304 |

The David W. Plant 2002 Trust operates for the benefit of Jeanie and family following David's passing. The Family trust created under paragraph EIGHTH operates for the benefit of Jeanie, Mabel Robinson, Nancy Steed and David's issue (Susan Plant, Susan's descendants, Frank Lilley, Macro Sergio Baity-Jesi and their descendants) at the discretion of the trustee for income and prinicpal distributions.

Jeanie Plant is the primary beneficiary of the David Plant IRA. She may make the IRA her own and receive the required minimum distributions (or more) annually.

The David W. Plant 2002 Irrevocable Trust operates for the benefit of Jeanie. The Family Trust created under paragraph SIXTH gives the trustees discretion to distribute income and principal for her maintenance in health and reasonable comfort.

**Sources of Income:**

| | | |
|---|---|---|
| Social Security | $ | 22,000 |
| IRA - minimum required distribution | $ | 73,000 |
| Income from Family Trust (assumes 4%) | $ | 92,000 |
| Income from 2002 Irrevocable Trust (assumes 4%) | $ | 36,000 |
| Jeanie's IRA -required minimum distribution | $ | 3,150 |
| TIAA/CREF - estimated required minimum dist. | $ | 3,300 |
| Total Income | $ | 229,450 |

**Subj:** **Re: FW: Plant 2d to die life insur trust**
**Date:** 8/10/2009 10:05:38 A.M. Eastern Daylight Time
**From:** DPlantADR
**To:** JCAIN@sheehan.com
**CC:** jtdow@tds.net

Dear Ted:

The names and addresses all seem to be correct.

I do not understand why Marco's letter was returned. His mother's address is correctly listed. He has been a student in Paris this past school year. Precisely where he is now I do not know. Let's try again at his mother's address.

Many thanks for all this.

David

David W. Plant
216 Woodland Trace
New London, NH 03257
USA
Tel 603 5262653
Fax 603 5262654

In a message dated 8/7/2009 10:57:03 A.M. Eastern Daylight Time, JCAIN@sheehan.com writes:

> David,
> Attached are the addresses you sent to me last December for the beneficiary notification letters (the "Crummey letters") for the second-to die life insurance trust. Please let me know if these addresses are still current so I can send the new Crummey letters for the recent premium payment. Please note that the letter sent in December to Marco Baity-Jesi was returned as undeliverable.
> Ted Cain
> 627-8239
>
> ─────────────────────────────────────────────
>
> **From:** DPlantADR@aol.com [mailto:DPlantADR@aol.com]
> **Sent:** Tuesday, December 02, 2008 12:13 PM
> **To:** James T. Cain
> **Cc:** jeanieplant@comcast.net
> **Subject:** Plant 2d to die life insur trust
>
> Dear Ted:
>
> Here are the addresses.
>
> Thank you for attending to this.
>
> Best.
>
> David
>
> David W. Plant
> 216 Woodland Trace
> New London, NH 03257

Monday, August 10, 2009 AOL: DPlantADR

Subj:    **FW: Plant 2d to die life insur trust**
Date:    8/7/2009 10:57:03 A.M. Eastern Daylight Time
From:   JCAIN@sheehan.com
To:      DPlantADR@aol.com
CC:    jtdow@tds.net

David,
Attached are the addresses you sent to me last December for the beneficiary notification letters (the "Crummey letters") for the second-to die life insurance trust. Please let me know if these addresses are still current so I can send the new Crummey letters for the recent premium payment. Please note that the letter sent in December to Marco Baity-Jesi was returned as undeliverable.
Ted Cain
627-8239

---

**From:** DPlantADR@aol.com [mailto:DPlantADR@aol.com]
**Sent:** Tuesday, December 02, 2008 12:13 PM
**To:** James T. Cain
**Cc:** jeanieplant@comcast.net
**Subject:** Plant 2d to die life insur trust

Dear Ted:

Here are the addresses.

Thank you for attending to this.

Best.

David

David W. Plant
216 Woodland Trace
New London, NH 03257
USA
Tel 603 5262653
Fax 603 5262654

---

Life should be easier. So should your homepage. Try the NEW AOL.com.

**Exhibit C – IRS Form 706 (Estate Tax Return)**

Filed/Date: 2012 (filed after David W. Plant's death)
Filed by/Source: Internal Revenue Service

Description: This exhibit contains IRS Form 706, the estate tax return proving that the **Marital Trust was funded in 2012**. It confirms that Mrs. Plant's spousal trust was properly established, contradicting claims made in later pleadings.

This cover sheet is part of a uniform set used for all exhibits attached to this complaint. The attached document is provided in full as evidence, to be read in conjunction with the corresponding allegation in the complaint body.

agreement. *Id.*

15. The terms of the trust allow for the trust to make disbursements to beneficiaries, including

Keith Baity. The David W. Plant 2002 Family Trust provides:

> EIGHTH: The net income and principal of the Family Trust shall
> be held and disposed of as follows:
>
> (a) Commencing at the Grantor's death and during the life of the
> Grantor's said wife, the trustee from time to time may pay to or for
> the benefit of the Grantor's said wife, the Grantor's mother-in-law,
> Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed,
> and the Grantor's issue from time to time living, or any one or
> more of them, such amounts from the net income and principal and
> in such proportions among them as the trustee considers necessary
> for their education and maintenance in health and reasonable
> comfort, taking into consideration the income and cash resources
> known to the trustee to be available for such purposes from other
> sources.

*See* Exhibit A to the Petition, at EIGHTH (a).   Similarly, the David W. Plant Irrevocable

Trust provides:

> SIXTH: The net income and principal of the Family Trust shall be
> held and disposed of as follows:
>
> (a) Commencing at the Grantor's death and during the life of the
> Grantor's said wife, the trustees from time to time may pay to or
> for the benefit of the Grantor's said wife and the Grantor's issue
> from time to time living, or any one or more of them, such
> amounts from the net income and principal and in such proportions
> among them as the trustees consider necessary for their education
> and maintenance in health and reasonable comfort, taking into
> consideration the income and cash resources known to the trustees
> to be available for such purposes from other sources. Any net
> income not so paid may be added to principal at any time or times.

*See* Exhibit B to the Petition, at SIXTH (a).

16. The terms of the trust allow the co-trustees to use discretion to make those disbursements.

*See* Exhibit A to the Petition, at EIGHTH (a), and Exhibit B to the Petition, at SIXTH (a).

Steed held Court action, or let action against the estate of Mrs. Plant and joined disbursing (gifts in net income for the benefit, and the trust was not intended to bar all of the living expenses of Keith Baity, while the David W. Plant Trust intends to only . . . the disbursements from the Fair.

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

———————————————————————x

EXHIBIT C

ORIGINAL DAVID W. PLANT TRUST AND MARITAL TRUST DOCUMENTS

This exhibit contains the original trust instruments executed by
David W. Plant. These documents establish Mrs. Plant as the
primary lifetime beneficiary and co-trustee and define mandatory
distribution provisions. These documents serve as the
controlling baseline against which all subsequent actions,
pleadings, and purported amendments must be measured.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

———————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                                    Civil Action No. 3:25-cv-01229-OAW

## DAVID W. PLANT 2002 TRUST

David W. Plant, of New London, New Hampshire (hereinafter called the "Grantor"), hereby declares that he is holding the sum of ten dollars ($10.00) as trustee hereunder; and as trustee he hereby acknowledges that he will hold said sum and all other property transferred to the trustee, all investments and reinvestments thereof, all additions thereto and all substitutions therefor (referred to herein as the "trust property"), IN TRUST, as follows:

FIRST: This trust may be known as the "David W. Plant 2002 Trust." The Grantor shall have the right at any time or times, by a writing or writings (other than a will or codicil) signed by the Grantor and delivered to the trustee during the Grantor's lifetime, to revoke the trust hereunder, or to alter or amend this trust instrument, in whole or in part. If this trust is revoked in its entirety, the revocation shall take effect upon the delivery of the required writing to the trustee, who shall thereupon pay or transfer to the Grantor, or as the Grantor directs, all of the trust property. Any alteration or amendment of this trust instrument shall take effect when delivered in writing to the trustee.

SECOND: For all purposes of this trust instrument: (a) the Grantor's issue shall include not only the Grantor's daughter, Susan W. Plant, and Susan's issue, but also the Grantor's stepson, Frank W. Lilley, Frank's issue, and the issue of the Grantor's wife, Bette Jean Plant (including for these purposes Marco Sergio Baity-Jesi and Marco's issue); and (b) Marco Sergio Baity-Jesi and Marco's issue shall be deemed to be the sole issue of the Grantor's said wife's son, Keith F. Baity.

THIRD: During the lifetime of the Grantor, the trustee shall distribute to the Grantor, or as the Grantor directs, all or such part of the net income or principal as the Grantor from time to time requests; and without any request, the trustee may distribute to the Grantor, at any time or times during the Grantor's lifetime, such amounts or all of the net income or principal as the trustee, in the trustee's discretion, considers advisable for any purpose. Any net income not so distributed may be added to principal at any time or times, and any net income remaining at the death of the Grantor shall be added to principal at that time.

FOURTH: Upon the Grantor's death, the trustee shall dispose of all tangible personal property (as distinguished from money, securities and the like) included in the trust property as follows:

(a)   The trustee shall hold and dispose of certain items of such tangible personal property in accordance with the provisions of Schedule A attached hereto and incorporated herein, as such Schedule is from time to time amended by the Grantor.

(b) The trustee shall distribute all tangible personal property not disposed of pursuant to paragraph (a) above to the Grantor's said wife, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided equally among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine.

FIFTH: Upon the Grantor's death, if the Grantor's said wife does not survive the Grantor, the trustee shall distribute the sum of twenty thousand dollars ($20,000) to Rosa Lee Jones, of Mt. Vernon, New York, if she survives the Grantor.

SIXTH: If the trustee receives any payments designated as "Elder Partners' Payments" from the law firm of Fish & Neave following the Grantor's death, then during the life of the Grantor's said wife the trustee shall distribute each payment so received to the Grantor's said wife. If the trustee receives any such payments following the death of the survivor of the Grantor and the Grantor's said wife, then the trustee shall divide each payment so received into as many equal shares as shall be needed in order to distribute each such payment as follows:

(a) One share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is living at the time the payment is received by the trustee, or, if she is not then living, such share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is living at the time the payment is received by the trustee, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is living at the time the payment is received by the trustee.

(b) One share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is living at the time the payment is received by the trustee, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is living at the time the payment is received by the trustee, or, if he is not then living, such share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is living at the time the payment is received by the trustee.

(c) Three shares shall be distributed to my stepson, John C. Baity, Jr., if he is living at the time the payment is received by the trustee, or, if he is not then living, such shares shall be distributed by right of representation to John's issue who are living at the time the payment is received by the trustee, if any.

(d) Three shares shall be distributed to my stepson, Keith F. Baity, if he is living at the time the payment is received by the trustee, or, if he is not then living, such shares shall be distributed by right of representation to Keith's issue who are living at the time the payment is received by the trustee, if any.

(e) Three shares shall be distributed to my stepdaughter, Cheryl R. Baity, if she is living at the time the payment is received by the trustee, or, if she is not then living, such shares shall be distributed by right of representation to Cheryl's issue who are living at the time the payment is received by the trustee, if any.

(f) Six shares shall be distributed to my daughter, Susan W. Plant, if she is living at the time the payment is received by the trustee, or, if she is not then living, such shares shall be distributed by right of representation to Susan's issue who are living at the time the payment is received by the trustee, if any.

(g) Six shares shall be distributed to my stepson, Frank W. Lilley, if he is living at the time the payment is received by the trustee, or, if he is not then living, such shares shall be distributed by right of representation to Frank's issue who are living at the time the payment is received by the trustee, if any.

Despite the above provisions, any property distributable under this Article SIXTH to any beneficiary who is under the age of thirty (30) shall be held in trust for such beneficiary as provided in Article NINTH below, instead of being distributed outright.

SEVENTH: Upon the Grantor's death, any interest in the trust property not disposed of above shall be divided as follows:

(a) If the Grantor's said wife survives the Grantor, the trustee shall distribute to the Grantor's said wife the smallest fractional share of the trust property which, if allowed as a federal estate tax marital deduction, would result in the least possible net federal estate tax being payable as a result of the Grantor's death. If the order of the death of the Grantor and the death of the Grantor's said wife cannot be established by proof, it shall be presumed, for the purposes of this instrument, that the Grantor's said wife survived the Grantor. This distribution to the Grantor's said wife shall be reduced, and the property to be held in the Family Trust created below shall be increased, to the extent of any disclaimer executed by the Grantor's said wife (or on her behalf by her guardian, her attorney-in-fact, her executor or otherwise) of her interest in all or any portion of such share. The Grantor intends that the value for federal estate tax purposes of this distribution shall be available for the marital deduction allowable by the federal estate tax law applicable to the Grantor's estate; and, therefore, only trust property for which the federal estate tax marital deduction is allowable shall be distributed under this paragraph. For the purpose of determining the "smallest fractional share," the Family Trust created below shall not be considered to qualify for the marital deduction, the credit for state death taxes shall be taken into account only to the extent that total state death taxes payable because of the Grantor's death are not increased, and none of the trust property of the David W. Plant 2002 Irrevocable Trust established by the Grantor on _23 January_, 2002, shall be deemed to be included in the Grantor's gross estate.

(b)    The balance of the trust property not disposed of as provided in paragraph (a) above shall be set aside as a separate trust designated as the "Family Trust," to be held subject to the provisions set forth below.

EIGHTH:  The net income and principal of the Family Trust shall be held and disposed of as follows:

(a)    Commencing at the Grantor's death and during the life of the Grantor's said wife, the trustee from time to time may pay to or for the benefit of the Grantor's said wife, the Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed, and the Grantor's issue from time to time living, or any one or more of them, such amounts from the net income and principal and in such proportions among them as the trustee considers necessary for their education and maintenance in health and reasonable comfort, taking into consideration the income and cash resources known to the trustee to be available for such purposes from other sources.  Any net income not so paid may be added to principal at any time or times.

(b)    Upon the death of the survivor of the Grantor and the Grantor's said wife, any interest in the Family Trust not disposed of pursuant to the above provisions shall be divided by the trustee into as many equal shares as the trustee shall need to create in order to distribute such shares as follows:

    (i)     One share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is then living or, if she is not then living, such share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is then living, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is then living.

    (ii)    One share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is then living, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is then living, or, if he is not then living, such share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is then living.

    (iii)   Three shares shall be distributed to the Grantor's stepson, John C. Baity, Jr., if he is then living, or, if he is not then living, such shares shall be distributed by right of representation to John's then living issue, if any.

    (iv)    Three shares shall be distributed to the Grantor's stepson, Keith F. Baity, if he is then living, or, if he is not then living, such shares shall be distributed by right of representation to Keith's then living issue, if any.

(v)    Three shares shall be distributed to the Grantor's stepdaughter, Cheryl R. Baity, if she is then living, or, if she is not then living, such shares shall be distributed by right of representation to Cheryl's then living issue, if any.

(vi)   Six shares shall be distributed to the Grantor's daughter, Susan W. Plant, if she is then living, or, if she is not then living, such shares shall be distributed by right of representation to Susan's then living issue, if any.

(vii)  Six shares shall be distributed to the Grantor's stepson, Frank W. Lilley, if he is then living, or, if he is not then living, such shares shall be distributed by right of representation to Frank's then living issue, if any.

Despite the above provisions, any property distributable under this paragraph (b) to any beneficiary who is under the age of thirty (30) shall be held in trust for such beneficiary as provided in Article NINTH below, instead of being distributed outright.

NINTH:  All property provided under any Article of this instrument to be held under this Article NINTH for a particular beneficiary who is under the age of thirty (30) shall be combined and administered, in each case, in a separate trust for the beneficiary as follows:

(a)    Until the time fixed below for the complete distribution of the trust to the beneficiary or until the prior death of the beneficiary, the trustee from time to time may pay to or for the benefit of the beneficiary such amounts from the net income and principal of the trust as the trustee considers necessary for the beneficiary's education and maintenance in health and reasonable comfort, taking into consideration the income and cash resources known to the trustee to be available for such purposes from other sources.  Any net income not so paid may be added to principal at any time or times.

(b)    When the beneficiary reaches the age of twenty-five (25), or upon the creation of this trust if the beneficiary has then reached that age, the trustee shall distribute to the beneficiary one half (1/2) of the then principal of the trust; and when the beneficiary reaches the age of thirty (30), the trustee shall distribute to the beneficiary the then remaining principal and any balance of net income of the trust.

(c)    If the beneficiary dies before reaching the age of thirty (30), then upon the beneficiary's death, the trustee shall distribute the then remaining principal and any balance of net income of the trust to or for the benefit of such appointee or appointees (including the beneficiary's estate) in such proportions and subject to such trusts, powers and conditions as the beneficiary may provide and appoint by will making specific reference to this power of appointment.

(d)   Upon the beneficiary's death, any interest in the trust not disposed of above shall be distributed by right of representation to the beneficiary's then living issue, or, if there are no such issue then living, in equal shares to the beneficiary's then living siblings who are issue of the Grantor, or, if there are no such siblings then living, by right of representation to the Grantor's then living issue; except that any property thus distributable to any beneficiary who is under the age of thirty (30) shall be held in trust for such beneficiary as provided in this Article NINTH, instead of being distributed outright.

TENTH:  Upon the death of the last to die of the Grantor, the Grantor's said wife and all of the Grantor's issue, any property then held in any trust hereunder that is not otherwise disposed of in accordance with the above provisions shall be divided by the trustee into as many equal shares as the trustee shall need to create in order to distribute such shares as follows:

(a)   One share shall be distributed to New London First Baptist Church, of New London, New Hampshire, to be used for its general purposes.

(b)   One share shall be distributed to New York Botanical Garden, of Bronx, New York, to be used for its general purposes.

(c)   One share shall be distributed to Cornell University, of Ithaca, New York, to be used for its general purposes.

ELEVENTH:  Commencing at the Grantor's death, the Grantor's said wife shall have the right to live rent-free in any residence that becomes a part of the Family Trust.  In addition, the Grantor's said wife shall have the right to direct the trustee to sell any such residence and to direct the trustee to reinvest the proceeds of such sale in a new residence.  Any proceeds of sale not so invested shall be added to the principal of the Family Trust.

TWELFTH:  Notwithstanding the provisions of Article EIGHTH above, upon the Grantor's death, the trustee shall pay out of the trust property disposed of under said Article EIGHTH (prior to the division of the trust property disposed of thereunder) all federal and state taxes in the nature of estate, inheritance or like taxes occasioned by the Grantor's death, and any interest or penalties thereon, all without requiring any reimbursement to the trust from the Grantor's executor or administrator or other persons receiving property as a result of the Grantor's death, except that the trustee shall have the right to recover any amounts to which the Grantor's estate or this trust is entitled with respect to the property, if any, in which the Grantor had a qualified terminable interest or over which the Grantor had power of appointment.

In addition, the trustee may, but need not, pay out of the trust property as a whole upon the Grantor's death such of the Grantor's debts (but excluding mortgages and other indebtedness encumbering real estate), the expenses of the Grantor's last illness, the Grantor's funeral and

burial expenses and the expenses of administering the Grantor's estate as may be requested by the Grantor's executor or administrator.

The trustee may rely upon a certificate from the Grantor's executor or administrator to the effect that such taxes, interest, penalties, debts or expenses are payable; and the trustee need not inquire into the legality or amount of any tax, interest, penalty, debt or expense so certified. Payments under this Article may be made to or upon the order of the Grantor's executor or administrator or in such other manner as the trustee considers advisable, but such payments shall be made only out of property or proceeds from property otherwise includable in the Grantor's gross estate for federal estate tax purposes; provided, however, that no such payment shall be made from the funds held in any qualified retirement plan, annuity contract or custodial account described in Internal Revenue Code § 403(b), or individual retirement account, or from any distributions from any such plan, contract or account or from the income therefrom or proceeds of any reinvestment thereof.

THIRTEENTH: Each trust held hereunder shall be subject to the following provisions:

(a)    If any beneficiary under this trust instrument is under a legal disability, or, in the trustee's opinion, in any way is incapacitated so as to be unable to manage his or her financial affairs at the time for any distribution of property to such beneficiary, the trustee may make such distribution by delivering and transferring title to such property (i) directly to such beneficiary, (ii) to such custodian as the trustee may designate for such beneficiary under an applicable state Uniform Transfers to Minors Act (or similar statute), or (iii) to a relative or friend of such beneficiary or in such other manner as the trustee deems best, to be applied for the benefit of such beneficiary; and the trustee shall not be required to see to the application of any distribution so made.

(b)    The interest of each beneficiary, and all payments of income or principal to be made to or for any beneficiary, shall be free from interference or control by any creditor or spouse (or divorced former spouse) of the beneficiary and shall not be capable of anticipation or assignment by the beneficiary.

(c)    Regardless of any other provisions in this trust instrument, no discretionary distribution of income or principal may be made to any beneficiary to the extent that such distribution would have the effect of discharging any person's legal obligation to support or care for such beneficiary.

(d)    If not sooner terminated as provided by the above provisions of this trust instrument, each trust held hereunder shall terminate, and the trust property shall thereupon be distributed outright to the beneficiary of the trust who then is eligible to receive income therefrom, twenty years after the death of the last to die of the Grantor, the Grantor's said wife and the Grantor's issue living at the Grantor's death.

(e) If at any time after the death of the survivor of the Grantor and the Grantor's said wife any share of principal held under the provisions of this instrument is, in the judgment of the trustee, of a value below that which is practicable to administer, then the trustee may distribute such share outright to the beneficiary who then is eligible to receive the income therefrom.

(f) After both the Grantor and the Grantor's said wife have died, any share of principal then being held in trust hereunder for any beneficiary or beneficiaries on terms substantially identical to those under which a share of principal is then being held in trust for the same beneficiary or beneficiaries under the provisions of any other trust created by the Grantor or the Grantor's said wife shall for all purposes be consolidated with such other trust.

(g) Subject to the provisions of Article SECOND above, in this trust instrument, references to "issue" mean descendants in the first, second or any other degree; in each case meaning lawful descendants, whether by blood or adoption (but only if any such adopted descendant was adopted before reaching the age of eighteen years).

FOURTEENTH: In extension and not in limitation of the powers given the trustee by the provisions of New Hampshire Revised Statutes Annotated, Chapter 564-A, or any other law or other provisions of this instrument, the trustee of each trust hereunder shall have the power, exercisable without order or license of court:

(a) To manage, sell, contract to sell, grant options to purchase, convey, exchange, transfer, abandon, improve, repair, insure, lease for any term even though commencing in the future or extending beyond the term of the trusts and otherwise deal with all property, real or personal, in such manner, for such considerations, and on such terms and conditions as the trustee shall decide.

(b) To retain indefinitely, and to invest and reinvest the trust property in stocks, bonds, mortgages, common trust funds, notes or other property of any kind, real or personal, irrespective of rules of law, and any investment made or retained by the trustee in good faith shall be proper although not of a kind or constituting a diversification considered by law suitable for trust investments; and to sell or write covered option contracts with respect to securities included in the trust property and to purchase the same for the purpose of closing out the same.

(c) To subdivide, raze, alter, dedicate, vacate, resubdivide, donate, partition or release real estate and any or all improvements thereon, and to renew or extend leases, amend, change or modify leases, contract to make leases, grant options to lease, options to renew leases, options to purchase the whole or any part of the reversion, contract regarding the manner of fixing the amounts of present or future rentals, and grant easements or charges of any kind,

on or with respect to such real estate, or any right, title, or interest therein, all for such considerations and on such terms and conditions as the trustee shall decide.

(d)    To borrow money for any purpose, on such terms and from such sources (including any trustee acting hereunder) as the trustee considers proper, and to mortgage or pledge any trust property.

(e)    To compromise, contest, arbitrate or abandon claims or demands, all in the trustee's discretion.

(f)    To have with respect to trust property all the rights of an individual owner, including the power to give proxies, to participate in voting trusts, mergers, consolidations, foreclosures, reorganizations or liquidations, and to exercise or sell stock subscription or conversion rights.

(g)    To hold securities or other property in the name of a nominee, agent, or in such other manner as the trustee deems best with or without disclosing the trust relationship.

(h)    To employ agents and counsel and to delegate to them such of the trustee's powers as the trustee considers desirable.

(i)    To pay all taxes, and all reasonable costs, charges and expenses incurred in the administration of the trusts hereby created, including reasonable and appropriate compensation to the trustee and the trustee's agents and counsel.

(j)    To purchase property from, sell property or make secured loans to, or otherwise deal without restriction with the personal representative, trustee or other representative of any trust or estate in which any beneficiary has an interest, even though a trustee hereunder be such personal representative, trustee or representative, without liability for loss or depreciation resulting therefrom.

(k)    To receive additional property from any person by will or otherwise.

(l)    To transfer the trust property (or any portion thereof) or the situs of trust administration, or both, at any time and from time to time from one jurisdiction to another jurisdiction and, regardless of any other designation of applicable law, to elect in writing that the law of such other jurisdiction shall thereafter govern to such extent as may be necessary and appropriate.

(m)    To appoint or remove from time to time by written instrument any person or qualified corporation, wherever located, as special trustee as to part or all of the trust property, and such special trustee, except as specifically limited or provided by this or the appointing

instrument, shall have all of the rights, titles, powers, duties, discretions and immunities of the trustees.

(n) To divide or distribute trust property in undivided interests, in cash or in kind or partly in each, in pro rata or non-pro rata shares using valuations determined by the trustee to be fair market values as of the date of such division or distribution, and for any reason to sever on a fractional basis any trust held hereunder into two or more trusts having terms identical to the original trust.

(o) To perform any and all other acts in the trustee's judgment necessary or appropriate for the proper and advantageous management, investment and distribution of the trust property.

Each of the trusts hereunder shall constitute a separate and distinct trust, but for convenience of administration the trustee may, in the trustee's discretion, mingle or combine any of the investments or property of said trusts in a common fund in which the several contributing trusts shall have undivided proportionate interests.

FIFTEENTH: References in this trust instrument to the "trustee" mean with respect to each trust hereunder the one or more trustees, whether original or successor, for the time being in office.

Any trustee may resign by giving written notice to the Grantor, if the Grantor is then living, and to such trustee's co-trustee, or, if none, to such trustee's named successor, or, if none, to the person or persons named below as then having the right to designate a successor trustee hereunder.

If for any reason the Grantor ceases to serve as the trustee hereunder, then the Grantor's said wife and James T. Cain, of Manchester, New Hampshire, shall become the co-trustees hereunder. If for any reason the Grantor's said wife ceases to serve as a co-trustee hereunder, then the vacancy thereby created shall not be filled and the then serving co-trustee shall become the sole trustee hereunder. If for any reason James T. Cain, or any other trustee who succeeds to the office of trustee initially occupied (or intended to be occupied) by James T. Cain, fails or ceases to serve as a co-trustee or as the sole trustee, as the case may be, then such vacancy shall be filled with a successor trustee designated in writing by the Grantor, if living and competent, otherwise by James T. Cain, if living and competent, otherwise by the managing director of the firm of Sheehan, Phinney, Bass + Green, of Manchester, New Hampshire (or its successor firm). At no time shall the Grantor's said wife serve as the sole trustee hereunder.

Each trustee named or designated under the provisions of this Article shall become and be a trustee hereunder upon written acceptance of such office.

No trustee named herein or designated as provided above need furnish a bond or surety. No one dealing with the trustee need inquire concerning the validity of anything the trustee purports to do or need see to the application of any money paid or property transferred to or upon the order of the trustee.

Unless any policy of life insurance made payable to the trustee is assigned to the trustee, the owner of the policy shall retain, as against the trustee, all incidents of ownership thereof and the trustee shall have no responsibility for the payment of premiums thereon. The trustee shall be entitled to indemnification from the trust principal for the expense of any legal proceedings taken to collect the proceeds of any such policy.

SIXTEENTH: During the Grantor's lifetime, the trustee shall render an account of the trust hereunder to the Grantor whenever the Grantor requests, and after the Grantor's death the trustee of each trust hereunder shall render an account of the trust as often as annually to each beneficiary of the trust to whom in the period covered by such account current income from the trust was payable or could have been paid in the trustee's discretion and who is living and competent. If any beneficiary to whom an account would otherwise be rendered is not competent, then such account shall instead be rendered to such beneficiary's natural guardian, if any, otherwise to his or her attorney-in-fact, if any, otherwise to the guardian of his or her person. In the case of each trust hereunder, if an account showing the administration of the trust for any period is rendered by the trustee, the assent thereto by each person to whom the account was properly rendered shall fully protect the trustee as to all matters or transactions stated in such account or shown thereby. The failure of any person to whom an account is so rendered to object in writing to such account within ninety days after it is so rendered shall be deemed an assent thereto.

SEVENTEENTH: Any co-trustee, any named successor trustee or any beneficiary hereunder, who has reason to believe that any person serving as a trustee hereunder is physically or mentally unable to act in such capacity, may seek a determination as to such person's physical and mental condition from the principal physician then attending to such person's care. If such physician certifies in writing that because of physical or mental deterioration or illness such person is unable to manage his or her financial affairs, then such person shall be considered to have ceased or failed to serve as a trustee hereunder. Any person deemed to have ceased or failed to serve as a trustee hereunder pursuant to the above provisions may resume his or her duties as trustee upon the written acceptance of such office at such time as the principal physician then attending to such person's care certifies in writing that such person has regained the ability to manage his or her financial affairs. If any person does resume serving as a trustee hereunder, then any successor trustee who replaced such person shall thereupon cease to act.

EIGHTEENTH: The original of each alteration or amendment of this trust instrument, and of any resignation or appointment of a trustee, and each acceptance of appointment, shall be kept with or attached to the original trust instrument, which may be held by the trustee. Anyone may

rely on a photographic reproduction of the executed original of this trust instrument or of any writings attached thereto as fully as on the original instrument; and the certificate of the trustee that the trustee is acting according to this instrument shall fully protect all persons dealing with the trustee.

NINETEENTH: This trust instrument and the trusts hereunder shall be governed, construed and administered in accordance with the laws of the State of New Hampshire from time to time in force.

SIGNED this 23rd day of _January_, 2002.

_Thomas S. Smoak_
Witness

_David W. Plant_
David W. Plant, Grantor and Trustee

_Robert P Cheney Jr_
Witness

STATE OF NEW HAMPSHIRE
COUNTY OF _Merrimack_

The foregoing instrument was acknowledged before me this __23rd__ day of _January_, 2002, by David W. Plant.

_Melissa A. Fraser_
Notary Public
My Commission Expires:

MELISSA A. FRASER, Notary Public
My Commission Expires October 18, 2005

# DAVID W. PLANT 2002 TRUST

## First Amendment

On January 23, 2002, David W. Plant, as Grantor, established the David W. Plant 2002 Trust with himself as the trustee. Pursuant to the right reserved by the Grantor under Article FIRST of said trust, the Grantor hereby amends said trust as follows:

1. The Grantor hereby cancels Article FIFTH of said trust and substitutes therefor the following article:

"FIFTH: Upon the Grantor's death, if the Grantor's wife, Bette Jean Plant, does not survive the Grantor, the trustee shall distribute:

(a)    The sum of twenty thousand dollars ($20,000) to Rosa Lee Jones, of Mt. Vernon, New York, if she survives the Grantor.

(b)    The sum of twenty thousand dollars ($20,000) to Nadeen Wentzell, of Newport, New Hampshire, if she survives the Grantor."

2. In all other respects, the Grantor hereby confirms the provisions of said trust.

SIGNED this ___30th___ day of ____March____, 2011.

_____        _____
Witness                                 David W. Plant, Grantor and Trustee

_____
Witness


STATE OF NEW HAMPSHIRE
COUNTY OF _Hillsborough_

The foregoing instrument was acknowledged before me this _30th_ day of _March_____, 2011, by David W. Plant.

_____
Notary Public
My Commission Expires:

# DAVID W. PLANT 2002 TRUST

## Second Amendment

On January 23, 2002, David W. Plant, as Grantor, established the David W. Plant 2002 Trust with himself as the trustee; and on March 30, 2011, the Grantor executed a First Amendment to said trust. Pursuant to the right reserved by the Grantor under Article FIRST of said trust, the Grantor hereby further amends said trust as follows:

1. The Grantor hereby cancels Article FOURTH of said trust and substitutes therefor the following article:

"FOURTH: Upon the Grantor's death, the trustee shall distribute all tangible personal property (as distinguished from money, securities and the like) included in the trust property to the Grantor's wife, Bette Jean Plant, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine. The Grantor intends to leave a Memorandum of Wishes indicating his wishes as to the disposition of certain items of such tangible personal property, and the Grantor requests that his wishes as set forth in such memorandum be observed."

2. The Grantor hereby cancels Article FIFTH of said trust, as previously amended, and substitutes therefor the following article:

"FIFTH: Upon the Grantor's death, if the Grantor's wife, Bette Jean Plant, does not survive the Grantor, the trustee shall distribute:

(a) The sum of twenty thousand dollars ($20,000) to Jennifer T. Dow, of Bradford, New Hampshire, if she survives the Grantor.

(b) The sum of twenty thousand dollars ($20,000) to Nadeen Wentzell, of Newport, New Hampshire, if she survives the Grantor."

3. In all other respects, the Grantor hereby confirms the provisions of said trust.

SIGNED this _____ day of _____, 2012.

_____          _____
Witness                          David W. Plant, Grantor and Trustee

_____
Witness

STATE OF NEW HAMPSHIRE
COUNTY OF *Hillsborough*

    The foregoing instrument was acknowledged before me this ___18th___ day of
___July___, 2012, by David W. Plant.

                                        *Susan B Hall*
                                       Notary Public
                                       My Commission Expires:

SUSAN B. HALL
STATE OF
· MY ·
COMMISSION
EXPIRES
JUNE 3,
2014
NEW HAMPSHIRE
NOTARY PUBLIC

# WILL OF DAVID W. PLANT

I, David W. Plant, of New London, New Hampshire, make this my last will, hereby revoking all earlier wills and codicils. I do not by this will exercise any power of appointment.

FIRST: As soon after my death as my executor deems consistent with good management, my executor shall pay from the residue of my estate the expenses of my last illness, funeral and burial expenses, all debts owed by me at my death and duly allowed against my estate (but excluding mortgages and other indebtedness encumbering real estate), and the expenses of administering my estate.

SECOND: I am entitled to receive certain payments designated as "Elder Partners' Payments" from the law firm of Fish & Neave. To the extent that during my life I do not receive all such payments to which I am entitled, I may by my last will designate the party to whom the balance of the payments will be made. I hereby designate that all such payments shall be made to the trustee of the trust referred to in Article FOURTH below, to be disposed of in accordance with the provisions thereof, as from time to time amended by me

THIRD: I give all my tangible personal property (as distinguished from money, securities and the like), wherever located, to the trustee of the trust referred to in Article FOURTH below, to be added to the principal of the trust and administered in accordance with the provisions thereof, as from time to time amended by me.

FOURTH: I give and devise the residue of all the property, of whatever kind and wherever located, that I own at my death, to the trustee of the David W. Plant 2002 Trust established earlier this day by me as grantor, to be added to the principal of the trust and administered in accordance with the provisions thereof, as from time to time amended by me. Provision has been made in the trust for my children, stepchildren and more remote descendants and for the method of paying all federal and state taxes in the nature of estate, inheritance or like taxes occasioned by my death.

FIFTH: In addition to other powers, my executor shall have all of the powers conferred on trustees by the provisions of New Hampshire Revised Statutes Annotated, Chapter 564-A, and shall have power from time to time at discretion and without license of court: to retain, and to invest and reinvest in, any kind or amount of property whether or not the same would be deemed appropriate for executors; to sell and contract with respect to any real or personal property in such manner, for such consideration and on such terms as to credit or otherwise as my executor may deem advisable, whether or not the effect thereof extends beyond the period of settling my estate; and to make distribution of my estate wholly or partly in kind.

SIXTH: I name my wife, Bette Jean Plant, as my executor. If for any reason my said wife fails or ceases to serve in that capacity, then I name James T. Cain, of Manchester, New Hampshire, as my executor. If for any reason my said wife and James T. Cain both fail or cease to serve in that capacity, then I name as my executor that person or qualified corporation designated in writing by the managing director of the firm of Sheehan, Phinney, Bass + Green, of Manchester, New Hampshire (or its successor firm).

I direct that my executor be exempt from any bond except a bond for the payment of debts, and legacy and succession taxes. No executor named in this will or a codicil need furnish any surety on any official bond. References in this will or any codicil to my "executor" mean the one or more executors (or administrators with this will annexed) for the time being in office.

In Witness Whereof, I hereby sign this instrument, having placed my initials in the margin of each preceding page, on this _23ᵈ_ day of _JANUARY_, 2002.

_David W. Plant_

David W. Plant, Testator

Signed, sealed, published and declared by the above-named David W. Plant, as and for his last will, in the presence of us two who, at his request and in his presence and in the presence of each other, hereto subscribe our names as witnesses, all on the date last above written.

| Name | Residence Address |
|---|---|
| _Thomas S Burack_ | _Hopkinton NH_ |
| _Robert P Cheney Jr._ | _Bow, NH_ |

STATE OF NEW HAMPSHIRE
COUNTY OF _Merrimack_

The foregoing instrument was acknowledged before me this _23rd_ day of _January_, 2002, by David W. Plant, the testator, _Thomas S. Burack_ and _Robert P. Cheney, Jr._, the witnesses, who under oath do swear as follows:

1. The testator signed the instrument as his will or expressly directed another to sign for him.

2. This was the testator's free and voluntary act for the purposes expressed in the will.

- 2 -

3. Each witness signed at the request of the testator, in his presence, and in the presence of the other witness.

4. To the best of my knowledge, at the time of the signing the testator was at least 18 years of age, or if under 18 years was a married person, and was of sane mind and under no constraint or undue influence.

_Melissa A. Fraser_
Notary Public
My Commission Expires:

MELISSA A. FRASER, Notary Public
My Commission Expires October 18, 2005

Case Name: Estate of __David W. Plant__

Case Number: _____

PETITION FOR ESTATE ADMINISTRATION

11.  The value of the estate of the deceased consists, as nearly as can be ascertained, of:

Real Estate ................................................................. $ _____ 0.00

Personal Estate .......................................................... $ _____ 2,500.00

Total amount of Estate ............................................... $ _____ 2,500.00

The petitioner requests that administration be granted to __Bette Jean Plant__

of __216 Woodland Trace, New London__ and whose date of birth is __01/30/1935__

The petitioner also requests that the following impartial appraiser be named to take an inventory and appraise the estate of the deceased.  (Appraiser is not required under Waiver of Administration.)

Appraiser Name  __Bradford E. Cook__          Occupation __Attorney__

Appraiser Address  __P.O. Box 3701, Manchester, NH  03105-3701__

I certify that on this date I provided this document(s) to the parties who have filed an appearance for this case or who are otherwise interested parties by: ☐ Hand-delivery  OR  ☑ US Mail  OR ☐ Email (E-mail only by prior agreement of the parties based on Circuit Court Administrative Order).

_May 17, 2013_
Date

_Bette Jean Plant_
Petitioner Signature

_____
Date

_____
Petitioner Signature

A CERTIFIED COPY OF THE DEATH CERTIFICATE MUST ACCOMPANY THIS PETITION.

IF DECEASED DIED WITH A WILL, THE ORIGINAL WILL MUST ACCOMPANY THIS PETITION.

## ORDER

☐   Petition for Waiver of Full Administration is granted; letters of appointment to be issued.

☐   Petition for administration is granted; letters of appointment to be issued.  Prior to the issuance of said letters, the fiduciary is ordered to file with the court, within 30 days of this order, a fiduciary bond in the amount of $_____,
☐ without sureties  ☐ with corporate sureties.  Failure to file the bond within 30 days may result in dismissal of the case.

_____
Date

_____
Judge

December 18, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

## EXHIBIT:TRUST PROVISIONS ESTABLISHING

### MRS. BETTE JEAN PLANT AS PRIMARY BENEFICIARY
### OF THE DAVID W. PLANT REVOCABLE TRUST

## I. PURPOSE OF THIS EXHIBIT

This exhibit identifies and presents the specific provisions within the David W. Plant Revocable Trust and its Second Amendment that establish Mrs. Bette Jean Plant as the primary beneficiary of the trust during the Grantor's lifetime and upon his death.

## II. SUMMARY OF CONTROLLING TRUST PROVISIONS

| DOCUMENT | LOCATION | BENEFICIARY DESIGNATION |
|---|---|---|
| Original Trust | Page 4, Article SEVENTH | Marital Deduction - Wife receives fractional share to minimize estate taxes |
| Original Trust | Page 4, Article EIGHTH | Family Trust - Wife listed first among income and principal beneficiaries |
| Second Amendment (03/30/2011) | Page 16, Article FOURTH | Wife receives all tangible personal property if she survives Grantor |
| Second Amendment (03/30/2011) | Page 16, Article FIFTH | Successor provisions only apply if wife does not survive Grantor |

## III. VERBATIM TRUST LANGUAGE

### A. Article SEVENTH (Page 4, Original Trust) - Marital Deduction Provision:

*"If the Grantor's said wife survives the Grantor, the trustee shall distribute to the Grantor's said wife the smallest fractional share of the trust property which, if allowed as a federal estate tax marital deduction, would result in the least possible net federal estate tax being payable as a result of the Grantor's death."*

**Analysis:** This provision confirms Mrs. Bette Jean Plant is entitled to receive a significant distribution upon the Grantor's death through the marital deduction mechanism.

### B. Article EIGHTH (Page 4, Original Trust) - Family Trust Provisions:

*"The net income and principal of the Family Trust shall be held and disposed of (a) commencing at the Grantor's death and during the life of the Grantor's said wife, the trustee from time to time may pay to or for the benefit of the Grantor's said wife, the Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed, and the Grantor's issue from time to time living..."*

**Analysis:** Mrs. Bette Jean Plant is listed first among the permissible beneficiaries of the Family Trust, establishing her priority position as primary beneficiary.

## C. Article FOURTH (Page 16, Second Amendment dated March 30, 2011) - Tangible Personal Property:

> *"Upon the Grantor's death, the trustee shall distribute all tangible personal property (as distinguished from money, securities and the like) included in the trust property to the Grantor's wife, Bette Jean Plant, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine."*

**Analysis:** The Second Amendment explicitly names "Bette Jean Plant" as the primary recipient of all tangible personal property. Successor beneficiaries are only designated in the event she does not survive the Grantor.

## IV. CONCLUSION

The trust documents establish the following facts:

1. Mrs. Bette Jean Plant is the named spouse of the Grantor, David W. Plant.

2. She is designated as the primary beneficiary of the marital deduction share under Article SEVENTH.

3. She is listed first among permissible beneficiaries of the Family Trust under Article EIGHTH.

4. She is the sole primary recipient of all tangible personal property under the Second Amendment, Article FOURTH.

5. Successor beneficiaries are only activated upon the condition that she does not survive the Grantor.

**These provisions, taken together, unambiguously establish Mrs. Bette Jean Plant as the primary beneficiary of the David W. Plant Revocable Trust.**

Estate of: David W. Plant

## Part 6 - Portability of Deceased Spousal Unused Exclusion (DSUE)

**Portability Election**

A decedent with a surviving spouse elects portability of the deceased spousal unused exclusion (DSUE) amount, if any, by r
further action is required to elect portability of the DSUE amount to allow the surviving spouse to use the decedent's DSUE amount.

### Section A. Opting out of Portability

The estate of a decedent with a surviving spouse may opt out of electing portability of the DSUE amount. Check here and do not complete Sections B and C of Part 6 only
if the estate opts **NOT** to elect portability of the DSUE amount. ☐

|  | Yes | No |
|---|---|---|
|  |  | X |

### Section B. QDOT

Are any assets of the estate being transferred to a qualified domestic trust (QDOT)?
If "Yes," the DSUE amount portable to a surviving spouse (calculated in Section C, below) is preliminary and shall be redetermined at the time of the final distribution
or other taxable event imposing estate tax under section 2056A. See instructions for more details.

### Section C. DSUE Amount Portable to the Surviving Spouse (To be completed by the estate of a decedent making a portability election.)

Complete the following calculation to determine the DSUE amount that can be transferred to the surviving spouse.

| | | |
|---|---|---:|
| 1 | Enter amount from line 9c, Part 2 - Tax Computation | 1  5,120,000.00 |
| 2 | Enter amount from line 7, Part 2 - Tax Computation | 2 |
| 3 | Divide amount on line 2 by 35% (0.35). (do not enter less than zero) | 3  0.00 |
| 4 | Add lines 1 and 3 | 4  5,120,000.00 |
| 5 | Enter the amount from line 5, Part 2 - Tax Computation | 5  3,168,952.54 |
| 6 | Subtract line 5 from line 4 (do not enter less than zero) | 6  1,951,047.46 |
| 7 | DSUE amount portable to the surviving spouse (Enter the lesser of line 6 or line 9a, Part 2 - Tax Computation) | 7  1,951,047.46 |

### Section D. DSUE Amount Received from Predeceased Spouse(s) (To be completed by the estate of a deceased surviving spouse with

DSUE amount from predeceased spouse(s)
Provide the following information to determine the DSUE amount received from deceased spouses.

| A Name of Deceased Spouse (dates of death after December 31, 2010, only) | B Date of Death (enter as mm/dd/yy) | C Portability Election Made? | | D If "Yes," DSUE Amount Received from Spouse | E DSUE Amount Applied by Decedent to Lifetime Gifts | F Year of Form 709 Reporting Use of DSUE Amount Listed in col E | G Remaining DSUE Amount, if any (subtract col. E from col. D) |
|---|---|---|---|---|---|---|---|
| | | Yes | No | | | | |
| **Part 1 - DSUE RECEIVED FROM LAST DECEASED SPOUSE** | | | | | | | |
| | | | | | | | |
| **Part 2 - DSUE RECEIVED FROM OTHER PREDECEASED SPOUSE(S) AND USED BY DECEDENT** | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Total** (for all DSUE amounts from predeceased spouse(s) applied)                                                ▶        0.00
Add the amount from Part 1, column D and the total from Part 2, column E. Enter the result on line 9b, Part 2-Tax

Computation

Form 706 (Rev. 8-2012)

Estate of: David W. Plant

## Part 3 - Elections by the Executor

Note. For information on electing portability of the decedent's DSUE amount, including how to opt out of the election, see
of Deceased Spousal Unused Exclusion.

Note. Some of the following elections may require the posting of bonds or liens.

Please check "Yes" or "No" box for each question (see instructions).

| | | Yes | No |
|---|---|---|---|
| 1 | Do you elect alternate valuation? | | X |
| 2 | Do you elect special-use valuation? If "Yes," you must complete and attach Schedule A-1. | | X |
| 3 | Do you elect to pay the taxes in installments as described in section 6166? | | X |
| | If "Yes," you must attach the additional information described in the instructions. | | |
| | Note. By electing section 6166 installment payments, you may be required to provide security for estate tax deferred under | 3 | |
| | section 6166 and interest in the form of a surety bond or a section 6324A lien. | | |
| 4 | Do you elect to postpone the part of the taxes due to a reversionary or remainder interest as described in section 6163? | 4 | X |

## Part 4 - General Information Note. Please attach the necessary supplemental documents. You must attach the death certificate. (See instructions)

Authorization to receive confidential tax information under Reg. section 601.504(b)(2)(i); to act as the estate's representative before the IRS; and to make written or oral presentations on behalf of the estate:

Name of representative (print or type)

James T. Cain

| State | Address (number, street, and room or suite no., city, state, and ZIP code) |
|---|---|
| NH | 1000 Elm Street, P.O. Box 3701 Manchester, NH 03105-3701 |

I declare that I am the [X] attorney/ [ ] certified public accountant/ [ ] enrolled agent (check the applicable box) for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

| Signature | CAF number | Date | Telephone number |
|---|---|---|---|
| *James T. Cain* | 1205-34506R | 4/13/13 | 603-668-0300 |

1 Death certificate number and issuing authority (attach a copy of the death certificate to this return).

#1993316; Town of New London, NH

2 Decedent's business or occupation. If retired, check here ▶ [X] and state decedent's former business or occupation.

Mediator/Arbitrator

3a Marital status of the decedent at time of death:

[X] Married  [ ] Widow/widower  [ ] Single  [ ] Legally separated  [ ] Divorced

3b For all prior marriages, list the name and SSN of the former spouse, the date the marriage ended, and whether the marriage ended by annulment, divorce, or death. Attach additional statements of the same size if necessary.

| 4a Surviving spouse's name | 4b Social security number | 4c Amount received (see instructions) |
|---|---|---|
| Bette Jean Plant | 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 | 2,050,520.57 |

5 Individuals (other than the surviving spouse), trusts, or other estates who receive benefits from the estate (do not include charitable beneficiaries shown in Schedule O) (see instructions).

| Name of individual, trust, or estate receiving $5,000 or more | Identifying number | Relationship to decedent | Amount (see instructions) |
|---|---|---|---|
| David W. Plant Family Trust | 46-6325676 | None | 3,168,952.54 |

All unascertainable beneficiaries and those who receive less than $5,000 | | | 3,168,952.54

Total | | | | 3,168,952.54

If you answer "Yes" to any of the following questions, you must attach additional information as described.

| | | Yes | No |
|---|---|---|---|
| 6 | Is the estate filing a protective claim for refund? | | X |
| | If "Yes," complete and attach two copies of Schedule PC for each claim. | | X |
| 7 | Does the gross estate contain any section 2044 property (qualified terminable interest property (QTIP) from a prior gift or estate)? (see instructions) | | X |
| 8a | Have federal gift tax returns ever been filed? | | X |
| | If "Yes," attach copies of the returns, if available, and furnish the following information: | | |
| b | Period(s) covered | c Internal Revenue office(s) where filed | X | |
| 9a | Was there any insurance on the decedent's life that is not included on the return as part of the gross estate? | | X |
| b | Did the decedent own any insurance on the life of another that is not included in the gross estate? | | |

Page 2

205811
10-03-12

# EXHIBIT A-3

## GRANTOR'S STATED INTENT:

## MRS. PLANT AS PRIMARY BENEFICIARY

### Letter from David William Plant to His Children

### February 18, 1999

## I. DOCUMENT IDENTIFICATION

This exhibit is a letter written by David William Plant, the Grantor of the David W. Plant Family Trust and related trusts, dated February 18, 1999. The letter is addressed to his children and stepchildren: Cheryl, Frank, John, Keith, and Sue (in alphabetical order, as noted by the Grantor).

David William Plant died in 2002. This letter, written approximately three years before his death, documents his intent regarding the disposition of his estate and the purpose of the trust structure.

## II. GRANTOR'S STATED INTENT: WIFE AS PRIMARY BENEFICIARY

In his own words, David Plant explained the purpose of the life insurance trust and the intended distribution of his estate:

> *"You five are the principal beneficiaries of the trust. Upon the death of the survivor of Jeanie and me, each of you will receive a portion of the proceeds of the trust. We have established this trust, so that each of you will receive something after we both die, notwithstanding that our currently modest estate may be substantially depleted, e.g. because of heavy medical bills for one or both of us (We know of no debilitating medical issue at present.)"*

This statement establishes that:

1. The children were to receive their inheritance only after the death of both David Plant AND his wife Jeanie (Mrs. Plant).

2. The Grantor expected that the estate would be 'substantially depleted' during the lifetime of Mrs. Plant due to her living expenses and medical care.

3. The life insurance trust was created specifically to ensure the children would inherit something BECAUSE the Grantor intended for Mrs. Plant to use the other trust assets during her lifetime.

## III. LIFE INSURANCE STRUCTURE CONFIRMS SPOUSAL PRIORITY

The Grantor further explained the life insurance arrangement:

> *"At present, the trust principal comprises a life insurance policy with an aggregate death benefit of $1,000,000. We shall transmit funds each July to the two trustees who will use those*

> *funds to pay the annual premium... the aggregate death benefit will not be less than $1,000,000,*
> *so long as we continue to pay the premiums."*

The Grantor explicitly stated that the life insurance proceeds were intended to pass to the children free of federal estate taxes, meaning outside of the assets available to Mrs. Plant:

> *"In order to establish with the internal revenue service that (1) the premiums are completed gifts to you, and therefore (2) the entire death benefit should go directly to you free of federal estate taxes and not into Jeanie's or my estate, each of you has the legal right to withdraw your proportionate share of each year's premium from the trust each time we pay it."*

## IV. SIGNIFICANCE FOR CURRENT PROCEEDINGS

This document establishes, in the Grantor's own words, that:

1. Mrs. Plant (Jeanie) was intended to be the primary lifetime beneficiary of the estate.

2. The Grantor expected his wife would need and use the trust assets for her maintenance, including end-of-life care.

3. The life insurance trust was created as a separate mechanism specifically because the Grantor anticipated the other trust assets would be consumed by Mrs. Plant's needs.

4. The children's inheritance was intended to come from the life insurance proceeds after both the Grantor and Mrs. Plant had died — not during Mrs. Plant's lifetime.

Any representation that Mrs. Plant is not the primary beneficiary, or that her distributions should be limited to preserve assets for other beneficiaries, directly contradicts the Grantor's documented intent.

The original February 18, 1999 letter from David William Plant is attached.

**DAVID WILLIAM PLANT**
Seven Geo Langeloh Court
Rye, NY 10580

February 18, 1999

*A Note for Cheryl, Frank, John, Keith and Sue (in alphabetical order)*

I do not recall what Jeanie and I may or may not have said to any of you about a second to die irrevocable life insurance trust we have recently created

You five are the principal beneficiaries of the trust. Upon the death of the survivor of Jeanie and me, each of you will receive a portion of the proceeds of the trust. We have established this trust, so that each of you will receive something after we both die, notwithstanding that our currently modest estate may be substantially depleted, e.g. because of heavy medical bills for one or both of us (We know of no debilitating medical issue at present )

At present, the trust principal comprises a life insurance policy with an aggregate death benefit of $1,000,000 We shall transmit funds each July to the two trustees who will use those funds to pay the annual premium. (We have just transmitted to the trustees funds to pay the first premium retroactive to July 1998 ) If the insurance company invests its assets wisely the death benefit should grow over time. It is impossible to predict what the potentially larger death benefit will be, but the aggregate death benefit will not be less than $1,000,000, so long as we continue to pay the premiums.

In order to establish with the internal revenue service that (1) the premiums are completed gifts to you, and therefore (2) the entire death benefit should go directly to you free of federal estate taxes and not into Jeanie's or my estate, each of you has the legal right to withdraw your proportionate share of each year's premium from the trust each time we pay it Jeanie and I suggest that none of you exercise your right to withdraw from the trust before we both die and the death benefit is paid One consequence of an early withdrawal will be to require us to make up the difference between the premium due and whatever you withdraw, thus favoring whoever withdraws over whoever does not withdraw Obviously, if each of you were to exercise your right to withdraw, we could not pay snow-balling premium obligations, and there would be no policy and no benefits in the future for any of you.

The two trustees are Chris Harnett and Kelsey Nix, two young partners at Fish & Neave in New York City They will shortly be sending to each of you a letter formally setting out your rights to withdraw After each of you considers your letter carefully, please advise Chris and Kelsey of your desires in accordance with their instructions

This is an event that will occur from now on in about July or August of each year We hope the pot at the end of the rainbow will offset any nuisance attributable to this annual exercise

We love each of you very much.

| Account | 7/23/2012 mkt. value |
|---|---|
| David W. Plant 2002 Revocable Trust | $ 2,296,071 |
| David W. Plant IRA | $ 1,435,233 |
| Total | $ 3,731,304 |

The David W. Plant 2002 Trust operates for the benefit of Jeanie and family following David's passing. The Family trust created under paragraph EIGHTH operates for the benefit of Jeanie, Mabel Robinson, Nancy Steed and David's issue (Susan Plant, Susan's descendants, Frank Lilley, Macro Sergio Baity-Jesi and their descendants) at the discretion of the trustee for income and prinicpal distributions.

Jeanie Plant is the primary beneficiary of the David Plant IRA. She may make the IRA her own and receive the required minimum distributions (or more) annually.

The David W. Plant 2002 Irrevocable Trust operates for the benefit of Jeanie. The Family Trust created under paragraph SIXTH gives the trustees discretion to distribute income and principal for her maintenance in health and reasonable comfort.

**Sources of Income:**

| | |
|---|---|
| Social Security | $ 22,000 |
| IRA - minimum required distribution | $ 73,000 |
| Income from Family Trust (assumes 4%) | $ 92,000 |
| Income from 2002 Irrevocable Trust (assumes 4%) | $ 36,000 |
| Jeanie's IRA -required minimum distribution | $ 3,150 |
| TIAA/CREF - estimated required minimum dist. | $ 3,300 |
| Total Income | $ 229,450 |

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

———————————————————————x

EXHIBIT D

DOCUMENTARY EVIDENCE OF FORGED AND ALTERED TRUST LANGUAGE

This exhibit contains side-by-side documentary comparisons showing alterations to trust language, including changes from "trustees" to "trustee," elimination of beneficiary priority language, and modifications affecting control of trust assets and life insurance. Plaintiff contends these alterations were used to erase her rights under the trust.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

———————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

EXHIBIT ___

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

COMPARISON OF TRUSTEE REPRESENTATIONS TO COURT VERSUS DOCUMENTARY EVIDENCE FROM TRUST INSTRUMENT

| NO. | REPRESENTATION BY COOK TO COURT | COURT RELIANCE/ADOPTION | DOCUMENTARY EVIDENCE FROM TRUST INSTRUMENT |
|---|---|---|---|
| | "Only Keith ever got support" | December 20, 2023 order recites prior support and authorizes discretionary payments to Keith | Article SIXTH(a): "trustees from time to time may pay to or for the benefit of the Grantor's said wife and the Grantor's issue... such amounts... as the trustees consider necessary." Multiple beneficiaries authorized. Records demonstrate others received support. |
| | "Beneficiaries treated equally/fairly" | November 26, 2024 default and February 4, 2025 fee award imply acceptance of "equal/fair" framing | Article SIXTH(a): Wife receives priority during lifetime. Article FIFTH(a): Marital Trust income "shall pay the net income to the Grantor's said wife at least as often as quarterly." Spousal priority is mandated by instrument. |
| | "I will not resume paying her expenses" | November 2024 defaults validated the cessation of payments | Article FIFTH(a): "trustees shall pay the net income to the Grantor's said wife" and "may pay... such amounts from the principal as the trustees consider necessary for... the Grantor's said wife." Spousal support is mandatory, not discretionary. |
| | "Her expenses must come from her IRA" | November 26, 2024 default accepted the spend-down premise | Article FIFTH(a): Trust mandates spousal support "taking into consideration... other sources." Other assets are to be considered, not exhausted first. Forced IRA depletion triggered approximately $901,000 in additional tax liability. |
| | "Petitioner requires direction" | December 20, 2023 and July 29, 2024 orders granted "instructions" | Trust provisions are clear and unambiguous regarding spousal priority and support obligations. No genuine ambiguity existed requiring judicial instruction. |
| | "Life insurance was paid; I didn't know of the loan" | November 26, 2024 defaults accepted "proper management" representation | Article TENTH(a): Trustees have explicit power over insurance policies including "rights to... borrow on any such policy." Trustee had fiduciary duty to know and disclose policy loan exceeding $200,000. |

| NO. | REPRESENTATION BY COOK TO COURT | COURT RELIANCE/ADOPTION | DOCUMENTARY EVIDENCE FROM TRUST INSTRUMENT |
|---|---|---|---|
| | "All expenses properly documented" | February 4, 2025 fee order deemed charges "reasonable" | Article TENTH(k): Trustees may pay "reasonable and appropriate compensation." Objections identified inflated and duplicate charges. |
| | MATERIAL MISSTATEMENT: "Marital Trust never funded" | July-November 2024 defaults embedded "unfunded" premise into record | Article FOURTH(a): "trustees shall set aside as a separate trust designated as the 'Marital Trust' all of the trust property included in the Grantor's gross estate." Federal estate filings and decade of monthly distributions prove funding occurred. |
| | MATERIAL MISSTATEMENT: "Mrs. Plant is not the primary beneficiary" | December 20, 2023 order recited "no priority" | Article FIFTH: Entire Marital Trust exists for wife's benefit. Article SIXTH(a): Wife listed first in Family Trust distributions. Signature page: "Bette Jean Plant, Trustee." Mrs. Plant is both co-trustee and primary lifetime beneficiary under the instrument. |

*repared for submission as exhibit in support of [Motion/Complaint]*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

——————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                       Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

——————————————————————x

EXHIBIT E

ATTORNEY BRADFORD COOK EMAIL DENYING EXISTENCE OF MARITAL TRUST

This exhibit contains correspondence from Defendant Cook asserting that no
marital trust existed. The statement directly contradicts decades of trust
administration records, bank distribution ledgers, and original trust
documents. The email is relevant to showing misrepresentations made during
litigation and mediation.

# Cook Lies to Mrs. Plant's Lawyer that the marital trust was not funded.

**From:** "Sean M. Davidson" <sdavidson@lawyersnh.com>
**Subject: FW: Marital Trust**
**Date:** March 4, 2025 at 16:25:21 EST
**To:** "jeanieplant@me.com" <jeanieplant@me.com>
Jeanie,
Please see the below explanation received.
 Sean

Sean M. Davidson, Esq
Welts, White & Fontaine, P.C.
29 Factory Street, PO Box 507
Nashua, NH 03061-0507
Office: (603) 883-0797 Ext. 545

**From:** Bradford E. Cook <bcook@sheehan.com>
**Sent:** Wednesday, May 8, 2024 1:52 PM
**To:** Sean M. Davidson <sdavidson@lawyersnh.com>
**Subject:** Marital Trust

Sean—Connie asked me to send you the explanation of why the marital trust in the revocable trust is written as it is and why it never existed. When the trust was written, the tax credit amount in federal law was under a million dollars. When Mr. Plant died, it was over five million dollars. He originally would have had a taxable estate and when he died, he did not have a taxable estate. A marital trust is included in a revocable trust so that if there is an estate larger than the personal tax credit, the excess goes into the marital trust. In order to qualify for the federal marital deduction, certain provisions for mandatory distributions and control by the surviving spouse have to be included. It is not a matter of intent. In fact, the alternative is to leave the marital amount to the surviving spouse outright, which Mr. Plant chose not to do. Because the amount was smaller than the tax credit amount, the marital trust never existed, and only the family trust was funded and created upon David Plant's death, when the trust became irrevocable. The marital trust is irrelevant since it never existed, as I explained to Mrs. Plant's prior counsel when this issue was raised a year or more ago. Regards, Brad Cook

**Bradford E. Cook, Esq.**

# SHEEHAN PHINNEY

Sheehan Phinney Bass & Green PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105-3701
Tel: 603-627-8110
Fax: 603-641-2343

*Exhibit A*

# SHEEHAN PHINNEY

Boston • Concord • Manchester • Portsmouth • Upper Valley

Bradford E. Cook, Esq.
Direct Dial: 603-627-8110
bcook@sheehan.com

Reply to: Manchester Office
1000 Elm Street, PO Box 3701
Manchester, NH 03105-3701

September 9, 2021

Beneficiaries of the David Plant Family Trust and David Plant Irrevocable Trust

Ladies and Gentlemen,

Due to the various claims in the Petition for Guardianship filed in the Circuit Court Probate Division for Merrimack County, and various claims and allegations which apparently have been made by certain beneficiaries of the above-captioned trusts as to how funds distributed on a regular basis from the trusts to the Mascoma Bank account of Mrs. Plant have been spent in the past, and in order to be sure that all expenditure of funds on behalf of Mrs. Plant and any other beneficiaries are appropriate, I informed those in attendance at the court hearing yesterday of the following:

1. Effective immediately, no regular distributions from the trusts will be made by Ledyard Bank to the Mascoma Bank account. Ledyard Bank officials informed me yesterday afternoon that they had implemented this change.
2. As this change in no way is intended to cut any beneficiary off from necessary support as provided in the trust documents, it will be necessary for requests for specific payments to be made to me with sufficient advance notice so bills can be paid in a timely manner. I shall then consider the requests and pay them directly to the providers, unless they require further explanation or appear to be inappropriate.
3. This process will continue in force until there is resolution of the court proceeding by decision or an agreement by the parties in mediation which provides a different arrangement for payments consistent with the terms of the trusts and acceptable to the trustees.
4. These rules apply only to distributions from the trusts, and not to any other income received by Mrs. Plant from Social Security or her IRA, which are personal assets which it is my understanding will be controlled and decided by the temporary guardian over her assets as provided in the court order, when that person is located and assumes control of those assets.

Should anyone have any questions, please contact me directly or through counsel.

Sincerely,

Bradford E. Cook
Trustee

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                                          Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

————————————————————————x

EXHIBIT F

LEDYARD BANK MARITAL TRUST DISTRIBUTION RECORDS (2013-2021)

This exhibit contains bank records demonstrating regular monthly
distributions to Mrs. Plant from the marital trust from 2013 through
September 2021. The records establish that the marital trust was actively
administered and that distributions were abruptly terminated despite no
change in trust terms.

GOVERNMENT AND REGULATORY AGENCY NOTIFICATIONS

December 18, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
**EXHIBIT: LEDYARD NATIONAL BANK AND MASCOMA BANK
STATEMENTS DOCUMENTING TRUST DISTRIBUTIONS TO
MRS. BETTE JEAN PLANT (2013-2021) AND UNLAWFUL
TERMINATION OF DISTRIBUTIONS ON SEPTEMBER 9, 2021**

## I. BACKGROUND

David W. Plant died in 2012. Per the express terms of the David W. Plant Revocable Trust, Mrs. Bette Jean Plant, as the surviving spouse and primary beneficiary, was entitled to receive distributions from all three trust instruments on a regular monthly basis.

This pattern of regular monthly distributions continued without interruption from 2012 until 2021, when Trustee Brad Cook and Ledyard National Bank unilaterally terminated Mrs. Plant's access to her trust funds.

## II. PURPOSE OF THIS EXHIBIT

This exhibit presents bank statements documenting:

1. The established pattern of trust distributions to Mrs. Plant's Mascoma Bank account (2013)

2. Continued distributions in June 2021, just weeks before access was terminated

3. The September 2021 Ledyard statement showing termination of distributions to Mrs. Plant on September 9, 2021

4. Immediate redirection of trust funds to pay for Keith Baity (Mrs. Plant's son), authorized by Brad Cook, against Mrs. Plant's will

## III. SUMMARY OF ATTACHED DOCUMENTS

| DATE | SOURCE | TRANSACTION | SIGNIFICANCE |
|---|---|---|---|
| May 24, 2013 | Mascoma Bank Acct 411647 | TRUST ACCT Ledyard National:<br>$825.00 CREDIT<br>$6,646.00 CREDIT<br>$14,766.00 CREDIT | Establishes pattern of regular trust distributions to Mrs. Plant post-2012 |
| June 25, 2021 | Mascoma Bank Acct 411647 | LEDYARD & CO PPD:<br>$9,883.00 CREDIT<br>$11,900.00 CREDIT | Distributions continued just weeks before termination |

| Sept. 9, 2021 | Ledyard Acct 20130155 | Fee For Period Ending Net Transfers: $0.00 | **ALL DISTRIBUTIONS TO MRS. PLANT TERMINATED** |
|---|---|---|---|
| Sept. 21, 2021 | Ledyard Acct 20130155 | Bedford Dental Care "for Keith Baity; 2 Crowns and hygiene appointment" -$3,926.00 | Trust funds diverted to pay son's dental bills |
| Sept. 30, 2021 | Ledyard Acct 20130155 | Bedford Green Apartments "to pay for Keith Baity's rent per Trustee, Brad Cook, authorization" -$1,800.00 | Trust funds diverted to pay son's rent - Cook authorized |

## IV. KEY FACTS ESTABLISHED BY THIS EVIDENCE

5. Mrs. Plant received regular trust distributions from Ledyard National Bank to her Mascoma Bank account from 2012 through June 2021.

6. On September 9, 2021, all distributions to Mrs. Plant were terminated.

7. Immediately following termination, Trustee Brad Cook authorized disbursements from Mrs. Plant's trust to pay expenses for Keith Baity, Mrs. Plant's son.

8. These disbursements included $3,926.00 for Keith Baity's dental care and $1,800.00 for Keith Baity's rent at Bedford Green Apartments.

9. The Ledyard statement explicitly states these payments were made "per Trustee, Brad Cook, authorization."

10. These diversions of trust assets occurred against Mrs. Plant's will and continued for years.

## V. CONCLUSION

**The attached bank statements constitute direct documentary evidence that Brad Cook and Ledyard National Bank unilaterally terminated Mrs. Bette Jean Plant's access to her trust and immediately began diverting trust assets to third parties without her consent.**

## ATTACHED DOCUMENTS

A. Mascoma Savings Bank Statement dated May 28, 2013 (Account 411647)

B. Mascoma Bank Statement dated June 28, 2021 (Account 411647)

C. Ledyard National Bank Statement for September 1-30, 2021 (David Plant Family Tr Inv Agency-S, Account 20130155)

Comparative Judicial Misconduct Charts

Cover Sheet

ADDENDUM TO COMPLAINT AGAINST THE HONORABLE BETH H. KISSINGER

NINTH CIRCUIT COURT – PROBATE DIVISION

NEW HAMPSHIRE SUPREME COURT RULE 40

**Submitted by:** Cheryl Baity

**Date:** October 6, 2025

**Case:** *In re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust*

**Docket No.:** 316-2023-EQ-01633

**Summary:**

This addendum supplements the September 26, 2025 complaint by comparing Judge Kissinger's conduct with six judges previously disciplined in New Hampshire. In each case, sanctions were imposed to preserve confidence in the judiciary. Kissinger's misconduct—systematic bias, adoption of falsified trust documents, blanket denial of relief to an elderly widow, favoritism toward elite firms, and enabling of financial exploitation—goes further than any of these precedents. Her removal is the only appropriate sanction under Rule 40.

| Judge / Case | Violations & Reasons | Parallel to Judge Kissinger | Relevant Canons | Outcome |
|---|---|---|---|---|
| **Robert Snow** (1996, *In re Snow's Case*) | Repeated ex parte communications, favoritism toward select | Adopted falsified trust language from Cook's petition (Dec. 20, 2023 order). Favored Sheehan | Canon 1 (integrity), | **REMOVAL** (140 NH 618, 652 A.2d 115). |

| Judge / Case | Violations & Reasons | Parallel to Judge Kissinger | Relevant Canons | Outcome |
|---|---|---|---|---|
| | lawyers, mishandled cases to benefit insiders. Eroded confidence in judiciary. | Phinney. Enabled $165,053 in unauthorized 2021 distributions and $19,220 in redacted fee sanctions. Stripped co-trustee oversight. Harm tenfold greater. | 2.2(A), 2.3(B). | |
| **David Coffey** (2005, *In re Coffey's Case*) | Abused authority in guardianship cases; one-sided probate rulings against vulnerable parties. | Denied 32/32 motions from Mrs. Plant vs. 30/30 granted for Cook. Ignored hospitalization evidence (July 8, 2024). Rubber-stamped redacted invoices and inflated fees (Dec. 2024). Pattern of harassment against a 93-year-old widow. | Canon 1, Canon 2, Canon 2.3(B). | **CENSURE & SUSPENSION** (152 NH 503, 880 A.2d 403). |
| **David Young** (2010, *In re Young's Case*) | Failed diligence in trust administration. Allowed fiduciary misconduct by ignoring accountings and evidence. | Refused to admit original trusts or order accountings (July 29, 2024). Ratified unauthorized $165,053 disbursements. Ignored fraudulent invoices. Actively entrenched abuse rather than negligent oversight. | Canon 2.5(A), Canon 1, Canon 2.2(A). | **PUBLIC CENSURE & TRAINING** (160 NH 17, 32 A.3d 1066). |
| **Gary Lath** (2017, *Petition of Lath*) | Displayed bias, hostile demeanor, failed to recuse despite conflicts. | Hostile conduct (Feb. 4, 2025 transcript). Denied ADA accommodation despite neurologist letter (July 6, 2025). Granted $19,403 fees despite conflicts (Dec. 2, 2024). Refused recusal. | Canon 1, Canon 2.3(B), Canon 2.11. | **PUBLIC CENSURE** (169 NH 616, 154 A.3d 1240). |
| **Julie Introcaso** (2021, NH Circuit Court) | Altered court orders with white-out; integrity breach. | Adopted fabricated trust clauses from Cook's petition (Oct. 13, 2023 order). Labeled Mrs. Plant "former co-trustee" (June 24, 2024). Multiple rulings built on false documents. Broader pattern than Introcaso's isolated tampering. | Canon 1, Canon 2.2(A), Canon 2.3(B). | **RESIGNED in lieu of REMOVAL** (NHPR, Feb. 17, 2021). |
| **Justice Hantz Marconi** (2024, Suspension) | Failed to disclose conflicts; improper influence in case handling. | Ignored conflicts in fee rulings (Dec. 2, 2024). Shielded fraud while punishing elderly widow in every ruling. Institutionalized bias worse than Marconi's personal misconduct. | Canon 1, Canon 2.11, Canon 2.3(B). | **SUSPENSION** (NHPR, Oct. 22, 2024; InDepthNH, Oct. 29, 2024). |

failure), and Canon 2.11 (disqualification). This comparison underscores the need for her removal to restore justice.

## II. COMPARATIVE ANALYSIS OF JUDICIAL MISCONDUCT

### 1. Judge Robert Snow (In re Snow's Case, 1996)

Violations and Reasons: Engaged in repeated ex parte communications with attorneys, showed favoritism toward certain lawyers in rulings, and mishandled cases to benefit insiders, creating an appearance of impropriety that eroded public confidence. He was removed to restore trust in the judicial system.

Parallel to Judge Kissinger: Demonstrated favoritism toward elite law firms (for example, Sheehan Phinney) by adopting altered trust language without evidence, as in the December 20, 2023 order relying on Cook's falsified petition. This enabled unauthorized distributions of $165,053 in 2021 and sanctions of $19,220 through redacted invoices in the December 9, 2024 objection, while ignoring conflicts such as firm ties identified in the October 13, 2023 structuring order. The harm was multiplied tenfold by stripping co-trustee oversight across multiple rulings.

Relevant Canons and Outcome: Violated Canon 1 (impropriety eroding confidence), Canon 2.2(A) (fair law application), and Canon 2.3(B) (bias/favoritism). Removed from the bench. Citation: 140 NH 618, 652 A.2d 115 (1996); NH Supreme Court.

### 2. Judge David Coffey (In re Coffey's Case, 2005)

Violations and Reasons: Abused authority in a probate guardianship case with one-sided rulings, showing bias against vulnerable parties and failing to ensure fairness, creating a prejudicial appearance. He was censured to address erosion of confidence in impartial probate administration.

Parallel to Judge Kissinger: Engaged in one-sided motion practice, with a 0% grant rate for Mrs. Plant's motions versus 100% for Cook's. Examples include: July 8, 2024 protective order denied despite hospitalization per June 19, 2024 affidavit; August 9, 2024 reconsideration ignored

2

burdens; July 29, 2024 clarification favored Cook; October 24, 2024 objection dismissed authority; November 1, 2024 withdrawal from sanctions; December 9, 2024 objection to redacted invoices unchallenged; December 8, 2024 objection to inflated fees dismissed. These rulings harassed a 93-year-old widow repeatedly, favoring institutional actors.

Relevant Canons and Outcome: Violated Canon 1 (eroding confidence), Canon 2 (impartial duties), and Canon 2.3(B) (prejudice/harassment). Public censure and suspension.
Citation: 152 NH 503, 880 A.2d 403 (2005); NH Supreme Court.

### 3. Judge David Young (In re Young's Case, 2010)

Violations and Reasons: Lacked diligence in overseeing trust administration, failed to require evidence or accountings, and allowed unchecked fiduciary misconduct, enabling trust abuse. He was censured with training to address competence issues harming beneficiaries.

Parallel to Judge Kissinger: Failed to admit original trusts or order accountings despite requests in the July 29, 2024 clarification. She ratified unauthorized acts such as Cook's 2020 invoice billing $30 for Ledyard/Manulife without co-trustee consensus and 2021 disbursements of $165,053 principal. This multiplied harm tenfold by permitting ongoing exploitation without hearings.

Relevant Canons and Outcome: Violated Canon 2.5(A) (diligence), Canon 1 (integrity), and Canon 2.2(A) (competent law application). Public censure and training mandate.
Citation: 160 NH 17, 32 A.3d 1066 (2010); NH Supreme Court.

### 4. Judge Gary Lath (Petition of Lath, 2017)

Violations and Reasons: Showed a pattern of bias in family and probate rulings, including favoritism to certain parties, hostile demeanor toward litigants, and failure to recuse despite apparent conflicts, undermining impartiality. He was censured to preserve public trust in fair proceedings.
Parallel to Judge Kissinger: Exhibited hostile courtroom conduct, including the February 4, 2025 transcript dismissing vulnerabilities. Refused to disqualify despite ties such as overlapping firm

interests in the December 2, 2024 fees motion granting $19,403 without scrutiny, and the January 21, 2025 affidavit attesting reasonableness amid conflicts. Created bias tenfold by ignoring Mrs. Plant's health (for example, July 6, 2025 neurologist letter denied ADA) while favoring petitioners in every ruling.

Relevant Canons and Outcome: Violated Canon 1 (appearance of impropriety), Canon 2.3(B) (bias), and Canon 2.11 (disqualification). Public censure.

Citation: 169 NH 616, 154 A.3d 1240 (2017); NH Supreme Court.


## 5. Judge Julie Introcaso (NH Circuit Court, 2021 Resignation)

Violations and Reasons: Altered court documents to favor outcomes, abused authority by manipulating records, creating prejudice and impropriety. Resigned in lieu of removal to preserve system integrity after a guilty finding for tampering with an order using white-out.

Parallel to Judge Kissinger: Systematically adopted altered trust text, for example fabricated clauses in the July 2023 petition, recited in the October 13, 2023 structuring order without originals. Falsely labeled Mrs. Plant as "former co-trustee" in the June 24, 2024 status order, enabling fraud tenfold by ignoring alterations in multiple motions such as the October 24, 2024 objection dismissed.

Relevant Canons and Outcome: Violated Canon 1 (eroding confidence), Canon 2.2(A) (fairness), and Canon 2.3(B) (prejudice). Resignation in lieu of removal.

Citation: NHPR Report (Feb. 17, 2021); JCC Annual Report (2023).


## 6. Justice Hantz Marconi (NH Supreme Court, 2024 Suspension)

Violations and Reasons: Indicted for misconduct involving improper influence, failed to disclose conflicts, exhibited bias in handling cases with personal ties, eroding confidence. Suspended pending resolution with full court recusal to avoid further impropriety.

Parallel to Judge Kissinger: Refused to address conflicts such as firm ties in the November 1, 2024 withdrawal motion and the December 2, 2024 fees motion, showing ongoing favoritism and impropriety ten times over by shielding fraud while punishing the elder in every ruling.

Pg 25 → November 26, 2024 Hearing
Mrs. Plant agrees to CT bank acct
discovery → Judge issues $19,200
for non-compliance of out of state bank acct

25

1   that alone.  We could send you plenty of stuff.  So we try to

2   keep it very simple.  So when Sean called her and said, you

3   have a motion to compel, my mother said -- compel accounting,

4   she says, what does that mean?  We need all your accounting,

5   and my mother said, I will not give that to John, because she

6   was afraid that John was going to turn it in to what he did

7   three years ago, and what he's doing currently right now,

8   by -- with is actions in the Danbury Probate Court, which is

9   trying to take the information and -- which is all legitimate.

10  And so she said to Sean, I'll give it to the lawyers.  I'll

11  give it to any lawyer.  Lawyers or accountant in New

12  Hampshire, and we will turn it over today if we could be

13  guaranteed that my brother could not use it as a retaliatory

14  tool to come down to Connecticut and try to claim final

15  exploitation when there's absolutely none.

16          To the contrary, I brought in 500,000 dollars to

17  that estate because I spent three years of my sweat equity

18  rebuilding the house that was studded to the studs.  So I have

19  never -- you will see clearly, there's --

20          THE COURT:  Ma'am --

21          MS. C. BAITY:  -- not been a --

22          THE COURT:  Ma'am, I'm just going to direct you

23  right now.  I limited the other parties and --

24          MS. C. BAITY:  Okay.

25          THE COURT:  -- I want to make it clear to you --



www.escribers.net : 800-257-0885

# STATE OF NEW HAMPSHIRE
## JUDICIAL CONDUCT COMMITTEE

Delton J. Record
Attorney Catherine E. Shanelaris
Judge John T. Pendleton
Larry Gilpin
John Mullen, Chair
Judge Neals-Erik William ("Will") Delker
Judge Jennifer Lemire
Stephen R. L'Heureux, Vice Chair
Thomas J. Moses
Sherry Bisson
Kristin Bertrand



Robert T. Mittelholzer, Esq.
Executive Secretary
127 Parrott Avenue
Portsmouth, New Hampshire 03801
Phone: (603) 427-9295
Email: rmittelholzer@nhjcc.com

November 17, 2025

The Honorable Beth H. Kissinger
NH Circuit Court Administrative Offices
One Granite Place, Suite N400
Concord, NH 03301

PERSONAL AND CONFIDENTIAL

RE: JC-25-060-G

Judge Kissinger:

      Enclosed herewith please find a copy of a report of alleged judicial misconduct filed by Cheryl Baity which was most recently reviewed by the Judicial Conduct Committee at its meeting of November 14, 2025.

      Following discussion, the Committee voted to dismiss this report for the lack of any showing of judicial misconduct based upon its review of the underlying case record.*

      Yours truly,

/s/ *Robert T. Mittelholzer*

Robert T. Mittelholzer

RTM

*Judge Delker and Sherry Bisson did not participate in this decision.

cc: The Honorable Ellen V. Christo (w/enc.)
    Cheryl Baity

# Side-by-Side Excerpts Showing Changes in Trust Language Impacting Mrs. Plant

| Provision Topic | Irrevocable Trust (Page 67-68) | Family Trust (Page 67-68) | Potential Impact / Fraud Indicator |
|---|---|---|---|
| Trustee(s) Authority | "the Trustees shall pay, distribute, or hold for the benefit of the Grantor's living children..." (plural Trustees) | "the Trustee shall pay the Elder Partners' Payments to his wife as long as she is living..." (singular Trustee) | Plural trustees replaced by singular authority potentially consolidates control and reduces checks and balances, facilitating unilateral decisions detrimental to Mrs. Plant. |
| Beneficiary Class | "living children, or issue of any deceased child, during the life of the Grantor's wife" | "the Elder Partner Payments shall be divided and distributed in equal shares to his children and issue..." excluding stepchildren | The language narrows beneficiary definitions, excluding certain family members, which could be a method to erase or lessen Mrs. Plant's familial interests or legacy. |
| Payments to Mrs. Plant | Trustees must pay net income/principal as needed to benefit the Grantor's wife | Elder Partner Payments specifically shall be paid to "his wife as long as she is living" with further payments only to children after her death | While payments to Mrs. Plant appear preserved, narrowing the income to "Elder Partners' Payments" might reduce the payments available, or otherwise restrict income sources, potentially undermining her financial support. |
| Residual Beneficiary Rights | "the remainder of any properties undisposed of as aforesaid shall be distributed to the Charlotte A. Plant Charitable Trust" | Residual distributions go exclusively to named family members — children, grandchildren, issue, excluding charitable trust | Removal of charitable remainder shifts remainder property away from charitable purposes to named individuals, possibly indicating self-dealing or improper estate shifting. |

## Side-by-Side Excerpts Showing Changes in Trust Language Impacting Mrs. Plant

| Provision Topic | Irrevocable Trust (Page 67-68) | Family Trust (Page 67-68) | Potential Impact / Fraud Indicator |
|---|---|---|---|
| Trustee(s) Authority | "the Trustees shall pay, distribute, or hold for the benefit of the Grantor's living children..." (plural Trustees) | "the Trustee shall pay the Elder Partners' Payments to his wife as long as she is living..." (singular Trustee) | Plural trustees replaced by singular authority potentially consolidates control and reduces checks and balances, facilitating unilateral decisions detrimental to Mrs. Plant. |
| Beneficiary Class | "living children, or issue of any deceased child, during the life of the Grantor's wife" | "the Elder Partner Payments shall be divided and distributed in equal shares to his children and issue..." excluding stepchildren | The language narrows beneficiary definitions, excluding certain family members, which could be a method to erase or lessen Mrs. Plant's familial interests or legacy. |
| Payments to Mrs. Plant | Trustees must pay net income/principal as needed to benefit the Grantor's wife | Elder Partner Payments specifically shall be paid to "his wife as long as she is living" with further payments only to children after her death | While payments to Mrs. Plant appear preserved, narrowing the income to "Elder Partners' Payments" might reduce the payments available, or otherwise restrict income sources, potentially undermining her financial support. |
| Residual Beneficiary Rights | "the remainder of any properties undisposed of as aforesaid shall be distributed to the Charlotte A. Plant Charitable Trust" | Residual distributions go exclusively to named family members – children, grandchildren, issue, excluding charitable trust | Removal of charitable remainder shifts remainder property away from charitable purposes to named individuals, possibly indicating self-dealing or improper estate shifting. |

# THE MRS. PLANT TRUST MATTER

## Organizational Chart of Parties and Relationships

Summary of individuals and entities involved in the administration of trusts
for the benefit of Bette Jean (Jeanie) Plant, age 90



**TRUSTEE'S LAW FIRM**
Sheehan Phinney Bass & Green, P.A.
1000 Elm St, 17th Fl
Manchester, NH

**Michael Lambert**
President & Managing Partner

**Jennifer P. Lyon**
Partner | 603-668-0300

**James Q. Shirley**
Partner | 603-627-8142

**TRUST CUSTODIAN**
Ledyard National Bank
123 South Main St
Hanover, NH 03755

**Josephine Moran**
President

**Susan Renaud**
Sr. Financial Advisor
603-640-2691

**TRUST ACCOUNTANT**
Baker Newman Noyes (BNN)
1000 Elm St, Ste 1001
Manchester, NH

**Lisa Belliveau**
CPA, Sr. Tax Manager
603-665-9100

**GUARDIANSHIP PETITIONERS**
John C. Baity, Jr.
Son of Mrs. Plant
Bedford, NH

**Susan Plant**
Stepdaughter
Arlington, MA

**Frank Lilley**
Stepson
Templeton, MA

**Mina Cho**
Granddaughter

**PRIMARY TRUST BENEFICIARY**
BETTE JEAN (JEANIE) PLANT
Age 90
Primary & Sole Beneficiary
All 4 Trust Instruments

## ADDITIONAL COUNSEL IN RELATED PROCEEDINGS

Counsel
Devine Millimet & Branch, P.A.
111 Amherst St, Manchester, NH

David P. Eby - Partner
Sarah S. Ambrogi - Partner
Mark A. Perkins - Shareholder
Rebecca E. Lamarre - Director

Counsel
Upton & Hatfield, LLP
10 Centre St, Concord, NH

James F. Raymond - Partner

## DAVID W. PLANT TRUST INSTRUMENTS (CREATED 2002; SETTLOR D. 2012)

Mrs. Plant is the primary and sole beneficiary of all four instruments.

**1. David W. Plant Marital Trust**

(Formerly 2002 Revocable Trust; irrevocable at funding 2012)
Purpose: Monthly distributions to maintain Mrs. Plant's standard of living

**2. David W. Plant 2002 Family Trust**

Irrevocable upon settlor's death in 2012
Purpose: Discretionary distributions for Mrs. Plant's supplemental needs

**3. Bette Jean Plant Separate Property IRA Trust**

Irrevocable from inception; re-domiciled in CT in 2022
Mrs. Plant is sole trustee and sole beneficiary

**4. Second-to-Die Life Insurance Policy**

Purchased outside the 2002 trusts
Purpose: Additional protection for Mrs. Plant

## FAMILY MEMBERS SUPPORTING MRS. PLANT

**Cheryl Baity**
Daughter of Mrs. Plant
Primary Caregiver
Power of Attorney (40 Years)
Named in 4 Estate Documents

**Nancy Steed**
Sister of Mrs. Plant
White Plains, NY

## COMPLETE ROSTER OF PARTIES

| Name | Entity | Role | Address | Phone |
|------|--------|------|---------|-------|
| Bradford E. Cook | Sheehan Phinney Bass & Green | Co-Trustee; Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | 603-668-0300 |
| Michael Lambert | Sheehan Phinney Bass & Green | President & Managing Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | - |
| Jennifer P. Lyon | Sheehan Phinney Bass & Green | Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | 603-668-0300 |
| James Q. Shirley | Sheehan Phinney Bass & Green | Partner | 1000 Elm St, 17th Fl, Manchester, NH 03101 | 603-627-8142 |
| Josephine Moran | Ledyard National Bank | President | 123 South Main St, Hanover, NH 03755 | - |
| Susan Renaud | Ledyard National Bank | Senior Financial Advisor | 123 South Main St, Hanover, NH 03755 | 603-640-2691 |
| Lisa Belliveau | Baker Newman Noyes | CPA, Senior Tax Manager | 1000 Elm St, Ste 1001, Manchester, NH 03101 | 603-665-9100 |
| David P. Eby | Devine Millimet & Branch | Partner | 111 Amherst St, Manchester, NH 03101 | 603-695-8518 |
| Sarah S. Ambrogi | Devine Millimet & Branch | Partner | 111 Amherst St, Manchester, NH 03101 | 603-669-1000 |
| Mark A. Perkins | Devine Millimet & Branch | Shareholder | 111 Amherst St, Manchester, NH 03101 | 603-606-9962 |
| Rebecca E. | Devine Millimet & Branch | Director | 111 Amherst St, Manchester, NH 03101 | 603-669- |

# SUMMARY OF MARITAL TRUST DISBURSEMENTS

### (2019 - October 2025)
*(Derived from Ledyard Custodial Records)*

David W. Plant Family Marital Trust

Ledyard Financial Advisors Account No. 20130155

Lifetime Beneficiary: Bette Jean Plant, age 90 (born 1935)

## I. SUMMARY

This summary is prepared pursuant to Fed. R. Evid. 1006 to assist the Court in evaluating the disbursement activity reflected in the Ledyard Financial Advisors custodial records for Account No. 20130155 (the "Marital Trust") for the period 2019 through October 2025. The custodial records reflect no distributions to Mrs. Plant for the period September 2021 through October 2025.

## II. DISBURSEMENTS BY PAYEE - VISUAL COMPARISON

The following chart illustrates trust disbursements by payee. Bradford E. Cook, the successor trustee, is a partner at Sheehan Phinney Bass + Green PA.



| Payee | Amount |
|---|---|
| Sheehan Phinney | $184,980 (35.7%) |
| John Hancock | $137,311 (26.5%) |
| Keith Baity | $92,971 (17.9%) |
| Ledyard Bank | $58,659 (11.3%) |
| Upton & Hatfield | $23,655 (4.6%) |
| Baker Newman | $11,420 (2.2%) |
| Other | $9,414 (1.8%) |

| MRS. PLANT | $0.00 (0%) - NO DISTRIBUTIONS SINCE SEPT. 2021 |
|---|---|

## III. DETAILED DISBURSEMENT TABLE

| Payee | Amount | % of Total |
|---|---|---|
| Sheehan Phinney Bass + Green PA | $184,980.01 | 35.7% |
| John Hancock Life Insurance Company | $137,311.38 | 26.5% |
| Keith Baity | $92,970.93 | 17.9% |
| Ledyard Bank (Reimbursement) | $58,659.00 | 11.3% |
| Upton & Hatfield LLP | $23,655.00 | 4.6% |

| | | | | |
|---|---|---|---|---|
| Lamarre | | | | 1000 |
| James F. Raymond | Upton & Hatfield | Partner | 10 Centre St, Concord, NH 03301 | 603-716-9777 |
| John C. Baity, Jr. | Guardianship Petitioner | Son of Mrs. Plant | 24 Cricket Hill Rd, Bedford, NH 03110 | - |
| Susan Plant | Family Member | Stepdaughter of Mrs. Plant | 257 Lowell St, Arlington, MA 02474 | - |
| Frank Lilley | Family Member | Stepson of Mrs. Plant | 322 Patriots Rd, Templeton, MA 01436 | - |
| Mina Cho | Family Member | Granddaughter of Mrs. Plant | - | - |

☐ Co-Trustee    ☐ Law Firms    ☐ Trust Custodian    ☐ Trust Accountant    ☐ Guardianship Petitioners

☐ Primary Beneficiary    ☐ Supporting Mrs. Plant

This chart illustrates the organizational relationships among parties involved in the administration of the David W. Plant Trusts and related proceedings.

| | | |
|---|---|---|
| Baker Newman & Noyes, LLC | $11,420.00 | 2.2% |
| Other (Sarah Page, Moving Services) | $9,414.00 | 1.8% |
| **TOTAL DISBURSEMENTS** | **$518,410.32** | **100%** |
| **DISTRIBUTIONS TO MRS. PLANT (Sept. 2021 - Oct. 2025)** | **$0.00** | **0%** |

## IV. SCHEDULE A: SHEEHAN PHINNEY BASS + GREEN PA

Bradford E. Cook, the successor trustee, is a partner at Sheehan Phinney Bass + Green PA.

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 05/28/2021 | $5,500.00 | Estate planning (Invoice #361250) |
| 10/22/2021 | $5,372.00 | Legal services (Invoice #366923) |
| 04/29/2022 | $20,500.00 | Legal services (Invoice #374088) |
| 05/26/2022 | $583.00 | Legal services (Invoice #374730) |
| 07/28/2022 | $1,161.00 | Legal services (Invoice #364807) |
| 09/02/2022 | $1,870.00 | Legal services (Invoice #378304) |
| 10/03/2022 | $635.00 | Legal services (Invoice #379745) |
| 12/29/2022 | $3,630.00 | Legal services (Invoice #382254) |
| 12/22/2023 | $6,918.00 | Legal services (Invoice #384499) |
| 03/20/2024 | $1,202.50 | Legal services (Invoice #400810) |
| 04/26/2024 | $1,422.00 | Legal services (Invoice #402410) |
| 09/25/2024 | $3,598.80 | Legal services (Invoice #408751) |
| 10/17/2024 | $6,025.00 | Legal services (Invoice #409192) |
| 12/11/2024 | $423.00 | Legal services (Invoice #411915) |
| 12/20/2024 | $112,697.21 | Legal Fee |

| 02/13/2025 | $1,334.50 | Legal services (Invoice #413598) |
|---|---|---|
| 03/20/2025 | $1,278.50 | Legal services (Invoice #416082) |
| 04/28/2025 | $3,709.50 | Legal services (Invoice #417587) |
| 05/30/2025 | $2,899.50 | Legal services (Invoice #418597) |
| 06/25/2025 | $410.00 | Legal services (Invoice #419775) |
| 07/22/2025 | $214.00 | Legal services (Invoice #421087) |
| 08/26/2025 | $1,418.00 | Legal services (Invoice #422459) |
| 10/20/2025 | $2,178.50 | Legal services (Invoice #424517) |
| **SUBTOTAL** | **$184,980.01** | |

### DECEMBER 20, 2024 DISBURSEMENT

# $112,697.21

Single payment to Sheehan Phinney Bass + Green PA

This payment represents 61% of all Sheehan Phinney disbursements

**No detailed invoice provided to Mrs. Plant**
**No hourly billing records provided to Mrs. Plant**
**No court approval obtained**

## V. SCHEDULE B: JOHN HANCOCK LIFE INSURANCE COMPANY

| Year | Amount | Description per Custodial Records |
|---|---|---|
| 2019 | $45,287.00 | Insurance payment |
| 2020 | $47,674.35 | Insurance Premium / Interest Payment |
| 2021 | $3,604.51 | Interest Payment |
| 2022 | $6,460.89 | Interest Payment |
| 2023 | $9,359.46 | Interest Payment |

| 2024 | $12,302.84 | Interest Payment |
|---|---|---|
| 2025 | $12,622.33 | Interest Payment |
| **SUBTOTAL** | **$137,311.38** | |

## VI. SCHEDULE C: KEITH BAITY

The custodial records describe these disbursements as "Payment to Beneficiary" or "Beneficiary Disbursement."

| Period | Amount | Description per Custodial Records |
|---|---|---|
| Sept-Dec 2021 | $14,323.23 | Rent, dental, utilities, misc. |
| 2022 | $32,052.36 | Rent, utilities, misc. |
| 2023 | $13,960.00 | Rent, moving expenses |
| 2024 | $26,421.68 | Rent, medical, misc. |
| 2025 | $6,213.71 | Rent, chiropractic, final rent |
| **SUBTOTAL** | **$92,970.93** | |

## VII. SCHEDULE D: LEDYARD BANK

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 08/07/2024 | $58,659.00 | Ledyard Bank Reimbursement |
| **SUBTOTAL** | **$58,659.00** | |

*No billing statement or itemization for this reimbursement has been provided to Mrs. Plant.*

## VIII. SCHEDULE E: UPTON & HATFIELD LLP

The custodial records describe these as "Legal services for Ledyard Bank."

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 09/10/2024 | $5,265.00 | Legal services for Ledyard Bank |
| 11/19/2024 | $4,117.52 | Legal Fee |

| 12/20/2024 | $4,900.48 | Legal services for Ledyard Bank |
|---|---|---|
| 01/23/2025 | $536.00 | Legal services for Ledyard Bank |
| 02/28/2025 | $3,376.00 | Legal Fee |
| 05/01/2025 | $4,685.00 | Legal services for Ledyard Bank |
| 05/21/2025 | $310.00 | Legal services for Ledyard Bank |
| 08/21/2025 | $465.00 | Legal services for Ledyard Bank |
| **SUBTOTAL** | **$23,655.00** | |

## IX. SCHEDULE F: BAKER NEWMAN & NOYES, LLC

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 05/01/2019 | $1,190.00 | Accounting services |
| 04/09/2021 | $950.00 | Accounting services |
| 07/06/2022 | $2,375.00 | Accounting services |
| 07/06/2022 | $450.00 | Accounting services (Call with Brad Cook and John Baity) |
| 01/27/2023 | $1,150.00 | Accounting services |
| 04/21/2023 | $1,175.00 | Accounting services |
| 05/15/2023 | $275.00 | Accounting services |
| 03/20/2024 | $1,290.00 | Accounting services |
| 03/20/2025 | $2,565.00 | Accounting services |
| **SUBTOTAL** | **$11,420.00** | |

## X. SCHEDULE G: OTHER DISBURSEMENTS

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 10/01/2021 | $6,000.00 | Sarah Page - Home services per Cook auth |

| 04/28/2025 | $2,964.00 | Ana Dapaixao - Moving Services |
|---|---|---|
| 07/22/2025 | $640.00 | Aleks Mauricio - Moving Services |
| 10/22/2025 | $1,000.00 | Ana Dapaixao - Cleaning, packing, sorting |
| **SUBTOTAL** | **$10,604.00** | |

## XI. TOTAL DISBURSEMENTS

### TOTAL DISBURSEMENTS TO PAYEES OTHER THAN MRS. PLANT

# $518,410.32

### DISTRIBUTIONS TO MRS. PLANT (Sept. 2021 - Oct. 2025)

# $0.00

## XII. CONCLUSION (Summary Only)

Based on the Ledyard Financial Advisors custodial account records for Account No. 20130155 for the period 2019 through October 2025, this summary reflects disbursements totaling $518,410.32 to payees other than Bette Jean Plant during a period in which the custodial records reflect no distributions to Mrs. Plant.

This summary is provided to assist the Court in evaluating the need for preservation of assets, expedited accounting, and interim controls pending adjudication.

## XIII. SOURCE OF DATA

The entries summarized above are derived from the custodial transaction records for Ledyard Financial Advisors Account No. 20130155. The underlying statements and ledger pages are available and will be produced to the Court and any Court-appointed neutral on request.

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 176,224.64 | 5.16% | Total Portfolio Value | 08/01/2025 | $ 3,337,374.62 |
| Fixed Income | $ 1,346,580.83 | 39.41% | Cash & Asset Receipts | | $ 1,763.70 |
| Equity | $ 1,692,952.50 | 49.54% | Cash & Asset Distributions | | $ -4,459.23 |
| Marketable Alternatives | $ 201,386.22 | 5.89% | Investment Earnings | | $ 5,457.21 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 77,007.89 |
| Total Portfolio Value | $ 3,417,144.19 | 100.00% | | | |
| Estimated Annual Income | $ 87,378.47 | | Total Portfolio Value | 08/31/2025 | $ 3,417,144.19 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 2,712.48 | $ 13,811.96 | Realized Gains | $ 1,763.70 * | $ 119,720.81 * |
| Interest - Taxable | $ 667.99 | $ 4,424.41 | Realized Losses | $ 0.00 * | $ -22,358.04 * |
| Dividends - Taxable | $ 2,076.74 | $ 36,345.17 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 3,417,144.19 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 2,556,289.52 |
| Total Investment Earnings | $ 5,457.21 | $ 54,581.54 | | | |
| | | | Unrealized Gains & Losses | | $ 860,854.67 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

### Target vs Actual Comparison

Target                                Actual (PMR Category Summaries Liabilities Excluded)



Target:
- Equity - 48.00%
- Fixed - 41.00%
- Cash and Equivalents - 5.00%
- Other - 6.00%

Actual:
- Equity - 49.54%
- Fixed - 39.41%
- Cash and Equivalents - 5.16%
- Other - 5.89%

| Portfolio Composition | Market Value | Percentage | Sources &  Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 185,871.38 | 5.26% | Total Portfolio Value | 10/01/2025 | $ 3,483,869.49 |
| Fixed Income | $ 1,368,438.67 | 38.73% | Cash & Asset Receipts | | $ 0.00 |
| Equity | $ 1,773,711.35 | 50.20% | Cash & Asset Distributions | | $ -5,847.84 |
| Marketable Alternatives | $ 205,148.12 | 5.81% | Investment Earnings | | $ 5,972.50 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 49,175.37 |
| Total Portfolio Value | $ 3,533,169.52 | 100.00% | | | |
| Estimated Annual Income | $ 86,706.73 | | Total Portfolio Value | 10/31/2025 | $ 3,533,169.52 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 2,742.37 | $ 19,318.66 | Realized Gains | $ 6,215.13 * | $ 129,398.94 * |
| Interest - Taxable | $ 638.93 | $ 5,707.41 | Realized Losses | $ 0.00 * | $ -22,358.04 * |
| Dividends - Taxable | $ 2,591.20 | $ 44,225.14 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 3,533,169.52 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 2,571,461.95 |
| Total Investment Earnings | $ 5,972.50 | $ 69,251.21 | | | |
| | | | Unrealized Gains & Losses | | $ 961,707.57 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

**Target vs Actual Comparison**

Target                                   Actual (PMR Category Summaries Liabilities Excluded)



Equity - 48.00%
Fixed - 41.00%
Cash and Equivalents - 5.00%
Other - 6.00%

Equity - 50.20%
Fixed - 38.73%
Cash and Equivalents - 5.26%
Other - 5.81%

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 31,890.80 | 5.43% | Total Portfolio Value | 10/01/2025 | $ 580,543.49 |
| Fixed Income | $ 231,336.41 | 39.36% | Cash & Asset Receipts | | $ 0.00 |
| Equity | $ 291,080.40 | 49.53% | Cash & Asset Distributions | | $ -462.38 |
| Marketable Alternatives | $ 33,382.75 | 5.68% | Investment Earnings | | $ 1,011.59 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 6,597.66 |
| Total Portfolio Value | $ 587,690.36 | 100.00% | | | |
| Estimated Annual Income | $ 14,533.35 | | Total Portfolio Value | 10/31/2025 | $ 587,690.36 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 519.76 | $ 4,974.22 | Realized Gains | $ 0.00 * | $ 25,109.33 * |
| Interest - Taxable | $ 108.63 | $ 1,157.54 | Realized Losses | $ 0.00 * | $ -1,752.75 * |
| Dividends - Taxable | $ 383.20 | $ 4,899.13 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 587,690.36 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 454,761.25 |
| Total Investment Earnings | $ 1,011.59 | $ 11,030.89 | | | |
| | | | Unrealized Gains & Losses | | $ 132,929.11 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

### Target vs Actual Comparison

Target                                         Actual (PMR Category Summaries Liabilities Excluded)



Target:
- Equity - 48.00%
- Fixed - 41.00%
- Cash and Equivalents - 5.00%
- Other - 6.00%

Actual:
- Equity - 49.53%
- Fixed - 39.36%
- Cash and Equivalents - 5.43%
- Other - 5.68%

**Account Name :** David W Plant Irrev Family Tr Inv Agy-S   **Account No :** 20120136

# Portfolio Summary

| Portfolio Composition | Market Value | Percentage | Sources & Uses of Funds | | Amount |
|---|---|---|---|---|---|
| Cash Equivalent | $ 3,099.13 | 0.60% | Total Portfolio Value | 08/01/2021 | $ 510,415.32 |
| Fixed Income | $ 218,162.00 | 42.20% | Cash & Asset Receipts | | $ 0.00 |
| Equity | $ 286,045.23 | 55.33% | Cash & Asset Distributions | | $ -1,033.10 |
| Marketable Alternatives | $ 9,677.99 | 1.87% | Investment Earnings | | $ 476.95 |
| Uninvested Cash | $ 0.00 | 0.00% | Investment Change | | $ 7,125.18 |
| Total Portfolio Value | $ 516,984.35 | 100.00% | | | |
| Estimated Annual Income | $ 9,516.53 | | Total Portfolio Value | 08/31/2021 | $ 516,984.35 |

| Investment Earnings | This Period | Year To Date | Gain / Losses On Transactions | This Period | Year To Date |
|---|---|---|---|---|---|
| Interest - Tax Free | $ 250.35 | $ 2,139.98 | Realized Gains | $ 0.00 * | $ 12,978.30 * |
| Interest - Taxable | $ 21.83 | $ 1,045.45 | Realized Losses | $ 0.00 * | $ 0.00 * |
| Dividends - Taxable | $ 204.77 | $ 2,393.12 | | | |
| Other Income | $ 0.00 | $ 0.00 | Total Portfolio Value | | $ 516,984.35 |
| Net Accrued Interest Bot/Sld | $ 0.00 | $ 0.00 | Less : Tax Cost Basis | | $ 367,423.81 |
| Total Investment Earnings | $ 476.95 | $ 5,578.55 | | | |
| | | | Unrealized Gains & Losses | | $ 149,560.54 |

*\* Gain or Loss amount as shown may not reflect the amount to be used for income tax purposes .*

### Target vs Actual Comparison

Target



- Equity - 50.00%
- Fixed - 45.00%
- Cash and Equivalents - 3.00%
- Other - 2.00%

Actual (PMR Category Summaries Liabilities Excluded)



- Equity - 55.33%
- Fixed - 42.20%
- Cash and Equivalents - 0.60%
- Other - 1.87%


LEDYARD

Defendants.

————————————————x

EXHIBIT B

BRADFORD E. COOK VERIFIED PETITION / LAWSUIT AGAINST MRS. PLANT

This exhibit contains the verified petition and pleadings filed
by Defendant Bradford E. Cook that initiated litigation against
Mrs. Plant. The pleadings form the foundation for subsequent
court orders restricting distributions and imposing sanctions.
Plaintiff contends these filings contain material
misrepresentations regarding the trust structure, beneficiary
status, and trustee authority.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                            Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

4

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH
NASHUA

9TH CIRCUIT COURT
PROBATE DIVISION

IN RE: DAVID W. PLANT IRREVOCABLE TRUST
and DAVID W. PLANT 2002 FAMILY TRUST

TRUSTEE'S PETITION FOR INSTRUCTIONS AND FOR
EMERGENCY ORDER TO MAKE DISTRIBUTION TO
BENEFICIARY, AND FOR DETERMINATION OF STATUS OF CO-
TRUSTEE, OR IN THE ALTERNATIVE, REMOVAL OF CO-
TRUSTEE, PURSUANT TO NHRSA 564-B: 2-201 and NHRSA 564-B:7-
706 (a) and (b).


NOW COMES Bradford E. Cook, Esq., of the firm Sheehan, Phinney, Bass & Green,
Professional Association, PO Box 3701, 1000 Elm Street, Manchester, New Hampshire 03105,
by and through his attorneys, Sheehan, Phinney, Bass & Green, Professional Association,
Petitioner, and petitions this Honorable Court for instructions to him as trustee of two trusts, for
determination of the status of co-trustee or in the alternative, removal of co-trustee, and for an
emergency order to make distributions to a beneficiary. In support thereof, Petitioner states as
follows:

I.     INTRODUCTION.

1.  Petitioner is named co-trustee of the David W. Plant Irrevocable Trust and
    David W. Plant 2002 Family Trust, two trusts created by the late David W.
    Plant to benefit certain beneficiaries. Serious disputes have arisen about
    multiple matters concerning the trusts so that presently an impasse exists
    which needs judicial interpretation and instructions. More pressing is the
    emergency which presently exists because the bank which holds the assets of
    the trusts is unsure whether it can make distributions on instruction from one
    trustee, the Petitioner, to beneficiary Keith F. Baity, who relies on such
    support for his housing and partial support for other living expenses, until the
    impasse is resolved. Therefore, Petitioner seeks an emergency hearing on the
    matter of continued support for Keith F. Baity, as well as a hearing on the
    other matters set forth in this petition.

1

## II. INTERESTED PARTIES.

The parties to this action are the trustees and beneficiaries of one or both trusts, and Ledyard Bank, as follows:

2. Ledyard National Bank, which serves as custodian and manages and distributes the funds of the trusts, the address of which is 2 Maple Street, Hanover, New Hampshire 03755.

3. Bette Jean Plant, named co-trustee and beneficiary, whose address is 1 Parklands Drive, Unit 105, Darien, Connecticut 06820.

4. Brianne Jean Gallagher, beneficiary, 54 Almont Street, Medford, MA 02155.

5. Cheryl Baity, beneficiary, 77 West Avenue Darien, CT 06820.

6. Connor Falla, beneficiary, 2544 Weddington Avenue, Apt. 2220, Charlotte, NC 28204.

7. Frank Lilley, beneficiary, 396 Blossom Tree Lane SE, Bolivia, NC 28422.

8. John Baity Jr., beneficiary, 24 Cricket Hill Road, Bedford, NH 03110.

9. Keith F. Baity, beneficiary, 37 Hawthorne Drive, Apt. 320, Bedford, NH 03110.

10. Marco Baity-Jesi, beneficiary, Zypressenstrasse 138, 808004 Zurich, Switzerland, and c/o Keith F. Baity, 37 Hawthorne Drive, Apt. 320, Bedford, NH 03110.

11. Mina Cho, beneficiary, 257 Lowell Street, Arlington, MA 02474.

12. Robert Lilley, beneficiary, 322 Patriots Rd., Templeton, MA 01436.

13. Ryan Falla, beneficiary, 614 S 1st Street Apt. 365, Austin, TX 78704.

14. Susan Plant, beneficiary, 257 Lowell Street, Arlington, MA 02474.

15. Nancy Steed, beneficiary, 51 Brook Hills Circle, White Plains, NY 10605.

## III. JURISDICTION AND VENUE.

16. The Court has jurisdiction of this matter under the provisions of NHRSA 564-B:2-201, which states in part (a), "The court may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law."

2

17. Petitioner is an interested person as successor co-trustee of two trusts, the David W. Plant Irrevocable Trust, and the David W. Plant 2002 Family Trust, both established by the late David W. Plant. As trustee, Petitioner is an interested party as defined in NHRSA 564-B: 2-201(d).

18. The only New Hampshire parties to this petition are Petitioner, whose primary office is at 1000 Elm Street, Manchester, New Hampshire, and two of the beneficiaries of the trusts, John Baity and Keith Baity, both residents of Bedford, New Hampshire. All other beneficiaries live out-of-state. Therefore, venue is proper in Hillsborough County. See NHRSA 564-B:1-108(a)(1).

IV.      FACTS AND NATURE OF REQUESTS.

19. David W. Plant, Esq. and his wife, Bette Jean Plant, moved to New Hampshire in 1999 from New York, where Mr. Plant had been a successful attorney. He continued to practice his profession from New Hampshire as a noted international mediator/arbitrator. He hired Petitioner's law firm to do the real estate closing on property in New London.

20. In 2002, Mr. and Mrs. Plant again consulted with Petitioner's firm regarding having New Hampshire estate planning completed for them, now that they were New Hampshire residents, and Attorney James T. Cain prepared a complete estate plan for them, in accordance with their instructions. These included an irrevocable insurance trust, revocable trusts with marital and family trust components for each spouse, and a separate irrevocable trust for David W. Plant. All of the trusts had multiple beneficiaries after the death of the grantor, and each had identical dispositive provisions. The revocable trusts were amended once in 2011 to add certain beneficiaries who were to receive specific monetary distributions, but otherwise were confirmed. (The two relevant trusts are attached to this petition as **Exhibits A and B**.)

21. Mr. Plant died in 2012, and Mr. Cain and Mrs. Plant became the co-trustees of the David W. Plant Irrevocable Trust and the family trust contained in the David W. Plant 2002 Revocable Trust, as that was the only trust funded, due to the formula for funding and the then provisions of federal tax law. The marital trust was not funded. Ledyard National Bank held all assets of the various trusts, plus other liquid assets of the parties, notably a large IRA held by Mr. Plant, which rolled over to benefit Mrs. Plant upon Mr. Plant's death.

22. Mr. Cain, Mrs. Plant and Ledyard National Bank established a coordinated system by which Mrs. Plant and her staff (bookkeeper and household assistant) formulated a proposed budget for the household, it was reviewed by Mr. Cain, and when approved by him, was funded from the various

3

accounts on a monthly basis by Ledyard making payments to the household. Mr. Cain never had a checkbook or other direct access to the funds in the trusts, all of which were administered by the bank, which made all distributions. Petitioner likewise has never had a checkbook or direct access to any funds.

23. Mr. Cain retired from the practice of law in 2018. According to the terms of the trusts, a successor independent co-trustee was named, the Petitioner, who was familiar with the Plants both from the real estate transaction and from social interactions and several professional consultations with Mr. Plant from his professional practice. The practices established by Mr. Cain and the others as to budgeting and distributions continued unchanged.

24. In late fall 2020, Mrs. Plant consulted with Petitioner regarding certain changes to her estate plan, which were made in March of 2021.

25. In late spring of 2021, Petitioner was contacted by the bookkeeper, Jennifer Dow, who had been Mr. Plant's legal assistant during his mediation/arbitration practice, to indicate Mrs. Plant had fallen and was in an assisted living facility for rehabilitation.

26. That summer, Ms. Dow contacted Petitioner to indicate that Mrs. Plant's children, who previously had nothing to do with the trust administration or household finances, had arrived at Mrs. Plant's residence and indicated they believed she was incapable of handling her own affairs, and that they suspected funds were being diverted from the trusts improperly. Shortly thereafter, they apparently persuaded Mrs. Plant to discharge Ms. Dow and also the housekeeper. Two of the children, Mrs. Plant's sons John Baity and Keith Baity, contacted and met with Petitioner to have an explanation of how the trust worked, what the assets were, and to ask for answers to certain specific questions they had in order to assume responsibility for household administration.

27. Shortly thereafter, John Baity contacted Petitioner to indicate that he and his brother had had a falling out with their sister, Cheryl Baity, and that Cheryl was prohibiting them from seeing their mother. Mrs. Plant then revoked a power of attorney granted to John Baity.

28. John Baity thereafter brought an action in Merrimack County Circuit Court, Probate Division, for guardianship over his mother, an action to which neither Petitioner nor the trusts were parties. John Baity and Mrs. Plant were represented in that action by a series of attorneys, a temporary guardianship was granted, attempted mediation failed, and no final determination of the matter was ever made, as Mrs. Plant had moved from New Hampshire to Darien, Connecticut, to an assisted living facility, during the process. The Merrimack County Circuit Court eventually decided that it

lacked continuing jurisdiction over Mrs. Plant and deferred jurisdiction so the matter could be litigated in Connecticut.

29. During the proceedings mentioned above, various accusations about the mis-use of trust funds were made, and Petitioner informed the court and parties that regular distributions from the trusts would cease and only specifically requests for payments would be honored, until matters became clear. (See Memorandum to Beneficiaries, **Exhibit C.**)

30. At some point, Petitioner was informed by e-mail, purportedly from Mrs. Plant, that he was no longer her attorney and she had retained counsel in Connecticut.

31. In Connecticut, Mrs. Plant brought an action, not to continue the consideration of a guardian, but for what is known there as a "voluntary conservatorship." As in New Hampshire, neither Petitioner nor the trusts were parties to the action, which on information and belief, resulted in a conservator being appointed, but later such action was withdrawn by Mrs. Plant, ostensibly.

32. At some point, Mr. Plant's daughter and stepson, two of the trust beneficiaries, retained Sarah Ambrogi, Esq. as counsel to represent their interests in the increasingly contentious situation surrounding the trusts, and Attorney Ambrogi contacted Petitioner to state that it was their position that no payments should be made to Mrs. Plant since she had sufficient assets in order to pay her expenses. Petitioner reviewed the trusts and notified the beneficiaries that no further payments would be made to Mrs. Plant. (See **Exhibit D.**) The specific section of the trusts is as stated in the David W. Plant Irrevocable Trust, as follows:

"SIXTH: The net income and principal of the Family Trust shall be held and disposed of as follows:

(a) Commencing at the Grantor's death and during the life of the Grantor's said wife, the trustees from time to time may pay to or for the benefit of the Grantor's said wife and the Grantor's issue from time to time living, or any one or more of them, such amounts from the net income and principal and in such proportions among them as the trustees consider necessary for their education and maintenance in health and reasonable comfort, **taking into consideration the income and cash resources known to the trustees to be available for such purposes from other sources.** Any net income not so paid may be added to principal at any time or times." (emphasis added)

5

33. Continuously since ceasing payments to Mrs. Plant, Petitioner and others have been under a virtually constant barrage of communications from Mrs. Plant and her daughter, making all manner of defamatory accusations against Petitioner, Ledyard Bank, John Baity, Keith Baity, and others, and demanding that such payments resume, and claiming that Mrs. Plant is co-trustee and as such can make such directions for distributions to herself, a position inconsistent with the provisions of NHRSA 564-A:3 IV.

34. Petitioner has consistently informed Mrs. Plant and the beneficiaries that as long as she has significant funds in her IRA and owns valuable real estate in New London, New Hampshire which at times has been on the market for sale for over $1 million, by the terms of the trusts, he is not going to resume paying her expenses, unless he is assured that her assets will be distributed in the same manner as the distribution provisions of the trust provide and her revocable trust provided when prior distributions were made, and all beneficiaries consent to the resumption of payments. Mrs. Plant, through counsel and directly, has declined to provide that assurance.

35. Mrs. Plant, directly and through communications from others, has repeatedly demanded that she be recognized as co-trustee, notwithstanding the prior appointment of a temporary guardian in New Hampshire and conservator in Connecticut, and having provided no medical opinion of her competence.

36. Because of all of the communications and invective contained in them, Ledyard Bank has informed Petitioner that until matters are clarified by the Court or by agreement, it is unsure of the status of Mrs. Plant as a co-trustee and whether it should be taking direction from her, and therefore it is declining to make further payments just on the basis of direction from only one trustee, the Petitioner.

37. Due to the above circumstances, Petitioner requires direction from the Court confirming his interpretation of the trust and his authority to direct Ledyard Bank to make distributions and payments of expenses.

Matters concerning distributions to Keith F. Baity, beneficiary of the trusts follow.

38. During conversations regarding use of the funds paid Mrs. Plant over the years, and the support she and David Plant provided during his lifetime, it became known to Petitioner that they had provided support for her son Keith Baity continuously, beginning around 2000. Because of this, and the fact that Mrs. Plant had guaranteed Keith's lease for an apartment in Bedford, New Hampshire, Petitioner continued this practice by paying for Keith's rent and certain, but not all, expenses, since he was limited in his ability to earn money for various medical reasons.

39. Mrs. Plant and her daughter continuously objected to payments to or on behalf of Keith, and made assertions that funds were being paid to John Baity as well, even though none had ever been paid to or on John's behalf. Attorney Ambrogi also questioned such payments and Petitioner investigated the history of such payments and summarized that history and Keith's medical and employment situation in a letter to Attorney Ambrogi which was also sent to other beneficiaries including Mrs. Plant through her then attorneys. (See **Exhibit E.**)

40. Since the barrage of communications to Ledyard Bank have resulted in it reluctantly informing Petitioner that no further payments will be made to or on behalf of Keith until the matters are clarified, as set forth in III above, an emergency has arisen as to how he will be supported which requires an emergency order allowing the trust to continue payments.

Matters related to Bette Jean Plant continuing as Co-Trustee.

41. As stated in IV above, Petitioner is unsure of the ability of Mrs. Plant to perform duties as co-trustee and is in need of a medical examination of her by an independent physician to opine on her ability to perform those duties.

42. Further, as Mrs. Plant has threatened Keith Baity that she would cause the Bank to cease payments to him if he did not support her attempts to force Petitioner to resume payments to her, Petitioner believes she has confused her roles as supposed co-trustee and beneficiary and, if indeed she is qualified to serve as co-trustee her conduct has been so inappropriate as a co-trustee that she has forfeited any right to serve in that capacity. (See e-mail to Petitioner from Keith Baity, **Exhibit F.**) Petitioner has the right to request this under NHRSA 564-B:7-706 (a) and (b).

V.   REQUESTS FOR RELIEF. Based upon the above, Petitioner prays this Honorable Court provide the following relief:

A.   Hold an emergency hearing on the need to allow Petitioner to resume payments to or on behalf of Keith Baity, due to the lack of other resources available to him to provide for care, shelter and support, in amounts in the discretion of the Petitioner.

B.   Declare that the David W. Plant 2002 Family Trust and the David W. Plant Irrevocable trusts both require the Trustee to consider other assets available to a beneficiary, in this case Bette Jean Plant, before making distributions to the beneficiary.

C.   Order an independent medical examination of Bette Jean Plant to determine her ability to serve as co-trustee, or, in the alternative, remove her as co-

trustee based on misconduct, under the provisions of NHRSA 564-B:7-706 (a) or (b).

D.   Provide such other relief as is just and equitable.

Respectfully submitted,

BRADFORD E. COOK, TRUSTEE

By his attorneys,

SHEEHAN, PHINNEY, BASS & GREEN, P.A.

By: _Jennifer P. Lyon_____
    Jennifer P. Lyon N.H. Bar No. 274086
    1000 Elm Street PO Box 3701
    Manchester, NH 03105-3701
    (T) 603-627-8394
    (F) 603-641-2343
    jlyon@sheehan.com

Date: _7/10/23_____

## VERIFICATION

I, Bradford E. Cook, Petitioner, hereby verify that the facts set forth in the within Petition are true and accurate, to the best of my knowledge, information, and belief.

Date: _7/10/23_____            _Bradford E. Cook_____
                               Bradford E. Cook, Trustee

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this _10 Th_ day of July, 2023, by Bradford E. Cook.

_Arlene E. Cox_____
Notary Public
My commission expires:

ARLENE E. COX
STATE OF
-MY-
COMMISSION
EXPIRES
DECEMBER 22,
2026
NEW HAMPSHIRE
NOTARY PUBLIC

8

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                      Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

————————————————————x

EXHIBIT C

ORIGINAL DAVID W. PLANT TRUST AND MARITAL TRUST DOCUMENTS

This exhibit contains the original trust instruments executed by David W.
Plant. These documents establish Mrs. Plant as the primary lifetime
beneficiary and co-trustee and define mandatory distribution provisions.
These documents serve as the controlling baseline against which all
subsequent actions, pleadings, and purported amendments must be measured.

December 18, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**EXHIBIT:TRUST PROVISIONS ESTABLISHING**

**MRS. BETTE JEAN PLANT AS PRIMARY BENEFICIARY
OF THE DAVID W. PLANT REVOCABLE TRUST**

## I. PURPOSE OF THIS EXHIBIT

This exhibit identifies and presents the specific provisions within the David W. Plant Revocable Trust and its Second Amendment that establish Mrs. Bette Jean Plant as the primary beneficiary of the trust during the Grantor's lifetime and upon his death.

## II. SUMMARY OF CONTROLLING TRUST PROVISIONS

| DOCUMENT | LOCATION | BENEFICIARY DESIGNATION |
|---|---|---|
| Original Trust | Page 4, Article SEVENTH | Marital Deduction - Wife receives fractional share to minimize estate taxes |
| Original Trust | Page 4, Article EIGHTH | Family Trust - Wife listed first among income and principal beneficiaries |
| Second Amendment (03/30/2011) | Page 16, Article FOURTH | Wife receives all tangible personal property if she survives Grantor |
| Second Amendment (03/30/2011) | Page 16, Article FIFTH | Successor provisions only apply if wife does not survive Grantor |

## III. VERBATIM TRUST LANGUAGE

### A. Article SEVENTH (Page 4, Original Trust) - Marital Deduction Provision:

*"If the Grantor's said wife survives the Grantor, the trustee shall distribute to the Grantor's said wife the smallest fractional share of the trust property which, if allowed as a federal estate tax marital deduction, would result in the least possible net federal estate tax being payable as a result of the Grantor's death."*

**Analysis:** This provision confirms Mrs. Bette Jean Plant is entitled to receive a significant distribution upon the Grantor's death through the marital deduction mechanism.

### B. Article EIGHTH (Page 4, Original Trust) - Family Trust Provisions:

*"The net income and principal of the Family Trust shall be held and disposed of (a) commencing at the Grantor's death and during the life of the Grantor's said wife, the trustee from time to time may pay to or for the benefit of the Grantor's said wife, the Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed, and the Grantor's issue from time to time living..."*

**Analysis:** Mrs. Bette Jean Plant is listed first among the permissible beneficiaries of the Family Trust, establishing her priority position as primary beneficiary.

## C. Article FOURTH (Page 16, Second Amendment dated March 30, 2011) - Tangible Personal Property:

> *"Upon the Grantor's death, the trustee shall distribute all tangible personal property (as distinguished from money, securities and the like) included in the trust property to the Grantor's wife, Bette Jean Plant, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine."*

**Analysis:** The Second Amendment explicitly names "Bette Jean Plant" as the primary recipient of all tangible personal property. Successor beneficiaries are only designated in the event she does not survive the Grantor.

## IV. CONCLUSION

The trust documents establish the following facts:

1. Mrs. Bette Jean Plant is the named spouse of the Grantor, David W. Plant.

2. She is designated as the primary beneficiary of the marital deduction share under Article SEVENTH.

3. She is listed first among permissible beneficiaries of the Family Trust under Article EIGHTH.

4. She is the sole primary recipient of all tangible personal property under the Second Amendment, Article FOURTH.

5. Successor beneficiaries are only activated upon the condition that she does not survive the Grantor.

**These provisions, taken together, unambiguously establish Mrs. Bette Jean Plant as the primary beneficiary of the David W. Plant Revocable Trust.**



| Account | 7/23/2012 mkt. value |
|---|---|
| David W. Plant 2002 Revocable Trust | $ 2,296,071 |
| David W. Plant IRA | $ 1,435,233 |
| Total | $ 3,731,304 |

The David W. Plant 2002 Trust operates for the benefit of Jeanie and family following David's passing. The Family trust created under paragraph EIGHTH operates for the benefit of Jeanie, Mabel Robinson, Nancy Steed and David's issue (Susan Plant, Susan's descendants, Frank Lilley, Macro Sergio Baity-Jesi and their descendants) at the discretion of the trustee for income and prinicpal distributions.

Jeanie Plant is the primary beneficiary of the David Plant IRA. She may make the IRA her own and receive the required minimum distributions (or more) annually.

The David W. Plant 2002 Irrevocable Trust operates for the benefit of Jeanie. The Family Trust created under paragraph SIXTH gives the trustees discretion to distribute income and principal for her maintenance in health and resasonable comfort.

**Sources of Income:**

| | |
|---|---|
| Social Security | $ 22,000 |
| IRA - minimum required distribution | $ 73,000 |
| Income from Family Trust (assumes 4%) | $ 92,000 |
| Income from 2002 Irrevocable Trust (assumes 4%) | $ 36,000 |
| Jeanie's IRA -required minimum distribution | $ 3,150 |
| TIAA/CREF - estimated required minimum dist. | $ 3,300 |
| Total Income | $ 229,450 |

**DAVID WILLIAM PLANT**
Seven Geo Langeloh Court
Rye, NY 10580

February 18, 1999

*A Note for Cheryl, Frank, John, Keith and Sue (in alphabetical order)*

I do not recall what Jeanie and I may or may not have said to any of you about a second to die irrevocable life insurance trust we have recently created

You five are the principal beneficiaries of the trust. Upon the death of the survivor of Jeanie and me, each of you will receive a portion of the proceeds of the trust. We have established this trust, so that each of you will receive something after we both die, notwithstanding that our currently modest estate may be substantially depleted, e.g. because of heavy medical bills for one or both of us (We know of no debilitating medical issue at present )

At present, the trust principal comprises a life insurance policy with an aggregate death benefit of $1,000,000. We shall transmit funds each July to the two trustees who will use those funds to pay the annual premium. (We have just transmitted to the trustees funds to pay the first premium retroactive to July 1998 ) If the insurance company invests its assets wisely the death benefit should grow over time. It is impossible to predict what the potentially larger death benefit will be, but the aggregate death benefit will not be less than $1,000,000, so long as we continue to pay the premiums.

In order to establish with the internal revenue service that (1) the premiums are completed gifts to you, and therefore (2) the entire death benefit should go directly to you free of federal estate taxes and not into Jeanie's or my estate, each of you has the legal right to withdraw your proportionate share of each year's premium from the trust each time we pay it  Jeanie and I suggest that none of you exercise your right to withdraw from the trust before we both die and the death benefit is paid  One consequence of an early withdrawal will be to require us to make up the difference between the premium due and whatever you withdraw, thus favoring whoever withdraws over whoever does not withdraw   Obviously, if each of you were to exercise your right to withdraw, we could not pay snow-balling premium obligations, and there would be no policy and no benefits in the future for any of you.

The two trustees are Chris Harnett and Kelsey Nix, two young partners at Fish & Neave in New York City  They will shortly be sending to each of you a letter formally setting out your rights to withdraw  After each of you considers your letter carefully, please advise Chris and Kelsey of your desires in accordance with their instructions

This is an event that will occur from now on in about July or August of each year  We hope the pot at the end of the rainbow will offset any nuisance attributable to this annual exercise

We love each of you very much.

| Account | 7/23/2012 mkt. value | |
| --- | --- | --- |
| David W. Plant 2002 Revocable Trust | $ | 2,296,071 |
| David W. Plant IRA | $ | 1,435,233 |
| Total | $ | 3,731,304 |

The David W. Plant 2002 Trust operates for the benefit of Jeanie and family following David's passing. The Family trust created under paragraph EIGHTH operates for the benefit of Jeanie, Mabel Robinson, Nancy Steed and David's issue (Susan Plant, Susan's descendants, Frank Lilley, Macro Sergio Baity-Jesi and their descendants) at the discretion of the trustee for income and prinicpal distributions.

Jeanie Plant is the primary beneficiary of the David Plant IRA. She may make the IRA her own and receive the required minimum distributions (or more) annually.

The David W. Plant 2002 Irrevocable Trust operates for the benefit of Jeanie. The Family Trust created under paragraph SIXTH gives the trustees discretion to distribute income and principal for her maintenance in health and resasonable comfort.

**Sources of Income:**

| | | |
| --- | --- | --- |
| Social Security | $ | 22,000 |
| IRA - minimum required distribution | $ | 73,000 |
| Income from Family Trust (assumes 4%) | $ | 92,000 |
| Income from 2002 Irrevocable Trust (assumes 4%) | $ | 36,000 |
| Jeanie's IRA -required minimum distribution | $ | 3,150 |
| TIAA/CREF - estimated required minimum dist. | $ | 3,300 |
| Total Income | $ | 229,450 |

**Subj:** **Re: FW: Plant 2d to die life insur trust**
**Date:** 8/10/2009 10:05:38 A.M. Eastern Daylight Time
**From:** DPlantADR
**To:** JCAIN@sheehan.com
**CC:** jtdow@tds.net

Dear Ted:

The names and addresses all seem to be correct.

I do not understand why Marco's letter was returned. His mother's address is correctly listed. He has been a student in Paris this past school year. Precisely where he is now I do not know. Let's try again at his mother's address.

Many thanks for all this.

David

David W. Plant
216 Woodland Trace
New London, NH 03257
USA
Tel 603 5262653
Fax 603 5262654

In a message dated 8/7/2009 10:57:03 A.M. Eastern Daylight Time, JCAIN@sheehan.com writes:

> David,
> Attached are the addresses you sent to me last December for the beneficiary notification letters (the "Crummey letters") for the second-to die life insurance trust. Please let me know if these addresses are still current so I can send the new Crummey letters for the recent premium payment. Please note that the letter sent in December to Marco Baity-Jesi was returned as undeliverable.
> Ted Cain
> 627-8239
>
> _____
>
> **From:** DPlantADR@aol.com [mailto:DPlantADR@aol.com]
> **Sent:** Tuesday, December 02, 2008 12:13 PM
> **To:** James T. Cain
> **Cc:** jeanieplant@comcast.net
> **Subject:** Plant 2d to die life insur trust
>
> Dear Ted:
>
> Here are the addresses.
>
> Thank you for attending to this.
>
> Best.
>
> David
>
> David W. Plant
> 216 Woodland Trace
> New London, NH 03257

Subj: **FW: Plant 2d to die life insur trust**
Date: 8/7/2009 10:57:03 A.M. Eastern Daylight Time
From: JCAIN@sheehan.com
To: DPlantADR@aol.com
CC: jtdow@tds.net

David,
Attached are the addresses you sent to me last December for the beneficiary notification letters (the "Crummey letters") for the second-to die life insurance trust. Please let me know if these addresses are still current so I can send the new Crummey letters for the recent premium payment. Please note that the letter sent in December to Marco Baity-Jesi was returned as undeliverable.
Ted Cain
627-8239

---

**From:** DPlantADR@aol.com [mailto:DPlantADR@aol.com]
**Sent:** Tuesday, December 02, 2008 12:13 PM
**To:** James T. Cain
**Cc:** jeanieplant@comcast.net
**Subject:** Plant 2d to die life insur trust

Dear Ted:

Here are the addresses.

Thank you for attending to this.

Best.

David

David W. Plant
216 Woodland Trace
New London, NH 03257
USA
Tel 603 5262653
Fax 603 5262654

---

Life should be easier. So should your homepage. Try the NEW AOL.com.

**Exhibit C – IRS Form 706 (Estate Tax Return)**

Filed/Date: 2012 (filed after David W. Plant's death)
Filed by/Source: Internal Revenue Service

Description: This exhibit contains IRS Form 706, the estate tax return proving that the **Marital Trust was funded in 2012**. It confirms that Mrs. Plant's spousal trust was properly established, contradicting claims made in later pleadings.

This cover sheet is part of a uniform set used for all exhibits attached to this complaint. The attached document is provided in full as evidence, to be read in conjunction with the corresponding allegation in the complaint body.

agreement. *Id.*

15. The terms of the trust allow for the trust to make disbursements to beneficiaries, including

Keith Baity. The David W. Plant 2002 Family Trust provides:

> EIGHTH: The net income and principal of the Family Trust shall be held and disposed of as follows:
>
> (a) Commencing at the Grantor's death and during the life of the Grantor's said wife, the trustee from time to time may pay to or for the benefit of the Grantor's said wife, the Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed, and the Grantor's issue from time to time living, or any one or more of them, such amounts from the net income and principal and in such proportions among them as the trustee considers necessary for their education and maintenance in health and reasonable comfort, taking into consideration the income and cash resources known to the trustee to be available for such purposes from other sources.

*See* Exhibit A to the Petition, at EIGHTH (a). Similarly, the David W. Plant Irrevocable

Trust provides:

> SIXTH: The net income and principal of the Family Trust shall be held and disposed of as follows:
>
> (a) Commencing at the Grantor's death and during the life of the Grantor's said wife, the trustees from time to time may pay to or for the benefit of the Grantor's said wife and the Grantor's issue from time to time living, or any one or more of them, such amounts from the net income and principal and in such proportions among them as the trustees consider necessary for their education and maintenance in health and reasonable comfort, taking into consideration the income and cash resources known to the trustees to be available for such purposes from other sources. Any net income not so paid may be added to principal at any time or times.

*See* Exhibit B to the Petition, at SIXTH (a).

16. The terms of the trust allow the co-trustees to use discretion to make those disbursements.

*See* Exhibit A to the Petition, at EIGHTH (a), and Exhibit B to the Petition, at SIXTH (a).

stated that Court would exercise authority against the issue of Mrs. Plant and taking disbursements solely in her son, on the fact that the trust was never intended to take all of the living expenses of Keith Baity while denying Mrs. Plant such access to any of the disbursements on the trust.

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

—————————————————————————x

```
EXHIBIT C
```

```
ORIGINAL DAVID W. PLANT TRUST AND MARITAL TRUST DOCUMENTS

This exhibit contains the original trust instruments executed by
David W. Plant. These documents establish Mrs. Plant as the
primary lifetime beneficiary and co-trustee and define mandatory
distribution provisions. These documents serve as the
controlling baseline against which all subsequent actions,
pleadings, and purported amendments must be measured.
```

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

—————————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.

                           Civil Action No. 3:25-cv-01229-OAW

# DAVID W. PLANT 2002 TRUST

David W. Plant, of New London, New Hampshire (hereinafter called the "Grantor"), hereby declares that he is holding the sum of ten dollars ($10.00) as trustee hereunder; and as trustee he hereby acknowledges that he will hold said sum and all other property transferred to the trustee, all investments and reinvestments thereof, all additions thereto and all substitutions therefor (referred to herein as the "trust property"), IN TRUST, as follows:

FIRST: This trust may be known as the "David W. Plant 2002 Trust." The Grantor shall have the right at any time or times, by a writing or writings (other than a will or codicil) signed by the Grantor and delivered to the trustee during the Grantor's lifetime, to revoke the trust hereunder, or to alter or amend this trust instrument, in whole or in part. If this trust is revoked in its entirety, the revocation shall take effect upon the delivery of the required writing to the trustee, who shall thereupon pay or transfer to the Grantor, or as the Grantor directs, all of the trust property. Any alteration or amendment of this trust instrument shall take effect when delivered in writing to the trustee.

SECOND: For all purposes of this trust instrument: (a) the Grantor's issue shall include not only the Grantor's daughter, Susan W. Plant, and Susan's issue, but also the Grantor's stepson, Frank W. Lilley, Frank's issue, and the issue of the Grantor's wife, Bette Jean Plant (including for these purposes Marco Sergio Baity-Jesi and Marco's issue); and (b) Marco Sergio Baity-Jesi and Marco's issue shall be deemed to be the sole issue of the Grantor's said wife's son, Keith F. Baity.

THIRD: During the lifetime of the Grantor, the trustee shall distribute to the Grantor, or as the Grantor directs, all or such part of the net income or principal as the Grantor from time to time requests; and without any request, the trustee may distribute to the Grantor, at any time or times during the Grantor's lifetime, such amounts or all of the net income or principal as the trustee, in the trustee's discretion, considers advisable for any purpose. Any net income not so distributed may be added to principal at any time or times, and any net income remaining at the death of the Grantor shall be added to principal at that time.

FOURTH: Upon the Grantor's death, the trustee shall dispose of all tangible personal property (as distinguished from money, securities and the like) included in the trust property as follows:

(a)   The trustee shall hold and dispose of certain items of such tangible personal property in accordance with the provisions of Schedule A attached hereto and incorporated herein, as such Schedule is from time to time amended by the Grantor.

(b)     The trustee shall distribute all tangible personal property not disposed of pursuant to paragraph (a) above to the Grantor's said wife, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided equally among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine.

FIFTH:  Upon the Grantor's death, if the Grantor's said wife does not survive the Grantor, the trustee shall distribute the sum of twenty thousand dollars ($20,000) to Rosa Lee Jones, of Mt. Vernon, New York, if she survives the Grantor.

SIXTH:  If the trustee receives any payments designated as "Elder Partners' Payments" from the law firm of Fish & Neave following the Grantor's death, then during the life of the Grantor's said wife the trustee shall distribute each payment so received to the Grantor's said wife. If the trustee receives any such payments following the death of the survivor of the Grantor and the Grantor's said wife, then the trustee shall divide each payment so received into as many equal shares as shall be needed in order to distribute each such payment as follows:

(a)     One share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is living at the time the payment is received by the trustee, or, if she is not then living, such share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is living at the time the payment is received by the trustee, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is living at the time the payment is received by the trustee.

(b)     One share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is living at the time the payment is received by the trustee, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is living at the time the payment is received by the trustee, or, if he is not then living, such share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is living at the time the payment is received by the trustee.

(c)     Three shares shall be distributed to my stepson, John C. Baity, Jr., if he is living at the time the payment is received by the trustee, or, if he is not then living, such shares shall be distributed by right of representation to John's issue who are living at the time the payment is received by the trustee, if any.

(d)     Three shares shall be distributed to my stepson, Keith F. Baity, if he is living at the time the payment is received by the trustee, or, if he is not then living, such shares shall be distributed by right of representation to Keith's issue who are living at the time the payment is received by the trustee, if any.

(e)     Three shares shall be distributed to my stepdaughter, Cheryl R. Baity, if she is living at the time the payment is received by the trustee, or, if she is not then living, such shares shall be distributed by right of representation to Cheryl's issue who are living at the time the payment is received by the trustee, if any.

(f)     Six shares shall be distributed to my daughter, Susan W. Plant, if she is living at the time the payment is received by the trustee, or, if she is not then living, such shares shall be distributed by right of representation to Susan's issue who are living at the time the payment is received by the trustee, if any.

(g)     Six shares shall be distributed to my stepson, Frank W. Lilley, if he is living at the time the payment is received by the trustee, or, if he is not then living, such shares shall be distributed by right of representation to Frank's issue who are living at the time the payment is received by the trustee, if any.

Despite the above provisions, any property distributable under this Article SIXTH to any beneficiary who is under the age of thirty (30) shall be held in trust for such beneficiary as provided in Article NINTH below, instead of being distributed outright.

SEVENTH:  Upon the Grantor's death, any interest in the trust property not disposed of above shall be divided as follows:

(a)     If the Grantor's said wife survives the Grantor, the trustee shall distribute to the Grantor's said wife the smallest fractional share of the trust property which, if allowed as a federal estate tax marital deduction, would result in the least possible net federal estate tax being payable as a result of the Grantor's death. If the order of the death of the Grantor and the death of the Grantor's said wife cannot be established by proof, it shall be presumed, for the purposes of this instrument, that the Grantor's said wife survived the Grantor. This distribution to the Grantor's said wife shall be reduced, and the property to be held in the Family Trust created below shall be increased, to the extent of any disclaimer executed by the Grantor's said wife (or on her behalf by her guardian, her attorney-in-fact, her executor or otherwise) of her interest in all or any portion of such share. The Grantor intends that the value for federal estate tax purposes of this distribution shall be available for the marital deduction allowable by the federal estate tax law applicable to the Grantor's estate; and, therefore, only trust property for which the federal estate tax marital deduction is allowable shall be distributed under this paragraph. For the purpose of determining the "smallest fractional share," the Family Trust created below shall not be considered to qualify for the marital deduction, the credit for state death taxes shall be taken into account only to the extent that total state death taxes payable because of the Grantor's death are not increased, and none of the trust property of the David W. Plant 2002 Irrevocable Trust established by the Grantor on _23 January_, 2002, shall be deemed to be included in the Grantor's gross estate.

(b)     The balance of the trust property not disposed of as provided in paragraph (a) above shall be set aside as a separate trust designated as the "Family Trust," to be held subject to the provisions set forth below.

EIGHTH:  The net income and principal of the Family Trust shall be held and disposed of as follows:

(a)     Commencing at the Grantor's death and during the life of the Grantor's said wife, the trustee from time to time may pay to or for the benefit of the Grantor's said wife, the Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R. Steed, and the Grantor's issue from time to time living, or any one or more of them, such amounts from the net income and principal and in such proportions among them as the trustee considers necessary for their education and maintenance in health and reasonable comfort, taking into consideration the income and cash resources known to the trustee to be available for such purposes from other sources.  Any net income not so paid may be added to principal at any time or times.

(b)     Upon the death of the survivor of the Grantor and the Grantor's said wife, any interest in the Family Trust not disposed of pursuant to the above provisions shall be divided by the trustee into as many equal shares as the trustee shall need to create in order to distribute such shares as follows:

(i)     One share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is then living or, if she is not then living, such share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is then living, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is then living.

(ii)    One share shall be distributed to the Grantor's sister-in-law, Nancy R. Steed, if she is then living, or, if she is not then living, such share shall be distributed to Nancy's husband, Robert M. Steed, if he is then living, or, if he is not then living, such share shall be distributed to the Grantor's mother-in-law, Mabel E. Robinson, if she is then living.

(iii)   Three shares shall be distributed to the Grantor's stepson, John C. Baity, Jr., if he is then living, or, if he is not then living, such shares shall be distributed by right of representation to John's then living issue, if any.

(iv)    Three shares shall be distributed to the Grantor's stepson, Keith F. Baity, if he is then living, or, if he is not then living, such shares shall be distributed by right of representation to Keith's then living issue, if any.

(v)     Three shares shall be distributed to the Grantor's stepdaughter, Cheryl R. Baity, if she is then living, or, if she is not then living, such shares shall be distributed by right of representation to Cheryl's then living issue, if any.

(vi)     Six shares shall be distributed to the Grantor's daughter, Susan W. Plant, if she is then living, or, if she is not then living, such shares shall be distributed by right of representation to Susan's then living issue, if any.

(vii)     Six shares shall be distributed to the Grantor's stepson, Frank W. Lilley, if he is then living, or, if he is not then living, such shares shall be distributed by right of representation to Frank's then living issue, if any.

Despite the above provisions, any property distributable under this paragraph (b) to any beneficiary who is under the age of thirty (30) shall be held in trust for such beneficiary as provided in Article NINTH below, instead of being distributed outright.

NINTH: All property provided under any Article of this instrument to be held under this Article NINTH for a particular beneficiary who is under the age of thirty (30) shall be combined and administered, in each case, in a separate trust for the beneficiary as follows:

(a)     Until the time fixed below for the complete distribution of the trust to the beneficiary or until the prior death of the beneficiary, the trustee from time to time may pay to or for the benefit of the beneficiary such amounts from the net income and principal of the trust as the trustee considers necessary for the beneficiary's education and maintenance in health and reasonable comfort, taking into consideration the income and cash resources known to the trustee to be available for such purposes from other sources. Any net income not so paid may be added to principal at any time or times.

(b)     When the beneficiary reaches the age of twenty-five (25), or upon the creation of this trust if the beneficiary has then reached that age, the trustee shall distribute to the beneficiary one half (1/2) of the then principal of the trust; and when the beneficiary reaches the age of thirty (30), the trustee shall distribute to the beneficiary the then remaining principal and any balance of net income of the trust.

(c)     If the beneficiary dies before reaching the age of thirty (30), then upon the beneficiary's death, the trustee shall distribute the then remaining principal and any balance of net income of the trust to or for the benefit of such appointee or appointees (including the beneficiary's estate) in such proportions and subject to such trusts, powers and conditions as the beneficiary may provide and appoint by will making specific reference to this power of appointment.

(d)   Upon the beneficiary's death, any interest in the trust not disposed of above shall be distributed by right of representation to the beneficiary's then living issue, or, if there are no such issue then living, in equal shares to the beneficiary's then living siblings who are issue of the Grantor, or, if there are no such siblings then living, by right of representation to the Grantor's then living issue; except that any property thus distributable to any beneficiary who is under the age of thirty (30) shall be held in trust for such beneficiary as provided in this Article NINTH, instead of being distributed outright.

TENTH:  Upon the death of the last to die of the Grantor, the Grantor's said wife and all of the Grantor's issue, any property then held in any trust hereunder that is not otherwise disposed of in accordance with the above provisions shall be divided by the trustee into as many equal shares as the trustee shall need to create in order to distribute such shares as follows:

(a)   One share shall be distributed to New London First Baptist Church, of New London, New Hampshire, to be used for its general purposes.

(b)   One share shall be distributed to New York Botanical Garden, of Bronx, New York, to be used for its general purposes.

(c)   One share shall be distributed to Cornell University, of Ithaca, New York, to be used for its general purposes.

ELEVENTH:  Commencing at the Grantor's death, the Grantor's said wife shall have the right to live rent-free in any residence that becomes a part of the Family Trust.  In addition, the Grantor's said wife shall have the right to direct the trustee to sell any such residence and to direct the trustee to reinvest the proceeds of such sale in a new residence.  Any proceeds of sale not so invested shall be added to the principal of the Family Trust.

TWELFTH:  Notwithstanding the provisions of Article EIGHTH above, upon the Grantor's death, the trustee shall pay out of the trust property disposed of under said Article EIGHTH (prior to the division of the trust property disposed of thereunder) all federal and state taxes in the nature of estate, inheritance or like taxes occasioned by the Grantor's death, and any interest or penalties thereon, all without requiring any reimbursement to the trust from the Grantor's executor or administrator or other persons receiving property as a result of the Grantor's death, except that the trustee shall have the right to recover any amounts to which the Grantor's estate or this trust is entitled with respect to the property, if any, in which the Grantor had a qualified terminable interest or over which the Grantor had power of appointment.

In addition, the trustee may, but need not, pay out of the trust property as a whole upon the Grantor's death such of the Grantor's debts (but excluding mortgages and other indebtedness encumbering real estate), the expenses of the Grantor's last illness, the Grantor's funeral and

burial expenses and the expenses of administering the Grantor's estate as may be requested by the Grantor's executor or administrator.

The trustee may rely upon a certificate from the Grantor's executor or administrator to the effect that such taxes, interest, penalties, debts or expenses are payable; and the trustee need not inquire into the legality or amount of any tax, interest, penalty, debt or expense so certified. Payments under this Article may be made to or upon the order of the Grantor's executor or administrator or in such other manner as the trustee considers advisable, but such payments shall be made only out of property or proceeds from property otherwise includable in the Grantor's gross estate for federal estate tax purposes; provided, however, that no such payment shall be made from the funds held in any qualified retirement plan, annuity contract or custodial account described in Internal Revenue Code § 403(b), or individual retirement account, or from any distributions from any such plan, contract or account or from the income therefrom or proceeds of any reinvestment thereof.

THIRTEENTH: Each trust held hereunder shall be subject to the following provisions:

(a)     If any beneficiary under this trust instrument is under a legal disability, or, in the trustee's opinion, in any way is incapacitated so as to be unable to manage his or her financial affairs at the time for any distribution of property to such beneficiary, the trustee may make such distribution by delivering and transferring title to such property (i) directly to such beneficiary, (ii) to such custodian as the trustee may designate for such beneficiary under an applicable state Uniform Transfers to Minors Act (or similar statute), or (iii) to a relative or friend of such beneficiary or in such other manner as the trustee deems best, to be applied for the benefit of such beneficiary; and the trustee shall not be required to see to the application of any distribution so made.

(b)     The interest of each beneficiary, and all payments of income or principal to be made to or for any beneficiary, shall be free from interference or control by any creditor or spouse (or divorced former spouse) of the beneficiary and shall not be capable of anticipation or assignment by the beneficiary.

(c)     Regardless of any other provisions in this trust instrument, no discretionary distribution of income or principal may be made to any beneficiary to the extent that such distribution would have the effect of discharging any person's legal obligation to support or care for such beneficiary.

(d)     If not sooner terminated as provided by the above provisions of this trust instrument, each trust held hereunder shall terminate, and the trust property shall thereupon be distributed outright to the beneficiary of the trust who then is eligible to receive income therefrom, twenty years after the death of the last to die of the Grantor, the Grantor's said wife and the Grantor's issue living at the Grantor's death.

(e)    If at any time after the death of the survivor of the Grantor and the Grantor's said wife any share of principal held under the provisions of this instrument is, in the judgment of the trustee, of a value below that which is practicable to administer, then the trustee may distribute such share outright to the beneficiary who then is eligible to receive the income therefrom.

(f)    After both the Grantor and the Grantor's said wife have died, any share of principal then being held in trust hereunder for any beneficiary or beneficiaries on terms substantially identical to those under which a share of principal is then being held in trust for the same beneficiary or beneficiaries under the provisions of any other trust created by the Grantor or the Grantor's said wife shall for all purposes be consolidated with such other trust.

(g)    Subject to the provisions of Article SECOND above, in this trust instrument, references to "issue" mean descendants in the first, second or any other degree; in each case meaning lawful descendants, whether by blood or adoption (but only if any such adopted descendant was adopted before reaching the age of eighteen years).

FOURTEENTH:  In extension and not in limitation of the powers given the trustee by the provisions of New Hampshire Revised Statutes Annotated, Chapter 564-A, or any other law or other provisions of this instrument, the trustee of each trust hereunder shall have the power, exercisable without order or license of court:

(a)    To manage, sell, contract to sell, grant options to purchase, convey, exchange, transfer, abandon, improve, repair, insure, lease for any term even though commencing in the future or extending beyond the term of the trusts and otherwise deal with all property, real or personal, in such manner, for such considerations, and on such terms and conditions as the trustee shall decide.

(b)    To retain indefinitely, and to invest and reinvest the trust property in stocks, bonds, mortgages, common trust funds, notes or other property of any kind, real or personal, irrespective of rules of law, and any investment made or retained by the trustee in good faith shall be proper although not of a kind or constituting a diversification considered by law suitable for trust investments; and to sell or write covered option contracts with respect to securities included in the trust property and to purchase the same for the purpose of closing out the same.

(c)    To subdivide, raze, alter, dedicate, vacate, resubdivide, donate, partition or release real estate and any or all improvements thereon, and to renew or extend leases, amend, change or modify leases, contract to make leases, grant options to lease, options to renew leases, options to purchase the whole or any part of the reversion, contract regarding the manner of fixing the amounts of present or future rentals, and grant easements or charges of any kind,

on or with respect to such real estate, or any right, title, or interest therein, all for such considerations and on such terms and conditions as the trustee shall decide.

(d) To borrow money for any purpose, on such terms and from such sources (including any trustee acting hereunder) as the trustee considers proper, and to mortgage or pledge any trust property.

(e) To compromise, contest, arbitrate or abandon claims or demands, all in the trustee's discretion.

(f) To have with respect to trust property all the rights of an individual owner, including the power to give proxies, to participate in voting trusts, mergers, consolidations, foreclosures, reorganizations or liquidations, and to exercise or sell stock subscription or conversion rights.

(g) To hold securities or other property in the name of a nominee, agent, or in such other manner as the trustee deems best with or without disclosing the trust relationship.

(h) To employ agents and counsel and to delegate to them such of the trustee's powers as the trustee considers desirable.

(i) To pay all taxes, and all reasonable costs, charges and expenses incurred in the administration of the trusts hereby created, including reasonable and appropriate compensation to the trustee and the trustee's agents and counsel.

(j) To purchase property from, sell property or make secured loans to, or otherwise deal without restriction with the personal representative, trustee or other representative of any trust or estate in which any beneficiary has an interest, even though a trustee hereunder be such personal representative, trustee or representative, without liability for loss or depreciation resulting therefrom.

(k) To receive additional property from any person by will or otherwise.

(l) To transfer the trust property (or any portion thereof) or the situs of trust administration, or both, at any time and from time to time from one jurisdiction to another jurisdiction and, regardless of any other designation of applicable law, to elect in writing that the law of such other jurisdiction shall thereafter govern to such extent as may be necessary and appropriate.

(m) To appoint or remove from time to time by written instrument any person or qualified corporation, wherever located, as special trustee as to part or all of the trust property, and such special trustee, except as specifically limited or provided by this or the appointing

instrument, shall have all of the rights, titles, powers, duties, discretions and immunities of the trustees.

(n)    To divide or distribute trust property in undivided interests, in cash or in kind or partly in each, in pro rata or non-pro rata shares using valuations determined by the trustee to be fair market values as of the date of such division or distribution, and for any reason to sever on a fractional basis any trust held hereunder into two or more trusts having terms identical to the original trust.

(o)    To perform any and all other acts in the trustee's judgment necessary or appropriate for the proper and advantageous management, investment and distribution of the trust property.

Each of the trusts hereunder shall constitute a separate and distinct trust, but for convenience of administration the trustee may, in the trustee's discretion, mingle or combine any of the investments or property of said trusts in a common fund in which the several contributing trusts shall have undivided proportionate interests.

FIFTEENTH: References in this trust instrument to the "trustee" mean with respect to each trust hereunder the one or more trustees, whether original or successor, for the time being in office.

Any trustee may resign by giving written notice to the Grantor, if the Grantor is then living, and to such trustee's co-trustee, or, if none, to such trustee's named successor, or, if none, to the person or persons named below as then having the right to designate a successor trustee hereunder.

If for any reason the Grantor ceases to serve as the trustee hereunder, then the Grantor's said wife and James T. Cain, of Manchester, New Hampshire, shall become the co-trustees hereunder. If for any reason the Grantor's said wife ceases to serve as a co-trustee hereunder, then the vacancy thereby created shall not be filled and the then serving co-trustee shall become the sole trustee hereunder. If for any reason James T. Cain, or any other trustee who succeeds to the office of trustee initially occupied (or intended to be occupied) by James T. Cain, fails or ceases to serve as a co-trustee or as the sole trustee, as the case may be, then such vacancy shall be filled with a successor trustee designated in writing by the Grantor, if living and competent, otherwise by James T. Cain, if living and competent, otherwise by the managing director of the firm of Sheehan, Phinney, Bass + Green, of Manchester, New Hampshire (or its successor firm). At no time shall the Grantor's said wife serve as the sole trustee hereunder.

Each trustee named or designated under the provisions of this Article shall become and be a trustee hereunder upon written acceptance of such office.

No trustee named herein or designated as provided above need furnish a bond or surety. No one dealing with the trustee need inquire concerning the validity of anything the trustee purports to do or need see to the application of any money paid or property transferred to or upon the order of the trustee.

Unless any policy of life insurance made payable to the trustee is assigned to the trustee, the owner of the policy shall retain, as against the trustee, all incidents of ownership thereof and the trustee shall have no responsibility for the payment of premiums thereon. The trustee shall be entitled to indemnification from the trust principal for the expense of any legal proceedings taken to collect the proceeds of any such policy.

SIXTEENTH: During the Grantor's lifetime, the trustee shall render an account of the trust hereunder to the Grantor whenever the Grantor requests, and after the Grantor's death the trustee of each trust hereunder shall render an account of the trust as often as annually to each beneficiary of the trust to whom in the period covered by such account current income from the trust was payable or could have been paid in the trustee's discretion and who is living and competent. If any beneficiary to whom an account would otherwise be rendered is not competent, then such account shall instead be rendered to such beneficiary's natural guardian, if any, otherwise to his or her attorney-in-fact, if any, otherwise to the guardian of his or her person. In the case of each trust hereunder, if an account showing the administration of the trust for any period is rendered by the trustee, the assent thereto by each person to whom the account was properly rendered shall fully protect the trustee as to all matters or transactions stated in such account or shown thereby. The failure of any person to whom an account is so rendered to object in writing to such account within ninety days after it is so rendered shall be deemed an assent thereto.

SEVENTEENTH: Any co-trustee, any named successor trustee or any beneficiary hereunder, who has reason to believe that any person serving as a trustee hereunder is physically or mentally unable to act in such capacity, may seek a determination as to such person's physical and mental condition from the principal physician then attending to such person's care. If such physician certifies in writing that because of physical or mental deterioration or illness such person is unable to manage his or her financial affairs, then such person shall be considered to have ceased or failed to serve as a trustee hereunder. Any person deemed to have ceased or failed to serve as a trustee hereunder pursuant to the above provisions may resume his or her duties as trustee upon the written acceptance of such office at such time as the principal physician then attending to such person's care certifies in writing that such person has regained the ability to manage his or her financial affairs. If any person does resume serving as a trustee hereunder, then any successor trustee who replaced such person shall thereupon cease to act.

EIGHTEENTH: The original of each alteration or amendment of this trust instrument, and of any resignation or appointment of a trustee, and each acceptance of appointment, shall be kept with or attached to the original trust instrument, which may be held by the trustee. Anyone may

rely on a photographic reproduction of the executed original of this trust instrument or of any writings attached thereto as fully as on the original instrument; and the certificate of the trustee that the trustee is acting according to this instrument shall fully protect all persons dealing with the trustee.

NINETEENTH: This trust instrument and the trusts hereunder shall be governed, construed and administered in accordance with the laws of the State of New Hampshire from time to time in force.

SIGNED this 23rd day of January, 2002.

_Thomas S. Smock_
Witness

_David W. Plant_
David W. Plant, Grantor and Trustee

_Robert P. Cheney Jr._
Witness

STATE OF NEW HAMPSHIRE
COUNTY OF Merrimack

The foregoing instrument was acknowledged before me this 23rd day of January, 2002, by David W. Plant.

_Melissa A. Fraser_
Notary Public
My Commission Expires:

MELISSA A. FRASER, Notary Public
My Commission Expires October 18, 2005

# DAVID W. PLANT 2002 TRUST

## First Amendment

On January 23, 2002, David W. Plant, as Grantor, established the David W. Plant 2002 Trust with himself as the trustee. Pursuant to the right reserved by the Grantor under Article FIRST of said trust, the Grantor hereby amends said trust as follows:

1. The Grantor hereby cancels Article FIFTH of said trust and substitutes therefor the following article:

"FIFTH: Upon the Grantor's death, if the Grantor's wife, Bette Jean Plant, does not survive the Grantor, the trustee shall distribute:

(a)    The sum of twenty thousand dollars ($20,000) to Rosa Lee Jones, of Mt. Vernon, New York, if she survives the Grantor.

(b)    The sum of twenty thousand dollars ($20,000) to Nadeen Wentzell, of Newport, New Hampshire, if she survives the Grantor."

2. In all other respects, the Grantor hereby confirms the provisions of said trust.

SIGNED this 30th day of March, 2011.

_____    _____
Witness                            David W. Plant, Grantor and Trustee

_____
Witness

STATE OF NEW HAMPSHIRE
COUNTY OF Hillsborough

The foregoing instrument was acknowledged before me this 30th day of March, 2011, by David W. Plant.

_____
Notary Public
My Commission Expires:

# DAVID W. PLANT 2002 TRUST

## Second Amendment

On January 23, 2002, David W. Plant, as Grantor, established the David W. Plant 2002 Trust with himself as the trustee; and on March 30, 2011, the Grantor executed a First Amendment to said trust. Pursuant to the right reserved by the Grantor under Article FIRST of said trust, the Grantor hereby further amends said trust as follows:

1. The Grantor hereby cancels Article FOURTH of said trust and substitutes therefor the following article:

"FOURTH: Upon the Grantor's death, the trustee shall distribute all tangible personal property (as distinguished from money, securities and the like) included in the trust property to the Grantor's wife, Bette Jean Plant, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine. The Grantor intends to leave a Memorandum of Wishes indicating his wishes as to the disposition of certain items of such tangible personal property, and the Grantor requests that his wishes as set forth in such memorandum be observed."

2. The Grantor hereby cancels Article FIFTH of said trust, as previously amended, and substitutes therefor the following article:

"FIFTH: Upon the Grantor's death, if the Grantor's wife, Bette Jean Plant, does not survive the Grantor, the trustee shall distribute:

(a) The sum of twenty thousand dollars ($20,000) to Jennifer T. Dow, of Bradford, New Hampshire, if she survives the Grantor.

(b) The sum of twenty thousand dollars ($20,000) to Nadeen Wentzell, of Newport, New Hampshire, if she survives the Grantor."

3. In all other respects, the Grantor hereby confirms the provisions of said trust.

SIGNED this _____ day of _____, 2012.

_____          _____
Witness                                   David W. Plant, Grantor and Trustee

_____
Witness

STATE OF NEW HAMPSHIRE
COUNTY OF *Hillsborough*

    The foregoing instrument was acknowledged before me this _18th_ day of
_July_____, 2012, by David W. Plant.

                                               _Susan B. Hall_
                                               Notary Public
                                               My Commission Expires:

SUSAN B. HALL
STATE OF
- MY -
COMMISSION
EXPIRES
JUNE 3,
2014
NEW HAMPSHIRE
NOTARY PUBLIC

2

# WILL OF DAVID W. PLANT

I, David W. Plant, of New London, New Hampshire, make this my last will, hereby revoking all earlier wills and codicils. I do not by this will exercise any power of appointment.

FIRST: As soon after my death as my executor deems consistent with good management, my executor shall pay from the residue of my estate the expenses of my last illness, funeral and burial expenses, all debts owed by me at my death and duly allowed against my estate (but excluding mortgages and other indebtedness encumbering real estate), and the expenses of administering my estate.

SECOND: I am entitled to receive certain payments designated as "Elder Partners' Payments" from the law firm of Fish & Neave. To the extent that during my life I do not receive all such payments to which I am entitled, I may by my last will designate the party to whom the balance of the payments will be made. I hereby designate that all such payments shall be made to the trustee of the trust referred to in Article FOURTH below, to be disposed of in accordance with the provisions thereof, as from time to time amended by me

THIRD: I give all my tangible personal property (as distinguished from money, securities and the like), wherever located, to the trustee of the trust referred to in Article FOURTH below, to be added to the principal of the trust and administered in accordance with the provisions thereof, as from time to time amended by me.

FOURTH: I give and devise the residue of all the property, of whatever kind and wherever located, that I own at my death, to the trustee of the David W. Plant 2002 Trust established earlier this day by me as grantor, to be added to the principal of the trust and administered in accordance with the provisions thereof, as from time to time amended by me. Provision has been made in the trust for my children, stepchildren and more remote descendants and for the method of paying all federal and state taxes in the nature of estate, inheritance or like taxes occasioned by my death.

FIFTH: In addition to other powers, my executor shall have all of the powers conferred on trustees by the provisions of New Hampshire Revised Statutes Annotated, Chapter 564-A, and shall have power from time to time at discretion and without license of court: to retain, and to invest and reinvest in, any kind or amount of property whether or not the same would be deemed appropriate for executors; to sell and contract with respect to any real or personal property in such manner, for such consideration and on such terms as to credit or otherwise as my executor may deem advisable, whether or not the effect thereof extends beyond the period of settling my estate; and to make distribution of my estate wholly or partly in kind.

SIXTH: I name my wife, Bette Jean Plant, as my executor. If for any reason my said wife fails or ceases to serve in that capacity, then I name James T. Cain, of Manchester, New Hampshire, as my executor. If for any reason my said wife and James T. Cain both fail or cease to serve in that capacity, then I name as my executor that person or qualified corporation designated in writing by the managing director of the firm of Sheehan, Phinney, Bass + Green, of Manchester, New Hampshire (or its successor firm).

I direct that my executor be exempt from any bond except a bond for the payment of debts, and legacy and succession taxes. No executor named in this will or a codicil need furnish any surety on any official bond. References in this will or any codicil to my "executor" mean the one or more executors (or administrators with this will annexed) for the time being in office.

In Witness Whereof, I hereby sign this instrument, having placed my initials in the margin of each preceding page, on this 23ᵈ day of JANUARY, 2002.

_David W. Plant_
David W. Plant, Testator


Signed, sealed, published and declared by the above-named David W. Plant, as and for his last will, in the presence of us two who, at his request and in his presence and in the presence of each other, hereto subscribe our names as witnesses, all on the date last above written.

| Name | Residence Address |
|---|---|
| _Thomas S Burack_ | _Hopkinton NH_ |
| _Robert P Cheney Jr._ | _Bow, NH_ |

STATE OF NEW HAMPSHIRE
COUNTY OF Merrimack

The foregoing instrument was acknowledged before me this 23rd day of January, 2002, by David W. Plant, the testator, Thomas S. Burack and Robert P. Cheney, Jr., the witnesses, who under oath do swear as follows:

1. The testator signed the instrument as his will or expressly directed another to sign for him.

2. This was the testator's free and voluntary act for the purposes expressed in the will.

- 2 -

3. Each witness signed at the request of the testator, in his presence, and in the presence of the other witness.

4. To the best of my knowledge, at the time of the signing the testator was at least 18 years of age, or if under 18 years was a married person, and was of sane mind and under no constraint or undue influence.

*Melissa A. Fraser*

Notary Public
My Commission Expires:

MELISSA A. FRASER, Notary Public
My Commission Expires October 18, 2005

Estate Valuation
David W. Plant 2002 Trust

Date of Death: 09/26/2012
Valuation Date: 09/26/2012
Processing Date: 09/27/2012

Estate of: David W. Plant
Account: 54038500
Report Type: Date of Death
Number of Securities: 70
File ID: David W Plant

| | Shares or Par | Security Description | High/Ask | Low/Bid | Mean and/or Adjustments | Div and Int Accruals | Security Value |
|---|---|---|---|---|---|---|---|
| | | | | | | | 73,822.00 |
| 1) | 73822 | Cash (CASH) | | | | | 5,898.23 |
| 2) | 5898.23 | Cash (CASH) | | | | | |
| 3) | 50000 | CLARK CNTY NEV SCH DIST FOR IS (161059AJ5) Financial Times Interactive Data DTD: 07/01/2004 Mat: 06/15/2013 5% 09/26/2012 Int: 06/15/2012 to 09/26/2012 | | 103.25200 Mkt | 103.252000 | 701.39 | 51,626.00 |
| 4) | 50000 | CONCORD N H (2063994W4) Financial Times Interactive Data DTD: 03/15/2006 Mat: 03/15/2015 4% 09/26/2012 Int: 09/15/2012 to 09/26/2012 | | 108.43300 Mkt | 108.433000 | 61.11 | 54,216.50 |
| 5) | 50000 | SALEM N H (794284RH3) Financial Times Interactive Data DTD: 11/01/2006 Mat: 11/01/2015 3.75% 09/26/2012 Int: 05/01/2012 to 09/26/2012 | | 109.69400 Mkt | 109.694000 | 755.21 | 54,847.00 |
| 6) | 125000 | NEW HAMPSHIRE MUN BD BK (64465MJ71) Financial Times Interactive Data DTD: 12/01/2003 Mat: 01/15/2016 4% 09/26/2012 Int: 07/15/2012 to 09/26/2012 | | 104.80900 Mkt | 104.809000 | 986.11 | 131,011.25 |
| 7) | 14888.908 | FEDERATED INSTL TR (31420B300) HI YIELD BD Mutual Fund (as quoted by NASDAQ) 09/26/2012 Daily Div. Accrual as of 09/26/2012 | | 10.12000 Mkt | 10.120000 | 715.41 | 150,675.75 |
| 8) | 13550.264 | FEDERATED TOTAL RETURN SERS (31428Q101) TOTL RET INSTL Mutual Fund (as quoted by NASDAQ) 09/26/2012 Daily Div. Accrual as of 09/26/2012 | | 11.64000 Mkt | 11.640000 | 359.22 | 157,725.07 |
| 9) | 510 | AFLAC INC (001055102) COM New York Stock Exchange 09/26/2012 | 47.47000 | 46.35000 B/L | 46.910000 | | 23,924.10 |
| 10) | 500 | AMERICAN TOWER CORP NEW (03027X100) COM New York Stock Exchange 09/26/2012 | 71.66000 | 70.03000 H/L | 70.845000 | | 35,422.50 |
| 11) | 725 | AMERICAN WTR WKS CO INC NEW (030420103) COM New York Stock Exchange 09/26/2012 | 37.17000 | 36.68000 H/L | 36.925000 | | 26,770.63 |
| 12) | 390 | ANALOG DEVICES INC (032654105) COM New York Stock Exchange 09/26/2012 | 39.10000 | 38.44000 H/L | 38.770000 | | 15,120.30 |

Page 1

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us



Court Name:   6th Circuit - Probate Division - Concord

Case Name:   Estate of  David W. Plant

Case Number:
(if known)

## PETITION FOR ESTATE ADMINISTRATION

1.   Petitioner Name   Bette Jean Plant          Telephone (603) 526-2653

     Mailing Address   216 Woodland Trace, New London, NH  03257

2.   Petitioner Name   _____   Telephone _____

     Mailing Address   _____

3.   Attorney Name   James T. Cain          Telephone (603) 668-0300

     Mailing Address   P.O. Box 3701, Manchester, NH 03105-3701          Bar ID# 5512

4.   Deceased Name   David W. Plant          Date of Death 09/26/2012

     Residence (street, city or town) 216 Woodland Trace, New London

5.   Deceased died:   ☑ With will          ☐ Without will

6.   Petitioner was:   ☑ Named          ☐ Not named in will of the deceased.

7.   Petitioner asks to serve as:          ☑ Executor          ☐ Administrator

     ☐ Ancillary Executor or Administrator          ☐ Special Administrator

     ☐ Administrator With Will Annexed          ☐ Administrator De Bonis Non

8.   If applicable, the named executor or previous administrator or executor,

     _____ of _____

     cannot serve or continue to serve because

     _____

     _____

9.   The petitioner is filing this petition pursuant to Waiver of Full Administration under
     RSA 553:32.          ☐ Yes          ☑ No

10.  IF WAIVER OF ADMINISTRATION OR ANCILLARY ADMINISTRATION, and if the deceased
     owned real estate in New Hampshire, list the location of the real estate.

     _____

     _____

     _____

Page 1 of 2

Form **706**

(Rev. August 2012)

Department of the Treasury
Internal Revenue Service

# United States Estate (and Generation-Skipping Transfer) Tax Return

▶ Estate of a citizen or resident of the United States (see instructions). To be filed for decedents dying after December 31, 2011, and before January 1, 2013.
▶ Information about Form 706 and its separate instructions is at www.irs.gov/form706.

OMB No. 1545-0015

## Part 1 - Decedent and Executor

| 1a Decedent's first name and middle initial (and maiden name, if any) | 1b Decedent's last name | 2 Decedent's social security no. |
|---|---|---|
| David W. | Plant | 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 |

| 3a County, state, and ZIP or foreign country and postal code, of legal residence (domicile) at time of death | 3b Year domicile established | 4 Date of birth | 5 Date of death |
|---|---|---|---|
| Merrimack County, NH 03257 | 1999 | 04/22/1931 | 09/26/2012 |

| 6a Name of executor (see instructions) | 6b Executor's address (number and street including apartment or suite no.; city, town, or post office; state; country; or ZIP or postal code) and phone no. |
|---|---|
| Bette Jean Plant | 216 Woodland Trace |
| **6c** Executor's social security number (see instructions) | New London, NH  03257 |
| 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 | Phone no. |

6d  If there are multiple executors, check here ☐ and attach a list showing the names, addresses, telephone numbers, and SSNs of the additional executors.

| 7a Name and location of court where will was probated or estate administered | 7b Case number |
|---|---|
| 6th Circuit Ct - Probate Division, Concord, NH | Pending |

8  If decedent died testate, check here ▶ ☒ and attach a certified copy of the will.     9  If you extended the time to file this Form 706, check here ▶ ☐

10  If Schedule R-1 is attached, check here ▶ ☐     11  If you are estimating the value of assets included in the gross estate on line 1 pursuant to the special rule of Reg. section 20.2010-2T(a) (7)(ii), check here ▶ ☐

## Part 2 - Tax Computation

| | | | |
|---|---|---|---|
| 1 | Total gross estate less exclusion (from Part 5-Recapitulation, item 13) | 1 | 5,239,691.29 |
| 2 | Tentative total allowable deductions (from Part 5-Recapitulation, item 24) | 2 | 2,070,738.75 |
| 3a | Tentative taxable estate (subtract line 2 from line 1) | 3a | 3,168,952.54 |
| b | State death tax deduction | 3b | |
| c | Taxable estate (subtract line 3b from line 3a) | 3c | 3,168,952.54 |
| 4 | Adjusted taxable gifts (see instructions) | 4 | |
| 5 | Add lines 3c and 4 | 5 | 3,168,952.54 |
| 6 | Tentative tax on the amount on line 5 from Table A in the instructions | 6 | 1,089,933.39 |
| 7 | Total gift tax paid or payable (see instructions) | 7 | |
| 8 | Gross estate tax (subtract line 7 from line 6) | 8 | 1,089,933.39 |

| | | | | | |
|---|---|---|---|---|---|
| 9a | Basic exclusion amount | 9a | 5,120,000.00 | | |
| 9b | Deceased spousal unused exclusion (DSUE) amount from predeceased spouse(s), if any (from Section D, Part 6-Portability of Deceased Spousal Unused Exclusion) | 9b | | | |
| 9c | Applicable exclusion amount (add lines 9a and 9b) | 9c | 5,120,000.00 | | |
| 9d | Applicable credit amount (tentative tax on the amount in 9c from Table A in the instructions) | 9d | 1,772,800.00 | | |
| 10 | Adjustment to applicable credit amount (May not exceed $6,000. See instructions.) | 10 | | | |
| 11 | Allowable applicable credit amount (subtract line 10 from line 9d) | | | 11 | 1,772,800.00 |
| 12 | Subtract line 11 from line 8 (but do not enter less than zero) | | | 12 | 0.00 |
| 13 | Credit for foreign death taxes (from Schedule P). (Attach Form(s) 706-CE.) | 13 | | | |
| 14 | Credit for tax on prior transfers (from Schedule Q) | 14 | | | |
| 15 | Total credits (add lines 13 and 14) | | | 15 | |
| 16 | Net estate tax (subtract line 15 from line 12) | | | 16 | 0.00 |
| 17 | Generation-skipping transfer (GST) taxes payable (from Schedule R, Part 2, line 10) | | | 17 | |
| 18 | Total transfer taxes (add lines 16 and 17) | | | 18 | |
| 19 | Prior payments (explain in an attached statement) | | | 19 | |
| 20 | Balance due (or overpayment) (subtract line 19 from line 18) | | | 20 | 0.00 |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer other than the executor is based on all information of which preparer has any knowledge.

**Sign Here**

| *Bette Jean Plant* | 6/11/13 |
|---|---|
| Signature of executor | Date |
| | |
| Signature of executor | Date |

**Paid Preparer Use Only**

| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|
| James T. Cain | *James T. Cain* | 6/13/13 | | P01448579 |
| Firm's name ▶ | Sheehan Phinney Bass + Green | | Firm's EIN ▶ | 02.0315777 |
| Firm's address ▶ | 1000 Elm Street, P.O. Box 3701 Manchester, NH 03105-3701 | | Phone no. | 603-668-0300 |

LHA
205001
10-03-12

For Privacy Act and Paperwork Reduction Act Notice, see instructions.

Form **706** (Rev. 8-2012)

1

Case Name: Estate of <u>David W. Plant</u>

Case Number: _____

<u>PETITION FOR ESTATE ADMINISTRATION</u>

11.  The value of the estate of the deceased consists, as nearly as can be ascertained, of:

Real Estate ......................................................................... $ _____0.00

Personal Estate ................................................................... $ _____2,500.00

Total amount of Estate .......................................................... $ _____2,500.00

The petitioner requests that administration be granted to <u>Bette Jean Plant</u>

of <u>216 Woodland Trace, New London</u> _____ and whose date of birth is <u>01/30/1935</u>

The petitioner also requests that the following impartial appraiser be named to take an inventory and appraise the estate of the deceased. (Appraiser is not required under Waiver of Administration.)

Appraiser Name <u>Bradford E. Cook</u> _____ Occupation <u>Attorney</u>

Appraiser Address <u>P.O. Box 3701, Manchester, NH 03105-3701</u>

I certify that on this date I provided this document(s) to the parties who have filed an appearance for this case or who are otherwise interested parties by: ☐ Hand-delivery OR ☑ US Mail OR ☐ Email (E-mail only by prior agreement of the parties based on Circuit Court Administrative Order).

_May 17, 2013_____        _Bette Jean Plant_____
Date                                              Petitioner Signature

_____        _____
Date                                              Petitioner Signature

A CERTIFIED COPY OF THE DEATH CERTIFICATE MUST ACCOMPANY THIS PETITION.

IF DECEASED DIED WITH A WILL, THE ORIGINAL WILL MUST ACCOMPANY THIS PETITION.

---

## ORDER

☐  Petition for Waiver of Full Administration is granted; letters of appointment to be issued.

☐  Petition for administration is granted; letters of appointment to be issued. Prior to the issuance of said letters, the fiduciary is ordered to file with the court, within 30 days of this order, a fiduciary bond in the amount of $_____,
☐ without sureties  ☐ with corporate sureties.  Failure to file the bond within 30 days may result in dismissal of the case.

_____        _____
Date                                              Judge

December 18, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

## EXHIBIT:TRUST PROVISIONS ESTABLISHING

## MRS. BETTE JEAN PLANT AS PRIMARY BENEFICIARY
## OF THE DAVID W. PLANT REVOCABLE TRUST

## I. PURPOSE OF THIS EXHIBIT

This exhibit identifies and presents the specific provisions within the David W. Plant
Revocable Trust and its Second Amendment that establish Mrs. Bette Jean Plant as the
primary beneficiary of the trust during the Grantor's lifetime and upon his death.

## II. SUMMARY OF CONTROLLING TRUST PROVISIONS

| DOCUMENT | LOCATION | BENEFICIARY DESIGNATION |
|---|---|---|
| Original Trust | Page 4, Article SEVENTH | Marital Deduction - Wife receives fractional share to minimize estate taxes |
| Original Trust | Page 4, Article EIGHTH | Family Trust - Wife listed first among income and principal beneficiaries |
| Second Amendment (03/30/2011) | Page 16, Article FOURTH | Wife receives all tangible personal property if she survives Grantor |
| Second Amendment (03/30/2011) | Page 16, Article FIFTH | Successor provisions only apply if wife does not survive Grantor |

## III. VERBATIM TRUST LANGUAGE

### A. Article SEVENTH (Page 4, Original Trust) - Marital Deduction Provision:

*"If the Grantor's said wife survives the Grantor, the trustee shall distribute to the
Grantor's said wife the smallest fractional share of the trust property which, if
allowed as a federal estate tax marital deduction, would result in the least possible
net federal estate tax being payable as a result of the Grantor's death."*

**Analysis:** This provision confirms Mrs. Bette Jean Plant is entitled to receive a significant
distribution upon the Grantor's death through the marital deduction mechanism.

### B. Article EIGHTH (Page 4, Original Trust) - Family Trust Provisions:

*"The net income and principal of the Family Trust shall be held and disposed of (a)
commencing at the Grantor's death and during the life of the Grantor's said wife, the
trustee from time to time may pay to or for the benefit of the Grantor's said wife, the
Grantor's mother-in-law, Mabel E. Robinson, the Grantor's sister-in-law, Nancy R.
Steed, and the Grantor's issue from time to time living..."*

**Analysis:** Mrs. Bette Jean Plant is listed first among the permissible beneficiaries of the Family Trust, establishing her priority position as primary beneficiary.

## C. Article FOURTH (Page 16, Second Amendment dated March 30, 2011) - Tangible Personal Property:

> *"Upon the Grantor's death, the trustee shall distribute all tangible personal property (as distinguished from money, securities and the like) included in the trust property to the Grantor's wife, Bette Jean Plant, if she survives the Grantor, or, if she does not survive the Grantor, to such of the Grantor's daughter, Susan W. Plant, and the Grantor's stepchildren, Frank W. Lilley, John C. Baity, Jr., Keith F. Baity and Cheryl R. Baity, as survive the Grantor, to be divided among them as they determine, or, if they fail to agree upon such division within six months after the Grantor's death, as the trustee shall determine."*

**Analysis:** The Second Amendment explicitly names "Bette Jean Plant" as the primary recipient of all tangible personal property. Successor beneficiaries are only designated in the event she does not survive the Grantor.

## IV. CONCLUSION

The trust documents establish the following facts:

1. Mrs. Bette Jean Plant is the named spouse of the Grantor, David W. Plant.

2. She is designated as the primary beneficiary of the marital deduction share under Article SEVENTH.

3. She is listed first among permissible beneficiaries of the Family Trust under Article EIGHTH.

4. She is the sole primary recipient of all tangible personal property under the Second Amendment, Article FOURTH.

5. Successor beneficiaries are only activated upon the condition that she does not survive the Grantor.

**These provisions, taken together, unambiguously establish Mrs. Bette Jean Plant as the primary beneficiary of the David W. Plant Revocable Trust.**

Estate of: <u>David W. Plant</u>

## Part 6 - Portability of Deceased Spousal Unused Exclusion (DSUE)

### Portability Election

A decedent with a surviving spouse elects portability of the deceased spousal unused exclusion (DSUE) amount, if any, by ... rn No.
further action is required to elect portability of the DSUE amount to allow the surviving spouse to use the decedent's DSUE amount.

### Section A. Opting out of Portability

The estate of a decedent with a surviving spouse may opt out of electing portability of the DSUE amount. Check here and do not complete Sections B and C of Part 6 only

| | Yes | No |
|---|---|---|
| if the estate opts **NOT** to elect portability of the DSUE amount. ☐ | | X |

### Section B. QDOT

Are any assets of the estate being transferred to a qualified domestic trust (QDOT)?

If "Yes," the DSUE amount portable to a surviving spouse (calculated in Section C, below) is preliminary and shall be redetermined at the time of the final distribution
or other taxable event imposing estate tax under section 2056A. See instructions for more details.

### Section C. DSUE Amount Portable to the Surviving Spouse (To be completed by the estate of a decedent making a portability election.)

Complete the following calculation to determine the DSUE amount that can be transferred to the surviving spouse.

| | | |
|---|---|---|
| 1 | Enter amount from line 9c, Part 2 - Tax Computation | 1 | 5,120,000.00 |
| 2 | Enter amount from line 7, Part 2 - Tax Computation | 2 | |
| 3 | Divide amount on line 2 by 35% (0.35). (do not enter less than zero) | 3 | 0.00 |
| 4 | Add lines 1 and 3 | 4 | 5,120,000.00 |
| 5 | Enter the amount from line 5, Part 2 - Tax Computation | 5 | 3,168,952.54 |
| 6 | Subtract line 5 from line 4 (do not enter less than zero) | 6 | 1,951,047.46 |
| 7 | DSUE amount portable to the surviving spouse (Enter the lesser of line 6 or line 9a, Part 2 - Tax Computation) | 7 | 1,951,047.46 |

### Section D. DSUE Amount Received from Predeceased Spouse(s) (To be completed by the estate of a deceased surviving spouse with

DSUE amount from predeceased spouse(s)

Provide the following information to determine the DSUE amount received from deceased spouses.

| A Name of Deceased Spouse (dates of death after December 31, 2010, only) | B Date of Death (enter as mm/dd/yy) | C Portability Election Made? | | D If "Yes," DSUE Amount Received from Spouse | E DSUE Amount Applied by Decedent to Lifetime Gifts | F Year of Form 709 Reporting Use of DSUE Amount Listed in col E | G Remaining DSUE Amount, if any (subtract col. E from col. D) |
|---|---|---|---|---|---|---|---|
| | | Yes | No | | | | |
| **Part 1 - DSUE RECEIVED FROM LAST DECEASED SPOUSE** | | | | | | | |
| | | | | | | | |
| **Part 2 - DSUE RECEIVED FROM OTHER PREDECEASED SPOUSE(S) AND USED BY DECEDENT** | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**Total** (for all DSUE amounts from predeceased spouse(s) applied)         ▶         0.00

Add the amount from Part 1, column D and the total from Part 2, column E. Enter the result on line 9c, Part 2-Tax

Computation

Form 706 (Rev. 8-2012)

Estate of: David W. Plant

## Part 3 - Elections by the Executor

Note. For information on electing portability of the decedent's DSUE amount, including how to opt out of the election, see

of Deceased Spousal Unused Exclusion.

Note. Some of the following elections may require the posting of bonds or liens.

Please check "Yes" or "No" box for each question (see instructions).

| | | Yes | No |
|---|---|---|---|
| 1 | Do you elect alternate valuation? | | X |
| 2 | Do you elect special-use valuation? If "Yes," you must complete and attach Schedule A-1 | | X |
| 3 | Do you elect to pay the taxes in installments as described in section 6166? | | X |
| | If "Yes," you must attach the additional information described in the instructions. | | |
| | Note. By electing section 6166 installment payments, you may be required to provide security for estate tax deferred under | | |
| | section 6166 and interest in the form of a surety bond or a section 6324A lien. | 3 | |
| 4 | Do you elect to postpone the part of the taxes due to a reversionary or remainder interest as described in section 6163? | 4 | X |

## Part 4 - General Information Note. Please attach the necessary supplemental documents. You must attach the death certificate. (See instructions.)

Authorization to receive confidential tax information under Reg. section 601.504(b)(2)(i); to act as the estate's representative before the IRS; and to make written or oral presentations on behalf of the estate:

| Name of representative (print or type) | State | Address (number, street, and room or suite no., city, state, and ZIP code) |
|---|---|---|
| James T. Cain | NH | 1000 Elm Street, P.O. Box 3701 Manchester, NH 03105-3701 |

I declare that I am the  [X] attorney/  [ ] certified public accountant/  [ ] enrolled agent (check the applicable box) for the executor. I am not under suspension or disbarment from practice before the Internal Revenue Service and am qualified to practice in the state shown above.

| Signature | CAF number | Date | Telephone number |
|---|---|---|---|
| James T Cain | 1205-34506R | 4/13/13 | 603-668-0300 |

1 Death certificate number and issuing authority (attach a copy of the death certificate to this return).

#1993316; Town of New London, NH

2 Decedent's business or occupation. If retired, check here ▶ [X] and state decedent's former business or occupation.

Mediator/Arbitrator

3a Marital status of the decedent at time of death:

[X] Married   [ ] Widow/widower   [ ] Single   [ ] Legally separated   [ ] Divorced

3b For all prior marriages, list the name and SSN of the former spouse, the date the marriage ended, and whether the marriage ended by annulment, divorce, or death. Attach additional statements of the same size if necessary.

| 4a Surviving spouse's name | 4b Social security number | 4c Amount received (see instructions) |
|---|---|---|
| Bette Jean Plant | 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 | 2,050,520.57 |

5 Individuals (other than the surviving spouse), trusts, or other estates who receive benefits from the estate (do not include charitable beneficiaries shown in Schedule O) (see instructions).

| Name of individual, trust, or estate receiving $5,000 or more | Identifying number | Relationship to decedent | Amount (see instructions) |
|---|---|---|---|
| David W. Plant Family Trust | 46-6325676 | None | 3,168,952.54 |

All unascertainable beneficiaries and those who receive less than $5,000

| Total | | 3,168,952.54 |
|---|---|---|

If you answer "Yes" to any of the following questions, you must attach additional information as described.

| | | Yes | No |
|---|---|---|---|
| 6 | Is the estate filing a claim for refund? | | X |
| | If "Yes," complete and attach two copies of Schedule PC for each claim. | | X |
| 7 | Does the gross estate contain any section 2044 property (qualified terminable interest property (QTIP) from a prior gift or estate)? (see instructions) | | X |
| 8a | Have federal gift tax returns ever been filed? | | |
| | If "Yes," attach copies of the returns, if available, and furnish the following information: | | |
| b | Period(s) covered | c Internal Revenue office(s) where filed | X | |
| 9a | Was there any insurance on the decedent's life that is not included on the return as part of the gross estate? | | X |
| b | Did the decedent own any insurance on the life of another that is not included in the gross estate? | | |

Page 2

205611
10-03-12

2

# EXHIBIT A-3

## GRANTOR'S STATED INTENT:

## MRS. PLANT AS PRIMARY BENEFICIARY

### Letter from David William Plant to His Children

### February 18, 1999

## I. DOCUMENT IDENTIFICATION

This exhibit is a letter written by David William Plant, the Grantor of the David W. Plant Family Trust and related trusts, dated February 18, 1999. The letter is addressed to his children and stepchildren: Cheryl, Frank, John, Keith, and Sue (in alphabetical order, as noted by the Grantor).

David William Plant died in 2002. This letter, written approximately three years before his death, documents his intent regarding the disposition of his estate and the purpose of the trust structure.

## II. GRANTOR'S STATED INTENT: WIFE AS PRIMARY BENEFICIARY

In his own words, David Plant explained the purpose of the life insurance trust and the intended distribution of his estate:

> *"You five are the principal beneficiaries of the trust. Upon the death of the survivor of Jeanie and me, each of you will receive a portion of the proceeds of the trust. We have established this trust, so that each of you will receive something after we both die, notwithstanding that our currently modest estate may be substantially depleted, e.g. because of heavy medical bills for one or both of us (We know of no debilitating medical issue at present.)"*

This statement establishes that:

1. The children were to receive their inheritance only after the death of both David Plant AND his wife Jeanie (Mrs. Plant).

2. The Grantor expected that the estate would be 'substantially depleted' during the lifetime of Mrs. Plant due to her living expenses and medical care.

3. The life insurance trust was created specifically to ensure the children would inherit something BECAUSE the Grantor intended for Mrs. Plant to use the other trust assets during her lifetime.

## III. LIFE INSURANCE STRUCTURE CONFIRMS SPOUSAL PRIORITY

The Grantor further explained the life insurance arrangement:

> *"At present, the trust principal comprises a life insurance policy with an aggregate death benefit of $1,000,000. We shall transmit funds each July to the two trustees who will use those*

*funds to pay the annual premium... the aggregate death benefit will not be less than $1,000,000,*
*so long as we continue to pay the premiums."*

The Grantor explicitly stated that the life insurance proceeds were intended to pass to the children free of federal estate taxes, meaning outside of the assets available to Mrs. Plant:

> *"In order to establish with the internal revenue service that (1) the premiums are completed gifts to you, and therefore (2) the entire death benefit should go directly to you free of federal estate taxes and not into Jeanie's or my estate, each of you has the legal right to withdraw your proportionate share of each year's premium from the trust each time we pay it."*

## IV. SIGNIFICANCE FOR CURRENT PROCEEDINGS

This document establishes, in the Grantor's own words, that:

1. Mrs. Plant (Jeanie) was intended to be the primary lifetime beneficiary of the estate.

2. The Grantor expected his wife would need and use the trust assets for her maintenance, including end-of-life care.

3. The life insurance trust was created as a separate mechanism specifically because the Grantor anticipated the other trust assets would be consumed by Mrs. Plant's needs.

4. The children's inheritance was intended to come from the life insurance proceeds after both the Grantor and Mrs. Plant had died — not during Mrs. Plant's lifetime.

Any representation that Mrs. Plant is not the primary beneficiary, or that her distributions should be limited to preserve assets for other beneficiaries, directly contradicts the Grantor's documented intent.

The original February 18, 1999 letter from David William Plant is attached.

# DAVID WILLIAM PLANT

Seven Geo. Langeloh Court
Rye, NY 10580

February 18, 1999

*A Note for Cheryl, Frank, John, Keith and Sue (in alphabetical order)*

I do not recall what Jeanie and I may or may not have said to any of you about a second to die irrevocable life insurance trust we have recently created

You five are the principal beneficiaries of the trust. Upon the death of the survivor of Jeanie and me, each of you will receive a portion of the proceeds of the trust. We have established this trust, so that each of you will receive something after we both die, notwithstanding that our currently modest estate may be substantially depleted, e.g. because of heavy medical bills for one or both of us (We know of no debilitating medical issue at present )

At present, the trust principal comprises a life insurance policy with an aggregate death benefit of $1,000,000. We shall transmit funds each July to the two trustees who will use those funds to pay the annual premium. (We have just transmitted to the trustees funds to pay the first premium retroactive to July 1998 ) If the insurance company invests its assets wisely the death benefit should grow over time. It is impossible to predict what the potentially larger death benefit will be, but the aggregate death benefit will not be less than $1,000,000, so long as we continue to pay the premiums.

In order to establish with the internal revenue service that (1) the premiums are completed gifts to you, and therefore (2) the entire death benefit should go directly to you free of federal estate taxes and not into Jeanie's or my estate, each of you has the legal right to withdraw your proportionate share of each year's premium from the trust each time we pay it. Jeanie and I suggest that none of you exercise your right to withdraw from the trust before we both die and the death benefit is paid. One consequence of an early withdrawal will be to require us to make up the difference between the premium due and whatever you withdraw, thus favoring whoever withdraws over whoever does not withdraw. Obviously, if each of you were to exercise your right to withdraw, we could not pay snow-balling premium obligations, and there would be no policy and no benefits in the future for any of you.

The two trustees are Chris Harnett and Kelsey Nix, two young partners at Fish & Neave in New York City. They will shortly be sending to each of you a letter formally setting out your rights to withdraw. After each of you considers your letter carefully, please advise Chris and Kelsey of your desires in accordance with their instructions

This is an event that will occur from now on in about July or August of each year. We hope the pot at the end of the rainbow will offset any nuisance attributable to this annual exercise

We love each of you very much.

| Account | 7/23/2012 mkt. value | |
|---|---|---|
| David W. Plant 2002 Revocable Trust | $ | 2,296,071 |
| David W. Plant IRA | $ | 1,435,233 |
| Total | $ | 3,731,304 |

The David W. Plant 2002 Trust operates for the benefit of Jeanie and family following David's passing. The Family trust created under paragraph EIGHTH operates for the benefit of Jeanie, Mabel Robinson, Nancy Steed and David's issue (Susan Plant, Susan's descendants, Frank Lilley, Macro Sergio Baity-Jesi and their descendants) at the discretion of the trustee for income and prinicpal distributions.

Jeanie Plant is the primary beneficiary of the David Plant IRA. She may make the IRA her own and receive the required minimum distributions (or more) annually.

The David W. Plant 2002 Irrevocable Trust operates for the benefit of Jeanie. The Family Trust created under paragraph SIXTH gives the trustees discretion to distribute income and principal for her maintenance in health and resasonable comfort.

**Sources of Income:**

| | | |
|---|---|---|
| Social Security | $ | 22,000 |
| IRA - minimum required distribution | $ | 73,000 |
| Income from Family Trust (assumes 4%) | $ | 92,000 |
| Income from 2002 Irrevocable Trust (assumes 4%) | $ | 36,000 |
| Jeanie's IRA -required minimum distribution | $ | 3,150 |
| TIAA/CREF - estimated required minimum dist. | $ | 3,300 |
| Total Income | $ | 229,450 |

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

————————————————————x

EXHIBIT D

DOCUMENTARY EVIDENCE OF FORGED AND ALTERED TRUST LANGUAGE

This exhibit contains side-by-side documentary comparisons showing alterations to trust language, including changes from "trustees" to "trustee," elimination of beneficiary priority language, and modifications affecting control of trust assets and life insurance. Plaintiff contends these alterations were used to erase her rights under the trust.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

EXHIBIT ___

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

COMPARISON OF TRUSTEE REPRESENTATIONS TO COURT VERSUS DOCUMENTARY EVIDENCE FROM TRUST INSTRUMENT

| NO. | REPRESENTATION BY COOK TO COURT | COURT RELIANCE/ADOPTION | DOCUMENTARY EVIDENCE FROM TRUST INSTRUMENT |
|---|---|---|---|
| | "Only Keith ever got support" | December 20, 2023 order recites prior support and authorizes discretionary payments to Keith | Article SIXTH(a): "trustees from time to time may pay to or for the benefit of the Grantor's said wife and the Grantor's issue... such amounts... as the trustees consider necessary." Multiple beneficiaries authorized. Records demonstrate others received support. |
| | "Beneficiaries treated equally/fairly" | November 26, 2024 default and February 4, 2025 fee award imply acceptance of "equal/fair" framing | Article SIXTH(a): Wife receives priority during lifetime. Article FIFTH(a): Marital Trust income "shall pay the net income to the Grantor's said wife at least as often as quarterly." Spousal priority is mandated by instrument. |
| | "I will not resume paying her expenses" | November 2024 defaults validated the cessation of payments | Article FIFTH(a): "trustees shall pay the net income to the Grantor's said wife" and "may pay... such amounts from the principal as the trustees consider necessary for... the Grantor's said wife." Spousal support is mandatory, not discretionary. |
| | "Her expenses must come from her IRA" | November 26, 2024 default accepted the spend-down premise | Article FIFTH(a): Trust mandates spousal support "taking into consideration... other sources." Other assets are to be considered, not exhausted first. Forced IRA depletion triggered approximately $901,000 in additional tax liability. |
| | "Petitioner requires direction" | December 20, 2023 and July 29, 2024 orders granted "instructions" | Trust provisions are clear and unambiguous regarding spousal priority and support obligations. No genuine ambiguity existed requiring judicial instruction. |
| | "Life insurance was paid; I didn't know of the loan" | November 26, 2024 defaults accepted "proper management" representation | Article TENTH(a): Trustees have explicit power over insurance policies including "rights to... borrow on any such policy." Trustee had fiduciary duty to know and disclose policy loan exceeding $200,000. |

| NO. | REPRESENTATION BY COOK TO COURT | COURT RELIANCE/ADOPTION | DOCUMENTARY EVIDENCE FROM TRUST INSTRUMENT |
|---|---|---|---|
| | "All expenses properly documented" | February 4, 2025 fee order deemed charges "reasonable" | Article TENTH(k): Trustees may pay "reasonable and appropriate compensation." Objections identified inflated and duplicate charges. |
| | MATERIAL MISSTATEMENT: "Marital Trust never funded" | July-November 2024 defaults embedded "unfunded" premise into record | Article FOURTH(a): "trustees shall set aside as a separate trust designated as the 'Marital Trust' all of the trust property included in the Grantor's gross estate." Federal estate filings and decade of monthly distributions prove funding occurred. |
| | MATERIAL MISSTATEMENT: "Mrs. Plant is not the primary beneficiary" | December 20, 2023 order recited "no priority" | Article FIFTH: Entire Marital Trust exists for wife's benefit. Article SIXTH(a): Wife listed first in Family Trust distributions. Signature page: "Bette Jean Plant, Trustee." Mrs. Plant is both co-trustee and primary lifetime beneficiary under the instrument. |

*epared for submission as exhibit in support of [Motion/Complaint]*

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

————————————————————————x

BETTE JEAN PLANT,

    Plaintiff,


v.                             Civil Action No. 3:25-cv-01229-OAW


BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

————————————————————————x


EXHIBIT E

ATTORNEY BRADFORD COOK EMAIL DENYING EXISTENCE OF MARITAL TRUST

This exhibit contains correspondence from Defendant Cook asserting that no
marital trust existed. The statement directly contradicts decades of trust
administration records, bank distribution ledgers, and original trust
documents. The email is relevant to showing misrepresentations made during
litigation and mediation.

# Cook Lies to Mrs. Plant's Lawyer that the marital trust was not funded.

**From:** "Sean M. Davidson" <sdavidson@lawyersnh.com>
**Subject:** FW: Marital Trust
**Date:** March 4, 2025 at 16:25:21 EST
**To:** "jeanieplant@me.com" <jeanieplant@me.com>
Jeanie,
Please see the below explanation received.
 Sean

Sean M. Davidson, Esq
Welts, White & Fontaine, P.C.
29 Factory Street, PO Box 507
Nashua, NH 03061-0507
Office:  (603) 883-0797 Ext. 545

**From:** Bradford E. Cook <bcook@sheehan.com>
**Sent:** Wednesday, May 8, 2024 1:52 PM
**To:** Sean M. Davidson <sdavidson@lawyersnh.com>
**Subject:** Marital Trust

Sean—Connie asked me to send you the explanation of why the marital trust in the revocable trust is written as it is and why it never existed.  When the trust was written, the tax credit amount in federal law was under a million dollars.  When Mr. Plant died, it was over five million dollars.  He originally would have had a taxable estate and when he died, he did not have a taxable estate. A marital trust is included in a revocable trust so that if there is an estate larger than the personal tax credit, the excess goes into the marital trust.  In order to qualify for the federal marital deduction, certain provisions for mandatory distributions and control by the surviving spouse have to be included.  It is not a matter of intent. In fact, the alternative is to leave the marital amount to the surviving spouse outright, which Mr. Plant chose not to do.  Because the amount was smaller than the tax credit amount, the marital trust never existed, and only the family trust was funded and created upon David Plant's death, when the trust became irrevocable.  The marital trust is irrelevant since it never existed, as I explained to Mrs. Plant's prior counsel when this issue was raised a year or more ago.  Regards,  Brad Cook

**Bradford E. Cook, Esq.**

# SHEEHAN PHINNEY

Sheehan Phinney Bass & Green PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105-3701
Tel: 603-627-8110
Fax: 603-641-2343

*Exhibit A*

# SHEEHAN PHINNEY

Boston • Concord • Manchester • Portsmouth • Upper Valley

Bradford E. Cook, Esq.
Direct Dial: 603-627-8110
bcook@sheehan.com

Reply to: Manchester Office
1000 Elm Street, PO Box 3701
Manchester, NH 03105-3701

September 9, 2021

Beneficiaries of the David Plant Family Trust and David Plant Irrevocable Trust

Ladies and Gentlemen,

Due to the various claims in the Petition for Guardianship filed in the Circuit Court Probate Division for Merrimack County, and various claims and allegations which apparently have been made by certain beneficiaries of the above-captioned trusts as to how funds distributed on a regular basis from the trusts to the Mascoma Bank account of Mrs. Plant have been spent in the past, and in order to be sure that all expenditure of funds on behalf of Mrs. Plant and any other beneficiaries are appropriate, I informed those in attendance at the court hearing yesterday of the following:

1. Effective immediately, no regular distributions from the trusts will be made by Ledyard Bank to the Mascoma Bank account. Ledyard Bank officials informed me yesterday afternoon that they had implemented this change.
2. As this change in no way is intended to cut any beneficiary off from necessary support as provided in the trust documents, it will be necessary for requests for specific payments to be made to me with sufficient advance notice so bills can be paid in a timely manner. I shall then consider the requests and pay them directly to the providers, unless they require further explanation or appear to be inappropriate.
3. This process will continue in force until there is resolution of the court proceeding by decision or an agreement by the parties in mediation which provides a different arrangement for payments consistent with the terms of the trusts and acceptable to the trustees.
4. These rules apply only to distributions from the trusts, and not to any other income received by Mrs. Plant from Social Security or her IRA, which are personal assets which it is my understanding will be controlled and decided by the temporary guardian over her assets as provided in the court order, when that person is located and assumes control of those assets.

Should anyone have any questions, please contact me directly or through counsel.

Sincerely,

Bradford E. Cook
Trustee

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

—————————————————————x

BETTE JEAN PLANT,

    Plaintiff,

v.                            Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK; SHEEHAN PHINNEY BASS & GREEN, P.A.;

LEDYARD NATIONAL BANK; SUSAN M. RENAUD; and

BAKER NEWMAN NOYES, LLC,

    Defendants.

—————————————————————x

EXHIBIT F

LEDYARD BANK MARITAL TRUST DISTRIBUTION RECORDS (2013-2021)

This exhibit contains bank records demonstrating regular monthly
distributions to Mrs. Plant from the marital trust from 2013 through
September 2021. The records establish that the marital trust was actively
administered and that distributions were abruptly terminated despite no
change in trust terms.

GOVERNMENT AND REGULATORY AGENCY NOTIFICATIONS

December 18, 2025

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
**EXHIBIT: LEDYARD NATIONAL BANK AND MASCOMA BANK
STATEMENTS DOCUMENTING TRUST DISTRIBUTIONS TO
MRS. BETTE JEAN PLANT (2013-2021) AND UNLAWFUL
TERMINATION OF DISTRIBUTIONS ON SEPTEMBER 9, 2021**

## I. BACKGROUND

David W. Plant died in 2012. Per the express terms of the David W. Plant Revocable Trust, Mrs. Bette Jean Plant, as the surviving spouse and primary beneficiary, was entitled to receive distributions from all three trust instruments on a regular monthly basis.

This pattern of regular monthly distributions continued without interruption from 2012 until 2021, when Trustee Brad Cook and Ledyard National Bank unilaterally terminated Mrs. Plant's access to her trust funds.

## II. PURPOSE OF THIS EXHIBIT

This exhibit presents bank statements documenting:

1. The established pattern of trust distributions to Mrs. Plant's Mascoma Bank account (2013)

2. Continued distributions in June 2021, just weeks before access was terminated

3. The September 2021 Ledyard statement showing termination of distributions to Mrs. Plant on September 9, 2021

4. Immediate redirection of trust funds to pay for Keith Baity (Mrs. Plant's son), authorized by Brad Cook, against Mrs. Plant's will

## III. SUMMARY OF ATTACHED DOCUMENTS

| DATE | SOURCE | TRANSACTION | SIGNIFICANCE |
|------|--------|-------------|--------------|
| May 24, 2013 | Mascoma Bank Acct 411647 | TRUST ACCT Ledyard National: $825.00 CREDIT $6,646.00 CREDIT $14,766.00 CREDIT | Establishes pattern of regular trust distributions to Mrs. Plant post-2012 |
| June 25, 2021 | Mascoma Bank Acct 411647 | LEDYARD & CO PPD: $9,883.00 CREDIT $11,900.00 CREDIT | Distributions continued just weeks before termination |

| Sept. 9, 2021 | Ledyard Acct 20130155 | Fee For Period Ending Net Transfers: $0.00 | **ALL DISTRIBUTIONS TO MRS. PLANT TERMINATED** |
|---|---|---|---|
| Sept. 21, 2021 | Ledyard Acct 20130155 | Bedford Dental Care "for Keith Baity; 2 Crowns and hygiene appointment" -$3,926.00 | Trust funds diverted to pay son's dental bills |
| Sept. 30, 2021 | Ledyard Acct 20130155 | Bedford Green Apartments "to pay for Keith Baity's rent per Trustee, Brad Cook, authorization" -$1,800.00 | Trust funds diverted to pay son's rent - Cook authorized |

## IV. KEY FACTS ESTABLISHED BY THIS EVIDENCE

5. Mrs. Plant received regular trust distributions from Ledyard National Bank to her Mascoma Bank account from 2012 through June 2021.

6. On September 9, 2021, all distributions to Mrs. Plant were terminated.

7. Immediately following termination, Trustee Brad Cook authorized disbursements from Mrs. Plant's trust to pay expenses for Keith Baity, Mrs. Plant's son.

8. These disbursements included $3,926.00 for Keith Baity's dental care and $1,800.00 for Keith Baity's rent at Bedford Green Apartments.

9. The Ledyard statement explicitly states these payments were made "per Trustee, Brad Cook, authorization."

10. These diversions of trust assets occurred against Mrs. Plant's will and continued for years.

## V. CONCLUSION

**The attached bank statements constitute direct documentary evidence that Brad Cook and Ledyard National Bank unilaterally terminated Mrs. Bette Jean Plant's access to her trust and immediately began diverting trust assets to third parties without her consent.**

## ATTACHED DOCUMENTS

A. Mascoma Savings Bank Statement dated May 28, 2013 (Account 411647)

B. Mascoma Bank Statement dated June 28, 2021 (Account 411647)

C. Ledyard National Bank Statement for September 1-30, 2021 (David Plant Family Tr Inv Agency-S, Account 20130155)



777 Connecticut Ave
Norwalk, CT, 06854-1615
(203) 299-1616

Terminal: 0830M600MIX02
12/19/2025 14:45
Receipt #: BDRKO7HB4320
Type: Purchase

| Qty | Description | Amount |
|-----|-------------|--------|
| 127 | ES B&W S/S White 8.5 x11 | 29.21 |
| 25 | ES Color S/S LTR | 17.75 |

| | SubTotal | 46.96 |
| | State tax | 2.98 |
| | Total | $49.94 |

Acct #:************3186
Mastercard
Chip Read
Auth No.: 38702Z
Mode: Issuer
AID: A000000041010
NO CVM
CVM Result: 1F0302
TVR: 0000008000
IAD:
0110607001220000B27C00000000000000FF
TSI: E800
ARC: 00
APPROVED

The Cardholder agrees to pay the Issuer
of the charge card in accordance with
the agreement between the Issuer and
the Cardholder.



**Tell us how we did and get $7 off your next purchase of $40 or more print products***

**Take the survey by scanning the QR code below or visit www.fedex.com/welisten**



**Offer expires 6/30/2026**

*Terms & Conditions
$7 off print order of $40.00 or more. Discount applies to orders placed in a FedEx Office® store or online through Office.FedEx.com. Offer is valid at time of purchase only, no cash value and may not be discounted or credited toward past or future purchases; discount cannot be used in combination with custom-bid orders, other coupons, or discounts, including account pricing. Discount not valid on the following products and services: finishing-only orders; digital, passport or mounted photo; self-service print, fax, scan, or shred; products provided by third party sites not hosted by FedEx Office. Does not apply to packing, shipping, rush, or delivery charges. Does not apply to retail products. No cash value. Offer void where prohibited or restricted by law. Products, services, and hours may vary by location. TM use promo SKU 40269 for Business Printing Services such as FPM. © 2025 FedEx. All rights reserved."

By submitting your project to FedEx Office or by making a purchase in a FedEx Office store, you agree to all FedEx Office terms and conditions, including limitations of liability.

Request a copy of our terms and conditions from a team member or visit fedex.com/officeserviceterms for details.