JAN 7 2026 PM1:52
FILED - USDC - BPT - CT

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

BETTE JEAN PLANT, by her next friend

and daughter CHERYL R. BAITY,

      Plaintiff,

               v.             Civil Action No. 3:25-cv-01229-OAW

BRADFORD E. COOK, SHEEHAN PHINNEY

BASS + GREEN, P.A., SUSAN RENAUD,

LEDYARD NATIONAL BANK, and

BAKER NEWMAN NOYES,

      Defendants.

## NOTICE OF FILING OF SUPPLEMENTAL EXHIBIT:

## DOCUMENTATION OF EXHAUSTION OF STATE ADMINISTRATIVE REMEDIES,

## STRUCTURAL FUTILITY, AND ABSENCE OF ADEQUATE STATE REMEDY

Plaintiff Bette Jean Plant, by her next friend and daughter Cheryl R. Baity, respectfully

submits this Notice of Filing to place on the record documentation establishing: (1) exhaustion of

state administrative remedies; (2) the structural futility of the New Hampshire Attorney

Discipline Office; (3) the absence of any adequate remedy in New Hampshire for the misconduct

alleged herein; and (4) the pattern of institutional non-enforcement that forms part of the

predicate acts alleged in the First Amended Complaint.

## I.    CRITICAL TIMING OF ADO NON-DOCKETING DECISION

This Court should be aware of the following timeline:

**September 17, 2025:** Plaintiff filed formal grievances with the New Hampshire Attorney Discipline Office against eight attorneys, including Defendant Bradford E. Cook and attorneys at Defendant Sheehan Phinney Bass + Green, P.A. The grievance package explicitly referenced the pending federal litigation in this Court.

**December 19, 2025:** Plaintiff's deadline for filing the First Amended Complaint in this action.

**December 18, 2025, approximately 6:00 PM:** The ADO transmitted eight non-docketing letters—one for each grievance—declining to investigate any of the allegations. This transmission occurred less than twenty-four hours before Plaintiff's federal court filing deadline.

The ADO had been in possession of these grievances for ninety-two days. Whether the timing of the ADO's response was deliberate coordination or convenient coincidence, the *effect* was identical: it made it impossible for Plaintiff to include the ADO's response in the original federal filing. This timing had the practical consequence of insulating the ADO's non-docketing decision from contemporaneous federal court review.

This supplemental filing corrects that gap in the record.

## II.    RELEVANCE TO PENDING CLAIMS AND JURISDICTION

2

The attached materials are relevant to Plaintiff's claims under 18 U.S.C. § 1961 *et seq.* (RICO) and to this Court's jurisdiction over the claims alleged. Specifically, these materials document:

(a) The specific allegations of document forgery and fraud upon the tribunal submitted to the New Hampshire Attorney Discipline Office on September 17, 2025;

(b) The ADO's refusal to docket or investigate grievances against eight attorneys, using materially identical boilerplate language that mischaracterized the grievances as "duplicative"—despite the fact that seven of the eight attorneys had never been grieved before;

(c) Undisclosed conflicts of interest within the ADO, including General Counsel Brian R. Moushegian's prior employment at Devine Millimet & Branch, P.A.—the firm representing adverse parties in the underlying probate litigation and whose current partners were among the attorneys grieved;

(d) The statistical impossibility of zero public sanctions against attorneys affiliated with major New Hampshire law firms over a twenty-year period; and

(e) The complete absence of any adequate state remedy for the misconduct alleged, supporting this Court's exercise of federal jurisdiction.

## III.    SUMMARY OF ATTACHED MATERIALS

The following materials are attached hereto and incorporated by reference:

**Tab A – September 17, 2025 Grievance:** Formal grievance filed with the New Hampshire Attorney Discipline Office against eight attorneys (Bradford E. Cook, James

Q. Shirley, Jennifer L. Lyon, Sarah S. Ambrogi, Rebecca E. Lamarre, David P. Eby, Mark A. Perkins, and James F. Raymond). The grievance documented: coordinated professional misconduct; fraud upon the tribunal; and word-for-word alterations of trust instrument language in court filings designed to erase Mrs. Plant's priority as the primary beneficiary. (Cover sheets and narrative attached; full exhibits available upon request.)

**Tab B – ADO Non-Docketing Letters (December 18, 2025):** Eight letters from Deputy General Counsel Mark P. Cornell declining to docket any grievance. Each letter employed materially identical language asserting the allegations were "duplicative" of prior grievances and "were or could have been raised" earlier. This characterization is demonstrably false: seven of the eight attorneys had never been grieved before, and the forgery evidence was newly discovered on September 15, 2025—two days before the grievances were filed.

**Tab C – Notice of Conflict, Administrative Futility, and Preservation Demand (January 5, 2026):** Formal correspondence to ADO General Counsel Brian R. Moushegian documenting: (i) Moushegian's undisclosed conflict of interest arising from his prior employment at Devine Millimet & Branch, P.A.; (ii) the structural capture of the ADO by major law firm personnel; (iii) statistical evidence of discriminatory non-enforcement; (iv) the human consequences of the ADO's decisions for a 91-year-old widow; and (v) a formal litigation hold and preservation demand pursuant to *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003).

## IV. ABSENCE OF ADEQUATE STATE REMEDY

These materials establish that Plaintiff has exhausted available state administrative remedies, and that further pursuit of such remedies in New Hampshire would be futile. The documented pattern of non-enforcement—combined with structural conflicts that prevent neutral adjudication—demonstrates why federal intervention under 18 U.S.C. § 1964 is both appropriate and necessary.

New Hampshire's attorney discipline system is a structural outlier among comparable jurisdictions. It lacks: independent adjudicatory review; separation of prosecution and adjudication functions; external oversight; and meaningful record retention for non-docketed grievances. The ADO's General Counsel exercises sole discretionary authority to terminate grievances at intake—with no appeal to any neutral tribunal. Non-docketed files are destroyed after two years under NH Supreme Court Rule 37, eliminating any possibility of demonstrating patterns of discriminatory non-docketing after the fact.

The ADO's conduct is not merely passive non-enforcement. By refusing to investigate documented forgery, by timing its non-docketing letters to preclude inclusion in Plaintiff's original federal filing, and by operating under undisclosed conflicts of interest, the ADO has functioned as a component of the institutional protection structure that has enabled the alleged RICO enterprise to continue harming Mrs. Plant without accountability.

There is no adequate remedy in New Hampshire. The only forum capable of providing meaningful relief is this Court.

## V. CONCLUSION

Plaintiff respectfully requests that the Court accept this Notice of Filing and the attached exhibits as part of the record in this action.

Dated: January 7, 2026

Respectfully submitted,

CHERYL R. BAITY

Next Friend and Daughter of Bette Jean Plant

77 West Avenue

Darien, Connecticut 06820

Tel: (203) 970-0602

Email: cherylbaity@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, a copy of this Notice of Filing and attached exhibits was served upon all counsel of record via the Court's CM/ECF system, and upon all pro se parties by first-class mail, postage prepaid.

CHERYL R. BAITY

# TAB A

### September 17, 2025 Grievance to the
### New Hampshire Attorney Discipline Office

*Grievances against eight attorneys alleging trust document forgery, including word-for-word textual comparison demonstrating materially altered quotations of governing trust instruments*

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

                              Plaintiff,                Civil Action No. 3:25-cv-01229-OAW

    v.

BRADFORD E. COOK, et al.,

                       Defendants.

---

# TAB 1

## SEPTEMBER 17, 2025 ADO GRIEVANCE

*(Cover Sheets and Narrative Only — Exhibits Omitted)*

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| Complaint Cover Sheet | 1 |
| Attorney Representation Mapping | 2-3 |
| Complainant's Oath / Affirmation | 3 |
| Grievance Against Bradford E. Cook, Esq. | 4 |
| Grievance Against Jennifer L. Lyon, Esq. | 5 |
| Grievance Against James Q. Shirley, Esq. | 6 |
| Grievance Against Sarah S. Ambrogi, Esq. | 7 |
| Grievance Against Rebecca E. Lamarre, Esq. | 8 |
| Grievance Against David P. Eby, Esq. | 9 |
| Grievance Against Mark A. Perkins, Esq. | 10 |
| Grievance Against James F. Raymond, Esq. | 11 |

September 16, 2025

Attorney Discipline Office

Concord, New Hampshire

Re: Grievance Against Attorneys Cook, Shirley, Lyon, Ambrogi, Lamarre, Eby, Perkins, and Raymond

Filed by: Cheryl Baity on behalf of her mother Betty Jeanie Plant, (the primary beneficiary of the David W Plant trusts)

Dear attorney discipline office:

Enclosed please find a formal grievance and supporting exhibits filed by me, Cheryl R. Baity, on behalf of my mother, Mrs. Bette Jean Plant. The grievance alleges coordinated professional misconduct, fraud on the tribunal, and the forgery of trust instruments in In re: David W. Plant Irrevocable Trust & David W. Plant 2002 Family Trust, Docket No. 316-2023-EQ-01633.

The grievance package includes:

1. The full narrative grievance.

2. Exhibits A through K, with Exhibit L (Conspiracy Chart).

3. Certification of service upon all attorneys named as respondents.

I respectfully request that the Office docket this grievance and advise me of the next steps in your investigation. I am prepared to provide additional documentation (including an 800-page record previously submitted and more than 10,000 pages of supporting material) upon request.

Thank you for your attention to this matter.

Respectfully,

*Cheryl R Baity*

1

_Chyl R Baity_

**Cheryl R. Baity**

**77 West Ave.**

**Darien, CT 06820**

**Tel: 203-970-0602**

**Email: cherylbaity@gmail.com**

## CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of September, 2025, I caused a true and correct copy of this grievance, together with all attached exhibits, to be served upon the following attorneys named as respondents herein, by U.S. Mail, postage prepaid, and/or by electronic mail to their offices of record:

- Bradford E. Cook, Esq.

- James Q. Shirley, Esq.

- Jennifer E. Lyon, Esq.

- Sarah S. Ambrogi, Esq.

- Rebecca E. Lamarre, Esq.

- David P. Eby, Esq.

- Mark Perkins, Esq.

- James Raymond, Esq.

Susan Plant

2

**FORMAL GRIEVANCE TO THE NEW HAMPSHIRE ATTORNEY DISCIPLINE OFFICE**

**Subject:** Formal disciplinary grievance alleging coordinated professional misconduct, fraud on the tribunal, and forgery/falsification of trust instruments by multiple New Hampshire-licensed attorneys

Case Name: in In re: David W. Plant Irrevocable Trust & David W. Plant 2002 Family Trust, Docket No. 316-2023-EQ-01633.

Filer: (Cheryl R. Baity the undersigned advocate for Mrs. Bette Jean Plant—**THE PRIMARY BENEFICIARY OF THE DAVID W. PLANT TRUSTS**

Date: September 16, 2025

**EXECUTIVE SUMMARY (ALLEGATIONS)**

1.  This grievance alleges that eight attorneys — acting individually and in a coordinated fashion — **knowingly authored, filed, adopted, and pushed for judicial adoption of altered, falsified, and forged quotations of the governing David W. Plant trust instruments.** The result was that the probate court's orders relied on misleading and forged language that materially changed who could receive distributions and under what conditions, and that these altered texts were used to deprive the 90-year-old primary beneficiary, Mrs. Bette Jean Plant, of access to her trust, her co-trustee authority, and essential income.

2.  The alleged misconduct is not limited to a single mistaken interpretation. The filings display repeated, deliberate textual manipulations: collapsing plural "trustees" to singular "trustee"; inserting new distribution purposes (for example, adding an "education" concept where none existed); substituting "in-law" relatives where none appear; and flipping spousal designations so the settlor's widow was not treated as the intended primary spouse-beneficiary. These altered texts were then disseminated across multiple pleadings, adopted by other counsel, and incorporated into court orders. The net effect: a systematic effort to erase the widow/primary beneficiary from the trust's protections and to protect and enrich aligned beneficiaries and the attorneys advancing those positions.

3.  This was a coordinated, institutionalized campaign. At the center is Attorney Bradford E. Cook (petitioner/trustee), whose petition and foundational lies furnished the corrupt template; but every subsequent experienced probate lawyer who touched the case adapted and re-authored the trust text — each in a different way — so this cannot be dismissed as a single clerk's drafting error or

a lone advocate's poor judgment. The result was multi-firm, multi-lawyer fraud on the tribunal and exploitation of a vulnerable elder.

4. For purposes of efficiency and sanity: the undersigned provides a single long narrative with exhibits already compiled and requests that the Office treat this as a full, stand-alone disciplinary submission. The undersigned will provide, upon request, the thousands of additional pages of underlying material already assembled.

Requested relief: full investigation, interim protective relief to preserve trust assets for the benefit of Mrs. Plant, appropriate discipline up to and including disbarment, restitution, referral for criminal prosecution where appropriate, and any other sanction the Office deems fit.

## BACKGROUND — THE TRUST, THE PARTIES, AND THE CONTEXT

A. Trust instruments and beneficiary design. The David W. Plant trusts (the 2002 Family Trust and the Irrevocable Marital Trust) establish mandatory and discretionary distribution provisions that secure the lifetime support of the Grantor's widow (Mrs. Bette Jean Plant) and set the order of remainder beneficiaries thereafter. The instruments, as drafted by the settlor, contain mandatory language protecting the spouse/primary beneficiary and use limiting language (for example, references to "trust property" and plural "trustees") that constrain trustee power. Exhibit B contains the original trust instruments (Exhibit B

**B. Principal attorney actors (allegations refer only to named counsel in connection with filings in the probate action):**

• **Bradford E. Cook** — co-trustee/petitioner; principal drafter of the foundational petition and motions that other counsel adopted (Exhibit A).

• **James Q. Shirley** — General Counsel, Sheehan Phinney (alleged to have advanced and signed filings containing falsified trust text and to have provided institutional supervision that allowed falsified filings).

• **Jennifer E. Lyon** — Sheehan Phinney (alleged to have used falsified text to seek sanctions and fees and to operationalize altered trust language into client-favorable orders).

• **Sarah S. Ambrogi** — Sheehan Phinney (alleged to have prepared misquotations, selective quotations, and to have inserted or adopted altered clauses such as "education" and the collapse of trustee plural into singular).

• **Rebecca E. Lamarre** — Sheehan Phinney (alleged co-drafter and filer of altered trust quotations and invented doctrines, including "historical practices").

• **David P. Eby** — Devine Millimet & Branch (alleged to have joined/adopted falsified filings, failed to

5

disclose knowledge of other alleged wrongdoing, and to have been in actual conflict while representing parties in the same matter).

• **Mark Perkins** — Devine Millimet & Branch (alleged to have joined/adopted falsified filings on behalf of his client).

• **James Raymond** — affiliation to be confirmed in docket (alleged to have endorsed filings containing falsified trust language in a separate filing).

C. **Beneficiaries alleged to have played a role** (civil fraud claims to be pursued separately in US District Court): John Baity, Susan Plant, Frank Lilley, Mina Cho, and others alleged to have benefitted from re-written provisions. This grievance focuses on attorney misconduct; nevertheless, their conduct and alignment with the attorneys is relevant to motive and pattern.

D. **Victims: Mrs. Bette Jean Plant (primary beneficiary and co-trustee);** Cheryl R. Baity (remainder beneficiary/advocate); Nancy Steed (named beneficiary); and Marco Baity (rightful successor to Keith Baity's remainder interest).

## CONCISE STATEMENT OF THE GRAVAMEN (WHAT THE ATTORNEYS DID)

1. The petition that launched the litigation contained foundational falsehoods about the trusts' text and funding, including core misrepresentations that Mrs. Plant was not the primary beneficiary and that the marital trust was unfunded — statements contradicted by the authentic trust instruments and trust funding records (Exhibits A, B, C).

2. After the petition, multiple attorneys (named above) each, in their own separate filings, intentionally altered, rewrote, or selectively quoted the trust language to produce different but complementary falsified versions of the trust's operative clauses. Those altered versions consistently served the same purpose: to strip Mrs. Plant of priority as the spouse/primary beneficiary, to expand discretionary trustee power to unilateral authority, and to create new distribution purposes or classes of beneficiaries that do not exist in the authentic instruments.

3. These falsified quotations and invented provisions were not isolated to a single pleading — they were repeated in petitions, requests for findings, proposed orders, motions for sanctions, requests for attorney's fees, and proposed findings of fact and rulings of law — thereby creating a uniform and apparently corroborating record that persuaded the Probate Court to issue orders grounded on those falsified premises.

4. The consequence: Mrs. Plant (age 90) was suspended as co-trustee, deprived of access to trust distributions she reasonably expected under the original instruments, exposed to sanctions, and

forced into two years of ruinous litigation. The altered documents were used to award fees and sanctions to the attorneys and to authorize transfers that benefitted aligned beneficiaries.

## DETAILED NARRATIVE — HOW THE FRAUD UNFOLDED (CHRONOLOGY AND TEXT MANIPULATION)

Important note: the undersigned presents these allegations supported by documentary evidence in Exhibits A–K, as indicated below.

1. **Cook's petition — the core lies (Exhibit A)**

• The petition filed by Attorney Bradford E. Cook contained multiple critical misstatements of the trust text and trust funding. The petition asserted:

1. **"The Marital Trust was never funded."**
   – False. The IRS Form 706 (Estate Tax Return) confirms the Marital Trust was funded in 2012.
   – Purpose: erase Mrs. Plant's income rights and legal protections tied to that trust.
2. **"Mrs. Plant is not the primary beneficiary."**
   – False. Both the Family Trust and Marital Trust explicitly name her as the primary spouse-beneficiary.
   – Purpose: downgrade her to one among many, making it easier to justify distributions to others.
3. **"Mrs. Plant must exhaust her outside assets (IRA, real estate) before receiving distributions."**
   – False. The trusts only allow discretionary consideration of outside resources; they do not impose exhaustion.
   – Purpose: create a pretext to cut her off from trust support.
4. **"Beneficiaries have been treated equally and fairly."**
   – False. Mrs. Plant was left nearly destitute while Cook paid others.
   – Purpose: launder his selective payments as legitimate.
5. **"Keith Baity is entitled to ongoing support from the trusts."**
   – False. No such mandate exists. Cook created this entitlement retroactively.
   – Purpose: funnel funds to Keith and, indirectly, to John Baity.
6. **"There is precedent ('historical practice') for these distributions."**
   – False. The trust documents contain no reference to binding "historical practices."
   – Purpose: justify Cook's past mismanagement and unauthorized payments.
7. **"The guardianship established Mrs. Plant's incapacity."**
   – False. The 2021 guardianship was vacated; there was no finding of incapacity.
   – Purpose: argue she should be removed as co-trustee.
8. **"All trust expenses have been properly managed and documented."**
   – False. Cook concealed a $200,000 life insurance loan and ignored repeated accounting requests.
   – Purpose: shield himself from liability for mismanagement and fraud.

• The petition filed by Attorney Bradford E. Cook contained multiple critical misstatements of the trust text and trust funding. The petition asserted a funding status for the Family Trust and mischaracterized the Marital Trust as "unfunded," and asserted that Mrs. Plant was not the primary beneficiary (or that she had waived or abandoned primacy). The IRS Form 706 contradicts this "unfunded" claim and confirms the Marital Trust funding (Exhibit C).

• The petition also resurrected a vacated guardianship claim and suggested Mrs. Plant's incapacity even though the prior involuntary guardianship had been vacated in December 2021 with no finding of incapacity; yet Cook's petition repeatedly invoked this vacated guardianship as if it provided an ongoing basis to remove Mrs. Plant as co-trustee.

• The petition's false narrative served as the seed that allowed later filings to be built atop it. Because Cook's petition was the originating document, subsequent counsel frequently cited or adopted its characterizations as if true.

## 2. Rapid replication with alteration: multiple attorneys rewrite the trust language to the same effect

Below are the attorney-by-attorney narratives. Each subsection identifies the filings at issue and the specific textual manipulations alleged, with a short explanation of their legal effect and a pointer to the exhibit(s).

### Exhibit 1 — Attorney James Q. Shirley (General Counsel, Sheehan Phinney)

Role/culpability: As General Counsel of the firm representing Cook, Shirley had institutional responsibility to ensure filings were honest and accurate. Instead, he is alleged to have advanced and overseen filings that included deliberate textual falsifications, and to have produced proposed orders later adopted by the probate court almost verbatim (Exhibit E).

Filing(s) at issue: "Findings of Fact and Rulings of Law" (filed Nov. 15, 2023) and other proposed orders submitted on Cook's behalf.

Allegations of textual manipulation:
• Replaced exact beneficiary language in Article EIGHTH(a) by inserting "in-law" designations where none exist (for example, changing "mother" to "mother-in-law," "sister" to "sister-in-law"), thereby expanding the class of discretionary beneficiaries and diluting the spouse's priority.

• Collapsed "trustees" (plural) to "trustee" (singular) in Article SIXTH(a), thereby erasing the co-trustee/consent check and vesting unilateral power in the trustee.

• Inserted the term "education" into Article SIXTH(a) where the authentic text contains no such purpose, creating a new distribution purpose out of thin air.

• Flipped spousal language in the Family Trust (for example, changing "during the life of the Grantor's said husband" to "wife"), thereby directly undermining Mrs. Plant's identity and priority as spouse-beneficiary.

Effect: Each change, taken alone, materially altered who could receive distributions and under what circumstances. Taken together, the altered wording removed meaningful legal protections for the spouse/primary beneficiary and created a legal path to authorize distributions Cook had no authority to make.

### Exhibit 2 — Attorneys Sarah S. Ambrogi & Rebecca E. Lamarre (Sheehan Phinney)

Filing at issue: "Petitioner's Requests for Findings of Fact and Rulings of Law (with Embedded Citations)," filed Nov. 14–15, 2023.

Allegations of textual manipulation:

• Merged and conflated provisions from the Irrevocable Marital Trust and the Family Trust, treating distinct articles as if identical.

• Changed "trustees" to "trustee," added "education" to Article SIXTH(a), and omitted limiting clauses such as "of the trust property."

• Selectively quoted EIGHTH(a) to emphasize "issue" while omitting named relatives and spouse, thereby concealing the spouse's placement as first in line.

• Fabricated the assertion of "historical practices" as legal justification for prior distributions.

• Asserted a numerical "exhaustion" projection to support claims that distributions were unsustainable — a calculation not grounded in the instrument.

Effect: Their filing provided concrete examples of invented textual authority used to justify distributions to favored parties and to dilute the widow's priority. Ambrogi had been informed of a $50,000 theft and of alleged tax and wire fraud and remained silent; Lamarre co-signed and advanced the same misquotations (Exhibits G and I).

### Exhibit 3 — Attorneys David P. Eby & Mark Perkins (Devine Millimet & Branch)

Filing at issue: "Request for Findings of Fact and Rulings of Law of Mina Cho" (filed Nov. 15, 2023) — expressly adopted the Ambrogi/Lamarre filing "as if it were her own."

Allegations of textual manipulation and adoption:
• By adopting Ambrogi & Lamarre's filing in full, Eby and Perkins incorporated all of the falsified language and invented doctrines, adding cross-firm corroboration to false textual claims.
• Allegation that Attorney Eby was notified of Cook's alleged tax/wire fraud and other misconduct and failed to disclose or act upon that information; this omission is alleged to have been an additional breach of duty to his client and the tribunal.
• Eby also had concurrent representation issues that should have disqualified him; by remaining in the case and adopting the falsified filing, he participated in a scheme that benefitted his client at the expense of the settlor's widow.

Effect: Their joinder created cross-firm corroboration and expanded the appearance of consensus among major probate practitioners (Exhibits H and K).

### Exhibit 4 — Attorney Jennifer E. Lyon (Sheehan Phinney)

Filing at issue: Motions for sanctions, motions for attorney's fees, and enforcement motions signed by Lyon on Cook's behalf.

Allegations:
• Lyon's motions relied on and repeated altered, falsified textual citations (for example, the "trustee" singularization and inserted purposes).
• She used those altered texts as the legal basis for fee awards and sanctions to be paid from trust assets, turning the falsified language into direct financial harm for Mrs. Plant.
• Lyon sought sanctions against the widow's advocate (Cheryl Baity) and sought to convert false narrative into financial penalties even where the underlying text was misquoted or falsified.

Effect: Weaponized falsified trust language to create ongoing economic injury and to deter advocacy or reporting of misconduct (Exhibit F).

### Exhibit 5 — Attorney James Raymond

Filing at issue: separate filing(s) to be confirmed on the docket. Raymond's filings are alleged to have endorsed or supported the altered trust language introduced by other counsel.

Allegations:
• Raymond signed or endorsed filings that quoted or repeated falsified trust provisions, lending additional credibility to the false narrative across firms.
• Because his misconduct appears in filings separate from the Nov. 15, 2023 packet, his participation nevertheless contributed to the uniform false record.

Effect: Added to the appearance of a united, corroborating legal position among multiple firms and counsel.

**How the doctored language became the law of the case**

• The falsified text was proposed in pleadings and proposed orders; in several instances, the probate judge adopted proposed language closely modeled on counsel's submissions. Where defaults were entered, the petition's allegations — including misstatements about the trust — were effectively admitted.
• The effect was that court orders quoting the doctored text were then used to justify the suspension of Mrs. Plant's co-trustee rights and the authorization of distributions and fees that favored Cook's aligned beneficiaries and counsel.

**Beneficiary collusion and profit from the forgery**

It must also be emphasized that the aligned remainder beneficiaries — Susan Plant, Frank Lilley, and John Baity — were not innocent bystanders. They stood to profit directly from the attorneys' forgery of the trust. By denying their mother/stepmother/grandmother access to her own trust income and authority, and by endorsing or acquiescing in filings that rewrote the trust, they enlarged their own remainder shares. They are equal conspirators in a new attempt to defraud, Mrs. Plant and the other beneficiaries by expanding their own rights and adding more rights for their own daughter. In doing so, they cut out or diluted the rightful protections and interests of Mrs. Plant (the primary beneficiary), her daughter Cheryl Baity, her sister Nancy Steed, and her grandson Marco Baity. The forgery was not only professional misconduct — it was a family betrayal facilitated by lawyers. John Baity tremendously from the tens of thousands of dollars given to his brother who was living at his house—and he no longer have it to supplement his income—because Mrs. Plant had never been a prior source of his income. She had never given any more than $600 a month. Of course this petition to give Keith money his mother was vehemently opposed to was advanced the self-serving motive—to allow Susan and Frank to lose the trust and deny their mother-in-law her own money. They want to Keith to get money he never got justify them stealing from the trust.. Everybody was stealing the money. —including lawyers because the big lie

wasn't a lie they all knew that Mrs. Plant was the primary beneficiary, but this was the cover up. Now these bribed beneficiaries have created a legal and financial disaster that will take years in court to resolve. How are the legal fees going to be paid for this time? Is Mr. Cook going to awyer up all the beneficiaries with corrupt attorneys again and try to erase Mrs. Plant twice?

## MOTIVE AND BENEFICIARIES OF THE SCHEME (WHY THE ATTORNEYS DID IT)

The motive is multi-dimensional and consistent with the pattern of actions and beneficiaries:

1.  Protect and immunize Bradford E. Cook from exposure and liability. The altered language retroactively provided textual "authorization" for prior or ongoing distributions Cook had made and shielded him from accounting and criminal exposure (alleged tax/insurance/loan improprieties). The IRS estate filing confirms the Marital Trust was funded (contradicting Cook's position) (Exhibit C).

2.  Preserve trust funds for aligned remainder beneficiaries (for example, Susan Plant, Frank Lilley, and via indirect means John Baity) by expanding distribution authority (via inserted or altered clauses) and by reducing the widow's priority to a dilutable discretionary status.

3.  Enrich and protect the law firms and counsel involved — by enabling fee awards, sanctions, and by safeguarding a line of work and relationships, the firms protected income and reputational interests.

4.  Neutralize dissent and advocates (including Mrs. Plant's advocate, Cheryl Baity): repeated motions for sanctions and threats of monetary penalties deterred vigorous advocacy and reporting, and court measures further isolated Mrs. Plant.

5.  Had the Attorney Discipline Office or Attorney General or the FBI acted on the first two formal complaints of trust fraud, Attorney Bradford E. Cook was already facing the possibility of losing his license and potentially going to jail. Instead, no investigation was pursued, and in the years since, the damage has become incalculable. To shield him, Sheehan Phinney deployed its General Counsel, associates, and outside firms in a coordinated effort that can only be described as a criminal protection strategy. Each **attorney named in this grievance risked their own license to practice law by adopting, endorsing, and amplifying Cook's forged trust language**. In doing so, they transformed themselves from advocates into participants in a conspiracy. Mr. Cook is a crook and a liar; he has stolen millions of dollars, gutted the intent of the trust, and devastated the

life of a 90-year-old widow. The reason these lawyers piled up against Mrs. Plant was not advocacy — it was to protect Cook from exposure, liability, and indictment.

This pattern explains why experienced probate counsel — who should have recognized both the trust language and the implications of alterations — nevertheless signed on to and advanced these filings: there was a convergence of interest among trustee, selected beneficiaries, and counsel to re-engineer the trust record.

## AGGREGATE HARMS TO MRS. PLANT AND BENEFICIARIES ALIGNED WITH HER

• Permanent or long-term deprivation of life income and co-trustee powers.
• Devastation of physical, emotional, and financial wellbeing of a 90-year-old widow suddenly cut off from her legal protections.
• Profound erosion of the integrity of the probate process when multiple counsel present falsified documents and the court relies on them.
• Financial transfers from the trust to aligned beneficiaries and payment of legal fees and sanctions out of trust corpus.
• Intimidation and chilling of family members and advocates through threats of sanctions and other tactics.

## WHY THIS IS NOT MERE ADVOCACY: ALLEGED STATUTORY AND ETHICAL VIOLATIONS

Note: The undersigned provides documentary evidence and formal allegations. Whether each act ultimately qualifies as a crime or a disciplinary violation is for the Office and, where applicable, for prosecutors and courts to determine. The alleged legal grounds include, at minimum:

• Forgery / falsification of documents — knowingly altering or submitting altered trust text as though it were authentic.
• Fraud on the tribunal / candor violations — knowingly making false statements of fact or law to a tribunal or failing to correct a false statement previously made.
• Dishonesty, deceit, and misrepresentation — proscriptions under attorney discipline rules.
• Conflicts and duties of loyalty — failures to disclose conflicts and material knowledge (for example, Eby's prior role and knowledge of alleged tax/wire fraud).
• Abuse of the probate process and exploitation of an elderly client — aggravated by the age and vulnerability of the primary beneficiary.

13

**MATRIX OF ALLEGED MISCONDUCT**

**Conspiracy Chart: Attorneys and Beneficiaries**

| Attorney | Firm | Filing(s) at Issue | Falsification / Misconduct | Effect on Mrs. Plant | Beneficiaries / Firms Protected |
|---|---|---|---|---|---|
| **Bradford E. Cook** | Sheehan Phinney | Original Petition (Ex. A); Requests for Findings (Ex. D) | Claimed marital trust unfunded; said Mrs. Plant not primary beneficiary; distorted vacated guardianship; concealed $200k insurance loan | Erased widow's primacy; suspended co-trustee rights; blocked income | Protected himself and Sheehan Phinney |
| **James Q. Shirley** | Sheehan Phinney (General Counsel) | Findings of Fact (11/15/23) (Ex. E) | Inserted "in-law" beneficiaries; collapsed trustees' trustee; added "education"; flipped spousal designation | Removed co-trustee power; diluted spouse's protections | Protected Cook; shielded firm |
| **Sarah S. Ambrogi** | Sheehan Phinney | Requests for Findings (11/14/23) (Ex. G) | Fabricated "education" clause; omitted widow/mother/sister; invented "historical practices"; recast protections as discretionary | Diluted spousal primacy; authorized new distributions | Benefited Susan Plant & Frank Lilley |
| **Rebecca E. Lamarre** | Sheehan Phinney | Requests for Findings (11/15/23) (Ex. I) | Co-signed Ambrogio's falsifications | Entrenched false text in record | Same as Ambrogi |
| **David P. Eby** | Devine Millimet | Joinder adopting Ambrogi filing "as if his own" (Ex. K) | Adopted falsified filings; ignored conflict (prior counsel to Cheryl); ignored notice of Cook's tax/wire fraud | Legitimized fraud; betrayed client trust | Benefited Mina Cho; shielded Cook |

14

| Attorney | Firm | Filing(s) at Issue | Falsification / Misconduct | Effect on Mrs. Plant | Beneficiaries / Firms Protected |
|---|---|---|---|---|---|
| **Mark Perkins** | Devine Millimet | Joinder with Eby (Ex. H) | Co-signed Eby's filings adopting falsified text | Created cross-firm corroboration | Protected Eby & Cook |
| **Jennifer Lyon** | Sheehan Phinney | Sanctions & Fee Motions (11/15/23) (Ex. F) | Relied on falsified text for sanctions/fees; threatened Cheryl with sanctions | Punished widow and advocate using trust funds | Enriched firm; protected Cook |
| **James Raymond** | Devine Millimet / Upton & Hatfield | Separate filings (to be confirmed) | Endorsed falsified text; repeated manipulations | Strengthened false consensus across firms | Protected Cook |

**Beneficiaries Who Benefited or Were Harmed**

| Beneficiary | Role Under Authentic Trust | Conduct / Complicity | Effect of Forgery | Outcome |
|---|---|---|---|---|
| **Mrs. Bette Jean Plant** | Primary widow-beneficiary; co-trustee | Target of scheme | Erased from trust; denied income; suspended as co-trustee | Victim |
| **Cheryl R. Baity** | Daughter; remainder beneficiary | Advocate; targeted by sanction threats | Diluted share (expanded Susan & Frank); intimidated | Victim |
| **Nancy Steed** | Sister; named beneficiary | Innocent | Diluted share (expanded Susan & Frank; Marco cut out) | Victim |
| **Marco Baity** | Grandson; successor to Keith | Innocent | Cut out after father's death | Victim |

15

| Beneficiary | Role Under Authentic Trust | Conduct / Complicity | Effect of Forgery | Outcome |
|---|---|---|---|---|
| **John Baity** | Son; remainder | Complicit (guardianship fraud; aligned with Cook) | Helped suspend mother's rights | Benefited |
| **Susan Plant** | Stepdaughter; remainder | Complicit; aligned with lawyers | Expanded share through "education" forgery | Benefited |
| **Frank Lilley** | Stepson; remainder | Complicit; aligned with lawyers | Expanded share through "education" forgery | Benefited |
| **Mina Cho** | Contingent (only if both parents die) | Wrongfully elevated by Eby/Perkins filings | Appeared eligible despite no standing | Benefited |

## ADDITIONAL AGGRAVATING FACTUAL ALLEGATIONS

• Repeated falsification: the same altered phraseology (for example, singular "trustee," insertion of "education," deletion of "of the trust property") appears across multiple distinct filings prepared and signed by different lawyers — not as verbatim copies but as coordinated transformations accomplishing the same legal objective.

• Adoption and joinder: several counsels explicitly "joined" or "adopted" other counsel's requests "as if it were her own." Adoption in that form makes the adopter responsible for checking accuracy. These acts transformed original falsehoods into multi-firm representations.

• Silence after notice: counsel (including Eby and Ambrogi) were put on notice of potential tax and wire irregularities and were provided documentary evidence. The alleged failures to investigate, disclose to the court, or withdraw create a separate dimension of ethical exposure.

• Use of vacated guardianship: the vacated 2021 involuntary guardianship (vacated December 2021 with no finding of incapacity) was nonetheless invoked repeatedly by Cook and the attorneys as if it were binding, to justify suspension of Mrs. Plant's rights and to support allegations of incapacity.

• Sanctions/fee requests: the altered textual authority was used as the predicate to request fees and sanctions that were ultimately paid out of trust assets — converting the fraudulent narrative into real financial harm to the protected elder.

**WHY THIS MATTERS TO THE PROFESSION AND THE PUBLIC**

• The alleged conduct strikes at the integrity of judicial process and the public's trust in attorneys, especially in probate practice designed to protect vulnerable persons.
• If experienced probate counsel can collude to rewrite a trust and present falsified text to a tribunal, fiduciary oversight and reliance on legal instruments are compromised.
• The victim is a 90-year-old widow who relied on the settlor's careful drafting — the moral and ethical stakes are grave.

**PARALLEL ACTIONS AND INTER-AGENCY MATTERS**

• A parallel notice has been prepared for other oversight bodies; additional civil claims against non-attorney beneficiaries are planned (the undersigned will coordinate evidentiary sharing once the ADO confirms receipt).
• An 800-page submission was provided to the ADO one year ago documenting many of these facts. That filing and this complaint should be treated holistically.

**REMEDIES REQUESTED OF THE ATTORNEY DISCIPLINE OFFICE**

1. Accept and docket this grievance and institute an immediate, full investigation into the conduct of the named attorneys.
2. Issue interim protective measures (if within ADO authority) or request the probate court to preserve trust assets and halt further discretionary distributions pending investigation and independent accounting.
3. Subpoena relevant filings, drafts, tracked-changes versions, firm email chains, billing records, and bank/insurance records bearing on intent, knowledge, and concealment.
4. Where evidence supports it, refer charges to the appropriate criminal authorities for potential prosecution for forgery, unsworn falsification, and related crimes.
5. Impose professional discipline up to and including disbarment, and order restitution/disgorgement of fees and distributions wrongfully obtained.
6. Provide a written statement to the undersigned and the beneficiary indicating the ADO's intended timeline for preliminary actions.

**CLOSING NARRATIVE — DIRECT APPEAL TO THE ADO**

This is not an ordinary professional dispute — **it is an alleged, sustainable pattern of coordinated falsification, collusion, and exploitation of an elderly widow**. The undersigned supplies the principal exhibits documenting the altered trust quotations, proposed orders, petitions, joinders, and fee requests. Additional materials (over 10,000 pages) are ready for immediate provision upon request.

Consider this filing a formal demand for accountability. If the ADO declines to act on reliable documentary proof that experienced counsel intentionally misquoted and rewrote trust instruments to achieve a pretextual legal result, the undersigned will pursue all other lawful remedies, including parallel civil claims and filings with other oversight authorities. For present purposes, the undersigned respectfully urges the ADO to act first — to investigate, to protect the trust assets, and to discipline attorneys who betrayed the trust that the public confers upon the legal profession.

This conspiracy was not only professional misconduct; it was an act of cruelty and betrayal. Attorneys forged the trust language, and remainder beneficiaries Susan Plant, Frank Lilley, and John Baity profited from that forgery by denying their mother the protections David W. Plant guaranteed her, while expanding their own shares and cutting out Cheryl Baity, Nancy Steed, and Marco Baity. The evil of this scheme lies not only in its complexity but in its intent: to erase a 90-year-old widow from her husband's estate plan.

EXHIBIT LIST

A. Cook's Original Lawsuit/Petition against Mrs. Bette Jean Plant (foundational pleading beginning this litigation).
B. The original David W. Plant Trust Instruments (Family Trust and Irrevocable Marital Trust).
C. IRS Form 706 (Estate Tax Return) — confirms the Marital Trust was funded in 2012, contradicting "unfunded" claims (p.1).
D. Cook's Requests for Findings of Fact and Rulings of Law with Embedded Citations — filed Nov. 15, 2023; selectively quoted trust provisions, omitting spousal income clauses (p.2).
E. Misconduct of Attorney James Q. Shirley — filings dated Nov. 3 and Nov. 15, 2023; omitted Marital Trust protections and sought unilateral trustee authority (p.3).
F. Jennifer Lyon's Requests for Findings of Fact and Rulings of Law — filed Nov. 15, 2023; omitted spousal income clause and elevated issue-beneficiary payments (p.4).
G. Sarah Ambrogio's Requests for Findings of Fact and Rulings of Law — filed Nov. 15, 2023; omitted

mandatory Marital Trust protections (p.5).

H. Mark Perkins's Requests for Findings of Fact and Rulings of Law — filed Nov. 15, 2023; omitted mandatory protections, misleading the court (p.6).

I. Rebecca Lamarre's Requests for Findings of Fact and Rulings of Law — filed Nov. 15, 2023; repeated omissions of income protections (p.7).

K. Attorney David P. Eby's Misrepresentation of Trust Beneficiaries — styled Mina Cho as a "beneficiary," fabricating standing and undermining widow's priority (p.8).

Respectfully submitted this 16th day of September, 2025.

_Chryl P Baity_
_____

Cheryl R. Baity

Complainant / Advocate for Mrs. Bette Jean Plant

CERTIFICATION OF SERVICE

I hereby certify that on this 16th day of September, 2025, I caused a true and correct copy of this grievance, together with all attached exhibits, to be served upon the following attorneys named as respondents herein, by U.S. Mail, postage prepaid, and/or by electronic mail to their offices of record:

- Bradford E. Cook, Esq.

- James Q. Shirley, Esq.

- Jennifer E. Lyon, Esq.

- Sarah S. Ambrogi, Esq.

- Rebecca E. Lamarre, Esq.

19

# TAB B

**Eight Non-Docketing Letters from the ADO
Dated December 18, 2025**

*ADO's refusal to investigate all eight grievances, issued 92 days after
receipt and less than 24 hours before Plaintiff's federal filing deadline*

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

|  |  |
|---|---|
| Plaintiff, | Civil Action No. 3:25-cv-01229-OAW |

v.

BRADFORD E. COOK, et al.,

Defendants.

# TAB 2

## ADO NON-DOCKETING LETTERS

*December 18, 2025 (Received December 19, 2025)*

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| Non-Docketing Letter — Bradford E. Cook, Esq. | 1-3 |
| Non-Docketing Letter — Jennifer L. Lyon, Esq. | 4-6 |
| Non-Docketing Letter — James Q. Shirley, Esq. | 7-9 |
| Non-Docketing Letter — Sarah S. Ambrogi, Esq. | 10-12 |
| Non-Docketing Letter — Rebecca E. Lamarre, Esq. | 13-15 |
| Non-Docketing Letter — David P. Eby, Esq. | 16-18 |
| Non-Docketing Letter — Mark A. Perkins, Esq. | 19-21 |
| Non-Docketing Letter — James F. Raymond, Esq. | 22-24 |

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ◆ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:    Grievance against Bradford E. Cook, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against Bradford E. Cook, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Mr. Cook. The two prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Mr. Cook and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Cook violated the Rules of Professional Conduct.

Your grievance against Mr. Cook arises out of his role as co-trustee of the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Mr. Cook also relate to his role in the matter entitled In Re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against Bradford E. Cook, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint,, they cannot be raised a second or third time in a new grievance.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Mr. Cook has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Cook's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Mr. Cook as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  <u>See</u> New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Mr. Cook is this date being sent a copy of this letter.  He is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and his reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against Bradford E. Cook, Esquire
December 18, 2025


        Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

                                                Sincerely,



                                                Mark P. Cornell
                                                Deputy General Counsel

MPC/jt
Enclosures

cc:    Bradford E. Cook, Esquire

New Hampshire Supreme Court

**Attorney Discipline Office**

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Bradford E. Cook, Esquire
Sheehan, Phinney, Bass & Green, PA
PO Box 3701
Manchester, NH 03105-3701

Re:    Grievance from Cheryl R. Baity

Dear Mr. Cook:

Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Jennifer P. Lyon, Esquire
Sheehan, Phinney, Bass & Green, PA
PO Box 3701
Manchester, NH 03105-3701

Re:    Grievance from Cheryl R. Baity

Dear Ms. Lyon:

Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:    Grievance against Jennifer P. Lyon, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against Jennifer P. Lyon, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Bradford Cook. The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Ms. Lyon and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Ms. Lyon violated the Rules of Professional Conduct.

Your grievance against Ms. Lyon arises out of her role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Ms. Lyon also relate to her role in the matter entitled In Re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against Jennifer P. Lyon, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Ms. Lyon has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Ms. Lyon's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Ms. Lyon as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  <u>See</u> New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Ms. Lyon is this date being sent a copy of this letter.  She is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and her reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against Jennifer P. Lyon, Esquire
December 18, 2025


Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/jt
Enclosures

cc:    Jennifer P. Lyon, Esquire

New Hampshire Supreme Court

### Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

David P. Eby, Esquire
Devine, Millimet & Branch, PA
111 Amherst Street
Manchester, NH 03101

Re:     Grievance from Cheryl R. Baity

Dear Mr. Ebby:

     Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

     In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:     Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:     Grievance against David P. Eby, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against David P. Eby, Esquire, including the attachments.  I have also reviewed two prior grievances that you submitted against Bradford Cook.  The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct.  By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction.  Possible sanctions are reprimand, public censure, suspension or disbarment.  The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Mr. Eby and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Eby violated the Rules of Professional Conduct.

Your grievance against Mr. Eby arises out of his role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts").  Your allegations of misconduct against Mr. Eby also relate to his role in the matter entitled In Re:  David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against David P. Eby, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Mr. Eby has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Eby's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Mr. Eby as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  <u>See</u> New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Mr. Eby is this date being sent a copy of this letter.  He is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and his reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against David P. Eby, Esquire
December 18, 2025


     Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/jt
Enclosures

cc:    David P. Eby, Esquire

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

James Q. Shirley, Esquire
Sheehan, Phinney, Bass & Green, PA
PO Box 3701
Manchester, NH 03105-3701

Re:    Grievance from Cheryl R. Baity

Dear Mr. Shirley:

Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:    Grievance against James Q. Shirley, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against James Q. Shirley, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Bradford Cook. The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Mr. Shirley and, after consideration of all the potential issues raised in your grievance, <u>even if not specifically referenced herein</u>, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Cook violated the Rules of Professional Conduct.

Your grievance against Mr. Shirley arises out of his role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Mr. Shirley also relate to his role in the matter entitled <u>In Re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust</u> (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against James Q. Shirley, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Mr. Shirley has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Shirley's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Mr. Shirley as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  See New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Mr. Shirley is this date being sent a copy of this letter.  He is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and his reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against James Q. Shirley, Esquire
December 18, 2025


        Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

                                        Sincerely,

                                        Mark P. Cornell
                                        Deputy General Counsel

MPC/jt
Enclosures

cc:    James Q. Shirley, Esquire

New Hampshire Supreme Court

**Attorney Discipline Office**

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ◆ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

James F. Raymond, Esquire
Upton & Hatfield, LLP
10 Centre Street
Concord, NH 03301

Re:    Grievance from Cheryl R. Baity

Dear Mr. Raymond:

Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ◆ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:     Grievance against James F. Raymond, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against James F. Raymond, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Bradford Cook. The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Mr. Raymond and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Raymond violated the Rules of Professional Conduct.

Your grievance against Mr. Raymond arises out of his role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Mr. Raymond also relate to his role in the matter entitled In Re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against James F. Raymond, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Mr. Raymond has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Raymond's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Mr. Raymond as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  See New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Mr. Raymond is this date being sent a copy of this letter.  He is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and his reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against James F. Raymond, Esquire
December 18, 2025


      Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/jt
Enclosures

cc:    James F. Raymond, Esquire

New Hampshire Supreme Court

**Attorney Discipline Office**

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Mark A. Perkins, Esquire
Devine, Millimet & Branch, PA
111 Amherst Street
Manchester, NH 03101

Re:    Grievance from Cheryl R. Baity

Dear Mr. Perkins:

　　　Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

　　　In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter.  At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025).  At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

　　　　　　　　　　　Sincerely,

　　　　　　　　　　　Mark P. Cornell
　　　　　　　　　　　Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:     Grievance against Mark A. Perkins, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against Mark A. Perkins, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Bradford Cook. The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Mr. Perkins and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Perkins violated the Rules of Professional Conduct.

Your grievance against Mr. Perkins arises out of his role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Mr. Perkins also relate to his role in the matter entitled In Re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against Mark A. Perkins, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Mr. Perkins has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Mr. Perkins's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Mr. Perkins as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  See New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Mr. Perkins is this date being sent a copy of this letter.  He is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and his reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against Mark A. Perkins, Esquire
December 18, 2025


        Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

                                        Sincerely,

                                        Mark P. Cornell
                                        Deputy General Counsel

MPC/jt
Enclosures

cc:    Mark A. Perkins, Esquire

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Sarah S. Ambrogi, Esquire
Devine, Millimet & Branch, PA
111 Amherst Street
Manchester, NH 03101

Re:    Grievance from Cheryl R. Baity

Dear Ms. Ambrogi:

Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:    Grievance against Sarah S. Ambrogi, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against Sarah S. Ambrogi, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Bradford Cook. The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Ms. Ambrogi and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Ms. Ambrogi violated the Rules of Professional Conduct.

Your grievance against Ms. Ambrogi arises out of her role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Ms. Ambrogi also relate to her role in the matter entitled In Re:  David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:     Grievance against Sarah S. Ambrogi, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court. Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Ms. Ambrogi has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Ms. Ambrogi's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Ms. Ambrogi as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  See New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Ms. Ambrogi is this date being sent a copy of this letter.  She is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and her reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against Sarah S. Ambrogi, Esquire
December 18, 2025


      Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

                            Sincerely,

                            Mark P. Cornell
                            Deputy General Counsel

MPC/jt
Enclosures

cc:    Sarah S. Ambrogi, Esquire

New Hampshire Supreme Court

**Attorney Discipline Office**

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ◆ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Rebecca E. Lamarre, Esquire
Devine, Millimet & Branch, PA
111 Amherst Street
Manchester, NH 03101

Re:    Grievance from Cheryl R. Baity

Dear Ms. Lamarre:

Enclosed is a copy of my letter to Cheryl R. Baity of this date in which I explain that we are not docketing this matter as a complaint for the reasons stated in my letter.

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), you are hereby notified that you may submit a reply to the grievance within 30 days of the date of this letter. At that time, the grievance and your reply, if any, shall be available for public inspection at this Office for a period of two years from the date when it was received by this Office (September 17, 2025). At the conclusion of this two-year period, the file will be destroyed. Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

Sincerely,

Mark P. Cornell
Deputy General Counsel

MPC/
Enclosure

cc:    Cheryl R. Baity

New Hampshire Supreme Court

## Attorney Discipline Office

Brian R. Moushegian
General Counsel

Mark P. Cornell
Deputy General Counsel

Andrea Q. Labonte
Assistant General Counsel

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ◆ Fax 603-228-9511
www.nhattyreg.org

Sara S. Greene
Disciplinary Counsel

Elizabeth M. Murphy
Assistant Disciplinary Counsel

December 18, 2025

Via Email (cherylbaity@gmail.com) & First Class Mail

Ms. Cheryl Baity
77 West Avenue
Darien, CT 06820

Re:    Grievance against Rebecca E. Lamarre, Esquire

Dear Ms. Baity:

I have completed my review of your grievance submitted on September 17, 2025, against Rebecca E. Lamarre, Esquire, including the attachments. I have also reviewed two prior grievances that you submitted against Bradford Cook. The prior grievances were received by this Office on December 21, 2022, and October 1, 2024.

The New Hampshire Supreme Court Attorney Discipline Office processes complaints against attorneys when there are allegations of professional misconduct. By "professional misconduct," we mean conduct that violates the Rules of Professional Conduct.

In any case in which it is ultimately found that a lawyer has violated the Rules of Professional Conduct, the Professional Conduct Committee imposes or recommends an appropriate sanction. Possible sanctions are reprimand, public censure, suspension or disbarment. The Committee does not have the authority to award money, resolve fee disputes, or affect the underlying case.

I have analyzed your claims of professional misconduct against Ms. Lamarre and, after consideration of all the potential issues raised in your grievance, even if not specifically referenced herein, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Ms. Lamarre violated the Rules of Professional Conduct.

Your grievance against Ms. Lamarre arises out of her role in certain involving the David Plant Revocable and Irrevocable Trusts (collectively the "Plant Trusts"). Your allegations of misconduct against Ms. Lamarre also relate to her role in the matter entitled In Re: David W. Plant Irrevocable Trust and David W. Plant 2002 Family Trust (Case No. 316-2023-EQ-01633).

Page 2 of 3
Ms. Cheryl Baity
Re:    Grievance against Rebecca E. Lamarre, Esquire
December 18, 2025

Upon review of the current grievance, the allegations set forth therein appear to be identical to the allegations contained in the two prior grievances, both of which were not docketed complaints.  To the extent that the current grievance contains new allegations, I have determined that the underlying conduct was raised, or could have been raised in the two prior grievances.  To the extent that your allegations have already been reviewed and addressed by this Office and found to lack sufficient merit to docket as a formal complaint, they cannot be raised a second or third time in a new grievance, even if directed at a new lawyer.

In addition, it appears that most, if not all, of the allegations in the grievance concern conduct that occurred more than two years ago.  As such, those allegations are barred by the applicable Period of Limitations.  *See* Supreme Court Rule 37(i) ("[N]o formal disciplinary proceedings shall be commenced unless a grievance is filed with the attorney discipline office … within two (2) years after the commission of the alleged misconduct.")

Finally, the allegations in your grievance have also been raised in the Probate Court.  Based on all the information provided to this Office, and the apparent absence of any finding by the Probate Court that Ms. Lamarre has engaged in any misconduct relative to the Plant Trusts, I have determined that there is no reasonable likelihood that a hearing panel would find clear and convincing evidence that Ms. Lamarre's conduct violated the Rules of Professional Conduct.

Based on all of foregoing, I am not docketing your grievance against Ms. Lamarre as a complaint, and it will not be investigated further.

Requests for reconsideration of this decision must be clearly labeled as such and must be filed with this Office within 10 days of the date of this letter.  "The request shall state, with particular clarity, points of law or fact that have been overlooked or misapprehended and shall contain such argument in support of the request" as you desire to present.  See New Hampshire Supreme Court Rule 37A(VI)(a).

In accordance with New Hampshire Supreme Court Rule 37A(II)(a)(4)(B), Ms. Lamarre is this date being sent a copy of this letter.  She is being advised that he may submit a reply to your grievance letter within 30 days from the date of this letter.  Once the period for a request for reconsideration has run, and any such requests have been resolved, this Office intends to take the appropriate steps in compliance with the Professional Conduct Committee Standing Order Concerning Redaction, to redact certain information in this file.  A copy of the Standing Order is enclosed.  At that time, your grievance and her reply (if any), shall be available for public inspection at this Office for a period of two years from the date it was received by this Office (September 17, 2025), at which time the file will be destroyed.

Page 3 of 3
Ms. Cheryl Baity
Re:    Grievance against Rebecca E. Lamarre, Esquire
December 18, 2025


        Please further note that the Attorney Discipline System's standing orders and policies are available to review at www.nhattyreg.org.

                                        Sincerely,

                                        Mark P. Cornell
                                        Deputy General Counsel

MPC/jt
Enclosures

cc:    Rebecca E. Lamarre, Esquire

New Hampshire Supreme Court

## Professional Conduct Committee

*a committee of the attorney discipline system*

Margaret H. Nelson, Chair
Benette Pizzimenti, Vice Chair
Toni M. Gray,* Vice Chair
Susan R. Chollet*
David N. Cole
Thomas P. Connair
Alan J. Cronheim

4 Chenell Drive, Suite 102
Concord, New Hampshire 03301
603-224-5828 ♦ Fax 228-9511

Gerald A. Daley*
Richard H. Darling*
James R. Martin
Jaye L. Rancourt
Richard D. Sager
      * non attorney member
Holly B. Fazzino, Administrator

## STANDING ORDER CONCERNING FILE REDACTION

On May 15, 2012, the Professional Conduct Committee voted in favor of the following policy:

In lieu of requiring General Counsel and/or Disciplinary Counsel to file requests for protective orders, pursuant to New Hampshire Supreme Court Rule 37(21)(c), in all cases where the files that are about to become public contain "...confidential, malicious, personal, privileged information or materials submitted in bad faith," the Professional Conduct Committee hereby delegates to General Counsel and/or Disciplinary Counsel the authority to redact such information from files before they become public, provided that the following steps are taken:

a.    General Counsel and/or Disciplinary Counsel will provide both the complainant and the responding attorney(s) with notice of their intended redaction of materials in the file to be made public. Materials and information to be redacted may include (but is not necessarily limited to) the following:

- records pertaining to delinquency and abuse and neglect proceedings

- financial affidavits in divorce proceedings

- pre-sentence investigation reports

- reports of guardians ad litem

- records pertaining to termination of parental rights proceedings

- records pertaining to adoption proceedings

- records pertaining to guardianship proceedings

- records pertaining to mental health proceedings

Page 1 of 2

- records sealed by the court

- social security numbers

-dates of birth

- juror questionnaires

- driver's license numbers

- financial account numbers

- medical records

     b.     Copies of the proposed redacted materials will be provided to, or made available to at the Attorney Discipline Office, both the complainant and the responding attorney(s), with a notice that unless a written objection is filed within ten days of the date of that notice, the file will be made public with the intended redactions.

     c.     In the event that an objection to the intended redaction is filed, the intended redaction will be treated by the Professional Conduct Committee as a request for a protective order pursuant to New Hampshire Supreme Court Rule 37(21)(c) and the provisions of that rule will govern further proceedings concerning the material in question.

May 22, 2012

                                            Margaret H. Nelson
                                          Chair

Distribution:
       Thomas V. Trevethick, Acting General Counsel
       Janet F. DeVito, Assistant General Counsel
       Julie A. Introcaso, Disciplinary Counsel
       James L. Kruse, Assistant General Counsel
       All Legal Assistants
       File

# TAB C

**January 5, 2026 Letter to
ADO General Counsel Brian Moushegian**

*Documentation of ADO conflicts of interest, statistical evidence of non-enforcement against major NH law firms, and formal preservation demand*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

BETTE JEAN PLANT,
    by her next friend and daughter
    CHERYL R. BAITY,
                Plaintiff,Civil Action No. 3:25-cv-01229-OAW

    v.

BRADFORD E. COOK, SHEEHAN PHINNEY BASS +
GREEN, P.A., SUSAN RENAUD, LEDYARD
NATIONAL BANK, and BAKER NEWMAN NOYES,
          Defendants.

CHERYL R. BAITY

77 West Avenue

Darien, Connecticut 06820

cherylbaity@gmail.com

January 5, 2026

**VIA EMAIL AND U.S. MAIL**
*VIA EMAIL: bmoushegian@nhattyreg.org*
Brian R. Moushegian, Esq.
General Counsel
New Hampshire Attorney Discipline Office
4 Chenell Drive, Suite 102
Concord, NH 03301

---

**NOTICE OF UNDISCLOSED CONFLICT OF INTEREST,**
**ADMINISTRATIVE FUTILITY, FORESEEABLE HUMAN HARM,**
**AND DEMAND FOR FEDERAL COURT DISCLOSURE**

*(September 17, 2025 Grievances — Plant Trusts Matter)*

---

Dear Mr. Moushegian:

**PROCEDURAL NOTE:** This correspondence, together with its enclosures, is formatted for submission as an exhibit in the pending federal action referenced above. It has not yet been filed with the Court. The ADO is receiving this package in advance of federal court submission to provide notice, to demand preservation of records, and to afford an opportunity to respond before these materials become part of the permanent federal record.

**TIMING NOTE:** The ADO's non-docketing letters were transmitted at approximately 6:00 PM on December 18, 2025—less than 24 hours before the Plaintiff's federal court filing deadline of December 19, 2025. This timing made it impossible to include the ADO's response in that filing. Whether intentional or not, this had the effect of insulating the ADO's decision from contemporaneous federal court review. This supplemental submission corrects that gap.

I am writing to you directly, in your capacity as General Counsel of the New Hampshire Attorney Discipline Office ("ADO"). I am no longer submitting correspondence through the ADO's portal. After years of engagement, it is evident that the portal has functioned to terminate complaints without meaningful review or conflict disclosure.

This correspondence is intended as formal notice and record creation for pending federal litigation. It documents: (1) what your office has done; (2) what it has refused to do; (3) the undisclosed conflicts of interest that render your office structurally incapable of neutral review; and (4) the human consequences of those decisions.

## I. THE UNDISCLOSED CONFLICT OF INTEREST

You, Brian R. Moushegian, are a former attorney at Devine, Millimet & Branch, P.A. You now serve as General Counsel of the Attorney Discipline Office, where you exercise sole discretionary authority over whether grievances are docketed or terminated at intake.

On September 17, 2025, I filed grievances against eight New Hampshire attorneys. **Four of those attorneys are current partners, shareholders, or directors at your former firm, Devine Millimet:**

| Respondent Attorney | Position | Firm |
|---|---|---|
| Sarah S. Ambrogi, Esq. | Partner/Director | DEVINE MILLIMET |
| David P. Eby, Esq. | Partner (Litigation) | DEVINE MILLIMET |
| Mark A. Perkins, Esq. | Shareholder | DEVINE MILLIMET |
| Rebecca E. Lamarre, Esq. | Director | DEVINE MILLIMET |

You made the non-docketing decision on grievances against attorneys at your former firm. **No conflict was disclosed. No recusal occurred. No screening was performed.**

This is not an appearance of impropriety. This is a structural disqualification that renders the entire proceeding void. Under New Hampshire Rule of Professional Conduct 1.7(a)(2), a conflict exists when there is a significant risk that representation will be materially limited by the lawyer's personal interests or responsibilities to a former client or employer. The same principle applies to quasi-judicial officers exercising discretionary authority.

## II. THE CAPTURED REGULATORY APPARATUS

Your conflict is not an isolated instance. It is emblematic of a captured regulatory structure in which every pathway to accountability is blocked by personnel with professional ties to the firms being complained about.

### ADO Personnel with Major Firm Affiliations

| Name | ADO Role | Firm Affiliation | Connection |
|------|----------|------------------|------------|
| **Brian R. Moushegian** | General Counsel | Devine Millimet | **FORMER** |
| Elizabeth M. Murphy | Asst. Disc. Counsel | Devine Millimet | FORMER |
| Robert R. Lucic | Prof. Conduct Comm. | Sheehan Phinney | **CURRENT PARTNER** |
| Mitchell M. Simon | Prof. Conduct Comm. | Devine Millimet | CURRENT Of Counsel |
| Kyle D. Robidas | Hearings Committee | Devine Millimet | CURRENT Of Counsel |
| James A. Shepard | Hearings Committee | Sheehan Phinney | FORMER |
| Margaret R. Kerouac | Complaint Screening | McLane Middleton | FORMER |
| Andrea Amodeo-Vickery | Hearings Committee | Upton & Hatfield | CURRENT |

The implications are stark: **Robert R. Lucic, a current partner at Sheehan Phinney, sits on the Professional Conduct Committee that would adjudicate any complaint against Bradford Cook, Jennifer Lyon, or James Shirley—his own partners.**

## III. THE STATISTICAL IMPOSSIBILITY

A comprehensive review of publicly available ADO disciplinary materials over the past twenty years has identified **zero docketed disciplinary matters and zero public sanctions against any attorney affiliated with Sheehan Phinney, Devine Millimet, McLane Middleton, Rath Young & Pignatelli, Nixon Peabody, or Hinckley Allen.**

### Publicly Reported Disciplinary Sanctions (Illustrative)

| Attorney | Year | Sanction | Practice Type |
|----------|------|----------|---------------|
| Justin P. Nadeau | 2024 | Disbarment | Solo practitioner |
| Lisa M. Wellman-Ally | 2023 | Disbarment | Small firm |
| Jason A. Czekalski | 2017 | Disbarment | Solo practitioner |
| David C. Newton | 2025 | Disbarment | Solo / small firm |
| **MAJOR FIRM ATTORNEYS DISCIPLINED: ZERO** | | | |

This outcome is statistically extraordinary. It does not reflect the absence of misconduct. It reflects a system designed to ensure that misconduct by large-firm attorneys is never investigated, never documented, and never sanctioned.

### ADO Intake Statistics (Published Data)

| Year | Matters Received | Docketed | Non-Docketed | Docketing Rate |
|------|------------------|----------|--------------|----------------|
| 2021 | 174 | 21 | 147 | 12.1% |
| 2022 | 220 | 18 | 193 | 8.2% |
| 2024 | 237 | 30 | 190 | 12.7% |

Between 85% and 92% of all grievances are terminated at intake by the General Counsel without investigation. **Non-docketed files are destroyed after two years under NH Supreme Court Rule 37, making it impossible to prove patterns of discriminatory non-docketing after the fact.**

## IV. NEW HAMPSHIRE AS STRUCTURAL OUTLIER

The ADO's structure lacks every safeguard present in comparable jurisdictions:

| Structural Safeguard | NH | CA | FL | MA |
|---|---|---|---|---|
| Independent Adjudicatory Court | NO | YES | YES | YES |
| Separate Prosecution & Adjudication | NO | YES | YES | YES |
| External Oversight Committee | NO | YES | YES | YES |
| Non-Docketed Record Retention | DESTROYED | Retained | Retained | Retained |
| Major Firm Public Sanctions (20 yrs) | ZERO | Multiple | Multiple | Multiple |

New Hampshire is not merely deficient. It is an outlier—a jurisdiction where the attorney discipline apparatus functions to protect attorneys from accountability rather than to protect the public from attorney misconduct.

## V. THE HUMAN BEING YOUR OFFICE HAS LEFT UNPROTECTED

My mother, Bette Jean Plant, is 91 years old. She is the primary beneficiary of the David W. Plant Trusts. Those trusts were created for one purpose: to ensure her care, safety, housing, and medical security in old age.

**She has received nothing.**

For more than fifty months—over four years—she has been cut off entirely from her own trust while attorneys aligned with the trust administration have continued to extract fees, pursue adverse litigation, and justify that conduct using trust language that was altered to erase her priority rights as the surviving spouse.

### Trust Disbursements Since September 2021

| Payee | Amount | Percentage |
|---|---|---|
| Sheehan Phinney Bass + Green | $184,980.00 | 35.7% |
| John Hancock (Life Insurance) | $137,311.00 | 26.5% |
| Keith Baity (Beneficiary) | $92,971.00 | 17.9% |
| Ledyard National Bank (Fees) | $58,659.32 | 11.3% |
| Other | $44,489.00 | 8.6% |
| **MRS. BETTE JEAN PLANT** | **$0.00** | **0%** |
| **TOTAL DISBURSED** | **$518,410.32** | **100%** |

This is not an abstract procedural dispute. It is elder financial abuse documented in black and white. The trust was created to protect her. Instead, the attorneys tasked with administering it have extracted over half a million dollars while leaving her without the resources to pay for her own care.

## VI. THE SEPTEMBER 17, 2025 GRIEVANCES AND THE EVIDENCE

On September 17, 2025, I filed grievances against eight New Hampshire attorneys. Seven of those attorneys had never previously been grieved. The grievances were based on newly discovered evidence identified on September 15, 2025—word-for-word comparisons between authentic trust instruments and altered quotations inserted into court filings in November 2023. Those alterations include:

- Removal of mandatory spousal income protections from Article Fifth of the Marital Trust;

- Alteration of beneficiary designations to demote Mrs. Plant from primary beneficiary to discretionary beneficiary equal to grandchildren;

- Conversion of joint-trustee requirements into unilateral authority for Bradford Cook.

The evidence was documentary, precise, and corroborated. This was not theory. **It was proof of fraud upon the tribunal.**

## VII. THREE-YEAR PATTERN OF DISMISSED GRIEVANCES

The September 17, 2025 grievance is not an isolated filing. Over the past three years, I have submitted approximately six separate grievances to the ADO documenting serious criminal conduct by the respondent attorneys. Each grievance was supported by documentary evidence. Each was dismissed without investigation. The pattern is as follows:

| Date Filed | Allegations Documented | ADO Response |
|---|---|---|
| December 2022 | Trust fraud, breach of fiduciary duty, misrepresentation of trust terms | Non-docketed |
| October 2024 | Continuation of trust fraud, tax fraud, elder financial exploitation | Non-docketed |
| September 2025 | Document forgery, wire fraud, insurance fraud, money laundering, RICO predicate acts (860 pages, 32 allegations) | Non-docketed |

The specific criminal conduct documented across these grievances includes:

- **Tax Fraud:** Creation of phantom tax liabilities; false reporting to the IRS; use of fabricated tax obligations to justify withholding distributions from the primary beneficiary.

- **Insurance Fraud:** Misappropriation of life insurance proceeds; $137,311 paid to John Hancock while the 91-year-old widow received nothing.

- **Trust Fraud / Forgery:** Alteration of trust instrument language in court filings to erase mandatory spousal income protections; word-for-word comparison evidence submitted.

- **Wire Fraud (18 U.S.C. § 1343):** Use of interstate wire communications to perpetrate the fraudulent scheme; electronic filing of falsified documents with the court.

- **Money Laundering (18 U.S.C. § 1956):** Movement of trust funds through multiple accounts to conceal their source and divert them from the intended beneficiary.

- **Elder Financial Exploitation (RSA 631:9):** Systematic deprivation of a 91-year-old widow's access to trust assets intended for her care, resulting in ongoing harm.

**Every single grievance was non-docketed.** Not one received investigation. Not one resulted in a hearing. Not one produced any finding whatsoever. The ADO now uses its own prior refusals to investigate as justification for refusing to investigate new evidence—a self-perpetuating cycle of immunity.

Deputy General Counsel Cornell's December 18, 2025 letters explicitly cite the December 2022 and October 2024 grievances as grounds for non-docketing, claiming the current allegations "were or could have been raised" in those prior complaints. This is circular reasoning: the ADO refuses to investigate, destroys the file after two years, then uses the absence of a prior investigation as proof that no investigation is warranted. The system is designed to ensure that no grievance against a major-firm attorney ever receives substantive review.

## VIII. THE ADO'S DECEMBER 2025 RESPONSE

By letters dated December 18, 2025, Deputy General Counsel Cornell declined to docket all eight grievances. Each letter employed materially identical language asserting that the

grievances were "duplicative" and raised matters that "were or could have been raised" earlier.

**That assertion is demonstrably false.** The forgery evidence did not exist until September 15, 2025. Seven of the eight attorneys had never been grieved before. The ADO's rationale is not merely wrong—it is impossible.

The non-docketing decisions were made without investigation, without neutral fact-finding, and without disclosure of the conflicts detailed above. By refusing to docket these grievances, your office ensured that:

- There would be no investigation into allegations of altered trust language used in court filings;
- There would be no accountability for attorneys whose conduct has already caused severe harm;
- There would be no durable institutional record—because non-docketed files are destroyed.

The effect of your office's decision was not neutrality. **It was functional immunity from disciplinary scrutiny for attorneys at your former firm and their co-counsel.**

## IX. CONSTITUTIONAL AND LEGAL IMPLICATIONS

The structural conflict identified above, combined with the systemic deficiencies documented herein, implicates fundamental constitutional concerns and potential criminal liability.

### A. Due Process Violations (42 U.S.C. § 1983)

A complainant has a property and liberty interest in access to a functioning disciplinary system. When the sole gatekeeper has a disqualifying conflict of interest, the complainant is deprived of any meaningful access to that system. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (due process requires recusal where probability of bias is too high to be constitutionally tolerable).

The ADO operates under color of state law pursuant to NH Supreme Court Rule 37. The General Counsel's decisions are state action subject to constitutional constraints. There is no mechanism to appeal a non-docketing decision to a neutral tribunal. The Complaint Screening Committee only reviews matters the General Counsel has already docketed. Non-docketed grievances are destroyed, eliminating any possibility of future review. This constitutes a deprivation of due process.

### B. No Adequate State Remedy — Exhaustion Futility

The complete absence of public discipline against major-firm attorneys over two decades, combined with the structural conflicts documented herein, demonstrates systemic rather than isolated failure. Where the state remedy is structurally incapable of providing relief, exhaustion is futile and federal intervention is warranted.

### C. Potential Criminal Liability

When a General Counsel with undisclosed ties to a major law firm exercises sole discretionary authority to terminate grievances against attorneys at that firm, without

investigation, and when the resulting files are destroyed to prevent pattern analysis, the conduct raises serious questions beyond professional responsibility:

- **Obstruction of Justice (18 U.S.C. § 1503, § 1505):** Knowingly insulating attorneys from disciplinary proceedings related to fraud upon a federal court.
- **Misprision of Felony (18 U.S.C. § 4):** Having knowledge of the commission of a felony (elder financial exploitation) and concealing it from authorities.
- **Destruction of Records (18 U.S.C. § 1519):** The routine destruction of non-docketed grievance files, when combined with knowledge of federal litigation, constitutes destruction of evidence in contemplation of federal proceedings.
- **RICO Predicate Acts (18 U.S.C. § 1961):** The systematic non-docketing of complaints against a defined group of law firms, combined with destruction of records, constitutes a pattern of racketeering activity.

The Judicial Conduct Committee's parallel dismissal of related complaints, communicated December 15, 2025, demonstrates that this insulation is not confined to the ADO. Both state oversight bodies have declined to investigate serious allegations supported by documentary evidence. Together, they have created a closed loop in which misconduct by powerful attorneys is administratively erased.

## X. ESCALATION AND TRANSFER TO FEDERAL COURT

The Attorney Discipline Office's refusal to act should not be misunderstood as resolution. It is precisely the opposite. By denying review and closing the only state disciplinary pathway, your office has escalated both the underlying misconduct and the resulting harm.

What could have been addressed through neutral investigation has instead been forced into federal litigation, solely because no meaningful remedy exists in New Hampshire when attorneys affiliated with politically connected law firms engage in serious misconduct against vulnerable individuals.

**The ADO's administrative closure is not an endpoint; it is a trigger.** The allegations and supporting proof set forth in the September 17, 2025 grievances will now proceed in federal court through lawful process, where:

- The facts will be tested under oath through compulsory discovery;
- Each of the eight respondent attorneys will be required to answer individually for his or her conduct;
- The ADO's non-docketing decisions, conflicts of interest, and record-destruction policies will become part of the evidentiary record;
- Accountability will be pursued as to any supervising attorneys, firm officers, or state officials who directed, authorized, or knowingly ratified the underlying conduct.

**Administrative closure does not erase accountability. It transfers it to forums where the record cannot be destroyed, the evidence cannot be whitewashed, and the human consequences cannot be ignored.**

## XI. LITIGATION HOLD AND PRESERVATION DEMAND

Pursuant to the common-law preservation duty recognized in *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), and Federal Rule of Civil Procedure 37(e), this letter constitutes formal notice of pending and reasonably anticipated federal litigation and a demand that the Attorney Discipline Office implement and maintain a comprehensive litigation hold immediately.

## A. Scope of Preservation

The litigation hold must preserve all documents, communications, and electronically stored information ("ESI") relating to the September 17, 2025 grievances (all eight complaints) and any related matters concerning the David W. Plant Trusts (Probate Case No. 316-2020-EQ-01633), including but not limited to:

- All grievance submissions, attachments, and supporting documentation;
- Internal routing documents, intake forms, and assignment records;
- Screening notes, memoranda, and analysis documents;
- Conflict-of-interest checks, disclosures, or documentation of failure to perform such checks;
- All emails, text messages, voicemails, and other communications (internal and external) referencing the Plant Trusts matter, any respondent attorney, or the complainant;
- Draft correspondence, decision letters, and work product;
- Committee referrals, deliberation records, and voting documentation;
- Communications with the New Hampshire Judicial Conduct Committee, any court, or any other oversight body concerning this matter;
- All metadata associated with the foregoing documents;
- Retention schedules, destruction logs, and any records documenting the disposition of grievance files.

## B. Custodians

This preservation demand extends to all records in the custody, possession, or control of the following individuals and any other ADO personnel who handled or reviewed these matters:

- Brian R. Moushegian, General Counsel
- Mark P. Cornell, Deputy General Counsel
- Andrea Q. Labonte, Assistant General Counsel
- Sara S. Greene, Disciplinary Counsel
- Elizabeth M. Murphy, Assistant Disciplinary Counsel
- Any administrative staff, IT personnel, or records custodians with access to grievance files or ESI.

## C. Suspension of Routine Destruction

The ADO must immediately suspend any routine document retention/destruction policies as applied to the materials described above. Under NH Supreme Court Rule 37, non-docketed

grievance files are ordinarily destroyed after two years. That destruction schedule must be suspended pending resolution of the federal proceedings. Any destruction of relevant materials after receipt of this notice will constitute spoliation.

### D. Consequences of Non-Compliance

Failure to implement this litigation hold or destruction of any responsive materials will be documented and may result in:

- Spoliation sanctions under FRCP 37(e), including adverse inference instructions permitting the jury to presume destroyed evidence was unfavorable to the ADO;
- Monetary sanctions and fee-shifting;
- Claims for obstruction of justice under 18 U.S.C. § 1519 (destruction of records in federal investigations);
- Inclusion of the ADO's conduct in the pattern of activity alleged under 18 U.S.C. § 1961 (RICO).

### E. Confirmation Required

Please confirm in writing within seven (7) days of the date of this letter that: (1) a litigation hold has been implemented; (2) all identified custodians have been notified; (3) routine destruction of relevant records has been suspended; and (4) the hold will remain in effect pending resolution of federal proceedings in Civil Action No. 3:25-cv-01229-OAW and any related matters. **Failure to respond will be documented as evidence of non-compliance.**

## CONCLUSION

I am not asking for sympathy. I am stating facts. My mother trusted the legal system to protect her. Your office had the authority to intervene. It chose not to—while operating under conflicts of interest that should have required recusal.

The consequences of that choice are now part of the federal and public record. The questions raised by your office's conduct—and its relationship to the firms whose attorneys you have shielded—will be addressed in a forum where the answers cannot be administratively erased.

Respectfully,

Cheryl R. Baity

Cheryl R. Baity
Next Friend and Daughter of Bette Jean Plant

cc:

    Mark P. Cornell, Deputy General Counsel, New Hampshire Attorney Discipline Office
    Robert T. Mittelholzer, Executive Secretary, NH Judicial Conduct Committee
    James Shirley, Esq., General Counsel, Sheehan Phinney Bass + Green, P.A.
    Counsel of Record for all Defendants in Civil Action No. 3:25-cv-01229-OAW
    All respondent attorneys identified in the September 17, 2025 grievances

**ENCLOSURES:**

# TABLE OF CONTENTS

## LIST OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A-1 | Structural Features of the New Hampshire Attorney Discipline Office Affecting Docketing, Visibility, and Accountability |
| A-2 | Comparative Analysis of State Attorney Discipline Systems: New Hampshire vs. Other Jurisdictions |
| A-3 | Network Analysis of ADO Personnel Affiliations: The Law Firm Connections That Control New Hampshire Attorney Discipline |
| A-4 | Exposed: How New Hampshire's Attorney Discipline System Protects Insiders and Denies Victims Access to Justice |

## SUMMARY OF EXHIBITS

**Exhibit A-1** documents the internal structure of the New Hampshire Attorney Discipline Office, including intake statistics showing 85-92% of grievances are terminated without investigation, and identifies large-firm attorneys in oversight positions.

**Exhibit A-2** compares New Hampshire's discipline system with California, Florida, Texas, New York, and Massachusetts, demonstrating that structural safeguards present in every other jurisdiction are absent in New Hampshire.

**Exhibit A-3** maps the network of law firm affiliations among ADO personnel, showing that attorneys from Devine Millimet, Sheehan Phinney, and McLane Middleton occupy key positions at every level of the discipline system.

**Exhibit A-4** identifies the specific conflict of interest in the September 17, 2025 grievance—the ADO General Counsel is a former Devine Millimet attorney reviewing complaints against his former colleagues—and analyzes the constitutional implications.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

                        Plaintiff,           Civil Action No. 3:25-cv-01229-OAW

      v.

BRADFORD E. COOK, et al.,

                    Defendants.

---

# TAB 4

## EXHIBIT A-1

*Structural Features of the New Hampshire Attorney Discipline Office*

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| Statement of Review | 1 |
| Table 1: Discipline Pipeline and Gatekeeping Structure | 1 |
| Table 2: Published Intake and Docketing Rates | 2 |
| Table 3: Publicly Reported Disciplinary Outcomes | 2 |
| Table 4: Large-Firm Representation Within Discipline System | 3 |
| Table 5: Structural Effect Summary | 3 |
| Sources | 4 |

EXHIBIT A-1

# STRUCTURAL FEATURES OF THE
# NEW HAMPSHIRE ATTORNEY DISCIPLINE OFFICE
# AFFECTING DOCKETING, VISIBILITY, AND ACCOUNTABILITY

*(Demonstrative Summary Based on Public Records)*

## STATEMENT OF REVIEW

Review of publicly available Attorney Discipline Office disciplinary materials over the past two decades has not identified a single docketed disciplinary matter or public sanction involving an attorney affiliated with a major New Hampshire law firm. The absence of any such documented instance across that period is statistically extraordinary and materially relevant to the issues presented.

## TABLE 1: DISCIPLINE PIPELINE AND GATEKEEPING STRUCTURE

| Stage | Decision Maker | Description | Structural Effect |
|---|---|---|---|
| Grievance Filed | Complainant | Complaint submitted; respondent notified | Administrative record created |
| Initial Screening | ADO General Counsel | Discretionary decision whether to docket | Single-point gatekeeping |
| Non-Docketing | General Counsel | Matter closed without investigation | No neutral fact-finding |
| Reconsideration | Complaint Screening Committee | May affirm non-docketing | Intake barrier reinforced |
| Docketed Complaint | ADO | Investigation proceeds | Only path to review |
| Hearing | Hearings Committee | Evidentiary hearing | First neutral forum |
| Adjudication | PCC / NH Supreme Court | Discipline may be imposed | Public accountability |

## TABLE 2: PUBLISHED INTAKE AND DOCKETING RATES

| Year | Matters Received | Docketed | Non-Docketed | Docketing Rate |
|---|---|---|---|---|
| 2021 | 174 | 21 | 147 | 12% |
| 2022 | 220 | 18 | 193 | 8% |
| 2024 | 237 | 30 | 190 | 13% |

*Approximately 85-92% of grievances are terminated at intake and never investigated.*

## TABLE 3: PUBLICLY REPORTED DISCIPLINARY OUTCOMES

| Attorney | Year | Sanction | Practice Type |
|---|---|---|---|
| Justin P. Nadeau | 2024 | Disbarment | Solo practitioner |
| Lisa M. Wellman-Ally | 2023 | Disbarment | Small firm |
| Jason A. Czekalski | 2017 | Disbarment | Solo practitioner |
| David C. Newton | 2025 | Disbarment | Solo / small firm |

EXHIBIT A-1

*No publicly reported docketed disciplinary matter or public sanction involving attorneys affiliated with major New Hampshire law firms (Sheehan Phinney, Devine Millimet, McLane Middleton, Rath Young & Pignatelli, Nixon Peabody, Hinckley Allen) during this period.*

## TABLE 4: LARGE-FIRM REPRESENTATION WITHIN THE DISCIPLINE SYSTEM

| Role | Individual | Firm Affiliation |
|---|---|---|
| General Counsel (ADO) | Brian R. Moushegian | Former Devine Millimet |
| Assistant Disciplinary Counsel | Elizabeth M. Murphy | Former Devine Millimet |
| Professional Conduct Committee | Robert R. Lucic | Sheehan Phinney |
| Professional Conduct Committee | Mitchell M. Simon | Devine Millimet (Of Counsel) |
| Complaint Screening Committee | Margaret R. Kerouac | Former McLane Middleton |
| Hearings Committee | Kyle D. Robidas | Devine Millimet |
| Hearings Committee | James A. Shepard | Former Sheehan Phinney |
| Hearings Committee | Andrea Amodeo-Vickery | Upton & Hatfield |

## TABLE 5: STRUCTURAL EFFECT SUMMARY

| Feature | Observed Effect |
|---|---|
| Discretionary intake screening | Majority of complaints never investigated |
| Low docketing rates (8-13%) | Outcomes determined pre-investigation |
| Destruction of non-docketed files | Loss of historical reviewability |
| Large-firm presence in oversight roles | Appearance of institutional insulation |
| Absence of large-firm sanctions | Statistically extraordinary outcome |

## SOURCES (PUBLIC)

New Hampshire Attorney Discipline Office Annual Reports
NH Attorney Discipline System website (staff and committee rosters)
NH Supreme Court disciplinary orders
Public firm biographies and announcements

## CERTIFICATION

This exhibit is a demonstrative summary of publicly available records. It does not assert motive or intent. It documents observable structural effects.

Date: _____

Prepared by: _____

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

<table>
<tr><td></td><td>Plaintiff,</td><td>Civil Action No. 3:25-cv-01229-OAW</td></tr>
<tr><td>v.</td><td></td><td></td></tr>
<tr><td>BRADFORD E. COOK, et al.,</td><td></td><td></td></tr>
<tr><td></td><td>Defendants.</td><td></td></tr>
</table>

# TAB 5

## EXHIBIT A-2

*Comparative Analysis of State Attorney Discipline Systems*

## TABLE OF CONTENTS

| Document | Page |
|---|:---:|
| I. Purpose | 1 |
| II. Structural Comparison (Table 1) | 1 |
| III. Gatekeeping Structure Comparison (Table 2) | 2 |
| IV. New Hampshire Structural Deficiencies (Table 3) | 2 |
| V. Sources | 3 |
| VI. Conclusion | 3 |

EXHIBIT A-2

# EXHIBIT A-2
## COMPARATIVE ANALYSIS OF STATE ATTORNEY DISCIPLINE SYSTEMS
*New Hampshire vs. Other Jurisdictions*

(Demonstrative Summary Based on Public Records)

## I. PURPOSE

This exhibit compares the structural features of New Hampshire's Attorney Discipline Office ("ADO") with discipline systems in California, Florida, Texas, New York, and Massachusetts. The comparison identifies structural safeguards present in other jurisdictions that are absent or deficient in New Hampshire.

## II. STRUCTURAL COMPARISON

### Table 1 — Key Structural Features by Jurisdiction

| Feature | NH | CA | FL | TX | NY | MA |
|---|---|---|---|---|---|---|
| Independent Adjudicatory Court | NO | YES | YES* | YES | YES | YES |
| Mandatory Public Member Minimum | ~44% | Varies | 33%+ | 33% | ~14% | 33% |
| Separate Prosecution & Adjudication | NO | YES | YES | YES | YES | YES |
| Supreme Court Appointed Judges | NO | YES | YES | YES | YES | YES |
| External Oversight Committee | NO | YES | YES | YES | Limited | YES |
| Approx. Investigation Rate | 8-13% | Higher | ~25% | Higher | Higher | Higher |
| Non-Docketed Record Retention | Destroyed | Retained | Retained | Retained | Varies | Retained |
| Major Firm Public Sanctions (Past 20 Yrs) | NONE | Multiple | Multiple | Multiple | Multiple | Multiple |

*\* Florida uses circuit/county judges as referees appointed by Supreme Court for disciplinary trials.*

## III. GATEKEEPING STRUCTURE COMPARISON

### Table 2 — Intake Decision Authority

| Jurisdiction | Who Decides to Investigate | Structural Safeguard |
|---|---|---|
| **New Hampshire** | ADO General Counsel (single individual) | Single-point gatekeeping; no neutral review of non-docketing decisions |
| California | Intake Unit → Enforcement Unit → Office of Chief Trial Counsel | Multiple review layers; Senate-confirmed Chief Trial Counsel; independent State Bar Court |
| Florida | Bar Counsel → Grievance Committee (33%+ public members) | Board of Governors designated reviewer oversight; public member participation mandated |
| Texas | Chief Disciplinary Counsel → District Grievance Committee (33% public) | Independent Grievance Oversight Committee appointed by Supreme Court; ombudsman |
| Massachusetts | Office of Bar Counsel → Board of Bar Overseers (33% public) | SJC-appointed BBO independent of Bar Counsel; hearing committees with public members |

## IV. NEW HAMPSHIRE STRUCTURAL DEFICIENCIES

### Table 3 — Observable Structural Effects

**EXHIBIT A-2**

| Structural Feature | Observed Effect in NH |
|---|---|
| Single-point intake gatekeeping | 85-92% of complaints terminated without investigation |
| No independent disciplinary court | Committee members drawn from same professional community as respondents |
| Destruction of non-docketed files | No historical pattern analysis possible; evidence destruction |
| Large-firm attorney participation in oversight | Structural conflict of interest; appearance of insulation |
| No external oversight committee | No independent review of system effectiveness or fairness |
| Absence of major firm sanctions | Statistically extraordinary outcome: 0 public sanctions in 20+ years |

## V. SOURCES

New Hampshire Attorney Discipline Office Annual Reports (2021, 2022, 2024)

NH Supreme Court Rule 37 and Rule 37A

State Bar of California Annual Discipline Reports; Cal. Bus. & Prof. Code

Florida Bar Rules Regulating The Florida Bar, Chapter 3

Texas Rules of Disciplinary Procedure; Tex. Gov't Code § 81.072

New York Judiciary Law § 90; 22 NYCRR Part 1240

Massachusetts SJC Rule 4:01; Board of Bar Overseers Annual Reports

ABA Model Rules for Lawyer Disciplinary Enforcement

Public firm biographies and state bar committee rosters

## VI. CONCLUSION

The New Hampshire Attorney Discipline Office lacks structural safeguards that exist in every other major jurisdiction examined. The combination of single-point gatekeeping, absence of an independent adjudicatory body, destruction of non-docketed records, and the complete absence of public discipline against major-firm attorneys over two decades distinguishes New Hampshire from jurisdictions with functioning accountability systems.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

|  | | |
|---|---|---|
| | Plaintiff, | Civil Action No. 3:25-cv-01229-OAW |
| v. | | |

BRADFORD E. COOK, et al.,

                    Defendants.

---

# TAB 6

## EXHIBIT A-3

*Network Analysis of ADO Personnel Affiliations*

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| Key Finding | 1 |
| Network Diagram | 1 |
| Identified Connections Summary Table | 2 |
| ADO Intake Statistics | 2 |
| Structural Question | 3 |
| Sources | 3 |

EXHIBIT A-3

# EXHIBIT A-3
## NETWORK ANALYSIS OF ADO PERSONNEL AFFILIATIONS
**The Law Firm Connections That Control New Hampshire Attorney Discipline**

(Exposed Through Public Records)

## KEY FINDING

Personnel from a small number of major New Hampshire law firms—Devine Millimet, Sheehan Phinney, McLane Middleton, and affiliated firms—occupy key positions throughout the Attorney Discipline Office and its oversight committees. This concentration creates structural conflicts that insulate major-firm attorneys from discipline.

## I. ADO LEADERSHIP — LAW FIRM AFFILIATIONS

The following individuals hold key positions within the New Hampshire Attorney Discipline System. Their law firm affiliations are documented through public sources including firm websites, LinkedIn profiles, and bar records.

### Table 1 — ADO Staff and Their Firm Affiliations

| Name | ADO Position | Law Firm Affiliation |
|------|--------------|----------------------|
| Brian R. Moushegian | General Counsel (GATEKEEPER) | Former DEVINE MILLIMET |
| Elizabeth M. Murphy | Assistant Disciplinary Counsel | Former DEVINE MILLIMET |

**Significance:** The General Counsel position controls intake gatekeeping. The Assistant Disciplinary Counsel assists in prosecution decisions. Both positions are held by former attorneys of the same major law firm.

## II. OVERSIGHT COMMITTEE MEMBERS — LAW FIRM AFFILIATIONS

The following individuals serve on ADO oversight committees that review complaints, conduct hearings, and determine discipline. Their affiliations with major New Hampshire law firms are documented through public sources.

### Table 2 — Committee Members and Their Firm Affiliations

| Name | Committee Role | Law Firm Affiliation |
|------|----------------|----------------------|
| Robert R. Lucic | Professional Conduct Committee | SHEEHAN PHINNEY |
| Mitchell M. Simon | Professional Conduct Committee | DEVINE MILLIMET (Of Counsel) |
| Margaret R. Kerouac | Complaint Screening Committee | Former McLANE MIDDLETON |
| Kyle D. Robidas | Hearings Committee | DEVINE MILLIMET |
| James A. Shepard | Hearings Committee | Former SHEEHAN PHINNEY |
| Andrea Amodeo-Vickery | Hearings Committee | Upton & Hatfield |

## III. FIRM CONCENTRATION ANALYSIS

### Table 3 — Major Firm Representation Within ADO System

**EXHIBIT A-3**

| Law Firm | # of Positions | Positions Held |
|---|---|---|
| **DEVINE MILLIMET** | **4** | General Counsel (Gatekeeper), Assistant Disciplinary Counsel, Professional Conduct Committee, Hearings Committee |
| **SHEEHAN PHINNEY** | **2** | Professional Conduct Committee, Hearings Committee |
| **McLANE MIDDLETON** | **1** | Complaint Screening Committee |
| **TOTAL MAJOR FIRM POSITIONS** | **7** | **Spanning ALL levels of the discipline system** |

## IV. THE STRUCTURAL CONFLICT

The concentration of major-firm attorneys in ADO positions creates an interconnected network where:

**1. The Gatekeeper is an Insider.** The General Counsel who decides whether complaints are docketed is a former Devine Millimet attorney. Complaints against Devine Millimet attorneys are reviewed by their former colleague.

**2. The Screeners are Insiders.** The Complaint Screening Committee includes attorneys from major firms who review complaints that may involve colleagues, former colleagues, or professional acquaintances.

**3. The Hearing Officers are Insiders.** The Hearings Committee that conducts evidentiary proceedings includes attorneys from the same major firms whose members may be respondents.

**4. The Final Reviewers are Insiders.** The Professional Conduct Committee that determines sanctions includes attorneys affiliated with major firms.

**Result:** At every stage of the discipline process—intake, screening, hearing, and final determination—major-firm attorneys review complaints that may involve their current or former colleagues. There is no stage at which complaints against major-firm attorneys receive review by persons outside the major-firm network.

## V. THE PREDICTABLE OUTCOME

**Table 4 — Public Discipline by Practice Type (Past 20 Years)**

| Practice Type | Public Sanctions |
|---|---|
| Solo Practitioners | Multiple (disbarments, suspensions) |
| Small Firm Attorneys | Multiple (disbarments, suspensions) |
| **Major Firm Attorneys (Devine Millimet, Sheehan Phinney, McLane Middleton, etc.)** | **ZERO** |

**This outcome is statistically extraordinary.** It is implausible that over two decades, not a single attorney at any major New Hampshire law firm engaged in conduct warranting public discipline. The absence of major-firm sanctions is the predictable result of a system in which major-firm attorneys control every stage of the discipline process.

## VI. CONCLUSION

The New Hampshire Attorney Discipline System is not a neutral regulatory body. It is a network of major-firm attorneys who review complaints against each other and their colleagues. The gatekeeper is an insider. The screeners are insiders. The hearing officers are insiders. The result is a system that disciplines solo practitioners and small-firm attorneys while providing de facto immunity to major-firm attorneys.

**This is not oversight. This is protection.**

**EXHIBIT A-3**

## SOURCES

NH Attorney Discipline System website (staff and committee rosters)

Devine Millimet website (attorney biographies)

Sheehan Phinney Bass + Green website (attorney biographies)

McLane Middleton website (attorney biographies)

LinkedIn profiles (public)

NH Bar Association records

NH Supreme Court disciplinary orders (public)

NH Attorney Discipline Office Annual Reports

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

                          Plaintiff,              Civil Action No. 3:25-cv-01229-OAW

        v.

BRADFORD E. COOK, et al.,

                 Defendants.

---

# TAB 7

# EXHIBIT A-4

*Structural Conflict of Interest and Constitutional Analysis*

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| Critical Finding | 1 |
| Part I: The Identified Conflict of Interest | 1-2 |
|    A. New Hampshire's Unique Gatekeeping Structure | 1 |
|    B. The Disqualifying Conflict in September 17, 2025 Grievance | 2 |
| Part II: Comparative Analysis — NH vs. Other Jurisdictions | 3-4 |
| Part III: Constitutional and Legal Implications | 4-5 |
|    A. Due Process Violations (42 U.S.C. § 1983) | 4 |
|    B. Observable Structural Effects | 5 |
| Part IV: Conclusion | 5 |
| Sources | 6 |

EXHIBIT A-4

## PART II: COMPARATIVE ANALYSIS — NEW HAMPSHIRE VS. OTHER JURISDICTIONS

This Part compares New Hampshire's ADO structure with attorney discipline systems in California, Florida, Texas, New York, and Massachusetts. The comparison demonstrates that the structural deficiencies enabling the conflict identified in Part I are **unique to New Hampshire** among major jurisdictions.

### A. Key Structural Features by Jurisdiction

### Table 3 — Structural Comparison

| Feature | NH | CA | FL | TX | NY | MA |
|---|---|---|---|---|---|---|
| Independent Adjudicatory Court | NO | YES | YES* | YES | YES | YES |
| Public Member Minimum on Committees | ~44% | Varies | 33%+ | 33% | ~14% | 33% |
| Separate Prosecution & Adjudication | NO | YES | YES | YES | YES | YES |
| Supreme Court Appointed Judges | NO | YES | YES | YES | YES | YES |
| External Oversight Committee | NO | YES | YES | YES | Limited | YES |
| Approx. Investigation Rate | 8-13% | Higher | ~25% | Higher | Higher | Higher |
| Non-Docketed Record Retention | Destroyed | Retained | Retained | Retained | Varies | Retained |
| Major Firm Public Sanctions (20 Yrs) | NONE | Multiple | Multiple | Multiple | Multiple | Multiple |

*Florida uses circuit/county judges as referees appointed by Supreme Court for disciplinary trials.*

### B. Why Other States Would Prevent the Identified Conflict

### Table 4 — Intake Decision Authority and Structural Safeguards

| Jurisdiction | Who Decides to Investigate | Safeguard Against Conflict |
|---|---|---|
| **NEW HAMPSHIRE** | **ADO General Counsel (SINGLE INDIVIDUAL)** | **NONE — Single-point gatekeeping with no neutral review of non-docketing** |
| California | Intake Unit → Enforcement Unit → Office of Chief Trial Counsel | Multiple review layers; Senate-confirmed Chief Trial Counsel; independent State Bar Court |
| Florida | Bar Counsel → Grievance Committee (33%+ public members) | Board of Governors designated reviewer oversight; mandatory public member participation |
| Texas | Chief Disciplinary Counsel → District Grievance Committee (33% public) | Independent Grievance Oversight Committee appointed by Supreme Court; ombudsman |
| Massachusetts | Office of Bar Counsel → Board of Bar Overseers (33% public) | SJC-appointed BBO independent of Bar Counsel; hearing committees with public members |

EXHIBIT A-4

# EXHIBIT A-4
## EXPOSED: HOW NEW HAMPSHIRE'S ATTORNEY DISCIPLINE SYSTEM PROTECTS INSIDERS AND DENIES VICTIMS ACCESS TO JUSTICE
### (A State-by-State Exposé of Systemic Failure)

---

## CRITICAL FINDING

---

The General Counsel of the New Hampshire Attorney Discipline Office—the sole individual who decides whether grievances are docketed for investigation—is a former attorney of the same law firm as four of the respondent attorneys named in the September 17, 2025 grievance.

This structural conflict, combined with systemic deficiencies absent in every other major jurisdiction examined, renders independent review impossible and denies complainants due process of law.

## PART I: THE IDENTIFIED CONFLICT OF INTEREST

### A. New Hampshire's Unique Gatekeeping Structure

Under New Hampshire Supreme Court Rule 37, the ADO General Counsel possesses ***sole discretionary authority*** to determine whether a grievance is "docketed" as a complaint. A grievance that is not docketed is never investigated. There is no neutral review of non-docketing decisions. The General Counsel's determination is outcome-determinative at the intake stage.

**Table 1 — New Hampshire Intake Authority Under Rule 37**

| Function | Authority Under NH Rule 37 |
|---|---|
| Receipt of Grievances | ADO General Counsel |
| Initial Screening | ADO General Counsel (sole discretion) |
| Docketing Decision | **ADO General Counsel (SINGLE-POINT GATEKEEPING)** |
| Neutral Review of Non-Docketing | **NONE — Complaint Screening Committee reviews only matters General Counsel has already docketed** |
| Record Retention (Non-Docketed) | **Files DESTROYED per Rule 37(20)(b)(2)** |

**Statistical Effect:** Approximately **85-92% of all grievances** filed with the ADO are terminated at this single decision point without investigation. The General Counsel's decision to not docket a complaint is outcome-determinative, and that decision is never reviewed by any neutral body.

### B. The Disqualifying Conflict in the September 17, 2025 Grievance

### Table 2 — Devine Millimet Firm Affiliation Conflict

| Individual | Role | Firm Affiliation |
|---|---|---|
| **Brian R. Moushegian** | **ADO General Counsel (GATEKEEPER)** | **Former DEVINE MILLIMET** |
| [Respondent Attorney 1] | Grievance Respondent | **DEVINE MILLIMET** |
| [Respondent Attorney 2] | Grievance Respondent | **DEVINE MILLIMET** |
| [Respondent Attorney 3] | Grievance Respondent | **DEVINE MILLIMET** |
| [Respondent Attorney 4] | Grievance Respondent | **DEVINE MILLIMET** |

EXHIBIT A-4

**The Structural Problem:** The individual who holds *sole discretionary authority* to determine whether the September 17, 2025 grievance proceeds to investigation is a **former colleague of four of the respondent attorneys at the same law firm**. No recusal mechanism exists. No neutral review exists. No appeal exists. The conflict is structural and unavoidable under the current system.

EXHIBIT A-4

## PART III: CONSTITUTIONAL AND LEGAL IMPLICATIONS

The structural conflict identified in Part I, combined with the systemic deficiencies documented in Part II, implicates fundamental constitutional concerns:

### A. Due Process Violations (42 U.S.C. § 1983)

**1. Deprivation of Neutral Forum.** A complainant has a property and liberty interest in access to a functioning disciplinary system. When the sole gatekeeper has a disqualifying conflict of interest, the complainant is deprived of any meaningful access to that system. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009) (due process requires recusal where probability of bias is too high).

**2. State Action.** The ADO operates under color of state law pursuant to NH Supreme Court Rule 37. The General Counsel's decisions are state action subject to constitutional constraints.

**3. No Adequate State Remedy.** There is no mechanism to appeal a non-docketing decision to a neutral tribunal. The Complaint Screening Committee only reviews matters the General Counsel has already docketed. Non-docketed grievances are destroyed, eliminating any possibility of future review.

**4. Pattern and Practice.** The complete absence of public discipline against major-firm attorneys over two decades, combined with the structural conflicts documented herein, demonstrates systemic rather than isolated failure.

### B. Observable Structural Effects

### Table 5 — Structural Deficiencies and Their Effects

| Structural Feature | Observed Effect |
|---|---|
| Single-point intake gatekeeping | 85-92% of complaints terminated without investigation |
| No independent disciplinary court | Committee members drawn from same professional community as respondents |
| Destruction of non-docketed files | No historical pattern analysis possible; evidence destruction |
| Large-firm participation in oversight | Structural conflict of interest; appearance of institutional insulation |
| No external oversight committee | No independent review of system effectiveness or fairness |
| Absence of major-firm sanctions | Statistically extraordinary: 0 public sanctions against major-firm attorneys in 20+ years |

## PART IV: CONCLUSION

The New Hampshire Attorney Discipline Office structure creates an irreconcilable conflict of interest in the September 17, 2025 grievance. The sole individual authorized to determine whether the grievance proceeds to investigation—the ADO General Counsel—is a former colleague of four respondent attorneys at the same law firm. This is not merely an appearance of impropriety; it is a structural barrier to justice.

No other major jurisdiction examined permits this result. California, Florida, Texas, New York, and Massachusetts all employ structural safeguards—multiple review layers, mandatory public participation, independent adjudicatory bodies, external oversight committees—that would prevent a single conflicted individual from controlling intake decisions.

The complete absence of public discipline against attorneys affiliated with major New Hampshire law firms over two decades is not coincidence. It is the predictable result of a system that permits insiders to gatekeep complaints against insiders, destroys records of non-docketed grievances, and provides no external accountability.

**The system is rigged by design.**

**EXHIBIT A-4**

## SOURCES

NH Supreme Court Rule 37 (Attorney Discipline System)

NH Supreme Court Rule 37A (Rules and Procedures of Attorney Discipline System)

NH Attorney Discipline Office Annual Reports (2021, 2022, 2024)

NH Attorney Discipline System website (staff and committee rosters)

State Bar of California Annual Discipline Reports; Cal. Bus. & Prof. Code

Florida Bar Rules Regulating The Florida Bar, Chapter 3

Texas Rules of Disciplinary Procedure; Tex. Gov't Code § 81.072

New York Judiciary Law § 90; 22 NYCRR Part 1240

Massachusetts SJC Rule 4:01; Board of Bar Overseers Annual Reports

ABA Model Rules for Lawyer Disciplinary Enforcement

Public firm biographies and LinkedIn profiles

September 17, 2025 Grievance Filing

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BETTE JEAN PLANT, by her next friend
and daughter CHERYL R. BAITY,

                              Plaintiff,          Civil Action No. 3:25-cv-01229-OAW

        v.

BRADFORD E. COOK, et al.,

                    Defendants.

---

# TAB 8

## PROOF OF TRANSMISSION

## TABLE OF CONTENTS

| Document | Page |
|---|---|
| Email Transmission Confirmation | 1 |
| Certified Mail Receipt (USPS) | 2 |

# TAB D

**December 22, 2025
Request for Reconsideration**

*Request under NH Supreme Court Rule 37A(VI)(a) identifying factual
errors in non-docketing letters, with Comparative Chart, Trust
Disbursement Summary, and Prior ADO Correspondence*

**COVER LETTER**
**Via Email and First-Class Mail**

Attorney Cornell
Deputy General Counsel
Attorney Discipline Office
New Hampshire Supreme Court
4 Chenell Drive, Suite 102
Concord, NH 03301

Re: Request for Reconsideration — September 2025 Grievances (Plant Trusts Matter)

Dear Attorney Cornell:

Enclosed please find a Request for Reconsideration of the Attorney Discipline Office's determinations declining to docket the grievances submitted in September 2025 concerning the David W. Plant trusts.

The enclosed submission is limited and focused. It addresses specific factual and chronological errors identified in the Office's prior non-docketing letters, including the characterization of the September 2025 grievances as duplicative of earlier filings, notwithstanding newly discovered evidence and the inclusion of respondents against whom no prior grievance has ever been filed.

The packet includes:
- the reconsideration letter,
- a comparative chart demonstrating the non-overlap between the February 2025 and September 2025 fraud-on-the-court filings,
- limited supporting exhibits referenced in the letter.

This submission is made to ensure the accuracy of the record and to permit review of the grievances based on the allegations presented and the timeline in which they arose.

Thank you for your attention to this request.

Respectfully,

*Cheryl R Baity*

Cheryl R. Baity

December 22, 2025

Via Email and First-Class Mail
New Hampshire Supreme Court
Attorney Discipline Office
Attn: Attorney Mark P. Cornell, Deputy General Counsel
4 Chenell Drive, Suite 102
Concord, NH 03301

Re: Request for Reconsideration under Supreme Court Rule 37-A(VI)(a) — September 17, 2025 Grievances (Plant Trusts matter)

Attorney Cornell:

I write to request reconsideration of the Office's December 18, 2025 determinations declining to docket the September 17, 2025 grievances. This request is made to correct material errors in the Office's stated reasons for non-docketing and to preserve an accurate record.

The September 2025 grievances are not a restatement of earlier submissions. They are grounded in a newly discovered evidentiary predicate identified on September 15, 2025: word-for-word comparison demonstrating that multiple attorneys inserted or endorsed materially altered "quotations" of the governing trust instruments, and then pressed those altered texts as authentic in motions, affidavits, and proposed orders. The effect of the altered text, as pleaded, is to diminish or erase the widow's priority and to expand or redirect economic benefit away from her during her lifetime.

Seven of the attorneys named in the September 2025 grievances had never been the subject of any grievance by Mrs. Plant or her daughter before September 2025. Accordingly, the Office's "identical/duplicative" rationale (based on two earlier Cook-only grievances received in 2022 and 2024) cannot, as a matter of basic logic or fair process, operate as a categorical bar to docketing new grievances against different respondents based on different operative facts and newly discovered evidence.

On June 26, 2024, I had a substantive telephone conference with you in which you explained that the Office's screening process is grounded in accuracy, neutrality, and adherence to rule-based standards, and you encouraged me to submit an updated grievance if additional information became available. I relied on that instruction when I filed the October 2024 grievance and again when I filed in September 2025 after the September 15, 2025 discovery.

I. The Office's "identical / could have been raised" rationale is chronologically impossible

The December 18, 2025 letters state that the September 2025 allegations "appear to be identical" to prior grievances and that any "new allegations" were "raised, or could have been raised" previously. That conclusion fails on chronology. A complainant cannot report the falsification of trust text before discovering the falsification. The September 2025 grievances expressly identify September 15, 2025 as the discovery date and are supported by comparative

text exhibits. If the Office maintains that the September 2025 forged-text allegations were previously raised, the Office should identify, with particularity (page and paragraph), where the same forged-text comparison and respondent-specific conduct was previously submitted as to each respondent.

## II. The Office may not bootstrap seven new respondents into prior Cook-only grievances

The Office's letters acknowledge reviewing prior grievances against Bradford E. Cook received December 21, 2022 and October 1, 2024. Those submissions do not immunize other attorneys from screening review in September 2025, particularly where the September 2025 grievances allege coordinated adoption of altered trust text across multiple pleadings and multiple attorneys. If the Office believes the allegations against each of the seven additional respondents were previously raised, it must identify where each respondent was previously accused of the same forged-text conduct. Absent that showing, the "identical" label is an administrative error.

## III. The Office's reliance on probate "findings" is not a lawful prerequisite to docketing

The letters further suggest that because related issues were raised in the Probate Division and there was no probate "finding" of misconduct, the grievances should not be docketed. That reasoning is circular where the allegation is fraud on a tribunal: the grievance alleges that the tribunal's record was corrupted by falsified trust text and that ensuing orders adopted the falsification. The Office's screening function is not contingent on a prior merits determination by the same tribunal alleged to have relied on the falsified record.

## IV. Institutional significance: involvement of Sheehan Phinney's General Counsel

The September 2025 record includes James Q. Shirley's role as General Counsel of Sheehan Phinney. Where the firm's General Counsel signs or endorses filings that the grievances allege contain altered trust language, that fact heightens—not diminishes—the need for docketing and review, because it undercuts any claim of inadvertence and raises issues of firmwide professional responsibility oversight.

## V. The human stakes and irreparable harm

This is not a technical dispute divorced from consequences. Mrs. Bette Jean Plant is nearly 91 years old and resides in assisted living. She requires increasing daily support and safety measures. The trust was designed to provide her stability and comfort throughout her life. When trust access is cut off and replaced with litigation-driven depletion and fee barriers, the predictable result is that her lawful resources are consumed while her care needs escalate. Even if limited resources remain available today, the trajectory created by continued diversion of trust assets and denial of spousal support creates a concrete risk that she will outlive the constrained resources unlawfully imposed on her. Those are not abstract harms; they are life-and-safety harms.

## VI. Limited, verifiable financial summary (for context only)

Without asking the Office to adjudicate the accounting, I note one objective, non-argumentative context point reflected in the disbursement summary already produced:

from September 2021 forward, the record reflects $0.00 in distributions to Mrs. Plant while substantial sums were disbursed to others, including payments to a bank itemized as "legal fees." This context underscores why screening these grievances matters: the alleged forged-text scheme is not academic; it is tied to real diversion and deprivation. For convenience, the updated disbursement bar chart and source statement are attached as exhibits, with the letter's core request remaining the same: docket the grievances so the Office applies its process to the respondent-specific conduct alleged.

VII. The Office's repeated recycling of the same non-docketing predicate

The Office's prior non-docketing letters in the Cook matter, including Attorney Andrea LaBonte's correspondence, reflect a recurring pattern: treating "fraud on the court" as a single omnibus label and then using a probate court denial of one motion as a categorical shield against review of other alleged misconduct. The September 2025 grievances are distinct both in operative facts (forged textual substitutions in the governing instrument) and in respondents (seven attorneys not previously grieved). Recycling the same "probate already addressed fraud" predicate to block review of different misconduct is internally inconsistent and deprives the screening process of its required particularity.

VIII. Requested relief

For the reasons above, I respectfully request that the Office:
1. Withdraw the determination that the September 2025 grievances "appear to be identical" to prior grievances unless and until the Office identifies the specific prior submission(s) and passages allegedly containing the same forged-text allegations as to each respondent;
2. Docket the September 2025 grievances for review based on their actual evidentiary predicate and respondent-specific conduct; and
3. Confirm in writing the Office's understanding of the controlling chronology: that the forged-text discovery occurred on September 15, 2025 and therefore cannot be treated as "previously raised" in grievances received in 2022 or 2024.

This request is submitted to correct the record. If the Office declines to docket or to identify the claimed prior submission(s) with particularity, please treat this letter and the Office's December 18, 2025 determinations as preserved for use as exhibits in subsequent review proceedings and any appropriate referrals.

Respectfully submitted,

Cheryl R. Baity
Darien, Connecticut

Exhibit List

Exhibit A: Comparative chart (February 7, 2025 "Fraud on the Court" vs. September 15, 2025 discovery).

Exhibit B: Disbursements bar chart summary (showing $0.00 distributions to Mrs. Plant since September 2021 and aggregate payments to others).

Exhibit C: Ledyard Bank 2024 statement excerpt reflecting payment(s) to a bank labeled as legal fees.

Exhibit D: Attorney Andrea LaBonte correspondence and related ADO materials reflecting reliance on probate "fraud on the court" motion denial as a screening predicate.

Exhibit E: Prior ADO grievance response (March 2023).

Exhibit F: ADO Cook non-docket / exoneration determination (2025).

**EXHIBIT A**

**COMPARATIVE CHART: FRAUD ON THE COURT**

February 7, 2025 Filing vs. September 15, 2025 Discovery

| DIMENSION | FEBRUARY 7, 2025 FILING | SEPTEMBER 15, 2025 DISCOVERY |
|---|---|---|
| Primary Actor | Bradford E. Cook | Eight attorneys across multiple firms |
| Nature of Fraud | Jurisdictional / procedural | Textual falsification of trust language |
| Evidence | Situs transfers, affidavits | Word-for-word trust text comparison |
| Alleged Conduct | Misrepresentation to invoke jurisdiction | Altered quotations presented as authentic |
| Respondents | Cook only | Cook plus seven additional attorneys |
| Injury | Improper exercise of jurisdiction | Erasure of primary beneficiary rights |
| Legal Focus | Fraud creating judicial power | Fraud altering substantive trust rights |
| Chronology | Known before February 2025 | Discovered September 15, 2025 |

These filings involve different facts, different actors, and different misconduct.

# MASTER EXHIBIT INDEX

Re: Request for Reconsideration – September 2025 Grievances

| **Exhibit** | **Description** |
| --- | --- |
| Exhibit A | Comparative Chart: February 7, 2025 vs. September 15, 2025 Fraud on the Court |
| Exhibit B | Ledyard Bank December 2024 Account Statement |
| Exhibit C | Summary of Trust Disbursements (Rule 1006 Summary – Exhibit A-7) |
| Exhibit D | Attorney Discipline Office Determinations – Prior Cook Grievances |
| Exhibit E | Andrea LaBonte Correspondence and Related Attorney Discipline Office Materials |
| Exhibit F | Attorney Discipline Office December 2025 Non-Docketing Letters |

# EXHIBIT A

---

**Comparative Chart: February 7, 2025 vs. September 15, 2025 Fraud on the Court**

---

## EXHIBIT A

## COMPARATIVE CHART: FRAUD ON THE COURT

February 7, 2025 Filing vs. September 15, 2025 Discovery

| DIMENSION | FEBRUARY 7, 2025 FILING | SEPTEMBER 15, 2025 DISCOVERY |
|---|---|---|
| Primary Actor | Bradford E. Cook | Eight attorneys across multiple firms |
| Nature of Fraud | Jurisdictional / procedural | Textual falsification of trust language |
| Evidence | Situs transfers, affidavits | Word-for-word trust text comparison |
| Alleged Conduct | Misrepresentation to invoke jurisdiction | Altered quotations presented as authentic |
| Respondents | Cook only | Cook plus seven additional attorneys |
| Injury | Improper exercise of jurisdiction | Erasure of primary beneficiary rights |
| Legal Focus | Fraud creating judicial power | Fraud altering substantive trust rights |
| Chronology | Known before February 2025 | Discovered September 15, 2025 |

These filings involve different facts, different actors, and different misconduct.

# EXHIBIT B

---

**Ledyard Bank December 2024 Account Statement**

---



**Account Transactions**

September 01, 2024 through August 31, 2025

Account Name : "A"David Plant Family Tr Inv Agency-S

Account No : 20130155

| Date | Description | Income | Principal |
|---|---|---|---|
| 11/19/2024 | **Miscellaneous Personal Payment**<br>Paid To :  Upton & Hatfield LLP<br>Disbursement to Upton & Hatfield LLP for David W Plant Trusts matter for Ledyard Financial Advisors. | | -4,117.52 |
| 11/25/2024 | **Payment to Beneficiary**<br>Paid To :  Keith Baity a/c 388003554314<br>Disbursement for Keith Baity's expenses for rent per Trustee on 01/26/2024. | | -2,000.00 |
| 11/27/2024 | **Payment to Beneficiary**<br>Paid To :  Keith Baity a/c 388003554314<br>Disbursement to Keith for reimbursement of medical expenses and to pay car insurance. OK per Trustee approval received on 11/26/2024. | | -956.37 |
| 12/11/2024 | **Attorney/Legal fee of Trust**<br>Paid To :  Sheehan Phinney Bass & Green<br>Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #411915 | | -423.00 |
| 12/19/2024 | **ADR Fee**<br>Related To Asset :  ROCHE HOLDINGS AG SPONS ADR<br>Paid To :  Northern Trust<br>For Record Date 11/25/2024 | -22.50 | |
| 12/20/2024 | **Miscellaneous Personal Payment**<br>Paid To :  Upton & Hatfield LLP<br>Disbursement to Upton & Hatfield LLP for David W Plant Trusts matter for Ledyard Financial Advisors. | | -4,900.48 |
| 12/20/2024 | **Attorney/Legal fee of Trust**<br>Paid To :  Sheehan Phinney Bass & Green PA a/c 8330425805<br>Disbursement to Sheehan Phinney Bass & Green for fees and expenses related to the Plant Trusts hearings. | | -112,597.21 |
| 12/24/2024 | **Payment to Beneficiary**<br>Paid To :  Keith Baity a/c 38800354314<br>Disbursement to Keith for reimbursement of medical expenses and to pay car insurance. OK per Trustee approval received on 12/23/2024. | | -252.51 |
| 12/24/2024 | **Payment to Beneficiary**<br>Paid To :  Keith Baity a/c 388003554314<br>Disbursement for Keith Baity's expenses for rent per Trustee on 01/26/2024. | | -2,000.00 |
| 01/06/2025 | **Fed Fiduciary Est Tax Payment**<br>Paid To :  United States Treasury<br>2024 Federal Fiduciary Estimated Income Tax Pay | | -11,480.00 |
| 01/13/2025 | **Foreign Tax Withheld**<br>Related To Asset :  MEDTRONIC PLC<br>25.00% Ireland Tax | | |

Theft of Trust funds based on fraud on the court.

Account Name : "A"David Plant Family Tr Inv Agency-S

Account No : 20130155

**Account Transacti...**

September 01, 2024 through August 31, 2025

| Date | Description | Income | Principal |
|------|-------------|--------|-----------|
| 05/21/2025 | Miscellaneous Personal Payment | | -310.00 |
| | Paid To : Upton & Hatfield LLP | | |
| | Disbursement to Upton & Hatfield LLP for Dav | | |
| 05/27/2025 | Payment to Beneficiary | | -362.00 |
| | Paid To : John C Baily Jr. | | |
| | Reimbursement to John Baity for moving expe | | |
| 05/30/2025 | Attorney/Legal Fee of Trust | | -2,899.50 |
| | Paid To : Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #418597 | | |
| 06/25/2025 | Attorney/Legal Fee of Trust | | -410.00 |
| | Paid To : Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered | | |
| 07/14/2025 | Foreign Tax Withheld | | |
| | Related To Asset : TOTALENERGIES SE SPON ADR | | |
| | 25.00% France Tax | | |
| 07/14/2025 | ADR Fee | | |
| | Related To Asset : TOTALENERGIES SE SPON ADR | | |
| | 0.01000000 Per Share | | |
| 07/14/2025 | Foreign Tax Withheld | -35.50 | |
| | Related To Asset : MEDTRON... | | |
| | 25.00% Ireland Tax | | |
| 07/22/2025 | Attorney/Legal Fee of Trust | | -214.00 |
| | Paid To : Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #421087 | | |
| 07/22/2025 | Miscellaneous Personal Payment | | -640.00 |
| | Paid To : Aleks Mauricio | | |
| | Disbursement to AM Home Improvement/Aleks Mauricio for moving out and disassembly of household contents. Keith Baity, room 403. OK per Trustee on 07/17/2025 | | |
| 07/23/2025 | Life Insurance Premium | | -12,622.33 |
| | Paid To : John Hancock Life Insurance Company | | |
| | Payment of loan interest on life insurance policy held at John Hancock Life Ins Co per Bradford Cook. trustee. | | |
| 08/18/2025 | Foreign Tax Withheld | | |
| | Related To Asset : A | | |
| | 25.00% Ireland Tax | | |
| 08/21/2025 | Miscellaneous Persor | | -465.00 |
| | Paid To : Upton & H | | |

*Page 33*

Thousand paid to sons against demands from BJP to stop

Tens of thousands to SP- NOT one hourly bill ever

Fraud on the Court Legal Fees

Annual insurance fraud- $ to John Hancock not credited. Massive fraud

**Account Name : "A"David Plant Family Tr Inv Agency-S**

**Account No : 20130155**

## Account Transacti

September 01, 2024 through August 31, 2025

| Date | Description | Income | Principal |
|------|-------------|--------|-----------|
| 05/21/2025 | Miscellaneous Personal Payment | | -310.00 |
| | Paid To :  Upton & Hatfield LLP | | |
| | Disbursement to Upton & Hatfield LLP for Dav | | |
| 05/27/2025 | Payment to Beneficiary | | -362.00 |
| | Paid To :  John C Baily Jr. | | |
| | Reimbursement to John Baily for moving expe | | |
| 05/30/2025 | Attorney/Legal Fee of Trust | | -2,899.50 |
| | Paid To :  Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #418597 | | |
| 06/25/2025 | Attorney/Legal Fee of Trust | | -410.00 |
| | Paid To :  Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rend | | |
| 07/14/2025 | Foreign Tax Withheld | | |
| | Related To Asset :  TOTALENERGIES SE SPON ADR | | |
| | 25.00% France Tax | | |
| | ADR Fee | | |
| 07/14/2025 | Related To Asset :  TOTALENERGIES SF SPON ADR | | |
| | 0.01000000 Per Share | | |
| 07/14/2025 | Foreign Tax Withheld | -35.50 | |
| | Related To Asset :  MEDTRON... .. | | |
| | 25.00% Ireland Tax | | |
| 07/22/2025 | Attorney/Legal Fee of Trust | | -214.00 |
| | Paid To :  Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #421087 | | |
| 07/22/2025 | Miscellaneous Personal Payment | | -640.00 |
| | Paid To :  Aleks Mauricio | | |
| | Disbursement to AM Home Improvement/Aleks Mauricio for moving out and disassembly of household contents. | | |
| | Keith Baily, room 403. OK per Trustee on 07/17/2025. | | |
| 07/23/2025 | Life Insurance Premium | | -12,622.33 |
| | Paid To :  John Hancock Life Insurance Company | | |
| | Payment of loan interest on life insurance policy held at John Hancock Life Ins Co per Bradford Cook. trustee. | | |
| 08/18/2025 | Foreign Tax Withheld | | |
| | Related To Asset :  A | | |
| | 25.00% Ireland Tax | | |
| 08/21/2025 | Miscellaneous Person | | -465.00 |
| | Paid To :  Upton & H | | |

*Handwritten annotations:* "Thousand paid to sons against demands from BJP to stop" — "Tens of thousands to SP- NOT one hourly bill ever" — "Fraud on the Court Legal Fees" — "Annual insurance fraud- $ to John Hancock not credited. Massive fraud"

Account Name : "A"David Plant Family Tr Inv Agency-S

Account No : 20130155

## Account Transactions
### September 01, 2024 through August 31, 2025

| Date | Description | Income | Principal |
|------|-------------|--------|-----------|
| 03/20/2025 | Attorney/Legal Fee of Trust | | -1,278.50 |
| | Paid To : Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #416082 | | |
| 04/08/2025 | Miscellaneous Personal Payment | | -1,851.63 |
| | Paid To : Slate at Merrimack MT | | |
| | Disbursement to Slate at Merrimack MT for Keith Baity's final rent payment on Apt 403. OK per Trustee, Brad Cook. | | |
| 04/14/2025 | Foreign Tax Withheld | -35.00 | |
| | Related To Asset : MEDTRONIC PLC | | |
| | 25.00% Ireland Tax | | |
| 04/17/2025 | Foreign Tax Withheld | -109.33 | |
| | Related To Asset : TOTALENERGIES SE SPON ADR | | |
| | 25.00% France Tax | | |
| 04/17/2025 | ADR Fee | -5.12 | |
| | Related To Asset : TOTALENERGIES SE SPON ADR | | |
| | 0.01000000 Per Share | | |
| 04/28/2025 | Miscellaneous Personal Payment | | 2,954.00 |
| | Paid To : Ana Dapeixao | | |
| | Disbursement for Packing, cleaning, and moving Keith Baity,s belongings from 3 Lexington Court and from storage to 24 Cricket Hill Road on 4/8, 4/9, 4/10, 4/16, 4/17, and 4/18. 38 hours at $78/hr (includes use of personal vehicle and trailer for moving items and car mileage. OK per Brad Cook, Trustee. | | |
| 04/28/2025 | Attorney/Legal Fee of Trust | | -3,709.50 |
| | Paid To : Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #417587 | | |
| 05/01/2025 | Miscellaneous Personal Payment | | -4,685.00 |
| | Paid To : Upton & Hatfield LLP | | |
| | Disbursement to Upton & Hatfield LLP for David W Plant Trusts matter for Ledyard Financial Advisors. | | |
| 05/15/2025 | Foreign Tax Withheld | -364.61 | |
| | Related To Asset : ROCHE HOLDINGS AG SPONS ADR | | |
| | 35.00% Switzerland Tax | | |
| 05/15/2025 | ADR Fee | -22.50 | |
| | Related To Asset : ROCHE HOLDINGS AG SPONS ADR | | |
| | 0.03000000 Per Share | | |
| 05/16/2025 | Foreign Tax Withheld | -30.34 | |
| | Related To Asset : ACCENTURE PLC | | |
| | 25.00% Ireland Tax | | |

More trust teft— we have years of evidence

Page 32

293LBP0003

2931 B0009_Domestic_19000003808035662

**Account Name :** *A*David Plant Family Tr Inv Agency-S

**Account No :** 20130155

## Account Transactions

September 01, 2024 through August 31, 2025

| Date | Description | Income | Principal |
|------|-------------|--------|-----------|
| 03/20/2025 | Attorney/Legal Fee of Trust | | -1,278.50 |
| | Paid To :   Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #416082 | | |
| 04/08/2025 | Miscellaneous Personal Payment | | -1,851.63 |
| | Paid To :   Slate at Merrimack MT | | |
| | Disbursement to Slate at Merrimack MT for Keith Baity's final rent payment on Apt 403. OK per Trustee. Brad Cook. | | |
| 04/14/2025 | Foreign Tax Withheld | -35.00 | |
| | Related To Asset :  MEDTRONIC PLC | | |
| | 25.00% Ireland Tax | | |
| 04/17/2025 | Foreign Tax Withheld | -109.33 | |
| | Related To Asset :  TOTALENERGIES SE SPON ADR | | |
| | 25.00% France Tax | | |
| 04/17/2025 | ADR Fee | -5.12 | |
| | Related To Asset :  TOTALENERGIES SE SPON ADR | | |
| | 0.01000000 Per Share | | |
| 04/28/2025 | Miscellaneous Personal Payment | | -2,964.00 |
| | Paid To :   Ana Dapaixao | | |
| | Disbursement for Packing, cleaning, and moving Keith Baity's belongings from 3 Lexington Court and from storage to 24 Cricket Hill Road on 4/8. 4/9, 4/10, 4/16, 4/17, and 4/18. 38 hours at $78/hr (includes use of personal vehicle and trailer for moving items and car mileage. OK per Brad Cook. Trustee. | | |
| 04/28/2025 | Attorney/Legal Fee of Trust | | -3,709.50 |
| | Paid To :   Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #417587 | | |
| 05/01/2025 | Miscellaneous Personal Payment | | -4,685.00 |
| | Paid To :   Upton & Hatfield LLP | | |
| | Disbursement to Upton & Hatfield LLP for David W Plant Trusts matter for Ledyard Financial Advisors. | | |
| 05/15/2025 | Foreign Tax Withheld | -364.61 | |
| | Related To Asset :  ROCHE HOLDINGS AG SPONS ADR | | |
| | 35.00% Switzerland Tax | | |
| 05/15/2025 | ADR Fee | -22.50 | |
| | Related To Asset :  ROCHE HOLDINGS AG SPONS ADR | | |
| | 0.03000000 Per Share | | |
| 05/16/2025 | Foreign Tax Withheld | -30.34 | |
| | Related To Asset :  ACCENTURE PLC | | |
| | 25.00% Ireland Tax | | |

**Account Name : *A*David Plant Family Tr Inv Agency-S**

**Account No : 20130155**

## Account Transactions

September 01, 2024 through August 31, 2025

| Date | Description | Income | Principal |
|------|-------------|--------|-----------|
| | Disbursement to Upton & Hatfield LLP for David W Plant Trusts matter for Ledyard Financial Advisors. OK per Trustee. | | |
| 08/26/2025 | Attorney/Legal Fee of Trust | | -1,481.00 |
| | Paid To   Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W Trusts. Invoice #422459 | | -215,740.81 |
| | **Sub Total** | -1,110.16 | |
| | **Cash Receipts** | | |
| 10/04/2024 | Deposit | 275.99 | |
| | Received From :  Chicago Clearing | | |
| | Recovery from Novo Nordisk litigation settlement. Considered as long-term gain. | | 0.00 |
| | **Sub Total** | 275.99 | |
| | **Miscellaneous** | | |
| 09/30/2024 | Accretion - Adjust Cost on Taxlots | | 747.22 |
| | US TREASURY N/B      4.2500% 09/30/24 | | |
| | Adjust Cost $130.79 | | |
| | [Bond Disc Acrt] | | |
| 12/06/2024 | Capital Gains Distribution - Long Term | | 1,855.50 |
| | FULLER & THALER BEHAVIORAL SM CAP EQ FD R6 | | |
| | 227.381 Shares | | |
| 12/16/2024 | Capital Gains Distribution - Long Term | | 1,388.89 |
| | GOLDMAN SACHS GQG PRTNRS INTL OPP FD INST | | |
| | 2133.985 Shares | | |
| 12/19/2024 | Capital Gains Distribution - Long Term | | 1,763.70 |
| | VANGUARD INTL VALUE FUND | | |
| | 827.761 Shares | | |
| 08/19/2025 | Capital Gains Distribution - Long Term | | |
| | LAZARD GLOBAL LIST INFRA PORT FUND | | |
| | 3725.937 Shares | | |
| | **Sub Total** | 0.00 | 5,755.31 |
| 09/11/2024 | Fee For Period Ending        08/31/2025 | -14,219.49 | -14,219.66 |
| | Net Transfers | -82011.91 | 82011.91 |

*MONEY MARKET ACTIVITY*

| | | |
|---|---|---|
| 120 | Purchases ( s ) For | -529,178.70 |
| 72 | Sale ( s ) For | 464,603.69 |

*handwritten: More illegal no hourly billing fees*

## Account Transactions

September 01, 2024 through August 31, 2025

**Account Name : 'A'David Plant Family Tr Inv Agency-S**

**Account No : 20130155**

| Date | Description | Income | Principal |
|---|---|---|---|
| | Disbursement to Upton & Hatfield LLP for David W Plant Trusts matter for Ledyard Financial Advisors. OK per Trustee. | | |
| 08/26/2025 | Attorney/Legal Fee of Trust | | -1,481.00 |
| | Paid To : Sheehan Phinney Bass & Green | | |
| | Disbursement to Sheehan Phinney Bass & Green for services rendered Plant, David W. Trusts. Invoice #422459 | | |
| | **Sub Total** | -1,110.16 | -215,740.81 |
| | **Cash Receipts** | | |
| 10/04/2024 | Deposit | 275.99 | |
| | Received From : Chicago Clearing | | |
| | Recovery from Novo Nordisk litigation settlement. Considered as long-term gain. | | |
| | **Sub Total** | 275.99 | 0.00 |
| | **Miscellaneous** | | |
| 09/30/2024 | Accretion - Adjust Cost on Taxlots<br>US TREASURY N/B    4.2500% 09/30/24<br>Adjust Cost $130.79<br>[Bond Disc Acrt] | | 747.22 |
| 12/06/2024 | Capital Gains Distribution - Long Term<br>FULLER & THALER BEHAVIORAL SM CAP EQ FD R6<br>227.381 Shares | | 1,855.50 |
| 12/16/2024 | Capital Gains Distribution - Long Term<br>GOLDMAN SACHS GQG PRTNRS INTL OPP FD INST<br>2133.985 Shares | | 1,388.89 |
| 12/19/2024 | Capital Gains Distribution - Long Term<br>VANGUARD INTL VALUE FUND<br>827.761 Shares | | 1,763.70 |
| 08/19/2025 | Capital Gains Distribution - Long Term<br>LAZARD GLOBAL LIST INFRA PORT FUND<br>3725.937 Shares | | |
| | **Sub Total** | 0.00 | 5,755.31 |
| 09/11/2024 | Fee For Period Ending        08/31/2025 | -14,219.49 | -14,219.66 |
| | Net Transfers | -82011.91 | 82011.91 |

*MONEY MARKET ACTIVITY*
120  Purchases ( s ) For    -529,178.70
72   Sale ( s ) For    464,603.69

More illegal no hourly billing fees

Account Name : "A"David Plant Family Tr Inv Agency-S

Account No : 20130155

## Account Transactions

August 01, 2024 through August 31, 2024

| Date | Description | Income | Principal |
|---|---|---|---|
| | *Starting Balances* | $ 0.00 | $ 0.00 |
| | **Dividends and Interest** | | |
| 08/01/2024 | INTRAFI CASH SERVICES | 829.42 | |
| | Interest From 07/01/2024 To 07/25/2024 | | |
| 08/01/2024 | VANGUARD CORE BOND FUND | 1,165.15 | |
| | 20123.414 Shares | | |
| 08/01/2024 | VANGUARD INTERM TERM TAX EX ADM FUND 542 | 114.45 | |
| | Interest From 07/01/2024 To 07/31/2024 | | |
| 08/01/2024 | CVS HEALTH CORPORATION | 214.13 | |
| | 322 Shares | | |
| 08/02/2024 | COHEN & STEERS LOW DUR PFD & INC FUND I | 280.28 | |
| | 7007.021 Shares | | |
| 08/02/2024 | FEDERATED HERMES TOT RET BOND FUND I | 842.46 | |
| | 24006.064 Shares | | |
| 08/02/2024 | Dividend From 07/01/2024 To 07/31/2024 | | |
| | FIDELITY ADV INV GR BOND FUND Z | 737.71 | |
| | 31524.051 Shares | | |
| 08/02/2024 | Dividend From 07/01/2024 To 07/31/2024 | | |
| | T ROWE PRICE SUMMIT MUNI INTRM FUND I | 340.62 | |
| | 12032.825 Shares | | |
| 08/15/2024 | Dividend From 07/01/2024 To 07/31/2024 | | |
| | APPLE INC | 119.50 | |
| | 478 Shares | | |
| 08/15/2024 | PROCTER & GAMBLE CO | 263.70 | |
| | 282 Shares | | |
| 08/16/2024 | ACCENTURE PLC | 105.78 | |
| | 82 Shares | | |
| | **Sub Total** | 5,0͟1͟3͟.20 | 0.00 |
| | **Payments** | | |
| 08/07/2024 | Attorney/Legal fee of Trust | | -58,659.00 |
| | Paid To : Ledyard National Bank | | |
| | Disbursement representing reimbursement of legal expense and additional expenses approved by Trustee, Brad | | |
| | Cook on 8/6/2024. | | |
| 08/07/2024 | Life Insurance Premium | | -12,302.84 |
| | Paid To : John Hancock Life Insurance Company | | |

Legal Fees to Ledyard Bank for ???

# EXHIBIT C

**Summary of Trust Disbursements (Rule 1006 Summary – Exhibit A-7)**

EXHIBIT A-7

# SUMMARY OF MARITAL TRUST DISBURSEMENTS

(2019 - October 2025)

*(Derived from Ledyard Custodial Records)*

David W. Plant Family Marital Trust

Ledyard Financial Advisors Account No. 20130155

Lifetime Beneficiary: Bette Jean Plant, age 90 (born 1935)

## I. SUMMARY

This summary is prepared pursuant to Fed. R. Evid. 1006 to assist the Court in evaluating the disbursement activity reflected in the Ledyard Financial Advisors custodial records for Account No. 20130155 (the "Marital Trust") for the period 2019 through October 2025. The custodial records reflect no distributions to Mrs. Plant for the period September 2021 through October 2025.

## II. DISBURSEMENTS BY PAYEE - VISUAL COMPARISON

The following chart illustrates trust disbursements by payee. Bradford E. Cook, the successor trustee, is a partner at Sheehan Phinney Bass + Green PA.

| Payee | | Amount |
|---|---|---|
| Sheehan Phinney | | $184,980 (35.7%) |
| John Hancock | | $137,311 (26.5%) |
| Keith Baity | | $92,971 (17.9%) |
| Ledyard Bank | | $58,659 (11.3%) |
| Upton & Hatfield | | $23,655 (4.6%) |
| Baker Newman | | $11,420 (2.2%) |
| Other | | $9,414 (1.8%) |

| MRS. PLANT | $0.00 (0%) - NO DISTRIBUTIONS SINCE SEPT. 2021 |
|---|---|

## III. DETAILED DISBURSEMENT TABLE

| Payee | Amount | % of Total |
|---|---|---|
| Sheehan Phinney Bass + Green PA | $184,980.01 | 35.7% |
| John Hancock Life Insurance Company | $137,311.38 | 26.5% |
| Keith Baity | $92,970.93 | 17.9% |
| Ledyard Bank (Reimbursement) | $58,659.00 | 11.3% |
| Upton & Hatfield LLP | $23,655.00 | 4.6% |

EXHIBIT A-7

| | | |
|---|---|---|
| Baker Newman & Noyes, LLC | $11,420.00 | 2.2% |
| Other (Sarah Page, Moving Services) | $9,414.00 | 1.8% |
| **TOTAL DISBURSEMENTS** | **$518,410.32** | **100%** |
| **DISTRIBUTIONS TO MRS. PLANT (Sept. 2021 - Oct. 2025)** | **$0.00** | **0%** |

## IV. SCHEDULE A: SHEEHAN PHINNEY BASS + GREEN PA

Bradford E. Cook, the successor trustee, is a partner at Sheehan Phinney Bass + Green PA.

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 05/28/2021 | $5,500.00 | Estate planning (Invoice #361250) |
| 10/22/2021 | $5,372.00 | Legal services (Invoice #366923) |
| 04/29/2022 | $20,500.00 | Legal services (Invoice #374088) |
| 05/26/2022 | $583.00 | Legal services (Invoice #374730) |
| 07/28/2022 | $1,161.00 | Legal services (Invoice #364807) |
| 09/02/2022 | $1,870.00 | Legal services (Invoice #378304) |
| 10/03/2022 | $635.00 | Legal services (Invoice #379745) |
| 12/29/2022 | $3,630.00 | Legal services (Invoice #382254) |
| 12/22/2023 | $6,918.00 | Legal services (Invoice #384499) |
| 03/20/2024 | $1,202.50 | Legal services (Invoice #400810) |
| 04/26/2024 | $1,422.00 | Legal services (Invoice #402410) |
| 09/25/2024 | $3,598.80 | Legal services (Invoice #408751) |
| 10/17/2024 | $6,025.00 | Legal services (Invoice #409192) |
| 12/11/2024 | $423.00 | Legal services (Invoice #411915) |
| 12/20/2024 | $112,697.21 | Legal Fee |

EXHIBIT A-7

| 02/13/2025 | $1,334.50 | Legal services (Invoice #413598) |
| 03/20/2025 | $1,278.50 | Legal services (Invoice #416082) |
| 04/28/2025 | $3,709.50 | Legal services (Invoice #417587) |
| 05/30/2025 | $2,899.50 | Legal services (Invoice #418597) |
| 06/25/2025 | $410.00 | Legal services (Invoice #419775) |
| 07/22/2025 | $214.00 | Legal services (Invoice #421087) |
| 08/26/2025 | $1,418.00 | Legal services (Invoice #422459) |
| 10/20/2025 | $2,178.50 | Legal services (Invoice #424517) |
| **SUBTOTAL** | **$184,980.01** | |

**DECEMBER 20, 2024 DISBURSEMENT**

# $112,697.21

Single payment to Sheehan Phinney Bass + Green PA

This payment represents 61% of all Sheehan Phinney disbursements

**No detailed invoice provided to Mrs. Plant**
**No hourly billing records provided to Mrs. Plant**
**No court approval obtained**

## V. SCHEDULE B: JOHN HANCOCK LIFE INSURANCE COMPANY

| Year | Amount | Description per Custodial Records |
|---|---|---|
| 2019 | $45,287.00 | Insurance payment |
| 2020 | $47,674.35 | Insurance Premium / Interest Payment |
| 2021 | $3,604.51 | Interest Payment |
| 2022 | $6,460.89 | Interest Payment |
| 2023 | $9,359.46 | Interest Payment |

EXHIBIT A-7

| | | |
|---|---|---|
| 2024 | $12,302.84 | Interest Payment |
| 2025 | $12,622.33 | Interest Payment |
| **SUBTOTAL** | **$137,311.38** | |

## VI. SCHEDULE C: KEITH BAITY

The custodial records describe these disbursements as "Payment to Beneficiary" or "Beneficiary Disbursement."

| Period | Amount | Description per Custodial Records |
|---|---|---|
| Sept-Dec 2021 | $14,323.23 | Rent, dental, utilities, misc. |
| 2022 | $32,052.36 | Rent, utilities, misc. |
| 2023 | $13,960.00 | Rent, moving expenses |
| 2024 | $26,421.68 | Rent, medical, misc. |
| 2025 | $6,213.71 | Rent, chiropractic, final rent |
| **SUBTOTAL** | **$92,970.93** | |

## VII. SCHEDULE D: LEDYARD BANK

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 08/07/2024 | $58,659.00 | Ledyard Bank Reimbursement |
| **SUBTOTAL** | **$58,659.00** | |

*No billing statement or itemization for this reimbursement has been provided to Mrs. Plant.*

## VIII. SCHEDULE E: UPTON & HATFIELD LLP

The custodial records describe these as "Legal services for Ledyard Bank."

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 09/10/2024 | $5,265.00 | Legal services for Ledyard Bank |
| 11/19/2024 | $4,117.52 | Legal Fee |

EXHIBIT A-7

| 12/20/2024 | $4,900.48 | Legal services for Ledyard Bank |
|---|---|---|
| 01/23/2025 | $536.00 | Legal services for Ledyard Bank |
| 02/28/2025 | $3,376.00 | Legal Fee |
| 05/01/2025 | $4,685.00 | Legal services for Ledyard Bank |
| 05/21/2025 | $310.00 | Legal services for Ledyard Bank |
| 08/21/2025 | $465.00 | Legal services for Ledyard Bank |
| **SUBTOTAL** | **$23,655.00** | |

## IX. SCHEDULE F: BAKER NEWMAN & NOYES, LLC

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 05/01/2019 | $1,190.00 | Accounting services |
| 04/09/2021 | $950.00 | Accounting services |
| 07/06/2022 | $2,375.00 | Accounting services |
| 07/06/2022 | $450.00 | Accounting services (Call with Brad Cook and John Baity) |
| 01/27/2023 | $1,150.00 | Accounting services |
| 04/21/2023 | $1,175.00 | Accounting services |
| 05/15/2023 | $275.00 | Accounting services |
| 03/20/2024 | $1,290.00 | Accounting services |
| 03/20/2025 | $2,565.00 | Accounting services |
| **SUBTOTAL** | **$11,420.00** | |

## X. SCHEDULE G: OTHER DISBURSEMENTS

| Date | Amount | Description per Custodial Records |
|---|---|---|
| 10/01/2021 | $6,000.00 | Sarah Page - Home services per Cook auth |

EXHIBIT A-7

| 04/28/2025 | $2,964.00 | Ana Dapaixao - Moving Services |
|---|---|---|
| 07/22/2025 | $640.00 | Aleks Mauricio - Moving Services |
| 10/22/2025 | $1,000.00 | Ana Dapaixao - Cleaning, packing, sorting |
| **SUBTOTAL** | **$10,604.00** | |

## XI. TOTAL DISBURSEMENTS

### TOTAL DISBURSEMENTS TO PAYEES OTHER THAN MRS. PLANT

# $518,410.32

### DISTRIBUTIONS TO MRS. PLANT (Sept. 2021 - Oct. 2025)

# $0.00

## XII. CONCLUSION (Summary Only)

Based on the Ledyard Financial Advisors custodial account records for Account No. 20130155 for the period 2019 through October 2025, this summary reflects disbursements totaling $518,410.32 to payees other than Bette Jean Plant during a period in which the custodial records reflect no distributions to Mrs. Plant.

This summary is provided to assist the Court in evaluating the need for preservation of assets, expedited accounting, and interim controls pending adjudication.

## XIII. SOURCE OF DATA

The entries summarized above are derived from the custodial transaction records for Ledyard Financial Advisors Account No. 20130155. The underlying statements and ledger pages are available and will be produced to the Court and any Court-appointed neutral on request.

# TAB E

**December 29, 2025**
**Supplemental Submission and Request for Reconsideration**

*Documentation of structural conflicts within ADO, categorical non-docketing, foreseeable harm to 90-year-old beneficiary, and notice of federal filings*

Date: December 29, 2025


Attorney Mark P. Cornell

Deputy General Counsel

New Hampshire Attorney Discipline Office


Re: Supplemental Submission and Request for Reconsideration (Non-Docketing Determination)

Attorney Cornell,

Enclosed please find this Supplemental Submission and Request for Reconsideration, provided for the limited and specific purpose of record clarification, preservation, and review of the Attorney Discipline Office's decision not to docket documented allegations of serious attorney misconduct.

This submission is intended to ensure a complete, accurate, and reviewable record for any independent oversight, judicial review, or federal inquiry. It is written with the understanding that the Attorney Discipline Office has declined to act, and that the integrity of the record itself is therefore paramount.

This cover notice is brief by design. The Supplemental Submission follows immediately.


Respectfully,

Cheryl R Baity

Cheryl Baity

Darien, Connecticut

1

Date: December 29, 2025

**SUPPLEMENTAL SUBMISSION AND REQUEST FOR RECONSIDERATION**

This Supplemental Submission is intentionally non-duplicative. It does not restate the evidentiary exhibits, document comparisons, or factual demonstrations previously submitted. Instead, it addresses three issues that must now be confronted directly:

1. The Attorney Discipline Office's non-docketing determination, which operates as a categorical bar rather than a case-specific judgment;

2. The structural conflicts embedded within the New Hampshire attorney discipline system that render neutral review implausible when allegations implicate entrenched professional networks; and

3. The necessity of record preservation and federal oversight, given the foreseeable and escalating harm to a vulnerable elderly beneficiary.

**I. Context: an elderly beneficiary deprived of access to her own property**

This matter concerns a ninety-year-old primary beneficiary of a multimillion-dollar trust who has been deprived of access to her own funds for more than four and a half years. During that period, she has been unable to secure independent counsel, unable to meaningfully protect her housing stability, and increasingly exposed to medical and safety risks associated with advanced age.

The harm here is not theoretical. Delay is not neutral. In the context of an elderly beneficiary whose access to her own property has been effectively frozen, delay is itself a mechanism of harm. Continued inaction foreseeably increases the risk of displacement, medical decline, and death before any remedy can be obtained.

**II. Non-docketing is indefensible on a documentary record**

The decision not to docket the submitted complaints is not supported by the evidentiary record. The allegations do not depend on credibility contests or speculative inference. They are grounded in documentary materials, including trust and estate instruments and related filings, and they allege attorney conduct that falls squarely within the core purposes of professional discipline: falsification or material alteration of governing documents, coordinated attorney conduct, and fiduciary abuse.

At a minimum, such allegations warrant docketing, conflict screening, and investigation. Refusal to docket at the threshold—without discovery, without sworn testimony, and without transparent conflict analysis—functions not as neutral administration, but as a gatekeeping mechanism that forecloses scrutiny altogether.

3

If the Office maintains that non-docketing was proper, it should identify with specificity the rule, policy, or authority relied upon, and explain how that authority permits refusal to docket allegations involving forged or materially altered trust instruments affecting an elderly beneficiary's property rights. Generalized references to "civil disputes," "insufficient evidence," or jurisdictional disclaimers do not meaningfully address the record presented.

### III. Screening-stage discretion operates as a barrier where structural conflicts exist

This request cannot be evaluated in isolation from the structure of the New Hampshire attorney discipline system itself. That system is populated by a relatively small, interwoven professional community in which firm leadership, bar leadership, academic affiliations, and disciplinary authority repeatedly overlap.

In such an environment, impartiality does not arise from assurances of good faith. It depends on rigorous, transparent conflict screening and documented recusals. Where those safeguards are absent or opaque, discretionary non-docketing becomes the means by which accountability is avoided before process can begin.

Publicly available information reflects overlapping roles between dominant law firms, bar leadership positions, and disciplinary committees, as well as the presence of a federal prosecutorial official within the complaint screening structure. These overlaps create, at minimum, an appearance of partiality when allegations concern attorneys operating within the same embedded professional networks that populate the gatekeeping bodies.

This submission does not allege personal wrongdoing by individual committee members as a conclusion. It documents structure, roles, and relationships, so that any independent reviewer can assess whether the system, as designed and staffed, is capable of neutral action in cases involving influential actors. Where evidence alone cannot overcome gatekeeping discretion, the problem is structural, not evidentiary.

### IV. Foreseeable catastrophic harm resulting from continued inaction.

The beneficiary's age and circumstances make continued inaction especially dangerous. Deprivation of access to her own funds foreseeably increases the risk of displacement, medical decline, and death. When a regulatory body has notice of such risk and nonetheless declines to act on a documentary record, the resulting harm is not incidental. It is the predictable consequence of non-action.

No disciplinary system charged with protecting the public can treat such consequences as collateral. Where delay itself inflicts irreversible harm on a vulnerable person, the refusal to even docket becomes a substantive decision with real-world effects.

### V. Notice of federal civil filings and criminal referrals

4

Because the Attorney Discipline Office has declined to docket or transparently address these complaints despite substantial documentary support and imminent risk to a vulnerable elderly beneficiary, parallel federal avenues are now being pursued.

These include civil filings in federal court and the submission of criminal referrals, with supporting documentation, to federal authorities with jurisdiction over fraud, obstruction, and related offenses. This notice is provided to ensure clarity of record, to trigger preservation obligations, and to document that the Office's position was taken with full awareness of the consequences.

## VI. Preservation demand

This submission constitutes a formal preservation notice. Please preserve all records relating to these grievances, including but not limited to intake materials, screening memoranda, routing notes, conflict checks, internal communications, emails, drafts, metadata, and any communications with outside attorneys, firms, institutions, or government offices concerning these matters.

Any destruction or alteration of records after notice will be treated as spoliation and addressed accordingly.

## VII. Requested action

Accordingly, I request the following:

1. **Reconsideration and reversal** of the non-docketing determination(s);

2. **Written identification** of the specific authority relied upon for non-docketing;

3. **Identification of the individuals involved in intake**, screening, and decision-making;

4. **Disclosure of conflict screening and recusal determinations; and**

5. **Written confirmation that all relevant records have been preserved.**

This Supplemental Submission is intended to ensure that any reviewing authority can assess what occurred, who made the relevant decisions, and on what basis. The Office may correct course now through docketing and transparent process. If it elects not to do so, the resulting record will speak for itself.

Respectfully,

Cheryl Baity

Darien, Connecticut

EXHIBIT A-4

# EXHIBIT A-4

## STRUCTURAL CONFLICT OF INTEREST

## IN NEW HAMPSHIRE ATTORNEY DISCIPLINE INTAKE PROCESS

(Demonstrative Summary Based on Public Records)

| CRITICAL FINDING |
|---|

The General Counsel of the New Hampshire Attorney Discipline Office—the sole individual who decides whether grievances are docketed for investigation—is a former attorney of the same law firm as four of the respondent attorneys named in the September 17, 2025 grievance. This structural conflict renders independent review impossible.

## I. THE GATEKEEPING STRUCTURE

Under New Hampshire Supreme Court Rule 37, the ADO General Counsel possesses sole discretionary authority to determine whether a grievance is "docketed" as a complaint. A grievance that is not docketed is never investigated. There is no neutral review of non-docketing decisions. The General Counsel's determination is final at the intake stage.

**Table 1 — New Hampshire Intake Authority**

| Function | Authority Under NH Rule 37 |
|---|---|
| Receipt of Grievances | ADO General Counsel |
| Initial Screening | ADO General Counsel (sole discretion) |
| Docketing Decision | **ADO General Counsel (single-point gatekeeping)** |
| Neutral Review of Non-Docketing | **NONE — Complaint Screening Committee reviews only if General Counsel first dockets** |
| Record Retention (Non-Docketed) | **Files destroyed per Rule 37(20)(b)(2)** |

**Effect:** Approximately 85-92% of all grievances filed with the ADO are terminated at this single decision point without investigation. The General Counsel's decision to not docket a complaint is outcome-determinative.

## II. THE IDENTIFIED CONFLICT

**Table 2 — Firm Affiliation Conflict**

| Individual | Role | Firm Affiliation |
|---|---|---|
| **Brian R. Moushegian** | **ADO General Counsel (Gatekeeper)** | **Former Devine Millimet** |
| Attorney David Eby | Grievance Respondent | Devine Millimet |
| Attorney Sarah Ambrogi | Grievance Respondent | Devine Millimet |
| Attorney Rebecca Lamarre | Grievance Respondent | Devine Millimet |
| Attorney Mark Perkins | Grievance Respondent | Devine Millimet |

**The Structural Problem:** The individual who holds sole discretionary authority to determine whether the September 17, 2025 grievance proceeds to investigation is a former colleague of four of the respondent attorneys at the same law firm. No recusal mechanism exists. No neutral review exists. The conflict is structural and unavoidable under the current system.

## III. WHY OTHER STATES PREVENT THIS

EXHIBIT A-2: ADO STRUCTURAL ANALYSIS WITH TIMELINE

## SECTION 6: NETWORK CONNECTION SUMMARY

| Firm | Identified ADO Connections | Respondents in Grievances |
|---|---|---|
| DEVINE MILLIMET | Brian R. Moushegian (General Counsel - former); Elizabeth M. Murphy (Asst. Disc. Counsel - former); Mitchell M. Simon (PCC Member - current Of Counsel); Kyle D. Robidas (Hearings - current Of Counsel) | Sarah S. Ambrogi, David P. Eby, Mark A. Perkins, Rebecca E. Lamarre |
| SHEEHAN PHINNEY | Robert R. Lucic (PCC Member - current Partner, NHBA President-Elect); James A. Shepard (Hearings - former) | Bradford E. Cook, Jennifer P. Lyon, James Q. Shirley, Michael Lambert |
| UPTON & HATFIELD | Andrea Amodeo-Vickery (Hearings - affiliated) | James F. Raymond |

## SECTION 7: GATEKEEPING STRUCTURE AND DECISION POINT

| Stage | Decision Maker | Effect on Complainant's Grievances |
|---|---|---|
| Grievance Filed | Complainant to ADO | December 2024: Complainant filed grievances against 9 attorneys |
| Initial Screening | Brian R. Moushegian (former Devine Millimet) | December 18, 2025: Non-docketing decision by former colleague of 4 respondents |
| Result | General Counsel (sole discretion) | No investigation. No neutral review. Records destroyed after 2 years. |
| Reconsideration | CSC (if requested) | December 22, 2025: Complainant filed reconsideration request |

## SECTION 8: HISTORICAL PATTERN (2004-2025)

*Source: NH Attorney Discipline System Searchable Database (nhattyreg.org); NH Supreme Court Orders*

Public disciplinary sanctions identified (sample):

| Attorney | Year | Sanction | Practice Type |
|---|---|---|---|
| Justin P. Nadeau | 2024 | Disbarment | Solo practitioner |
| Lisa M. Wellman-Ally | 2023 | Disbarment | Small firm |
| Jason A. Czekalski | 2017 | Disbarment | Solo practitioner |
| Joseph S. Hoppock | 2025 | 6-mo. suspension | Solo/Small firm |

**NOT IDENTIFIED (2004-2025):** No publicly reported docketed disciplinary matter or public sanction involving any attorney affiliated with Devine Millimet (~55 attorneys), Sheehan Phinney (~70 attorneys), McLane Middleton (~90 attorneys), Rath Young & Pignatelli (~40 attorneys), or Upton & Hatfield (~25 attorneys).

## SOURCES

1. NH Attorney Discipline System Website: nhattyreg.org (Staff and Committee Rosters, December 2024)

2. NH Supreme Court Rule 37 (Attorney Discipline System)

3. NH Attorney Discipline Office Annual Reports (2004-2024)

4. NH Supreme Court Disciplinary Orders Database

5. Law firm websites: devinemillimet.com, sheehan.com, mclane.com, uptonhatfield.com

6. LinkedIn public profiles

7. The Org company profiles

8. NH Bar News announcements (attorney appointments)

9. New Hampshire Bar Association Board of Governors Election Materials (2024-2025)

**NOTE:** This exhibit presents publicly available information documenting structural relationships within the NH Attorney Discipline System. It is submitted to support the complainant's contention that structural conflicts of interest preclude neutral review of grievances against attorneys affiliated with major NH law firms. Entries marked '[To be verified]' require additional discovery to confirm.

EXHIBIT A-2: ADO STRUCTURAL ANALYSIS WITH TIMELINE

## SECTION 3: PROFESSIONAL CONDUCT COMMITTEE MEMBERS

*The PCC adjudicates disciplinary matters and imposes/recommends sanctions. Members serve three-year terms.*

| Name | Committee Role | Service Period | Current/Former Firm |
|------|----------------|----------------|---------------------|
| Robert R. Lucic, Esq. | Member | Current (also NHBA President-Elect) | SHEEHAN PHINNEY (Partner) |
| Mitchell M. Simon, Esq. | Member | 19+ years NHBA Ethics Committee | DEVINE MILLIMET (Of Counsel) |
| Stephanie C. Hausman, Esq. | Chair | Current | [To be verified] |
| Caroline K. Leonard, Esq. | Vice Chair | Current | [To be verified] |

**CONFLICT IDENTIFIED:** Robert Lucic is a current Sheehan Phinney partner (respondent firm). Mitchell Simon is current Of Counsel at Devine Millimet (respondent firm). If grievances against their firms' attorneys reached the PCC, they would potentially adjudicate matters involving their own colleagues.

## SECTION 4: COMPLAINT SCREENING COMMITTEE MEMBERS

*The CSC reviews docketed complaints after General Counsel investigation. Members may vote to dismiss, divert, or refer to Disciplinary Counsel.*

| Name | Committee Role | Service Period | Current/Former Firm |
|------|----------------|----------------|---------------------|
| Margaret R. Kerouac, Esq. | Member | PCC 2015-2023; CSC 2024-Present | McLane Middleton (2007-2010+); Orr & Reno (current) |
| Julian B. Jefferson, Esq. | Chair | Current | [To be verified] |
| Joshua L. Gordon, Esq. | Member | Current | [To be verified] |

## SECTION 5: HEARINGS COMMITTEE MEMBERS

*Hearings Committee members serve on panels that conduct evidentiary hearings. Appointed to three-year terms.*

| Name | Committee Role | Service Period | Current/Former Firm |
|------|----------------|----------------|---------------------|
| Kyle D. Robidas, Esq. | Member | Approx. 2021-Present | DEVINE MILLIMET (Of Counsel) |
| James A. Shepard, Esq. | Member | Current | SHEEHAN PHINNEY (former) |
| Andrea Amodeo-Vickery, Esq. | Member | Jan. 1, 2018-Present | Shaheen & Gordon (formerly Upton & Hatfield connection) |
| Brooksley C. Belanger, Esq. | Chair | Current | [To be verified] |

**CONFLICT IDENTIFIED:** Kyle Robidas is current Of Counsel at Devine Millimet. James Shepard is a former Sheehan Phinney attorney. Both firms have attorneys who are subjects of the complainant's grievances.

Every other major jurisdiction examined has structural safeguards that would prevent this exact conflict:

**Table 3 — Structural Safeguards Absent in New Hampshire**

| Jurisdiction | Safeguard | How It Prevents This Conflict |
|---|---|---|
| California | Independent State Bar Court with Supreme Court-appointed judges | No single individual controls intake; judicial independence from bar politics |
| Florida | Board of Governors designated reviewer; 33%+ public member grievance committees | Multiple layers of review; public members dilute insider influence |
| Texas | Independent Grievance Oversight Committee appointed by Supreme Court; ombudsman | External oversight monitors system; ombudsman receives complaints about process |
| Massachusetts | SJC-appointed Board of Bar Overseers independent of Bar Counsel; 33% public members | Separation of prosecution and adjudication; public accountability |
| New Hampshire | NONE | Single-point gatekeeping by individual with direct firm ties to respondents |

## IV. CONSTITUTIONAL IMPLICATIONS

The structural conflict identified above implicates fundamental due process concerns under 42 U.S.C. § 1983:

**1. Deprivation of Neutral Forum.** A complainant has a property and liberty interest in access to a functioning disciplinary system. When the sole gatekeeper has a conflict of interest, the complainant is deprived of any meaningful access to that system.

**2. State Action.** The ADO operates under color of state law pursuant to NH Supreme Court Rule 37. The General Counsel's decisions are state action.

**3. No Adequate State Remedy.** There is no mechanism to appeal a non-docketing decision to a neutral tribunal. The Complaint Screening Committee only reviews matters the General Counsel has already docketed. Non-docketed grievances are destroyed.

**4. Pattern and Practice.** The complete absence of public discipline against major-firm attorneys over two decades, combined with the structural conflicts identified, suggests systemic rather than isolated failure.

## V. CONCLUSION

The New Hampshire Attorney Discipline Office structure creates an irreconcilable conflict of interest in the September 17, 2025 grievance. The sole individual authorized to determine whether the grievance proceeds to investigation is a former colleague of four respondent attorneys at the same law firm. No recusal mechanism exists. No neutral review exists. No appeal exists. This structure denies complainants due process and renders the disciplinary system ineffective as to attorneys affiliated with major New Hampshire law firms.

## VI. SOURCES

NH Supreme Court Rule 37 (Attorney Discipline System)

NH Supreme Court Rule 37A (Rules and Procedures of Attorney Discipline System)

NH Attorney Discipline Office Annual Reports (2021, 2022, 2024)

NH Attorney Discipline System website (staff roster)

Public firm biographies and LinkedIn profiles